IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PleasrDAO, an exempted foundation company<br><br>    *Plaintiff*<br><br>v.<br><br>Martin Shkreli,<br><br>    *Defendant* | Case No. 24-CV-4126 (PKC) (MMH) |

**DEFENDANT MARTIN SHKRELI'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER [ECF 3-4]**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 2

III. STANDARD OF REVIEW .............................................................................................. 6

IV. ARGUMENT ..................................................................................................................... 8

   A. PLAINTIFF HAS FAILED TO SHOW IRREPARABLE HARM BECAUSE DAMAGES ARE ADEQUATE TO REMEDY ANY HARM ................................................................................ 8

   B. PLAINTIFF HAS FAILED TO SHOW IRREPARABLE HARM BECAUSE THE WORK IS NOT SECRET ........................................................................................................................ 11

V. CONCLUSION ............................................................................................................... 12

I.  **INTRODUCTION**

PleasrDAO's application for preliminary injunctive relief should be denied because it cannot establish a likelihood of irreparable harm.

Plaintiff's claims flow from its second-hand purchase of a physical copy of the musical work *Once Upon A Time In Shaolin.* Defendant Shkreli previously owned that copy,[1] but forfeited it as a result of a criminal forfeiture order to the U.S. Marshals Service (USMS). USMS then sold the copy to an unidentified purchaser, who re-sold it to Plaintiff. But, before the forfeiture happened, when Defendant was the uncontested owner of the copy, and the uncontested 50% owner of the copyrights, he made copies *as we was permitted to do so* under his original purchase agreement with the original sellers of the work. Neither those copies, nor Defendant's copyrights, were forfeited by the Forfeiture order, and Defendant continues to have the right to use them to this day.

When Plaintiff purchased its copy of the work through an Asset Purchase Agreement with the USMS, the USMS explicitly disclaimed any knowledge of the copyright status of the musical work, and made no representation that the assets transferred comprised "the only existing copy of the work." Thus, Plaintiff was well aware that its purchase of assets from did not include any promise or expectation of "exclusivity" or "uniqueness," and cannot establish that it has or would be "irreparably harmed" – it bought a copy of a musical work that it knew was not unique, and cannot now claim to be irreparably harmed by the existence of its non-uniqueness.

As discussed in more detail below, irreparable harm is a threshold inquiry that precludes consideration of the merits of any claims. *See infra*, Section III. Defendant does not concede that

---

[1] Defendant Shkreli continues to own 50% of the copyrights to the underlying musical work.

Plaintiff has demonstrated any likelihood of success on the merits of its claims, and anticipates that it will address Plaintiff's claims on the merits in a forthcoming motion to dismiss under FED. R. CIV. P. 12(b)(6).

Effectively, through its complaint and request for injunctive relief, Plaintiff seeks to retroactively modify the the Asset Purchase Agreement with the USMS, by asking this Court to impose restrictions on Shkreli's use beyond those in the Forfeiture Orders, and damages stemming from copies of the musical work that Shkreli made while he owned it and was permitted to do so under the Original Purchase Agreement.

## II.    STATEMENT OF FACTS

On September 3, 2015, the sole copy of Wu-Tang Clan's musical work *Once Upon A Time In Shaolin* (the "work") was sold to Martin Shkreli for a large sum of money. In exchange for this payment, Shkreli acquired both *physical assets* as well as *copyrights*. *See* Declaration of Erik Dykema ("Dykema Decl.") ¶4, *see also* Ex. A ¶4 at 5 (the "Original Purchase Agreement.")

The Original Purchase Agreement describes the physical assets:

1) Two (2) compact discs containing the only existing copy of a musical work by the Wu-Tang Clan entitled "Once Upon a Time in Shaolin .... ";

2) One (1) hand carved nickel-silver cased box (the "Box") designed by the British-Moroccan artist Yahya Rouach;

3) One (1) 174-page volume containing lyrics, credits, and anecdotes on the production and recordings of each song on "Once Upon A Time In Shaolin ... ";

4) One (1) Certificate of Authenticity in a leather bound portfolio (on 600 gram hard paper with gold foil lettering and an official Wu-Tang Candlewax seal), the text of which is attached hereto as Exhibit A;

5) One (1) customized pair of PMC's MB2 XBD SE speakers, including installation in Buyer's chosen location (limited to UK or USA). Notwithstanding the foregoing, Sellers cannot guarantee delivery of the speakers but will use reasonable

> commercial efforts to acquire them from the manufacturer and deliver them to the Buyer.

*See* Original Purchase Agreement at 5. The Original Purchase Agreement also lists the copyrights and other intangibles:

1) Fifty Percent (50%) of the copyrights and renewal copyrights in the recordings and musical compositions embodied in the Work. In return, the Buyer agrees to the following usage restrictions for a period of 88 years following the Closing: Buyer may duplicate or replicate the Work for private use, but shall not duplicate, replicate, and/or exploit the Work for any commercial or other non-commercial purposes by any means today known or that come to be known during said time period other than the Permitted Uses which are limited to: the private or public exhibition or playing of the Work, with or without charge, in locations such as Buyer's home, museums, art galleries, restaurants, bars, exhibition spaces, or other similar spaces not customarily used as venues for large musical concerts, as well as the advertising and/or promotion of such exhibition or playing of the Work (the "Permitted Uses"). If Buyer earns net profits through Permitted Uses of the Work, Sellers shall be entitled to [redacted] of such net profits; net profits for the purpose of the foregoing shall be calculated by subtracting from gross receipts in connection with Permitted Uses (a) the Purchase Price and (b) all costs attendant to the Permitted Uses and collection of income therefrom ("Net Profits").

2) The right to sell the Work to a third party under the same terms and conditions as described herein, subject to a resale royalty to the Sellers of [redacted] of any profit realized on the resale after recoupment of the Purchase Price.

3) A limited license in perpetuity to use the name, likenesses, trademarks, and logo of the Wu-Tang Clan, the members of the Wu-Tang Clan (solely in their capacity as a group involved with the Work), and Wu-Tang Productions, Inc. in conjunction with Permitted Uses of the Work, advertising and promotion thereof, and display of the Box.

4) Eighty-eight (88) years after the Closing, the right to the unrestricted use of the Work and the transfer of full copyright ownership, without further obligation or payment to anyone, including Sellers or their heirs.

*See* Original Purchase Agreement at 5-6.

Importantly, the terms of the Original Purchase Agreement between Shkreli and the sellers unequivocally state that "the Work is the only existing copy of the Work in the world **up until the**

3

**transfer of the work from the Sellers to the Buyer**." (Emphasis added). *See* Original Purchase Agrement ¶5(d) at 8. Further, the Original Purchase Agreement explicltly allows Shkreli to "duplicate or replicate the Work for private use…" *See* Original Purchase Agreement ¶4(b)(1) at p. 5.

The Original Purchase Agreement contemplates the potential release of the work to the public, and assigns a monetary penalty equal to "all Net Revenue generated from any use, exploitation, and/or commercialization outside the scope of this Agreement" for the improper release of the work. *See* Original Purchase Agreement ¶7(f) at 11. Plaintiff's Complaint alleges that, during Shkreli's ownership of the physical copy of the work, he made copies of the music. *See, e.g.* Compl. ¶ 38. (allegation that Shkreli stated "of course I made mp3 copies…"). ECF 1.

In 2018, a Court in this District entered an order requiring Defendant to, *inter alia*, forfeit a sum of $7,360,450. *See U.S. v. Shkreli*, Case No. 1:15-CR-00637-KAM (E.D.N.Y. 2018). [ECF 4-5] (the "Forfeiture Money Judgment"). In its Forfeiture Money Judgment, this Court explicitly held that certain assets including "the album 'Once Upon A Time in Shaolin' by the Wu Tang Clan" were substitute assets acceptable to satisfy the Forfeiture Money Judgment. The Forfeiture Order stated that the "value of the forfeited Substitute Assets shall be applied towards satisfaction of the Forfeiture Money Judgment." ECF No. 4-5 at 11. Accordingly, this Court has ascribed a monetary value to the Substitute Assets.

In July 2021, the U.S. government sold the forfeited copy of the work to an undisclosed buyer via an Asset Purchase Agreement. *See* Dykema Decl. ¶10, *see also* Ex. B. The Asset Purchase Agreement detailed that the USMS was selling "only those rights to the Assets forfeited by Martin Shkreli pursuant to the Forfeiture Orders." *Id*. Moreover, the Asset Purchase Agreement describes the assets as being "sold 'As-Is, Where Is' with no representations or warranties as to

4

their condition, usability, or fitness for any purpose." *Id*. Additionally, the Asset Purchase Agreement stated that "for the avoidance of any doubt, Seller does not undertake or assume any of the representations or warranties with respect to the Assets set forth in the Original Purchase Agreement." *Id.* Thus, the Asset Purchase Agreement explicitly disclaimed the statement in the Original Purchase Agreement that there was only one copy of the work in existence at the time of the Asset Purchase Agreement.

The "Asset List" included with the Asset Purchase Agreement further detailed the scope of rights and items being transferred by stating "Seller makes no representations regarding the condition of the Assets other than that the below items will be provided at closing" and describing the physical objects being transferred to the buyer. Ex. B.

Plaintiffs allege that "uniqueness was a material condition of PleasrDAO's purchase" and further argue that Defendant's retention of records generated during his ownership of the work and that his previous possession, use, dissemination and/or sale of the data and files of the work and threat[s] to continue to do so demonstrates the "irreparable harm" that will be suffered absent preliminary injunctive relief from this Court. ECF 3, ECF 4.

However, in May 2024, PleasrDAO made its own use of the work, by sharing it with Staten Island Ferry riders, filming the process, and publishing it to social media. Dykema Decl. ¶15. Plaintiff has also itself publicly performed the work. Dykema Decl. ¶ 16. As set forth in further detail below, PleasrDAO did not buy and has never owned a "trade secret," and has further failed to demonstrate that Defendants' conduct will cause imminent irreparable harm necessary to justify a preliminary injunction.

5

## III. STANDARD OF REVIEW

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In the Second Circuit, the standard for the issuance of a temporary restraining order is the same as the standard for the issuance of a preliminary injunction. *Gazzola v. Hochul*, 645 F. Supp. 3d 37, 50 (N.D.N.Y. 2022), *aff'd,* 88 F.4th 186 (2d Cir. 2023), *cert. denied*, No. 23-995, 2024 WL 3014531 (U.S. June 17, 2024); *see also Clark v. Childs*, 416 F. Supp. 3d 221, 223 (E.D.N.Y. 2017) *(citing Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)); *Fairfield Cnty. Med. Ass'n v. United Healthcare of New Eng.*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd*, 557 F. App'x 53 (2d Cir. 2014) (Summary Order); *AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010).

Preliminary injunctive relief in the form of a temporary restraining order and/or a preliminary injunction is a "drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Clark v. Childs*, 416 F. Supp. 3d 221, 223 (E.D.N.Y. 2017) (citing *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007); *Masurek v. Armstrong*, 520 U.S. 968, 972 (1997)). To carry this heavy burden, a party seeking preliminary injunctive relief "must meet four requirements: (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief." *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (citing *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)).

It is well-settled that a showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Gazzola v. Hochul*, 645 F. Supp. at 55, (citing *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009); *Rodriguez*

6

*v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). Indeed, this element is so critical to this inquiry that "Courts need not reach any of the other requirements necessary for the grant of injunctive relief where irreparable harm has not been demonstrated." *Christmas House USA Inc. v. ChristmasLand Experience LLC*, No. 23CV8412, 2024 WL 1494687, at *3 (E.D.N.Y. Apr. 5, 2024); *see also Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66–67 (2d Cir. 2007) ("[T]he moving party must first demonstrate [irreparable harm] is likely before the other requirements for the issuance of an injunction will be considered.").

"[T]o satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm . . . Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d at 118 (internal citation omitted)); *see also Kohler Co. v. Bold International F.Z.C.O.*, 422 F.Supp 3d 681, 707 (E.D.N.Y. 2018) ("[T]o establish the requisite harm, Plaintiff must show that the failure to issue an injunction would **actually cause** irreparable harm.")(cleaned up, emphasis in original).

As the Second Circuit instructed, "court[s] must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm . . . Instead, the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391,

393-94 (2006)). As demonstrated below, Plaintiff has failed to make the requisite showing of irreparable harm to justify preliminary injunctive relief, and such relief should be denied.

IV. **ARGUMENT**

    A. **Plaintiff has Failed to Show Irreparable Harm Because Damages are Adequate to Remedy any Harm**

In support of its application for preliminary injunctive relief, Plaintiff argues that it will suffer irreparable harm if Defendant is permitted to retain possession and use those permitted copies of the work that were made during his ownership the work. ECF 4 at 23. However, Plaintiff has failed to articulate how it will suffer irreparable harm absent injunctive relief, and how any harm suffered is incompensable by money damages at the conclusion of this action. "If an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004); *see also Sweeney v. Bane,* 996 F.2d 1384, 1387 (2d Cir. 1993) (upholding denial of preliminary injunction because prospective harm was purely financial).

"[A] preliminary injunction 'should not issue upon a plaintiff's imaginative, worst case scenario of the consequences flowing from the defendant's alleged wrong but upon a concrete showing of imminent, irreparable injury.'" *Gazzola v. Hochul*, 645 F. Supp. At 57 (quoting *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488, 491 (S.D.N.Y. 1989)); *see also Rossito-Canty v. Cuomo*, 86 F. Supp. 3d 175, 199 (E.D.N.Y. 2015) ("Irreparable harm may not be premised 'only on a possibility.'" (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008))). Moreover, even in cases where a plaintiff copyright holder has an interest non-disclosure of certain work, "this interest is relevant to consideration of a preliminary injunction 'only to the extent that

8

they are not remediable after a final adjudication.'" *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96–97 (2d Cir. 2002).

Plaintiff relies on the Southern District of New York's decisions in *David Tunick, Inc. v. Kornfeld* and *Robins v. Zwirner* to support its contention that a showing of irreparable harm is akin to requiring specific performance for a contract. 838 F. Supp. 848, 852 (S.D.N.Y. 1993); 713 F. Supp. 2d 367, 374 (S.D.N.Y. 2010). Although unique pieces of physical art, such as those signed by artists, have intrinsic value, the Court in *David Tunick v. Kornfeld* stated that "it would be fundamentally unfair, and unsound policy, to impose on plaintiff a duty to accept another—inherently different—print of [the artwork] as a substitute for the one plaintiff actually viewed, bid for, and purchased." 838 F. Supp. At 852. Similarly, it would be fundamentally unfair for this Court to restrict Shkreli from his Permitted Use of the work after the USMS explicitly disclaimed any warranties, described the assets as being sold "As-Is, Where-Is," and listed only physical objects to be delivered on the sale of the assets. Ex. B. As in *Kornfeld,* both seller and buyer came to an understanding of the condition of the asset **before** the Asset Purchase Agreement was executed, and the assets as delivered satisfied those conditions.

This Court should reject Plaintiff's argument that preliminary injunctive relief is justified by an irreparable harm that is so qualitative to be non-compensable with money damages. On its face, the Forfeiture Order assigns a monetary value to *Once Upon a Time in Shaolin*, deeming it a "Substitute Asset" sufficient to satisfy part of the Forfeiture Money Judgment. ECF 4-5. To the extent Plaintiff believes that Defendant's Permitted Use of the work could decrease the value of the asset, that value is recoverable in the form of money damages at the conclusion of this proceeding.

9

Moreover, the contents of the work have already been subject to limited release before they were in the possession of Plaintiff. As alleged in the Complaint, Defendant made several "Permitted Uses" of the work before the Forfeiture. ECF 1. Accordingly, the work has already been released (subject to certain restrictions.) As in *Paisley Park Enterprises, Inc. v. Boxill*, a case centered around the release of certain musical works by Prince, injunctive relief should be denied because "Plaintiff[] can be compensated in damages for any ongoing harm resulting from that distribution." 253 F. Supp. 3d 1037, 1049–50 (D. Minn. 2017).

This same case details that "to the extent that the release of an unauthorized song has caused a loss in value of other Prince music or damaged Plaintiffs' relationship with [a label], those harms already have occurred. Plaintiffs offer no reason why the continued sale of the song 'Deliverance,' which has been available for sale online for weeks, will cause additional irreparable harm for which damages are not an adequate remedy." *Paisley Park Enterprises, Inc. v. Boxill*, 253 F. Supp. 3d 1037, 1050 (D. Minn. 2017). Here, as in *Paisley*, the work had been made accessible to the public well prior to the Asset Purchase Agreement, and Plaintiff has failed to show that additional irreparable harm is imminent.

To the extent Plaintiff is able to demonstrate harms from diminished value of the asset, these are quantitative harms that can be "determined on the basis of past sales of that product and of current and expected future market conditions." *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 763 (2d. Cir. 1979). This Court has found irreparable harm in extreme cases, such as "where the very viability of the plaintiff's business" is threatened, or when "substantial losses of sales beyond those of the terminated product" are imminent. *Semmes Motors Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2d Cir. 1970); *Interphoto Corp v. Minolta Corp.,* 417 F.2d 621, 622 (2d Cir. 1969).

To the extent Plaintiff believes that damages will stem from Defendant's use of "trade secrets" contained in the asset, Courts in this District have rejected this as a sufficient basis for a finding of irreparable harm. *See Liberty Power Corp., LLC v. Katz*, No. 10-CV-1938 NGG CLP, 2011 WL 256216, at *7 (E.D.N.Y. Jan. 26, 2011) ("Even if the court finds that Plaintiff has shown that there is an actual and imminent risk that Defendants will use Plaintiff's trade secrets [], the harm that would result is measureable and compensable through an award of damages after trial.")

"[C]onclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm," *Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC*, No. 10-CV-8976 (RJH), 2011 WL 497978, at *6 (S.D.N.Y. Feb. 10, 2011); *aff'd*, 468 F. App'x. 43 (2d Cir. 2012) (summary order). Since Plaintiff has merely alleged that the value of the asset will diminish absent injunctive relief, this Court should find that a preliminary injunctive relief is "wildly inappropriate" in this case. *TileBar v. Glazzio Tiles,* No. 22CV3823, 2022 WL 2906179, at *2 (E.D.N.Y. July 22, 2022).

**B.      Plaintiff has Failed to Show Irreparable Harm Because the Work is Not Secret**

Further demonstrating Plaintiff's failure to show a likelihood of actual and imminent irreparable harm is Plaintiff's failure to demonstrate that the work was a secret. Under both New York and federal law, "a trade secret must first of all be secret." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 181 (2d Cir. 2023) (citing *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 17 N.Y.S.3d 678, 691 (1st Dep't 2015) (internal citation omitted)); *see also Lehman v. Dow Jones & Co., Inc.*, 783 F.2d 285, 298 (2d Cir. 1986) ("[T]he most important consideration remains whether the information was a secret.").

Plaintiff primarily relies on the alleged secrecy of the work as the basis for its trade secret claims, and argues that "all aspects of it comprise confidential and protected trade secrets." ECF 4

11

at 25. However, to allege *any harms* from misappropriation of a trade secret, "courts require that the possessor of a trade secret take reasonable measures to protect its secrecy." *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1063 (2d Cir. 1985) (citation omitted). And "[a]bsent such measures," information "will cease to be a trade secret and will lose the protections of trade secret law." *Id*. Because Defendant legally possessed and shared the work before the Forfeiture Order and the Asset Purchase Agreement, the work is no longer a trade secret. *See Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 259 (E.D.N.Y. 2015) ("[O]nce a trade secret becomes public…it is no longer a trade secret.").

As detailed above, Plaintiff did not include any terms relating to previously made copies of the work in the Asset Purchase Agreement, and the Forfeiture Order does not require that all copies of the work be forfeited. Ex. B. Therefore, under the terms of the Asset Purchase Agreement, the asset is not a trade secret. Moreover, the Complaint in this action makes clear that Defendant has been disseminating the contents of the work via the internet for years before Plaintiff came to own the asset. *See generally,* ECF 1 ("i literally play it in my discord all the time"); Dykema Decl. Accordingly, the asset cannot be protected as a "trade secret," and any damages to Plaintiff are compensable with money – the work itself has been publicly sold several times, indeed Plaintiff purchased it as a result of such sales. Thus, any alleged harm to Plaintiff is clearly not irreparable.

## V. **CONCLUSION**

For the foregoing reasons, this Court should decline to issue a temporary restraining order and preliminary injunction retroactively modifying the terms of the Forfeiture Order and of the Asset Purchase Agreement.

Dated: July 24, 2024

Respectfully submitted,

*/s/ Edward Andrew Paltzik*
Edward Andrew Paltzik, Esq.
Erik Dykema, Esq.
BOCHNER PLLC
1040 Ave. of the Americas, 15th Fl.
New York, NY 10018
516-526-0341
edward@bochner.law

*Attorneys for Defendant*