IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PleasrDAO, an exempted foundation company<br><br>　　　*Plaintiff*<br><br>v.<br><br>Martin Shkreli,<br><br>　　　*Defendant* | Case No. 24-CV-4126 (PKC) (MMH) |

**Declaration of Erik Dykema in Support of Defendant's Opposition to Plaintiff's Application For Temporary Restraining Order [ECF 3-4]**

I, Erik Dykema, Esq., am an attorney authorized to practice in the Eastern District of New York, and hereby affirm subject to penalty of perjury under the laws of the United States as follows:

1. I am an attorney with Bochner PLLC, attorneys for Martin Shkreli ("Shkreli" or "Defendant") the Defendant in the above-captioned action.

2. I submit this declaration in opposition to Plaintiff's Application for a Temporary Restraining Order, Preliminary Injunction, Order Seizing Assets, and Order for Disgorgement and Accounting (ECF 4 *et seq.*)

3. On September 3, 2015, Shkreli purchased what was then the only existing copy of the musical work titled *Once Upon a Time in Shaolin*, produced by the Wu Tang Clan. A true and correct, but redacted copy of the Original Purchase Agreement has been attached hereto as Exhibit A.

4. The Original Purchase Agreement described the items to be purchased as follows:

    a. Two (2) compact discs containing the only existing copy of a musical work by the Wu-Tang Clan entitled "Once Upon a Time in Shaolin .... ";

    b. One (1) hand carved nickel-silver cased box (the "Box") designed by the British-Moroccan artist Yahya Rouach;

    c. One (1) 174-page volume containing lyrics, credits, and anecdotes on the production and recordings of each song on "Once Upon A Time In Shaolin ... ";

    d. One (1) Certificate of Authenticity in a leather bound portfolio (on 600 gram hard paper with gold foil lettering and an official Wu-Tang Candlewax seal), the text of which is attached hereto as Exhibit A;

    e. One (1) customized pair of PMC's MB2 XBD SE speakers, including installation in Buyer's chosen location (limited to UK or USA). Notwithstanding the foregoing, Sellers cannot guarantee delivery of the speakers but will use reasonable commercial efforts to acquire them from the manufacturer and deliver them to the Buyer.

5. The Original Purchase Agreement described other intangible rights to be purchased as follows:

    a. Fifty Percent (50%) of the copyrights and renewal copyrights in the recordings and musical compositions embodied in the Work. In return, the Buyer agrees to the following usage restrictions for a period of 88 years following the Closing: Buyer may duplicate or replicate the Work for private use, but shall not duplicate, replicate, and/or exploit the Work for any commercial or other non-commercial purposes by any means today known or that come to be known during said time period other than the Permitted Uses which are limited to: the private or public exhibition or playing of the Work, with or without charge, in locations such as

  Buyer's home, museums, art galleries, restaurants, bars, exhibition spaces, or other similar spaces not customarily used as venues for large musical concerts, as well as the advertising and/or promotion of such exhibition or playing of the Work (the "Permitted Uses"). If Buyer earns net profits through Permitted Uses of the Work, Sellers shall be entitled to [redacted] of such net profits; net profits for the purpose of the foregoing shall be calculated by subtracting from gross receipts in connection with Permitted Uses (a) the Purchase Price and (b) all costs attendant to the Permitted Uses and collection of income therefrom ("Net Profits").

 b. The right to sell the Work to a third party under the same terms and conditions as described herein, subject to a resale royalty to the Sellers of [redacted] of any profit realized on the resale after recoupment of the Purchase Price.

 c. A limited license in perpetuity to use the name, likenesses, trademarks, and logo of the Wu-Tang Clan, the members of the Wu-Tang Clan (solely in their capacity as a group involved with the Work), and Wu-Tang Productions, Inc. in conjunction with Permitted Uses of the Work, advertising and promotion thereof, and display of the Box.

 d. Eighty-eight (88) years after the Closing, the right to the unrestricted use of the Work and the transfer of full copyright ownership, without further obligation or payment to anyone, including Sellers or their heirs.

6. The Original Purchase Agreement states that as of the date of the Original Purchase Agreement, "the Work [was] the only existing copy of the Work in the world **up until the transfer of the work from the Sellers to the Buyer**." (Emphasis added). Exhibit A.

3

7. Under the Original Purchase Agreement, Defendant was permitted to use, copy, and disseminate the work in limited circumstances (the "Permitted Uses"). Exhibit A at 5-6.

8. The Original Purchase Agreement states that "No copies of the Work will be made unless at the request of Buyer." Exhibit A.

9. On March 23, 2018, Judge Matsumoto issued a Forfeiture Order describing certain assets to be forfeited by Mr. Shkreli in that matter. A copy of the Forefeiture Order appears to be attached to Plaintiff's application for a TRO as Exhibit D. *See* ECF 4-5 (Ex. D to Plaintiff's Application for a TRO). The Forfeiture Order lists assets to be forfeited including (i) cash, (ii) stock in a company, (iii) "the album 'Once Upon A Time in Shaolin' by the Wu Tang Clan;", (iv) "the album 'Tha Carter V' by Lil Wayne;" and (v) a Picasso Painting. The Forfeiture Order does not list copyrights to either musical work, or to the "Picasso Painting," as an asset forfeited.

10. In July 2021, the U.S. Marshals Service "U.S.M.S." sold certain assets to an undisclosed buyer. A redacted true and correct copy of the Asset Purchase Agreement is attached hereto as Exhibit B.

11. The Asset Purchase Agreement details that the assets are sold "As-Is, Where-Is" and makes no representation that the assets are in any particular condition or is fit for any purpose. Exhibit B at 1.

12. The Asset Purchase Agreement states that "Seller does not undertake or assume any of the representations or warranties with respect to the Assets set forth in the Original Purchase Agreement." Exhibit B.

13. An exhibit to the Asset Purchase Agreement (the "Asset List") details the assets transferred, and states that:

> Seller makes no representations regarding the condition of the Assets other than that the below items will be provided at closing.

<mark>Case 1:24-cv-04126-PKC-MMH   Document 22-1   Filed 07/24/24   Page 5 of 6 PageID #: 298</mark>

<mark>
</mark>
<mark></mark>

<mark>
</mark>

<mark>
</mark>
<mark></mark>
<mark></mark>

<mark>
</mark>

<mark>
</mark>

<mark>
</mark>

<mark>
</mark>

Wu-Tang Clan's album *Once Upon a Time in Shaolin*:
- Audio recording on two (2) CDs.
- Outer box: Cedar wood box covered in black cow leather with light beige velvet lining.
- Inner box: Nickel-silver box and inner jewel case containing two CDs, overcedar wood with black cow leather lining.
- Leather-bound lyric book containing lithographs depicting original artwork and photographs of band members. Approximately 175 pages.
- Leather folder with Gold-leafed certificate of authenticity.
- Leather folder with Indenture and purchase agreement. Approximately 30 pages

Exhibit B.

14. In comparison to the Original Purchase Agreement, the Asset Purchase Agreement does not include a statement that the assets transferred comprise "the only existing copy of a musical work." *See generally*, Exhibits A and B. The Asset Purchase Agreement also does not include a representation that it transfers "copyrights" and/or "renewal copyrights" to the underlying musical work.

15. On May 27, 2024, PleasrDAO published a video on social media in which it shared the musical work with members of the public.[1]

16. On or about the weekend of June 9, 2024, Plaintiff held a listening party and played the album for members of the public. *See* Exhibit C at 5 (Billboard article discussing PleasrDAO releases and listening parties).

17. Plaintiff is currently selling access to the musical work via its website, https://www.thealbum.com/.

---

[1] https://x.com/PleasrDAO/status/1790481351734391040

Dated: New York, New York
       July 24, 2024

                                      Respectfully Submitted,
                                      /s/ Erik Dykema
                                      Erik Dykema, Esq.
                                      Bochner PLLC
                                      1040 Avenue of the Americas, 15th Floor
                                      New York, NY 10018
                                      (646) 971-0685
                                      erik@bochner.law