# EXHIBIT A

# PURCHASE AGREEMENT

This Purchase Agreement (the "Agreement"), dated as of September 3, 2015, between Martin Shkreli ("Buyer") and Robert Diggs p/k/a The RZA (founder and chief executive of Wu-Tang Productions, Inc.) and Tarik Azzougarh p/k/a Cilvaringz (each a "Seller" and together the "Sellers") (the Buyer and each Seller each a "Party", and together the "Parties"), and Paddle 8, Inc., a Delaware corporation, as escrow agent hereunder (in such capacity, the "Escrow Agent"), states the terms and conditions on which Buyer agrees to purchase from Sellers, and Sellers agree to sell, transfer, and assign to Buyer, a musical work by the Wu-Tang Clan entitled "Once Upon a Time in Shaolin....", all of Sellers' rights as specified in this Agreement including fifty percent (50%) of the copyrights in and to the recordings and musical compositions embodied in said musical work, a hand-carved casing in which the two compact discs containing the musical work is housed, all materials delivered therewith (e.g., the speakers described below), and certain other related materials and rights as described in this Agreement (together, the "Work").

THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

**1.**     **Purchase and Sale.** Subject to the terms and conditions of this Agreement, Sellers hereby sell to Buyer, and Buyer hereby buys from Sellers, for the sum of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ States Dollars ▮▮▮▮▮▮▮▮▮▮ "Purchase Price"), the Work and all specified rights, title, and interest therein. This Agreement does not include the sale of or license to any rights to the Wu-Tang Clan logo or brand, other than as permitted herein. Any sales tax or other tax or duty owed on this importation, purchase, and sale shall be reported, if necessary, by the Sellers and shall be paid by the Sellers.

**2.**     **Import of the Work into the United States of America and Pre-Closing Process.**

        a.     Within seven (7) days after the date of the execution of this Agreement, Buyer shall pay

███████████████████████████████████████ as a deposit by wire transfer of immediately available funds to Escrow Agent to the following bank account (such amount when deposited with the Escrow Agent is referred to as the "Escrow Deposit"):



b.      Within sixty (60) days after receipt of the Escrow Deposit by the Escrow Agent, Sellers shall package and import the Work into the United States of America and shall deliver the Work to the Escrow Agent. Sellers shall be responsible for the lawful import of the Work into the United States, and for providing proof thereof to the Buyer in the form of true, complete, and correct copies of any and all necessary United States Customs and Border Protection documents demonstrating that the Work has been lawfully imported into the United States (the "U.S. Customs Documents"). Notwithstanding anything in this Agreement to the contrary, if the Sellers fail, for any reason, to deliver the Work to the Escrow Agent within sixty (60) days after the Escrow Agent's receipt of the Escrow Deposit, the Buyer shall have the right to terminate this Agreement by notifying Sellers and the Escrow Agent, in which event Escrow Agent shall return the Escrow Deposit to the Buyer by wire transfer of immediately available funds to the Buyer within five (5) Business Days after receipt of such notice pursuant to wire transfer instructions to be given by the Buyer to the Escrow Agent together with said notice, and this Agreement shall be null and void other than with respect to the provisions of Paragraphs 8, 9, 10 and 12 hereof which shall survive such termination ("Business Day" shall mean any day other than a Saturday or Sunday on which banks are generally open for business in the State of New York).

c.      Once the Sellers have imported the Work into the United States, the Sellers shall make available to the Buyer all documents pertaining to the lawful importation of the Work and executed,

2

partially-redacted versions of all due diligence documents concerning Sellers' rights to the Work (the latter to be viewed at the offices of the Escrow Agent). The Buyer (and a single consultant to be named by the Buyer) shall have the opportunity to inspect the Work visually at the Escrow Agent's offices. Any such viewing and/or inspection shall be conducted during regular business hours, on not less than two full Business Days' prior written notice, at a mutually acceptable day and time. If the Work is visually acceptable to the Buyer, the Parties and the Escrow Agent will then schedule a closing ("Closing") at a mutually agreed location, date, and time. If the Work is damaged, and/or incomplete, and/or does not match the description specified in this Agreement (excluding the speakers), then the Sellers shall have 10 days to correct any concerns raised by Buyer pertaining to any damage or discrepancy with the description specified in this Agreement. If after 10 days, the Work remains irreparably damaged, and/or incomplete, and/or does not match the description specified in this Agreement (excluding the speakers), then this Agreement shall be terminated effective upon written notice thereof from Buyer to Sellers and the Escrow Agent, and Escrow Agent shall return the Escrow Deposit to the Buyer within five (5) Business Days after receipt of such notice by Escrow Agent pursuant to wire transfer instructions to be given by the Buyer to the Escrow Agent together with said notice and this Agreement shall be null and void other than with respect to the provisions of Paragraphs 8, 9, 10 and 12 hereof which shall survive such termination.

     d.    At the Closing, the Buyer shall inspect the Work to verify that it is as described in this Agreement and that the Work's original two CD's are present and undamaged. The Buyer shall then be permitted, in the presence of the Sellers and any attending witnesses, to inspect and listen to 10 seconds at the beginning, 10 seconds in the middle, and 10 seconds at the end of each track on the Work's two CD's to verify that the audio is of commercially acceptable quality and that the content therein is the musical work by the Wu-Tang Clan entitled "Once Upon a Time in Shaolin…." After verification by the Buyer, the Buyer will immediately make a second payment ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

United States Dollars) (the "Balance of the Purchase Price") by wire transfer of immediately available funds to the Escrow Agent to the account listed in paragraph 2a. Upon the Escrow Agent's receipt of the Balance of the Purchase Price, Escrow Agent will promptly transfer an amount equal to the full Purchase Price, minus any amounts owed to the Escrow Agent by the Sellers (the "Net Purchase Price"), to the Sellers by wire transfer of immediately available funds pursuant to wire transfer instructions given by the Sellers to the Escrow Agent, and, upon Sellers' receipt of payment of the Net Purchase Price (or issuance of a federal reference number in respect of Escrow Agent's wire transfer thereof), the Escrow Agent will deliver the sole copy of the Work to the Buyer in the presence of any attending witnesses.

e. The Buyer may decline to accept the Work only for reasons of irreparable damage, and/or unacceptable sound quality, and/or if the CD's do not contain the musical work by the Wu-Tang Clan entitled "Once Upon a Time in Shaolin....", in which case Buyer shall give written notice thereof to Sellers and the Escrow Agent, and Escrow Agent shall, within two (2) Business Days after receipt of such notice, return the Escrow Deposit to Buyer by wire transfer of immediately available funds pursuant to wire transfer instructions given by the Buyer to the Escrow Agent together with such notice. If there is reparable damage identified prior to the second payment, then the Sellers will have 10 days to repair the damage to Buyer's satisfaction before the damage is deemed irreparable. If the Buyer terminates the Agreement for any reason other than those specified above, then the Sellers shall have the right to retain ten per cent (10%) of the Escrow Deposit, specifically ███████████████████████ which amount the Escrow Agent shall pay to the Sellers by wire transfer of immediately available funds pursuant to wire transfer instructions given by the Sellers to the Escrow Agent, while simultaneously returning to the Buyer the balance of the Escrow Deposit by wire transfer of immediately available funds pursuant to wire transfer instructions given by the Buyer to the Escrow Agent.

**4.     Description of the Work, Including Rights Transferred.**

a.     The Work includes the following physical items, all of which shall be sold and delivered to the Buyer at the Closing (with the possible exception of number 5 below):

1)     Two (2) compact discs containing the only existing copy of a musical work by the Wu-Tang Clan entitled "Once Upon a Time in Shaolin....";

2)     One (1) hand carved nickel-silver cased box (the "Box") designed by the British-Moroccan artist Yahya Rouach;

3)     One (1) 174-page volume containing lyrics, credits, and anecdotes on the production and recordings of each song on "Once Upon A Time In Shaolin...";

4)     One (1) Certificate of Authenticity in a leather bound portfolio (on 600 gram hard paper with gold foil lettering and an official Wu-Tang Candlewax seal), the text of which is attached hereto as Exhibit A;

5)     One (1) customized pair of PMC's MB2 XBD SE speakers, including installation in Buyer's chosen location (limited to UK or USA).  Notwithstanding the foregoing, Sellers cannot guarantee delivery of the speakers but will use reasonable commercial efforts to acquire them from the manufacturer and deliver them to the Buyer.

b.     The Work includes the following rights, all of which Sellers hereby sell and assign to Buyer at the Closing:

1)     Fifty Percent (50%) of the copyrights and renewal copyrights in the recordings and musical compositions embodied in the Work.  In return, the Buyer agrees to the following usage restrictions for a period of 88 years following the Closing:  Buyer may duplicate or replicate the Work for private use, but shall not duplicate,

5

replicate, and/or exploit the Work for any commercial or other non-commercial purposes by any means today known or that come to be known during said time period other than the Permitted Uses which are limited to: the private or public exhibition or playing of the Work, with or without charge, in locations such as Buyer's home, museums, art galleries, restaurants, bars, exhibition spaces, or other similar spaces not customarily used as venues for large musical concerts, as well as the advertising and/or promotion of such exhibition or playing of the Work (the "Permitted Uses"). If Buyer earns net profits through Permitted Uses of the Work, Sellers shall be entitled t███████████████ of such net profits; net profits for the purpose of the foregoing shall be calculated by subtracting from gross receipts in connection with Permitted Uses (a) the Purchase Price and (b) all costs attendant to the Permitted Uses and collection of income therefrom ("Net Profits").

2)    The right to sell the Work to a third party under the same terms and conditions as described herein, subject to a resale royalty to the Sellers ███████████ ███████████ on the resale after recoupment of the Purchase Price.

3)    A limited license in perpetuity to use the name, likenesses, trademarks, and logo of the Wu-Tang Clan, the members of the Wu-Tang Clan (solely in their capacity as a group involved with the Work), and Wu-Tang Productions, Inc. in conjunction with Permitted Uses of the Work, advertising and promotion thereof, and display of the Box.

4)    Eighty-eight (88) years after the Closing, the right to the unrestricted use of the Work and the transfer of full copyright ownership, without further obligation or payment to anyone, including Sellers or their heirs.

**5.**     **Representations and Warranties of Sellers.**   Sellers each hereby represent and warrant to Buyer as follows:

a.     The Work is an authentic, original work created by the Wu-Tang Clan, featuring the members of the Wu-Tang Clan and appearances by the Wu-Tang Killa Beez, Redman, Cher, and Carice Van Houten, consisting of 31 tracks divided over songs, excerpts, and interludes, executively produced and overseen by The RZA from creation to sale. Sellers hereby indemnify the Buyer against any third party copyright claims related to (i) any Permitted Uses of the Work and (ii) any commercialization of the Work permitted in the event of a breach by Sellers pursuant to Paragraphs 7(c), 7(d), or 7(e) herein.

b.     Sellers have all rights to sell the Work. Each Seller has the capacity to execute, deliver, and perform this Agreement; each Seller has duly executed and delivered this Agreement; and this Agreement is the valid and binding obligation of each Seller, and enforceable against each Seller, in accordance with its terms.

c.     No consent of any third party is required for each Seller to execute and deliver to Buyer this Agreement and all rights set forth herein, including the right to engage in all Permitted Uses without additional consideration and/or authorization, or for each Seller to consummate its obligations hereunder. Such Seller's execution and delivery of this Agreement, sale and transfer of the Work, and authorization to engage in the Permitted Uses and other uses contemplated herein do not violate, breach, or contravene any rights, agreements, or instrument to which such Seller is a party or otherwise bound. All rights granted herein by Sellers to the Buyer are free and clear of all claims or rights of approval by any parties, with the exception of third-party copyright claims related to sampled musical content, as to which the Sellers fully indemnify the Buyer against any claims related to (i) any Permitted Uses of the Work and (ii) any commercialization of the Work permitted in the event of a breach by Sellers pursuant to Paragraphs 7(c), 7(d), or 7(e) herein.

7

d.      The Work is the only existing copy of the Work in the world up until the transfer of the Work from the Sellers to the Buyer.  Sellers guarantee that there is no other existing copy or master copy of the Work prior to the transfer of the Work from the Sellers to the Buyer, or any of the songs and arrangements therein.  The only existing copy of the Work, on two compact disks, will remain in a vault until import of the Work into the United States.  No copies of the Work will be made unless at the request of Buyer.  Sellers guarantee that up until the transfer of the Work from the Sellers to the Buyer, no person or entity has a copy of the Work, of any of the recordings or musical compositions embodied in the Work, nor components thereof, with the exception of (i) individual artists' lyrical and instrumental portions of certain tracks on the Work; (ii) brief samples used in the composition of the music; and (iii) portions of the following four tracks: (1) The Weeping Tiger; (2) Winter Windz; (3) Dirt Bomb Niggaz Know My Uzi Weigh A Ton; and (4) "99 Cycling Swords/99 Supreme", specifically, the 52 seconds of the song previously excerpted in a *Forbes* documentary (the "Specified Exceptions").  Sellers guarantee not to remake, remix, or produce any variation or reworking of the Work and the songs therein without agreement from the Buyer.

e.      Under no circumstance will the Wu-Tang Clan, the members of the Wu-Tang Clan, Wu-Tang Productions, Inc., any artist appearing on the Work, or any affiliated or non-affiliated artist or entity release to the public, or re-record for release to the public, or publicly perform any of the recordings, songs, melodies, or lyrics appearing on the Work in any known form or media, or in any media to be known in the future, and irrespective of whether done for commercial or promotional purposes.

f.      Sellers guarantee there will be no leaks or release of the Work, or portions of the Work, in any form.

g.      No broker's or finder's fee, commission or similar amount shall be owed by Buyer to any party (including without limitation Escrow Agent) claiming to be a broker of the Work or the transactions

contemplated by this Agreement, and Sellers warrant that no such party has any entitlement to any such amount; provided that nothing in this Paragraph 5(g) shall relieve Buyer of any of its liabilities or obligations to the Escrow Agent otherwise arising under this Agreement (including without limitation Paragraph 9 hereof).

      h.      Sellers guarantee that the Work is of commercially acceptable quality.

      i.      Sellers shall be solely responsible for, and shall pay, any taxes or duties owed on the sale or import of the Work.

**6.**      **Representations and Warranties of Buyer.**  Buyer hereby represents and warrants to Sellers, as set forth below.

      a.      For 88 years after the Closing Buyer will not engage in any commercial or non-commercial activity outside the scope of (i) the Permitted Uses as described herein and (ii) any commercialization of the Work permitted in the event of a breach by Sellers pursuant to Paragraphs 7(c), 7(d), or 7(e) herein.

      b.      In the event of the resale or transfer of the Work by the Buyer to another person or entity, Buyer shall: (i) bind such buyer or transferee by written agreement to the same rights, restrictions, and obligations on the use, sale, and transfer of the Work as the Buyer is subject to in this Agreement (the "Use Restrictions"); (ii) pay the Sellers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on the resale or transfer ▮▮▮ ▮▮▮▮▮▮▮▮ Purchase Price; and (iii) provide the Sellers, upon a written request by the Sellers to the Buyer, a copy of the purchase or transfer agreement between Buyer and the subsequent buyer or transferee, which copy Sellers must keep confidential.

      c.      Buyer will not modify the music or design of the Work in any shape, form, or fashion unless it is to change and/or add an additional company or private logo/name. Buyer guarantees not to remake, remix, or produce any variation or reworking of the Work and the songs therein without agreement from the Sellers.

7. **Indemnity and Remedies for Breach; Personal Guaranty**.

a. Sellers shall jointly and severally indemnify, defend, and hold Buyer harmless, to the fullest extent authorized and permitted by law, from and against any and all demands, actions, proceedings, suits, claims, judgments, orders, damages, loss, amounts paid in settlement, or other liabilities or expenses incurred by Buyer (including paying ongoing reasonable attorneys' fees and expenses in any lawsuit), in each and any case or proceeding of any type arising out of, in connection with, or in any way related to the Work, the Buyer's Permitted Uses of the Work, any commercialization of the Work permitted in the event of a breach by Sellers pursuant to Paragraphs 7(c), 7(d), or 7(e) herein, and/or any Seller's breach of any of its obligations, representations, warranties, or covenants in this Agreement, including without limitation any claims from any Wu-Tang Clan group member(s), and/or related party, and any claims from any artist appearing on the Work.

b. Buyer shall indemnify, defend, and hold Sellers harmless, to the fullest extent authorized and permitted by law, from and against any and all demands, actions, proceedings, suits, claims, judgments, orders, damages, loss, amounts paid in settlement, or other liabilities or expenses incurred by Sellers (including paying ongoing reasonable attorneys' fees and expenses in any lawsuit), in each and any case or proceeding or any type arising out of, in connection with, or in any way related to the Buyer's breach of his representations, warranties, or covenants in this Agreement.

c. In the event of any leak that accumulates to either 32 lines of lyrical content (be they consecutive or drawn from non-consecutive portions of the Work) and/or 30 seconds of musical content outside the scope of the Specified Exceptions, the Buyer shall be permitted to use or license the Work in any manner he chooses, either commercial or non-commercial, without limitation, other than for commercial or non-commercial purposes related to synchronization licensing. In the event of such a breach, Sellers shall have six weeks from notification in writing and evidence of a breach to settle any

outstanding third-party claims as pertaining to samples or to replay the samples, and after the six weeks have expired, Sellers shall fully indemnify Buyer against any third party copyright claims. Sellers guarantee that they will materially assist Buyer in any commercial release of the Work and remain liable for any third-party claims. Sellers retain first right to suggest a release strategy and Buyer retains the right to refuse it.

        d.      In the event of any leak that accumulates to fifty percent (50%) or more of the musical content of the Work, the Buyer will be entitled to all of the rights and remedies described in Paragraph 7(c) above, and Sellers will additionally provide Buyer two extra unreleased Wu Tang Clan songs, a full instrumental version of the Work that will be remade at Sellers' cost within a reasonable timeframe to be agreed between Parties, and all merchandising rights to any materials related to the Work (the "Additional Works"). Sellers shall fully indemnify Buyer against any third party copyright claims related to the Additional Works.

        e.      In the event that any Seller has breached the Agreement by being responsible for the release of the Work substantially in its entirety, whether commercially or for free, then Buyer shall have the right, at Buyer's sole election, to choose either the rights and remedies described in Paragraphs 7(c) and 7(d) herein or to terminate this Agreement within one year of discovery of such a breach and to require Sellers to refund the Purchase Price in full to Buyer within sixty (60) days of such election, in which case Paragraphs 8, 9, 10 and 12 hereof shall survive such termination.

        f.      In the event that Buyer has breached the Agreement by being responsible for the release of the Work substantially in its entirety in a prohibited manner, Buyer shall fully indemnify Sellers against all claims and Sellers shall receive all Net Revenue generated from any use, exploitation, and/or commercialization outside the scope of this Agreement.

        g.      Sellers and Buyer personally guarantee any payment or indemnity obligation herein. This

personal guaranty is irrevocable. The liability of the Sellers and Buyer under this guaranty shall be absolute and unconditional, irrespective of: (a) any lack of validity or enforceability of any of the obligations in this Agreement; (b) the commencement of a voluntary or an involuntary case or proceeding under the Federal Bankruptcy Code or any state or foreign bankruptcy, insolvency or similar statute affecting the Sellers; or (c) any other circumstance that might otherwise constitute a defense available to, or a discharge of, this guaranty.

**8.     Notices**. All notices or other communications required or otherwise delivered under this Agreement shall be in writing and shall be deemed to have been duly given if delivered personally or two (2) Business Days after delivered to a recognized international courier service or on the day sent by email or electronic facsimile transmission (subject to electronic receipt of confirmation), to the other parties hereto at the following addresses (or to such other address as a party may provide in writing): if to Buyer: Martin Shkreli, ███████████████████████████████████████████████████ ████ with a copy to Nicole Gueron, Esq., ██████████████████████████████████████ ████████ if to Sellers: Tarik Azzougarh, ███████████████████████ Marrakech, Morocco, and to Robert Diggs c/o Tarik Azzougarh, ████████████████████ Marrakech, Morocco; if to the Escrow Agent: ██████████████████████████████████ attn: Alexander Gilkes, with a copy (which shall not constitute notice) to Pearlstein & McCullough LLP, Attn: Michael McCullough, ████████████████████████████

**9.     Escrow Agent.**

    a.     Appointment. Sellers and Buyer hereby appoint Paddle 8, Inc. to act as Escrow Agent under this Agreement, and Paddle 8, Inc. hereby accepts such appointment.

    b.     Escrow Deposit. The Escrow Agent shall maintain the Escrow Deposit in a segregated,

non-interest bearing account with its regular U.S. commercial bank (the "Escrow Account"). Upon receipt of good and collected funds from Buyer, the Escrow Agent shall retain the Escrow Deposit in the Escrow Account until disbursed in accordance with this Agreement.

      c.      Disputes. If a dispute arises between Buyer and Sellers resulting in adverse or conflicting claims or demands being made in connection with this Agreement or the Escrow Deposit, the Work, or other material held by the Escrow Agent (collectively, the "Escrowed Items"), Escrow Agent shall not be required to resolve such controversy, or in the event that the Escrow Agent is in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be or become liable in any way or to any person for its failure or refusal to act, and the Escrow Agent shall be entitled to continue to refrain from acting until (i) the rights of all interested parties shall have been fully and finally adjudicated by a court of competent jurisdiction, or (ii) all differences shall have been adjudged and all doubt resolved by agreement among all of the interested persons, and the Escrow Agent shall have been notified thereof in writing signed by all such persons. Notwithstanding the foregoing, the Escrow Agent may in its discretion obey the order, judgment, decree or levy of any court, whether with or without jurisdiction, and the Escrow Agent is hereby authorized in its sole discretion to comply with and obey any such orders, judgments, decrees or levies. In the event of a controversy, Escrow Agent may at any time deposit the Escrowed Items into a state or federal court located in New York County, New York, pursuant to an interpleader action.

      d.      Responsibilities and Liability of Escrow Agent.

      (i)      Duties Limited. The Escrow Agent is acting solely as escrow agent hereunder and owes no duties, covenants or obligations, fiduciary or otherwise, to any person by reason of this

Agreement, except as otherwise explicitly set forth in this Agreement, and no implied duties, covenants or obligations, fiduciary or otherwise, shall be read into this Agreement against the Escrow Agent. The Escrow Agent shall not be bound by, deemed to have knowledge of, or have any obligation to make inquiry into or consider, any term or provision of any agreement between any of the parties and/or any other third party or as to which the escrow relationship created by this Agreement relates, including without limitation any documents, instruments or materials referenced in this Agreement. The Escrow Agent shall be under no duty to determine whether Sellers or Buyer is or are complying with the requirements of the Agreement, other applicable agreements of Sellers or Buyer, or any laws in tendering or paying the Purchase Price or any portion thereof. The Escrow Agent shall not be responsible for, or be required to enforce, any of the terms or conditions of the Agreement or any other agreement between Sellers or Buyer and/or any other party.

        (ii)    <u>Limitations on Liability of Escrow Agent.</u>

        (1)    Except in cases of the Escrow Agent's gross negligence or willful misconduct, the Escrow Agent shall be fully protected (x) in acting in reliance upon any certificate, statement, request, notice, advice, instruction, direction, other agreement or instrument or signature reasonably and in good faith believed by the Escrow Agent to be genuine, (y) in assuming that any person purporting to give the Escrow Agent any of the foregoing in connection with either this agreement or the Escrow Agent's duties hereunder, has been duly authorized to do so, and (z) in acting or failing to act in good faith on the advice of any counsel retained by the Escrow Agent. The Escrow Agent shall not be liable for any mistake of fact or law or any error of judgment, or for any act or omission, except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of loss.

        (2)    In connection with any payments that the Escrow Agent is instructed to

make by wire transfer, the Escrow Agent shall not be liable for the acts or omissions of (x) any party or other person providing such instructions, including without limitation errors as to the amount, bank information or bank account number; or (y) any other person or entity, including without limitation any Federal Reserve Bank, any transmission or communications facility, any funds transfer system, any receiver or receiving depository financial institution, and no such person or entity shall be deemed to be an agent of the Escrow Agent.

(3)     Without limiting the generality of the foregoing, it is agreed that in no event will the Escrow Agent be liable for any lost profits or other indirect, special, incidental or consequential damages which any Party may incur or experience by reason of having entered into or relied on this Agreement or arising out of or in connection with the Escrow Agent's performance of this Agreement, even if the Escrow Agent was advised or otherwise made aware of the possibility of such damages; nor shall the Escrow Agent be liable for acts of God, acts of war, breakdowns or malfunctions of machines or computers, interruptions or malfunctions of communications or power supplies, labor difficulties, actions of public authorities, or any other similar cause or catastrophe beyond the Escrow Agent's reasonable control.

(4)     In the event that the Escrow Agent shall be uncertain as to its duties or rights under this Agreement, or shall receive any certificate, statement, request, notice, advice, instruction, direction or other agreement or instrument from any other party hereto with respect to the Escrowed Items which, in the Escrow Agent's reasonable and good faith opinion, is in conflict with any of the provisions of this Agreement, or shall be advised that a dispute has arisen with respect to the Escrowed Items or any part thereof, the Escrow Agent shall be entitled, without liability to any person, to refrain from taking any action other than to keep safely the Escrowed Items until the Escrow Agent shall be directed otherwise in accordance with joint instructions from the parties or an order of a court with jurisdiction over the Escrow

Agent as set forth in Paragraph 9(c). The Escrow Agent shall be under no duty to institute or defend any legal proceedings, although the Escrow Agent may, in its discretion and at the expense of the parties, institute a proceeding under this Paragraph 9(d)(ii)(4) or defend such proceedings. The Escrow Agent shall be under no obligation to institute and/or defend any action, suit or proceeding in connection with this Agreement unless first indemnified in full to its satisfaction.

      (iii)    Indemnification of Escrow Agent. The Sellers and Buyer jointly and severally agree to indemnify the Escrow Agent (including for purposes of this Paragraph 9(d)(iii), its shareholders, directors, officers, employees and agents and attorneys) upon demand for, and to hold it harmless against, any and all actions, causes of action, suits, rights, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, omissions, variances, trespasses, damages, judgments, extents, executions, liabilities, obligations, claims, demands, or other recourse of any kind or nature whatsoever, matured or unmatured, liquidated or unliquidated, absolute or contingent, known or unknown, at law, in equity or otherwise, whether arising in contract, statue, tort, fraud, negligence or otherwise (including, without limitation, claims for rescission, contribution or indemnification) (including reasonable legal fees and expenses of attorneys chosen by the Escrow Agent or representing the fair value of legal services rendered by attorneys of the Escrow Agent for or to itself) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or nonperformance by the Escrow Agent of, any of the Escrow Agent's duties under this Agreement, except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of loss. The terms of this Paragraph 9(d)(iii) shall survive the termination of this Agreement and the resignation or removal of the Escrow Agent.

      (iv)    Authority to Interplead. The Sellers and Buyer authorize the Escrow Agent, if the

Escrow Agent is threatened with litigation or is sued, to interplead all interested parties into an action in state or federal court located in New York County, New York, and to deposit the Escrowed Items with the clerk of that court. In the event of any dispute, the Escrow Agent shall be entitled to petition a court of competent jurisdiction and shall perform any acts ordered by such court.

(d)     Resignation of Escrow Agent. The Escrow Agent may resign and be discharged from its duties and obligations hereunder at any time by giving no less than ten (10) days' prior written notice of such resignation to the Buyer and the Sellers, specifying the date when such resignation will take effect. Thereafter, the Escrow Agent shall have no further obligation to the parties hereunder except to hold the Escrowed Items as depository and not otherwise. In the event of such resignation, the Parties agree that they will cooperate with each other to jointly appoint a banking corporation, trust company, or attorney as successor escrow agent within ten (10) days of notice of such resignation. The Escrow Agent shall refrain from taking any action until it shall receive joint written instructions from the Parties designating the successor escrow agent. The Escrow Agent shall deliver all of the Escrowed Items to such successor escrow agent in accordance with such instructions and upon receipt of the Escrowed Items, the successor escrow agent shall be bound by all of the provisions of this Agreement.

e.     Consultation; Representation.

(i)     The Escrow Agent shall be entitled to consult with counsel of its own choice an shall have full and complete authorization and protection for any action taken or suffered by it in good faith or in accordance with the opinion of such counsel. Without limiting the foregoing, the Escrow Agent may act as its own counsel in respect of any matter or dispute arising hereunder and such representation shall in no way limit any of the Escrow Agent's rights or expand any of the Escrow Agent's obligations under this Agreement.

(ii)     The Escrow Agent has acted as agent to the Sellers in connection with the

17

transactions contemplated by this Agreement. Each of the Parties hereto specifically hereby waives any and all conflicts and potential conflicts of interest arising or that might arise as a result thereof.

(iii)   The Escrow Agent does not have any interest in the Escrowed Items deposited hereunder but is serving as stakeholder only. Upon the release and delivery of the Escrowed Items as herein provided, the Escrow Agent shall be fully released from all liability and obligations with respect thereto or otherwise in connection with this Agreement.

**10.    Confidentiality.** The Parties agree that the Purchase Price is confidential ("Confidential Information"). The Parties agree not to disclose the Confidential Information to any person or entity, except as may be required by law or if the person or entity has signed the Confidentiality Agreement attached hereto as Exhibit B.

**11.    Design of the Box.** The Box shall be and shall remain property of the Buyer. It is understood by Sellers that the Buyer, under the terms of this Agreement, shall have the right to sell and/or exhibit the Box embedded with the Wu-Tang Clan logo, as authorized herein. The design of the box remains the property of the designer, Yahya Rouach.

**12.    Miscellaneous.** This Agreement will be binding upon the Parties and their respective heirs, successors, and permitted assigns and upon the Escrow Agent and its successors and assigns. This Agreement states the entire agreement among the parties with respect to the subject matter hereof, and supersedes all previous discussions, negotiations, and agreements among the parties hereto with respect to the subject matter hereof. If there is any discrepancy or conflict between the language of this Agreement and the language of the Certificate of Authenticity, the language of this Agreement shall govern. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to any principles or provisions thereof that might require the application of or reference to the laws of another jurisdiction. The parties stipulate to the United States District Court for the Southern

District of New York (or if such court shall not accept jurisdiction, the courts of the State of New York, located in the State, City and County of New York) as the sole and exclusive venue for any and all actions, suits, or proceedings arising out of or relating to this Agreement, and each Party hereby irrevocably and unconditionally consents to the personal and subject matter jurisdiction of said courts for such purpose. No Party shall have the right to assign any of its rights or delegate any of its obligations under this Agreement without the other Parties' prior written consent, other than in connection with a sale or transfer by the Buyer to a subsequent buyer in accordance with this Agreement. This Agreement may be executed in two or more counterparts, each of which shall be an original and all of which shall constitute one and the same instrument. Any signature delivered by electronic means shall be deemed to be an original signature.

**13.** **Further Assurances.** Each Party shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

**14.** **Communications.** Each Party shall refer to the Purchase Price as *"An undisclosed figure in the millions"* in all public and private communications unless bound by law to disclose the Purchase Price, or as provided herein in Paragraph 10, or by written agreement among the Parties. Sellers shall draft an initial press release and shall submit same to Buyer for review, amendment, and agreement. The announcement of the sale and all details pertaining to any aspect of the transfer of the Work shall be made only with the full cooperation and approval of all Parties, and Buyer shall agree to participate in a photo shoot with Sellers and the Work.

Intending to be bound hereby, the Parties hereto have caused this Agreement to be executed as of the date first written above.

**Robert Diggs**                          **Tarik Azzougarh**

_____          _____
Robert Diggs                              Tarik Azzougarh


**Martin Shkreli**

_____
Martin Shkreli


**Paddle 8, Inc.,**
solely in its capacity as Escrow Agent hereunder


By: _____
          Alexander Gilkes

**Robert Diggs**                                    **Tarik Azzougarh**

_____               _____
Robert Diggs                                         Tarik Azzougarh

**Martin Shkreli**

_____
Martin Shkreli

**Paddle 8, Inc.,**
solely in its capacity as Escrow Agent hereunder

By: _____
        Alexander Gilkes

**Robert Diggs**                                    **Tarik Azzougarh**

_____        _____
Robert Diggs                                        Tarik Azzougarh


**Martin Shkreli**


_____
Martin Shkreli


**Paddle 8, Inc.,**
solely in its capacity as Escrow Agent hereunder


By: _____
      Alexander Gilkes

**Robert Diggs**                              **Tarik Azzougarh**

_____        _____
Robert Diggs                                  Tarik Azzougarh


**Martin Shkreli**

_____
Martin Shkreli


**Paddle 8, Inc.,**
solely in its capacity as Escrow Agent hereunder


By:

_____
            Alexander Gilkes

## EXHIBIT A – Text of Certificate of Authenticity

This certificate verifies the authenticity of the accompanying sole existing exemplar of a musical work by the Wu-Tang Clan entitled ONCE UPON A TIME IN SHAOLIN… on two Compact Disks. The work is housed inside a hand carved silver box designed and made by the artist Yahya and comes with a leather bound book containing all the written lyrics of this work.

The sellers' signature and candle wax seal attests this one-of-a-kind art piece has been executively produced and overseen from creation to sale by Mr. Robert "The RZA" Diggs and was based on an original idea by artist/producer Tarik "Cilvaringz" Azzougarh.

This document further verifies no replication of any kind of this work, known or come to be known, will ever be made by the artists/sellers.

**Title**: Once Upon A Time In Shaolin…
**Artist**: Wu-Tang Clan
**Sellers**: Mr. Robert "The RZA" Diggs and Mr. Tarik "Cilvaringz" Azzougarh

[signatures + candle wax seal]

_____

We hereby certify the authenticity of the above.

**<u>EXHIBIT B – Confidentiality Agreement (Addendum to Purchase Agreement)</u>**


I, _____, acknowledge that the terms of this Purchase Agreement, including the Purchase Price, are confidential.  I agree that I will not disclose any of the terms of this Purchase Agreement to anyone.  By acknowledging these obligations, I understand that I am submitting myself to the jurisdiction of the New York courts for the purpose of any issue or dispute that may arise related to this Confidentiality Agreement or a breach thereof.


Dated: _____          _____