# EXHIBIT B

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement") is made as of July 19, 2021, by the United States Marshals Service (the "USMS"), for and on behalf of the United States of America ("Seller") and [(b)(6); (b)(7)(C)] company [(b)(6); (b)(7)(C)] together, "Purchasers") (collectively, the "Parties").

### RECITALS

WHEREAS, in the criminal case of *United States v. Martin Shkreli*, 15-CR-637 (EDNY), the Court issued a Preliminary Order of Forfeiture, dated March 5, 2018, and a Final Order of Forfeiture, dated September 10, 2018, (together, the "Forfeiture Orders") pursuant to which the defendant, Martin Shkreli, forfeited all of his right, title and interest in "the album *Once Upon a Time in Shaolin* by the Wu Tang Clan" (the "Album") "as well as proceeds traceable thereto, up to the amount of the Forfeiture Money Judgment" imposed against him;

WHEREAS, pursuant to 28 C.F.R. § 0.111(i), the USMS may dispose of property forfeited to the United States on behalf of the United States;

WHEREAS, the Album is encumbered by certain rights and obligations contained in the original purchase agreement between and among [(b)(6); (b)(7)(C)] and Martin Shkreli, dated September 3, 2015, (the "Original Purchase Agreement");

WHEREAS, [(b)(6); (b)(7)(C)] was formed and is managed by [(b)(6); (b)(7)(C)] for the sole purpose of purchasing the Assets;

WHEREAS, [(b)(6); (b)(7)(C)] is one of the sellers of the Album to Martin Shkreli under the Original Purchase Agreement and has exclusive knowledge of the copyright status of the Album, including all material contained therein;

WHEREAS, pursuant to the Original Purchase Agreement Martin Shkreli purchased the Album which includes associated items turned over to the United States by him, including those listed on Exhibit A attached hereto (the "Listed Items"), subject to various restrictions; and

WHEREAS, the USMS desires to sell and the Purchasers desire to purchase the Album and the Listed Items (collectively, the "Assets"), on the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which each of the Parties acknowledges, the Parties agree as follows:

1. **The Asset.** The USMS is offering for sale only those rights to the Assets forfeited by Martin Shkreli pursuant to the Forfeiture Orders. The Assets are sold "As-Is, Where Is" with no representations or warranties as to their condition, usability, or fitness for any purpose. The Assets are currently sealed with tamper-proof evidence tape and will be delivered in that state.

2. **Purchase Price.** The price is [(b)(4)] for the Assets, and Purchasers will also reimburse the USMS for its expenses in the amount of [(b)(4)] for a total payment of [(b)(4)] (the "Purchase Price").

3. **Closing.** Transfer of the Assets will take place within two business days of receipt of the Purchase Price and the satisfaction or waiver of all contingencies (the "Closing"). Seller will deliver to Purchasers the Assets at Closing. The Closing will take place at the USMS District

Office for the Eastern District of New York, 225 Cadman Plaza East, Room G-20, Brooklyn, New York 11201, or such other place as is mutually agreeable to the Parties. The sole Closing obligation of the United States is to deliver the Assets, a Bill of Sale in substantially the same form as Exhibit B, and an Assignment and Assumption of Rights in substantially the same form as Exhibit C. At Closing, Purchasers will sign the Assignment and Assumption of Rights. At Closing, Purchasers will be represented by their counsel, Peter Scoolidge.

4. <u>Representations and Warranties of Purchasers</u>. Purchasers represent and warrant that they each have the right, authority, and permission under the law and the Original Purchase Agreement to enter into this Agreement. Purchasers hereby affirmatively represent that none of the financing for the transaction contemplated hereby comes, directly or indirectly, from Martin Shkreli. The signatory for (b)(6); (b)(7)(c) warrants that he has the express authority of the entity to execute this Agreement on its behalf. Purchasers hereby represent and warrant that Peter Scoolidge has full authority to act on their behalf in the Closing.

5. <u>Representations and Warranties of Seller</u>. Seller makes no representations or warranties under this agreement. Further, and for the avoidance of any doubt, Seller does not undertake or assume any of the representations or warranties with respect to the Assets set forth in the Original Purchase Agreement. Any description of the condition of the Assets is provided solely to identify the assets to be transferred. Seller hereby disclaims all warranties including any implied warranties of merchantability or fitness for a particular purpose. The foregoing notwithstanding, Seller represents and warrants that it has received no notice of any liens against the Assets and that it is transferring to Purchasers that title provide to Seller by the Forfeiture Orders and that the Seller is authorized by 28 C.F.R. § 0.111(i) to transfer the Assets.

6. <u>Indemnification</u>. Purchasers hereby agree to indemnify the United States and all its agencies and contractors against all claims and losses associated with the creation, purchase, sale, or disposal of the Assets, including any and all Copyright Act claims; provided, however, that the United States shall assert any and all defense arising from sovereign immunity as a condition precedent to Purchasers' obligation to indemnify under this Section 6.

7. <u>Releases and Hold Harmless</u> Purchasers hereby release the United States and all its agencies and contractors and agree to hold them harmless against all claims and losses associated with the creation, purchase, sale, or disposal of the Assets including all Copyright Act claims.

8. <u>Further Restrictions</u>. The Assets are sold subject to the restrictions contained in the Original Purchase Agreement. The USMS will assign to Purchasers any of the "Buyer's" rights under the Original Purchase Agreement forfeited by Shkreli, and Purchasers shall assume all obligations of the "Buyer" thereunder, including those set forth in paragraph 9, below

9. <u>Waiver of Profits, Payment, and Indemnity</u>. (b)(4)

[(b)(4) redacted block]

Purchasers further agree to comply with all of Mr. Shkreli's obligations under the Original Purchase Agreement, including all obligations under paragraph 6 thereof. Purchasers hereby agree to indemnify the United States and all its agencies and contractors against all claims made by (b)(6); (b)(7)(C) or any

other party arising from obligations created in, by, or through the Original Purchase Agreement.

10. <u>Restriction on Sales</u>. Purchasers agree to comply with USMS Policy Directive 13.7. Accordingly, under no circumstances will they allow the Assets to revert to Martin Shkreli nor shall Purchasers allow Martin Shkreli to receive any benefit, direct or indirect, from the sale of the Assets, other than the benefit conferred by the Forfeiture Orders applying the proceeds of sale to his outstanding forfeiture money judgment.

11. <u>Seller's Conditions to Closing</u>. The obligation of the Seller to effect the transactions contemplated hereby is subject to the following preconditions: (a) The Forfeiture Orders must continue to be in full force and effect; and (b) Martin Shkreli shall confirm in writing that he agrees to the sale of the Assets for an amount equal to the outstanding balance of his forfeiture money judgment. To the best of Seller's knowledge, the foregoing conditions to the Seller's obligation to proceed with the sale have been satisfied and Seller has received no notice to the contrary.

12. <u>Buyer's Conditions to Closing</u>. The obligation of Purchasers to effect the transactions contemplated hereby is contingent upon their satisfaction at closing that the two compact discs that comprise the Album can play at least the first 10 seconds of each track. Purchasers are to provide their own equipment at Closing to conduct their inspection, further Purchasers assume all risks of damage to the Album during their testing.

13. <u>Termination</u>. This Agreement may be terminated only by the written consent of the Parties.

14. <u>Survival of Representations and Warranties</u>. Notwithstanding any investigation made by any party to this Agreement, all representations and warranties made by the Parties herein shall survive the execution of this Agreement, the delivery to the Purchasers of the Assets, and the payment therefor.

15. <u>Fees, Expenses, and Tax Liability</u>. Whether or not this Agreement and the transactions contemplated hereby are consummated, all costs and expenses (including legal and financial advisory fees and any other expenses) and all tax liability, if any, incurred in connection with, or in anticipation of, this Agreement and/or the transactions contemplated hereby must be paid by the Party incurring such costs, expenses, and/or tax liability.

16. <u>Governing Law</u>. The enforcement, interpretation, and construction of this Agreement, and all matters relating hereto, will be governed by federal law, and in the event that federal law is silent or inapplicable, and as federal law permits, the laws of the State of New York will apply, without giving effect to the conflict of laws principles thereof.

17. <u>Waiver</u>. The failure of any party at any time or times to require performance of any provision hereof will in no manner affect the right of such party at a later time to enforce the same or any other provision of this Agreement. No waiver of any condition or of the breach of any term contained in this Agreement in one or more instances may be deemed to be or construed as a further or continuing waiver of such condition or breach or a waiver of any other condition or of the breach of any other term of this Agreement.

18. <u>Severability</u>. Any term or provision of this Agreement that is invalid or unenforceable in any jurisdiction will, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or

provisions of this Agreement in any other jurisdiction. If any provision of this Agreement is so broad as to be unenforceable, the provision will be interpreted to be only so broad as is enforceable.

19. <u>Headings</u>. The headings contained in this Agreement are for reference purposes only and are not part of this Agreement.

20. <u>Counterparts and Digital Copies</u>. This Agreement may be executed in two or more counterparts, each of which will be deemed to be an original, but all of which together will constitute one and the same instrument. This Agreement may be signed and/or exchanged electronically and digital copies shall be treated as originals.

21. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties with respect to the transactions contemplated hereunder and supersedes all prior arrangements or understandings with respect thereto, written or oral. Further, this Agreement is not binding until signed by all Parties.

22. <u>No Third-Party Beneficiaries</u>. Except as otherwise set forth herein, no one will be deemed a third party or other beneficiary of this Agreement, nor will they have any right or other entitlement in connection with any provision of this Agreement nor may they seek any remedy, or right or entitlement in connection with this Agreement.

23. <u>Interpretation</u>. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

24. <u>Confidentiality.</u> Seller and its employees shall not, except as stated herein, disclose the identity of the Purchasers or the Purchase Price ("Confidential Information"), but may publicly disclose the fact that it has sold the Assets. The foregoing notwithstanding, Seller may disclose any Confidential Information it deems necessary to: Martin Shkreli and/or his counsel; other Divisions and Agencies of the Department of Justice; any courts of the United States; Congress; and/or as otherwise required by law. Seller may disclose to anyone such Confidential Information as it deems necessary to contradict any false information released publicly by Purchasers and/or their successors-in-interest. Seller may release Confidential Information as required by the Freedom of Information Act but will assert all applicable exemptions before doing so. Seller may also release any Confidential Information as required by law. Purchasers acknowledge that the Department of Justice may issue a press release which indicates that the government has sold the Assets and fully collected the amount owed

//
//
//
//
//
//
//

on Martin Shkreli's outstanding forfeiture money judgment, (b)(4)
(b)(4)

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date and year first written above:

**PURCHASERS**



By (b)(6); (b)(7)(C)
In his individual capacity

By: (b)(6); (b)(7)(C)
Its: Authorized Agent

**SELLER**

**UNITED STATES MARSHALS SERVICE**
for and on behalf of the United States of America



By: (b)(6); (b)(7)(C); (b)(7)(F)
Title:
    Asset Management
    Asset Forfeiture Division

*Once Upon a Time in Shaolin*  5 of 5
Asset Purchase Agreement

# EXHIBIT A
# ASSET LIST

The following description of the Assets to be sold was adapted from a description provided by Seller's storage contractor. Seller makes no representations regarding the condition of the Assets other than that the below items will be provided at closing.

Wu-Tang Clan's album *Once Upon a Time in Shaolin*:

- Audio recording on two (2) CDs.
- Outer box: Cedar wood box covered in black cow leather with light beige velvet lining.
- Inner box: Nickel-silver box and inner jewel case containing two CDs, over cedar wood with black cow leather lining.
- Leather-bound lyric book containing lithographs depicting original artwork and photographs of band members. Approximately 175 pages.
- Leather folder with Gold-leafed certificate of authenticity.
- Leather folder with Indenture and purchase agreement. Approximately 30 pages.

**EXHIBIT B**
**BILL OF SALE**

**U.S. Department of Justice**
United States Marshals Service



## United States Marshal's Bill of Sale

BE IT KNOWN that the United States of America, acting by and through the United States Marshals Service ("Seller"), by virtue of that certain Final Order of Forfeiture, dated September 10, 2018, and issued by the United States District Court for the Eastern District of New York, in the case of *United States of America v. Martin Shkreli*, Case No. 15-CR-637, has sold all of Martin Shkreli's former right, title, and interest, *inter alia*, in the Wu-Tang Clan album *Once Upon a Time in Shaolin* as described in the Final Order of Forfeiture.

NOW THEREFORE, and in consideration of the payment of the sum of (b)(4) the purchase price for the above-described property, I hereby sell, transfer, and convey, "AS IS," with no guarantees or warranties, express or implied, all right, title, and interest in the above-described property that the United States Marshals Service is authorized to covey by law to (b)(6); (b)(6); (b)(7)(C) the purchaser thereof.

WITNESS, the hand and official seal of the Seller hereby affixed on this ____ day of July, 2021.

UNITED STATES OF AMERICA



By: (b)(6); (b)(7)(C); (b)(7)(F)   [Digitally signed by (b)(6); (b)(7)(C); Date: 2021.07.26 13:54:37 -04'00']
Name: (b)(6); (b)(7)(C); (b)(7)(F)
Title: Asset Management
Asset Forfeiture Division
United States Marshals Service

*Once Upon a Time in Shaolin*
Bill of Sale

## EXHIBIT C

## ASSIGNMENT and ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT ("Agreement') dated and effective as of July ___, 2021, (the "Effective Date"), is made by the United States Marshals Service, acting for and on behalf of the United States of America, (the "Assignor") and (b)(6); (b)(7)(C) (collectively, "Assignees").

## RECITALS

WHEREAS, pursuant to the Asset Purchase Agreement between Assignor and Assignees, dated July 19, 2021 ("APA") Assignor wishes to assign to Assignees all rights forfeited by Martin Shkreli under that certain purchase agreement between (b)(6); (b)(7)(C) and Martin Shkreli dated September 3, 2015, (the "Original Purchase Agreement"); and

WHEREAS, Assignees are willing to assume the obligations of Martin Shkreli under the Original Purchase Agreement.

NOW, THEREFORE, in consideration of the premises and mutual promises, agreements, and covenants contained herein and in the APA, the Assignor and Assignees hereby agree as follows:

Assignment. In consideration for good and valuable consideration provided by Assignees to Assignor, Assignor hereby sells, assigns, and transfers to Assignees, and Assignees hereby purchase and accept from assignor, effective as of the Effective Date, all right, title, and interest which Assignee owns in the Original Purchase Agreement.

Assumption. In consideration for the assignment of the foregoing rights under the Original Purchase Agreement, Assignees hereby assume all obligations of Assignor arising under or out of the Original Purchase Agreement.

**ASSIGNEES**



By: (b)(6); (b)(7)(C)
In his individual capacity

By: (b)(6); (b)(7)(C)
Its:   Authorized Agent

**ASSIGNOR**

**United States Marshals Service**, for and on behalf of the United States of America



By: (b)(6); (b)(7)(C); (b)(7)(F)
Title (b)(6); (b)(7)(C); (b)(7)(F)

Asset Management
Asset Forfeiture Division

*Once Upon a Time in Shaolin*
Assignment

**U.S. Department of Justice**
United States Marshals Service



# United States Marshal's Bill of Sale

**BE IT KNOWN** that the United States of America, acting by and through the United States Marshals Service ("Seller"), by virtue of that certain Final Order of Forfeiture, dated September 10, 2018, and issued by the United States District Court for the Eastern District of New York, in the case of *United States of America v. Martin Shkreli,* Case No. 15-CR-637, has sold all of Martin Shkreli's former right, title, and interest, *inter alia,* in the Wu-Tang Clan album *Once Upon a Time in Shaolin* as described in the Final Order of Forfeiture.

**NOW THEREFORE,** and in consideration of the payment of the sum of (b)(4) the purchase price for the above-described property, I hereby sell, transfer, and convey, "AS IS," with no guarantees or warranties, express or implied, all right, title, and interest in the above-described property that the United States Marshals Service is authorized to covey by law to (b)(6); (b)(7)(C) , the purchaser thereof.

**WITNESS,** the hand and official seal of the Seller hereby affixed effective on this 27th day of July, 2021.

**UNITED STATES OF AMERICA**



By:
Name: (b)(6); (b)(7)(C); (b)(7)(F)
Title:

Asset Management
Asset Forfeiture Division
United States Marshals Service