# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

---

PleasrDAO, an exempted foundation company,

    *Plaintiff*,

v.

Martin Shkreli,

    *Defendant*.

Case No. 24-CV-4126 (PKC) (MMH)

---

**PLAINTIFF'S REPLY IN SUPPORT OF ITS APPLICATION FOR A PRELIMINARY INJUNCTION, ORDER SEIZING ASSETS, AND ORDER FOR DISGORGEMENT AND ACCOUNTING**

## TABLE OF CONTENTS

                                                                                **Page**

I. PRELIMINARY STATEMENT ................................................................................... 1
II. ARGUMENT ................................................................................................................ 2
    A. Shkreli Forfeited All Rights, Title, And Interest In the Album ................................... 2
    B. Plaintiff Has Sufficiently Demonstrated Irreparable Harm .......................................... 5
        1. The Album Is Unique And Shkreli's Conduct Causes PleasrDAO Irreparable Harm .................................................................................................................. 5
        2. Irreparable Harm is Presumed Where Defendant's Actions Threaten to Irreparably Impair the Value of a Trade Secret ....................................................... 9
III. CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Blom ASA v. Pictometry Int'l Corp.*,
   757 F. Supp. 2d 238 (W.D.N.Y. 2010) ................................................................................ 6

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
   No. 16-CV-7014 (VSB), 2018 U.S. Dist. LEXIS 168186 (S.D.N.Y. Sept. 28, 2018) ............... 1

*Consol. Edison, Inc. v. Ne. Utils.*,
   332 F. Supp. 2d 639 (S.D.N.Y. 2004) ................................................................................ 5

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009) ............................................................................................... 9

*Hanock v. GM LLC (In re GM LLC Ignition Switch Litig.)*,
   No. 14-MD-2543 (JMF), 2021 U.S. Dist. LEXIS 72096 (S.D.N.Y. Apr. 14, 2021) ................ 1

*Hirschfeld v. Margo Feiden Galleries, Ltd.*,
   2000 N.Y. Misc. LEXIS 663 (N.Y. Sup. Ct. July 26, 2000) ................................................. 6

*Hudson Furniture, Inc. v. Mizrahi*,
   2020 U.S. Dist. LEXIS 159288 (S.D.N.Y. Sept. 1, 2020) .................................................... 6

*Kinderhill Select Bloodstock v. United States*,
   835 F. Supp. 699 (N.D.N.Y. 1993) ...................................................................................... 6

*Levine v. Lawrence*,
   No. 03-CV-1694 (DRH) (ETB), 2005 U.S. Dist. LEXIS 11663 (E.D.N.Y. June 15, 2005) ...... 1

*Liberty Power Corp., LLC v. Katz*,
   No. 10-CV-1938 (NGG) (CLP), 2011 U.S. Dist. LEXIS 7470 (E.D.N.Y. Jan. 26, 2011) ......... 9

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*,
   312 F.3d 94 (2d Cir. 2002) ................................................................................................ 8

*Pacheco v. Serendensky*,
   393 F.3d 348 (2d Cir. 2004) .............................................................................................. 3

*Paisley Park Enterprises v. George Ian Boxill, Rogue Music Alliance, LLC*,
   253 F. Supp. 3d 1037 (D. Minn. 2017) ............................................................................... 8

*Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*,
   60 A.D.3d 61 (1st Dep't. 2008) .......................................................................................... 5

*Robins v. Zwirner*,
    713 F. Supp. 2d 367 (S.D.N.Y. 2010) .................................................................................. 6

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) .................................................................................................. 8

*Starlight Sugar v. Soto*,
    114 F.3d 330 (1st Cir. 1997) ............................................................................................... 6

*State v. Woodbridge*,
    153 Ohio App. 3d 121 (2003) .............................................................................................. 2

*Tom Doherty Assocs. v. Saban Entm't, Inc.*,
    60 F.3d 27 (2d Cir. 1995) .................................................................................................... 6

*United States v. Contorinis*,
    692 F.3d 136 (2d Cir. 2012) ........................................................................................... 2, 3

*Winkler v. Kingston Hous. Auth.*,
    686 N.Y.S.2d 513 (3rd Dep't. 1999) .................................................................................... 5

*WPIX, Inc. v. ivi, Inc.*,
    691 F.3d 275 (2d Cir. 2012) ................................................................................................ 6

**Statutes**

18 U.S.C. § 1963(c) ..................................................................................................................... 3

18 U.S.C. § 981(f) ........................................................................................................................ 3

21 U.S.C. § 853(b)(2) ................................................................................................................... 3

21 U.S.C. § 881(h) ........................................................................................................................ 3

**Other Authorities**

Black's Law Dictionary (11th Ed. 2019) ..................................................................................... 3

# I. PRELIMINARY STATEMENT

Martin Shkreli's opposition continues his pattern of disingenuous conduct by now frivolously arguing, *inter alia*, that he did not need to forfeit *all* his interests in the Album, and the Album is not unique or confidential.[1] These arguments fail as a matter of fact and law. They badly contort the nature of the criminal penalties to which he was subject as part of his securities fraud conviction, and even contradict Shkreli's own prior statements.

Shkreli's opposition only takes issue with the irreparable harm element of the preliminary injunction standard, and PleasrDAO has robustly demonstrated such harm.[2] As demonstrated in the moving papers, the Album is a singular, unique work of art that was not to be broadcast, copied or exploited, except by its owner, under very narrow circumstances. The value of the Album depends almost entirely on its uniqueness, and the secrecy that surrounds it. Shkreli knows this—he purchased the Album in 2015 subject to the same 88-year restrictions that he now flouts. Shkreli is also acutely aware that PleasrDAO will suffer irreparable harm from Shkreli's retention and dissemination of copies of the Album. He is presenting a new narrative and attempting to circumvent the Forfeiture Order.

For these reasons, the Court should issue a preliminary injunction and accompanying relief.

---

[1] Unless otherwise noted, capitalized terms used herein shall have the same meaning as those given in the moving papers. Plaintiff's memorandum of law in support of this application and Defendant's memorandum of law in opposition of the same are referred to as "Motion" or "Mot." and "Opposition" or "Opp.," respectively.

[2] Shkreli does not contest PleasrDAO's showing that: it is likely to succeed on the merits; the balance of hardships tips in PleasrDAO's favor; the public interest would be served by the issuance of a preliminary injunction; or there should be no bond requirement. Thus, he has waived opposition to the bona fide nature of these elements. *See, e.g.*, *Cole v. Blackwell Fuller Music Publ'g, LLC*, No. 16-CV-7014 (VSB), 2018 U.S. Dist. LEXIS 168186, at *20 (S.D.N.Y. Sept. 28, 2018) ("Numerous courts have held that a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument."); *Levine v. Lawrence*, No. 03-CV-1694 (DRH) (ETB), 2005 U.S. Dist. LEXIS 11663, at *14 (E.D.N.Y. June 15, 2005) ("the failure to adequately brief an argument constitutes waiver of that argument."); *Hanock v. GM LLC (In re GM LLC Ignition Switch Litig.)*, No. 14-MD-2543 (JMF), 2021 U.S. Dist. LEXIS 72096, at *149-50 (S.D.N.Y. Apr. 14, 2021) ("argument is forfeited" where plaintiff "ma[d]e that suggestion only in passing….").

## II. ARGUMENT

The Album is an original piece of art, and only one original version exists. PleasrDAO's ability to commercially exploit the Album—for which it paid $4 Million—depends on maintaining that uniqueness and the secrecy that surrounds it. *See* Declaration of Matthew Matkov [ECF 4-1] ("Matkov Decl.") ¶ 29. Shkreli's retention of copies of the Album, and his threatened wider distribution to the public, imperils the very essence of what makes the Album unique and special, and the resulting losses would be difficult to replace, measure or quantify at trial, making damages inadequate to compensate PleasrDAO's harm. Shkreli's meandering arguments as to why PleasrDAO has failed to show irreparable harm are addressed below.

### A. Shkreli Forfeited All Rights, Title, And Interest In the Album

Shkreli's arguments that PleasrDAO will not suffer irreparable harm in the absence of a preliminary injunction are premised on the false notion that "the Forfeiture Order does not require that all copies of the work be forfeited." Opp. at 10, 12. Shkreli's self-serving rewriting of the Forfeiture Order contravenes the plain meaning of "forfeiture," and the terms and purpose of the Forfeiture Order. Yet, it is consistent with Shkreli's propensity to misconstrue the rules to benefit himself.

The word "forfeiture" means the "*complete* loss" of any "right, title and interest" in the forfeited property. *State v. Woodbridge*, 153 Ohio App. 3d 121, 130 (2003) (emphasis added); *see also United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012) ("'[F]orfeiture' is a word generally associated with a person's losing an entitlement as a penalty for certain conduct."); Black's Law Dictionary (11th Ed. 2019) (defining "forfeiture" to mean a "punishment annexed by law to some illegal act or negligence in the owner of lands, tenements, or hereditaments, whereby he loses *all* his interest therein[.]") (emphasis added).

Shkreli was ordered to forfeit his "interest" in the Album as punishment for his criminal

conviction for Class C Securities Fraud and Class D Conspiracy to commit Securities Fraud. Matkov Decl. Ex. D [ECF 4-5] at 10-11. There are no carve outs or exceptions; Shkreli was not permitted to continue to possess any aspects or copies of the Album. This is consistent with the USMS's Bill of Sale, which states that it "has sold all of Martin Shkreli's former right, title, and interest, *inter alia*, in the [Album]." Matkov Decl. Ex. N [ECF 4-15] at 68, 70. It is also consistent with the USMS Asset Purchase Agreement, which recites that Shkreli "forfeited all of his right, title and interest in" the Album, and that the USMS was conveying "those rights to the Assets forfeited by Martin Shkreli pursuant to the Forfeiture Orders." *Id.* at 62.

Other federal forfeiture statutes further confirm that the Forfeiture Order must be interpreted to encompass all aspects of the Album. *See* 21 U.S.C. § 853(b)(2) (defining "property" to include "tangible and intangible personal property, including rights, privileges, interests, claims, and securities"); 18 U.S.C. § 981(f) ("All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section."); 21 U.S.C. § 881(h) (same); 18 U.S.C. § 1963(c) (same).

Shkreli's arguments are at odds with the uses and purposes of forfeiture statutes. "The purposes of the forfeiture penalty are to punish, deter and disempower criminals. . . ." *Pacheco v. Serendensky*, 393 F.3d 348, 355 (2d Cir. 2004). To that end, "[c]riminal forfeiture focuses on the disgorgement by a defendant of his 'ill-gotten gains.'" *United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012). Shkreli's Forfeiture Order was designed to effectuate the forfeiture of "any and all property constituting or derived from proceeds obtained directly or indirectly as a result of the commission of" Shkreli's charged offenses. Matkov Decl. Ex. D at 9. Shkreli fraudulently induced investors to invest millions of dollars in his company, illegally manipulated the price and trading activity for his company's stock and was convicted of securities fraud and conspiracy to

commit securities fraud as a result. The criminal penalty for Shkreli's illicit conduct included forfeiting all his "interest" in, and "all proceeds traceable to," the Album. Accepting Shkreli's theory would allow him to modify his criminal punishment to continue to benefit *both* from selling copies of the Album online, *and* the money that was used as a "Substitute Asset," pursuant to 21 U.S.C. § 853(p), to satisfy Shkreli's Forfeiture Money Judgment.

Shkreli's reliance on the term "Permitted Use" under the Original Purchase Agreement is also unavailing. Nothing in the Original Purchase Agreement changes the fact that the Forfeiture Order required Shkreli to forfeit all of his rights, title, and interests in the Album. Any purported "Permitted Use" was provided by the *sellers* in the Original Purchase Agreement, not the USMS or PleasrDAO, and were only applicable *before* Shkreli was ordered to forfeit all his interests. Similarly, any representations by the USMS in the Asset Purchase agreement concerning the "condition" of the Album do not alter or affect Shkreli's obligation to relinquish any interest he had in the Album.

The Original Purchase Agreement also does not say what Shkreli claims it does. Under Section 4(b)(1), Shkreli was only permitted to make copies of the Album "for private use" and for the purpose of playing the Album at a "private or public exhibition" at limited locations such as his home, museums, and art galleries, or for promoting the same. The Original Purchase Agreement expressly excluded "venues for large musical concerts" from the definition of "Permitted Use." Nowhere in the agreement does it provide that Shkreli can disseminate copies of the Album to others. Shkreli's streaming of the Album on his various platforms and his claimed dissemination of the Album to third parties is not permitted under the Original Purchase Agreement.

Finally, Shkreli's assertion that his conduct falls among the purported "Permitted Uses" is

irreconcilable with his public statements. During a November 2016 stream on livestream platforms Periscope and Hitbox, Shkreli played the introduction of the Album before cutting the stream short, stating "***I actually have a contract with the Wu-Tang Clan where I'm not allowed to do this***. Obviously I own the music. And I bought it. And I paid a lot of money for it. And in many ways the contract shouldn't matter that much, but . . . ***I'm also a man of my word. I got to keep my word to them [Wu-Tang Clan] too***." Declaration of Robert Carnes in Support Of PleasrDAO's Application for a Preliminary Injunction, Order Seizing Assets, and Order for Disgorgement and Accounting ("Carnes Decl.") ¶ 4. In an interview on or about May 13, 2024, Shkreli admitted that he was prohibited from releasing the Album publicly: "A lot of people blamed me for, quote unquote, not releasing the album when, you know, ***I wasn't technically allowed to release the album***." *Id.* ¶ 5. Shkreli cannot now profess a different understanding of the terms of Original Purchase Agreement because a contrary interpretation serves his ends in this litigation. *See Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 60 A.D.3d 61, 67-68 (1st Dep't. 2008) (rejecting party's contract interpretation because it was an "after-the-fact attempt to rewrite its plain wording"); *Winkler v. Kingston Hous. Auth.*, 686 N.Y.S.2d 513, 517 (3rd Dep't. 1999); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 653 (S.D.N.Y. 2004).

In sum, Shkreli forfeited all rights, title, and interest in the Album, including any right to engage in what Shkreli claims is a "Permitted Use."

### B. Plaintiff Has Sufficiently Demonstrated Irreparable Harm

#### 1. The Album Is Unique And Shkreli's Conduct Causes PleasrDAO Irreparable Harm

The Album constitutes "the only existing copy of a musical work by the Wu-Tang Clan entitled 'Once Upon a Time in Shaolin[.]'" *See* Matkov Decl. Ex. B [ECF 4-3] at 6. Shkreli's unlawful retention and threatened dissemination of his retained Album copies deprives PleasrDAO

of the unique asset that it purchased and causes it irreparable harm because the loss would be difficult to replace or measure. *See WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) ("Harm may be irreparable where the loss is difficult to replace or measure, or where plaintiffs should not be expected to suffer the loss."); *accord Hudson Furniture, Inc. v. Mizrahi*, 2020 U.S. Dist. LEXIS 159288, at *18 (S.D.N.Y. Sept. 1, 2020). Courts recognize that no monetary award can adequately compensate for damage to a unique piece of art. *See Robins v. Zwirner*, 713 F. Supp. 2d 367, 374 (S.D.N.Y. 2010) ("Irreparable harm is injury for which a monetary award cannot be *adequate* compensation . . . and is often found in the loss of a unique product or service.") (internal quotations omitted) (emphasis added); *Kinderhill Select Bloodstock v. United States*, 835 F. Supp. 699, 700 (N.D.N.Y. 1993) (summarizing cases and finding that plaintiffs have shown irreparable harm "in light of precedent from New York State courts which have previously found such items as works of art, historical artifacts, perfume ingredients, and certain cars to be unique."); *Hirschfeld v. Margo Feiden Galleries, Ltd.*, 2000 N.Y. Misc. LEXIS 663, *7 (N.Y. Sup. Ct. July 26, 2000) ("Since money damages would not themselves be an *adequate* remedy for the loss of unique artwork, [plaintiff] has established irreparable harm.") (emphasis added).

Irreparable harm is also found where there is a novel, one-of-a-kind business opportunity, the "threatened imminent loss" of which would be "very difficult to quantify at trial." *See Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) (loss of "wholly unique opportunity . . . will be largely indeterminate if the opportunity is denied"); *Starlight Sugar v. Soto*, 114 F.3d 330, 332 (1st Cir. 1997) ("[T]he loss of a unique or fleeting business opportunity can constitute irreparable injury"); *cf. Blom ASA v. Pictometry Int'l Corp.*, 757 F. Supp. 2d 238, 244-45 (W.D.N.Y. 2010) ("Major disruption of a business can be as harmful as its termination and thereby constitute irreparable injury. Upon such a showing, plaintiffs may be entitled to injunctive

relief."). A preliminary injunction must be granted because both the object and the opportunity are unique.

Shkreli's argument that PleasrDAO's harm can be addressed with money damages because the "Forfeiture Order assigns a monetary value to *Once Upon a Time in Shaolin*" is of no moment. Opp. at 9. While the Forfeiture Order deemed the Album a "Substitute Asset" to satisfy part of the Forfeiture Money Judgment, it did not assign a dollar value to the Album. The Forfeiture Order simply required Shkreli to forfeit all his interests in the Album so that any proceeds derivative of a sale from the USMS would help fulfill the Forfeiture Money Judgment. And more to the point, the future opportunities to monetize the Album are not readily ascertainable.

Shkreli also argues that the Album "is not secret" based on vague and unsupported assertions that Shkreli "shared" the Album and "has been disseminating the contents of the work via the internet for years before" PleasrDAO came to own the Album, and PleasrDAO "publicly performed" the Album. Opp. at 11-12; 5. Shkreli ironically attempts to benefit from his own misdeeds, as all the streaming in the record occurred *after* he had been ordered to forfeit the Album. *See* Opp. at 12 (endorsing complaint allegations about present day streaming activity); Matkov Decl. ¶ 20, Ex. I [ECF 4-10]. And while Shkreli has stated on several occasions that he has provided copies of the Album to others, *see* Mot. at 7, he has not offered any evidence in the record about how or when a widespread dissemination of the Album occurred. Shkreli's characterization of the dissemination being a "limited release" belies any contention that the Album has been subject to public release. Opp. at 10. PleasrDAO also has not "publicly performed" the Album, which is evident from the sources cited in Shkreli's attorney affidavit. *See* Declaration of Erik Dykema in Support of Defendant's Opposition to Plaintiff's Application for Temporary Restraining Order ("Dykema Decl.") [ECF 22-1] ¶ 15 (citing a PleasrDAO social media video in

which select individuals can be seen listening to the Album with headphones connected to a device held by the video crew); *Id.* ¶ 16; Dykema Decl. Ex. C [ECF 22-4] at 5 (stating that PleasrDAO "held a ***private*** listening event" the prior weekend). The evidence simply shows that Shkreli has *threatened* to widely disseminate the Album. *See* Matkov Decl. ¶¶ 18-24.

Shkreli's reliance on *Paisley Park Enterprises v. George Ian Boxill, Rogue Music Alliance, LLC*, 253 F. Supp. 3d 1037 (D. Minn. 2017) does not help his cause. In *Paisley Park Enterprises*, entities associated with the estate of the artist Prince sought a preliminary injunction against two record labels to enjoin them from promoting and distributing previously unreleased Prince recordings. 253 F. Supp. 3d at 1049. The district court correctly found that the publication of previously unreleased Prince recordings "cannot be adequately compensated in damages" because plaintiffs would "be permanently deprived of the right to decide whether, when and in what manner the release of the disputed songs will benefit Prince's public image and reputation." *Id*. The court took exception with only one of the disputed recordings because it had already "been available for sale online for weeks" to the public at large, and plaintiff failed to show how the *continued* sale of that one recording could not be remedied by money damages. *Id.* at 1050. Here, neither the Album as a whole, nor any of its tracks, have been publicly made available for sale. *Paisley Park Enterprises* supports PleasrDAO's position. Shkreli's reliance on other cases merely recites the basic proposition that irreparable harm is not present "to the extent that they are not remediable after a final adjudication[,]"[3] which is not the case here. Opp. at 8-9.

PleasrDAO, like the plaintiffs in *Paisley Park*, should not be deprived of its right to decide whether, when and in what manner it chooses to release the Album or exploit it commercially.

---

[3] The Opposition erroneously attributes this quote to *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96–97 (2d Cir. 2002), which found that the plaintiff *satisfied* the irreparable harm showing. The quote is properly attributable to *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010), which merely remanded the issue of irreparable harm.

Shkreli fails to rebut PleasrDAO's showing that it would be irreparably harmed if Shkreli were permitted to retain his unauthorized copies of the Album and has even conceded publicly that his actions could make the Album "worthless." Carnes Decl. ¶ 6. Shkreli must be stopped from releasing or disseminating copies of the Album, which would destroy its uniqueness.

### 2. Irreparable Harm is Presumed Where Defendant's Actions Threaten to Irreparably Impair the Value of a Trade Secret

Irreparable harm is presumed "where there is a danger that, unless enjoined, a misappropriator of trade secrets will . . . irreparably impair the value of those secrets." Mot. at 19 (citing *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). PleasrDAO is entitled to that presumption because the Album falls within the definition of a "trade secret" under 18 U.S.C. § 1839(3), Shkreli has threatened to impair the value of the Album through dissemination—and Shkreli does not attempt to rebut that. PleasrDAO's moving papers demonstrate that the Album meets this definition because the Album's data and files consist of confidential business, scientific, technical, economic, or engineering information, PleasrDAO has taken abundant measures to keep the Album's data and files secret, and the data and files derive independent economic value from their secrecy. *See* Mot. at 12-13.

Shkreli's reliance on *Liberty Power Corp., LLC v. Katz*, No. 10-CV-1938 (NGG) (CLP), 2011 U.S. Dist. LEXIS 7470, at *21 (E.D.N.Y. Jan. 26, 2011) is misplaced because there the court identified *how* the plaintiff could calculate its threatened losses. *Id.* at *21-22 (plaintiffs had already "calculated the potential renewal value of the contracts between it and the customers about whom Defendants obtained Plaintiff's proprietary information" and could calculate the numbers of customers it lost at trial). The damages in *Liberty Power Corp.* are thus fundamentally different as PleasrDAO is not alleging harm stemming from lost, existing contracts. *Id.*

Finally, and as discussed above, Shkreli's claim that the Album is no longer "secret" is unsupported by evidence. Shkreli also confusingly argues that the Album is somehow not a trade secret because the USMS Asset Purchase Agreement "did not include any terms relating to previously made copies of the work" and the Forfeiture Order "does not require that all copies of the work be forfeited." Opp. at 12. Whether the USMS Asset Purchase Agreement and Forfeiture Order included these terms is irrelevant. What is relevant is whether the Album falls within the definition of a "trade secret" under 18 U.S.C. § 1839(3), which it does, and whether Shkreli has threatened to disclose the trade secret, which he has.

Accordingly, PleasrDAO has established that a trade secret exists, and the Opposition has failed to rebut the corresponding presumption of irreparable harm.

### III. CONCLUSION

For these reasons, the Court should order (1) a preliminary injunction to prevent Shkreli from possessing, using, disseminating, or selling any interests in the Album, including its data and files, or in any way causing further damage to PleasrDAO respecting the Album; (2) Shkreli to provide an inventory and account of (i) the copies of the Album's data and files that Shkreli retained, (ii) the individuals to whom he distributed those data and files, and (iii) the profits traceable to his retention and distribution of the data and files, and/or an order authorizing PleasrDAO to examine Shkreli for the purpose of obtaining information regarding the location of his retained and distributed copies of the Album and its data and files, under FRCP 64 and CPLR § 7112; and (3) seizure of all of Shkreli's remaining copies of the Album's data and files and/or the return of those copies pursuant to 18 U.S.C. § 1836(b)(2), FRCP 64, and CPLR § 7102(d)(1).

Dated: August 19, 2024                    Respectfully Submitted,

                                          /s/ Steven Cooper
                                          Steven Cooper
                                          Charles P. Hyun
                                          Robert Carnes (*pro hac vice*)
                                          REED SMITH LLP
                                          599 Lexington Ave., 22nd Floor
                                          New York, New York 10022
                                          Tel. 212-521-5400
                                          Fax. 212-521-5250
                                          *Attorneys for PleasrDAO*