**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PleasrDAO, | Civ. No.: 1:24-cv-04126-PKC |
| Plaintiff, | |
| v. | **ORAL ARGUMENT REQUESTED** |
| Martin Shkreli, | |
| Defendant | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................ 1

II.  BACKGROUND ............................................................................................ 1

III. STANDARD OF REVIEW ............................................................................ 4

IV.  PLAINTIFF'S CLAIMS MUST BE DISMISSED ...................................... 5

   A.  PleasrDAO Lacks Standing To Enforce The Forfeiture Order ................... 5

   B.  The Trade Secret Counts Must Be Dismissed Because Plaintiff Fails To Plausibly
       Plead A "Secret" .......................................................................................... 8

   C.  Plaintiff's Remaining State Law Claims are Preempted by the Copyright Act ....... 12

   D.  Plaintiff's Remaining State Law Claims Fail on Their Merits ..................... 14

       1.  Tortious Interference with Prospective Economic Advantage ............... 14
       2.  Unjust Enrichment ............................................................................. 16
       3.  Recovery of Chattel/Replevin ............................................................ 18

   E.  Plaintiff's Claim for Unjust Enrichment is Duplicative .............................. 19

   F.  Joinder of Necessary Parties ..................................................................... 20

V.   CONCLUSION ............................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Pecile,*
2012 NY Misc. LEXIS 2606 (Sup Ct. N.Y. Cnty. 2012) ........................................................ 19

*Adina's Jewels, Inc. v. Shashi, Inc.,*
442 F. Supp. 3d 766 (S.D.N.Y. 2020) ................................................................................ 13

*Allen v. Wright,*
468 U.S. 737 (1984) ............................................................................................................ 6

*Am. Movie Classics Co. v. Turner Entm't Co.,*
922 F. Supp. 926 (S.D.N.Y.1996) ..................................................................................... 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................................ 5

*Ashland Inc. v. Morgan Stanley & Co.,*
652 F.3d 333 (2d Cir. 2011) ............................................................................................. 18

*Associated Dry Goods Corp. v. Towers Fin. Corp.,*
920 F.2d 1121 (2d Cir. 1990) ........................................................................................... 20

*Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.,*
361 F. Supp. 2d 283 (S.D.N.Y. 2005) ......................................................................... 10, 11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................................ 5

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield Of New Jersey, Inc.,*
448 F.3d 573 (2d Cir. 2006) ............................................................................................. 17

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,*
373 F.3d 296 (2d Cir. 2004) ............................................................................................. 12

*Broker Genius, Inc. v. Zalta,*
280 F. Supp. 3d 495 (S.D.N.Y. 2017) ........................................................................... 9, 11

*Caprio v. Wilson,*
513 F.2d 837 (9th Cir. 1975) ............................................................................................ 21

*Carson Optical Inc. v. Ebay Inc.,*
202 F. Supp. 3d 247 (E.D.N.Y. 2016) ................................................................................ 5

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
    11 F. Supp. 3d 317 (E.D.N.Y. 2014) ..................................................... 15

*Carvel Corp. v. Noonan*,
    350 F.3d 6 (2d Cir. 2003) ..................................................................... 15

*Catskill Dev., L.L.C. v. Park Place Ent. Corp.*,
    547 F.3d 115 (2d Cir. 2008) ................................................................. 14

*Chase Grp. All. LLC v. City Of New York Dep't Of Fin.*,
    620 F.3d 146 (2d Cir. 2010) ................................................................... 5

*Corsello v. Verizon N.Y., Inc.*,
    967 N.E.2d 1177 (2012) ....................................................................... 20

*DB Riley, Inc. v. Ab Eng'g Corp.*,
    977 F. Supp. 84 (D. Mass. 1997) .......................................................... 11

*Defiance Button Mach. Co. v. C & C Metal Prod. Corp.*,
    759 F.2d 1053 (2d Cir. 1985) ............................................................... 10

*ECT Int'l, Inc. v. Zwerlein*,
    597 N.W.2d 479 (D. Wis. 1999) ........................................................... 11

*E.E.O.C. v. Int'l. Assn. Of Bridge, Structural & Ornamental Ironworkers, Local 580*,
    139 F. Supp. 2d 512 (S.D.N.Y. 2001) ..................................................... 6

*Eminah Props. LLC v. Energizer Holdings, Inc.*,
    531 F. Supp. 3d 593 (E.D.N.Y. 2021) ................................................... 16

*ExpertConnect, LLC v . Fowler*,
    2019 WL 3004161 (S.D.N.Y. July 10, 2019) ........................................... 9

*Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*,
    626 F.2d 193 (1st Cir. 1980) ................................................................ 10

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
    957 F. Supp. 477 (S.D.N.Y. 1997) ........................................................ 15

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) ............................................................................... 6

*G.K.A. Beverage Corp. v. Honickman*,
    55 F.3d 762 (2d Cir. 1995) ................................................................... 16

*Georgia Malone & Co., Inc. v. Rieder*,
   973 N.E.2d 743 (N.Y. 2012) ......................................................... 17

*Gladstone Realtors v. Bellwood*,
   441 U.S. 91 (1979) ...................................................................... 7

*Hanyzkiewicz v. Allegiance Retail Servs., LLC*,
   2023 WL 2758355 (S.D.N.Y. Apr. 3, 2023) ................................... 6

*Harper & Row, Publishers, Inc. v. Nation Enter.*,
   723 F.2d 195 (2d Cir.1983) ........................................................ 13

*Hayden v. Paterson*,
   594 F.3d 150 (2d Cir. 2010) ........................................................ 5

*Iacovacci v. Brevet Holdings, LLC*,
   437 F. Supp. 3d 367 (S.D.N.Y. 2020) ........................................... 9

*Kewanee Oil Co. v. Bicron Corp.*,
   416 U.S. 470 (1974) .................................................................... 10

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) ........................................................ 15

*Lehman v. Dow Jones & Co.*,
   783 F.2d 285 (2d Cir. 1986) ......................................................... 9

*Lennon v. Seaman*,
   63 F. Supp. 2d 428 (S.D.N.Y. 1999) ............................................ 19

*Mandarin Trading Ltd. v. Wildenstein*,
   65 A.D.3d 448 (1st Dept. 2009) ............................................ 17, 18

*Mason v. Amtrust Fin. Servs., Inc.*,
   2020 WL 1330688 (S.D.N.Y. Mar. 23, 2020) ................................ 10

*Miller v. Holtzbrinck Publishers LLC*,
   377 F. App'x 72 (2d Cir. 2010) .................................................... 13

*Moore v. Tangipahoa Parish School Bd.*,
   625 F.2d 33 (5th Cir. 1980) .......................................................... 6

*N. Atl. Instruments, Inc. v. Haber*,
   188 F.3d 38 (2d Cir. 1999) ........................................................... 9

*Nat'l Air Cargo Grp., Inc. v. Maersk Line Ltd.*,
2019 WL 4735426 (S.D.N.Y. Sept. 27, 2019) ...................................................... 15

*Nelson v. Millercoors, Llc*,
246 F. Supp. 3d 666 (E.D.N.Y. 2017) ................................................................ 20

*North Salem Psychiatric Servs., P.C. v. Medco Health Solutions, Inc.*,
50 A.D.3d 986 (2d Dept. 2008) .......................................................................... 18

*Olympic Refining Co. v. Carter*,
332 F.2d 260 (9th Cir. 1964) .............................................................................. 8

*Pacheco v. Serendensky*,
393 F.3d 348 (2d Cir. 2004) ................................................................................ 6

*Prescription Plan Service Corp. v. Franco*,
552 F.2d 493 (2d Cir. 1977) .............................................................................. 21

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
390 U.S. 102 (1968) .................................................................................... 20, 21

*Ranieri v. Adirondack Dev. Grp., LLC*,
164 F. Supp. 3d 305 (N.D.N.Y. 2016) .............................................................. 13

*Rose v. Simms*,
1995 WL 702307 (S.D.N.Y. Nov. 29, 1995) ...................................................... 20

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984) ........................................................................................... 10

*S.E.C. v. Prudential*,
136 F.3d 153 (D.C. Cir. 1998) ............................................................................. 8

*School Of Visual Arts v. Kuprewicz*,
3 Misc. 3d 278 (Sup Ct. N.Y. Cnty. 2003) ....................................................... 19

*Shak v. Adelphi Univ.*,
549 F. Supp. 3d 267 (E.D.N.Y. 2021) ............................................................... 20

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
2008 WL 166950 (N.D. Cal. Jan. 17, 2008) ...................................................... 11

*Sperry v. Crompton Corp.*,
863 N.E.2d 1012 (N.Y. 2007) ............................................................................ 17

*Structured Cap. Sol., LLC v. Commerzbank Ag,*
177 F. Supp. 3d 816 (S.D.N.Y. 2016) ................................................ 10

*Sugar v. Greenburgh Eleven Union Free Sch. Dist.,*
2018 WL 6830865 (S.D.N.Y. Dec. 28, 2018) ........................................ 5

*Tri-Star Lighting Corp. v. Goldstein,*
58 N.Y.S.3d 448 (2017) ................................................................ 15

*United States v. Am. Soc. Of Composers, Authors & Publishers,*
341 F.2d 1003 (2d Cir. 1965) ....................................................... 7, 8

*United States v. Paramount Pictures,*
75 F. Supp. 1002 (S.D.N.Y. 1948) .................................................... 7

*Vassel v. Vassel,*
40 A.D.2d 713 (2d Dept. 1972) ...................................................... 18

*Vaughn v. Phoenix House N.Y. Inc.,*
957 F.3d 141 (2d. Cir. 2020) ......................................................... 5

*Vill. Of Arlington Heights v. Metro. Housing Dev. Corp.,*
429 U.S. 252 (1977) ................................................................... 7

*Weber v. King,*
110 F. Supp. 2d 124 (E.D.N.Y. 2000) ............................................ 21, 22

*Zabit v. Brandometry, Llc,*
540 F. Supp. 3d 412 (S.D.N.Y. 2021) ................................................. 9

**Statutes**

17 U.S.C. § 101 ...................................................................... 12

17 U.S.C. § 106 ...................................................................... 12

17 U.S.C. § 301(A) ................................................................... 12

17 U.S.C. § 503 ...................................................................... 14

17 U.S.C. § 504(B) ................................................................... 14

18 U.S.C. § 1836(B)(1) ................................................................ 9

18 U.S.C. § 1839(3) ................................................................... 9

**Rules**

Fᴇᴅ. R. Cɪᴠ. P. 19 ................................................................................................................ 20, 21

Fᴇᴅ. R. Cɪᴠ. P. 71 ................................................................................................................... 1, 6

# I.  INTRODUCTION

Plaintiff PleasrDAO's Complaint must be dismissed because (i) Plaintiff's claims for Tortious Interference with Prospective Economic Advantage, Unjust Enrichment, and Recovery of Chattel/Replevin (the "Quasi-Copyright Claims") are preempted by the Copyright Act, but no copyright claims are pled; (ii) Plaintiff's claims for violation of the Defend Trade Secrets Act and Misappropriation of Trade Secrets under New York Law are trade secret claims but Plaintiff fails to plausibly articulate a "secret"; and (iii) as to Plaintiff's cause of action seeking enforcement of the Forfeiture Order under Fed. R. Civ. P. 71, Plaintiff lacks standing to enforce the Forfeiture Order because it is merely a third-hand purchaser of the goods in question.

Finally, if this Court does not dismiss the Complaint in its entirety, it should order joinder of Robert Diggs p/k/a The RZA and Tarik Azzougarh p/k/a Cilvaringz to this action because they maintain a property interest in the copyrights to the Musical Work at issue in this matter. If this case moves forward, the Court cannot dispose of this action without determining the property interests of these additional parties. And so, those parties are indispensable.

# II.  BACKGROUND

In 2015, Defendant Martin Shkreli ("Shkreli") purchased a then-secret album recorded by the Wu Tang Clan titled "Once Upon a Time in Shaolin…" (the "Musical Work"). Shkreli bought what was at that time the only physical copy of the Musical Work contained in an elaborate engraved silver box (the "Engraved Box"). The Original Purchase Agreement ("OPA") defined the Engraved Box as following:

1) Two (2) compact discs containing the only existing copy of a musical work by the Wu-Tang Clan entitled 'Once Upon a Time in Shaolin….';
2) One (1) hand carved nickel-silver cased box (the 'Box') designed by the British-Moroccan artist Yahya Rouach;
3) One (1) 174-page volume containing lyrics, credits, and anecdotes on the production and recordings of each song on 'Once Upon a Time in Shaolin…';

4) One (1) Certificate of Authenticity in a leather bound portfolio (on 600 gram hard paper with gold foil lettering and an official Wu-Tang Candlewax seal), the text of which is attached [to the Original Purchase Agreement] as Exhibit A;

5) One (1) customized pair of PMC's MB2 XBD SE speakers, including installation in Buyer's chosen location (limited to UK or USA).

Exhibit A to Defendant's Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction at 6 [ECF No. 23]. The OPA also separately assigned to Shkreli 50% of the copyrights and renewal copyrights in the Musical Work, with the remainder of the copyrights to be transferred from the Sellers (defined in the OPA as Robert Diggs p/k/a The RZA, founder and chief executive of Wu-Tang Productions, Inc., and Tarik Azzougarh p/k/a Cilvaringz) to Shkreli 88 years after the OPA was executed. OPA at 5. Therefore, the Sellers currently hold the un-transferred fifty percent of copyrights in the Musical Work and are obligated to transfer those remaining copyrights to Shkreli in 2103.

Importantly, under the terms of the OPA, Shkreli was permitted to use, sell, or destroy any part of the Engraved Box without disturbing his ownership of the copyrights to the Musical Work. The OPA also permitted Shkreli to "duplicate or replicate the [Musical] Work for private use," and allowed certain "Permitted Uses" including "the private or public exhibition or playing of the [Musical] Work, with or without charge, in locations such as [Shkreli's] home, museums, art galleries, restaurants, bars, exhibition spaces, or other similar spaces not customarily used as venues for large musical concerts, as well as the advertising and/or promotion of such exhibition or playing of the [Musical] Work." OPA at 7. Further, the OPA granted Shkreli the authority to make copies of the Musical Work. *Id.* at 8.

In addition to the foregoing transfers of physical assets and rights, the OPA contained representations by the Sellers that "The [Musical] Work [was] an authentic, original work created by the Wu-Tang Clan," and that the Engraved Box was "the only existing copy of the [Musical]

Work in the world **up until the transfer of the [Musical] Work from the Sellers to the Buyer.**" OPA at 8 (emphasis added).

After executing the OPA and taking possession of the Engraved Box, Shkreli made Permitted Use of the Musical Work when he shared it through his social media accounts, including by playing the Musical Work online as early as 2016.[1] Neither the Wu Tang Clan nor any of its members ever sued Shkreli or otherwise publicly complained about his disclosure and use of the Musical Work. Indeed, after Shkreli shared an excerpt of the Musical Work on his social media, Robert Diggs told Bloomberg that "He bought it, he can do what he wants. The beautiful thing about art, from my standpoint, is that it has no discrimination."[2]

In 2018, Shkreli was ordered to forfeit to the United States the amount of $7,360,450.00 (the "Forfeiture Money Judgment"). Plaintiff's Memorandum in Support of Order to Show Cause, Ex. D [ECF No. 4-5] (the "Forfeiture Order"). The Forfeiture Order required that Shkreli surrender several "substitute assets" to satisfy the Forfeiture Money Judgment, including, *inter alia*, the Engraved Box, his copy of "Tha Carter V" by Lil Wayne, and a Picasso painting. Forfeiture Order at 10.

In July 2021, the United States Marshal Service ("U.S.M.S.") sold the forfeited Engraved Box to an anonymous buyer. Plaintiff's Memorandum in Support of Order to Show Cause, Ex. E [ECF No. 4-6]. The Asset Purchase Agreement executed by the U.S.M.S. indicates that at least two entities were the "Purchasers" of the Engraved Box. Defendant's Memorandum in Opposition of Order to Show Cause, Ex. B [ECF No. 22-3] (the "APA"). The APA further described an

---

[1] Jackson McHenry, *Martin Shkreli Released That Secret Wu-Tang Album to Celebrate Donald Trump's Victory*, Vulture, Nov. 9. 2016, https://www.vulture.com/2016/11/martin-shkreli-shares-secret-wu-tang-album-after-trump-wins.html.
[2] Doni Bloomfield, *RZA Has Already Cashed Shkreli's $2 Million Check and That's It*, Bloomberg (January 6, 2016), https://www.bloomberg.com/politics/articles/2016-01-06/wu-tang-clan-s-rza-doesn-t-regret-shkreli-album-sale.

anonymous intermediary company that was explicitly formed and managed "for the sole purpose of purchasing the Assets." *Id.* at 1.

The APA explicitly stated that "[t]he Assets are sold 'As-Is, Where-Is'" and repeatedly disclaimed any representation or warranty as to the condition or function of the Engraved Box. *See, e.g., id.* at 5 ("[F]or the avoidance of doubt, Seller does not undertake or assume any of the representations or warranties with respect to the Assets set forth in the Original Purchase Agreement."), *id.* at 7 ("Seller makes no representations regarding the condition of the Assets other than that the below items will be provided at closing."); *id.* at 8 (selling the Engraved Box "'AS-IS,' with no guarantees or warranties").

Months after the July 2021 sale by the U.S. government, crypto-collective entity and Plaintiff PleasrDAO ("Plaintiff") announced that it had acquired the Engraved Box.[3] In its complaint, it claims (with no evidence) that it purchased "the copyrights in and exclusive right to exploit the recordings" in January 2024. Complaint at ¶ 29 [ECF 1]. The Complaint provides no further detail on the alleged acquisition of copyrights, and instead relies on conclusory allegations and *ad hominem* characterizations of Shkreli to support its claims for violation of the Forfeiture Order, violation of the Defend Trade Secrets Act, misappropriation of trade secrets, tortious interference with prospective economic advantage, unjust enrichment, and recovery of chattel. *Id.*

For the reasons below, Plaintiff's claims are insufficient and should be dismissed in their entirety.

## III.    STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), courts accept as true all well-pleaded factual allegations and draw all inferences in the plaintiff's favor. *See Chase Grp. All. LLC v. City*

---

[3] Ben Sisario, *A rare Wu-Tang Clan album has a new home*, N.Y. Times, Oct. 20, 2021, https://www.nytimes.com/2021/10/20/arts/music/wu-tang-clan-once-upon-a-time-in-shaolin.html.

*of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). In addition, the Court applies the two-pronged approach articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Sugar v. Greenburgh Eleven Union Free Sch. Dist.*, No. 18 CV 67, 2018 WL 6830865, at *2–3 (S.D.N.Y. Dec. 28, 2018). The Court: (a) disregards conclusions and threadbare recitals of the elements of a cause of action supported by conclusory allegations, and (b) takes only well pleaded factual allegations as true and then evaluates whether they plausibly give rise to an entitlement to relief. *Ashcroft*, 556 U.S. at 678-679; *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). A plaintiff must exceed a plausibility requirement, showing more than a possibility a defendant acted unlawfully. *Id.*(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A well-pleaded complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 252 (E.D.N.Y. 2016). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d. Cir. 2020).

## IV. PLAINTIFF'S CLAIMS MUST BE DISMISSED

Plaintiff's claims must be dismissed because it lacks standing to enforce the Forfeiture Order, it has not pled that it is in possession of a "secret" sufficient to support its trade secret claims, its state law claims are preempted by the Copyright Act, and its state law claims have not been plausibly pled.

### A. PleasrDAO Lacks Standing To Enforce The Forfeiture Order

As an initial matter, Count I fails because Plaintiff has failed to plead that it has standing required to enforce the Forfeiture Order.

The core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *See, e.g., Allen v. Wright*, 468 U.S. 737, 751 (1984). It is the party invoking federal jurisdiction who bears the burden of establishing standing. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990). In adjudicating whether a third-party petitioner has standing to bring an action related to a forfeiture order, "courts have routinely dismissed third-party petitions without a hearing," where "a petitioner is not able to demonstrate a prima facie entitlement to relief." *Pacheco v. Serendensky*, 393 F.3d 348, 351-52 (2d Cir. 2004).

Fed. R. Civ. P. 71 allows nonparties to move to enforce court orders in the same manner as a party to the order in question *only* "when they are the intended beneficiaries <u>and</u> when they have standing to intervene under the zone-of-interest test." *Hanyzkiewicz v. Allegiance Retail Servs., LLC*, No. 22-CV-4051, 2023 WL 2758355, at *3 (S.D.N.Y. Apr. 3, 2023) (citing *EEOC v. Int'l. Assn. of Bridge, Structural & Ornamental Ironworkers, Local 580*, 139 F. Supp. 2d 512, 520 (S.D.N.Y. 2001)). The Zone of Interest test permits a non-party to enforce a judgment under Rule 71 when its complaint comes within the zone-of-interests protected by the order. *Id.* (citing *Moore v. Tangipahoa Parish School Bd.*, 625 F.2d 33, 34-35 (5th Cir. 1980)).

Plaintiff is not an intended beneficiary because the Forfeiture Order states that its sole purpose is to designate and secure the "Substitute Assets" sufficient to satisfy the Forfeiture Money Judgment. Forfeiture Order at 10. Plaintiff was not a named party to the Forfeiture Order, and the Forfeiture Order did not indicate that it intended any third parties to be beneficiaries to its terms. *Id.* It follows, then, that the intended beneficiaries to the Forfeiture Order were limited to Shkreli and the U.S. government.

The Supreme Court has repeatedly held that to have standing in federal court, a party "must assert his own legal interests, rather than those of third parties." *Gladstone Realtors v. Bellwood*,

441 U.S. 91, 100 (1979); *see also Vill. Of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 263 (1977) ("In the ordinary case, a party is denied standing to assert the rights of third persons."). It is not enough to say that Plaintiff was indirectly or economically benefited by the Forfeiture Order. *United States v. Paramount Pictures, Inc.*, 75 F. Supp. 1002 (S.D.N.Y. 1948) The judgment is in favor of the United States alone. *Id.* Rather, secondhand purchasers of goods after the initial transfer of those goods are not intended beneficiaries of the initial transfer of those goods, and so Plaintiff lacks standing to enforce the Forfeiture Order.

No monetary or other relief was specifically granted to Plaintiff. *Id.* In addition to its exclusion from the Forfeiture Order, Plaintiff has not even alleged that it was named in the APA, and relies only on allegations that it purchased the Engraved Box and the rights to the Musical Work from an unnamed entity to support its eligibility to enforce the Forfeiture Order. *See generally* Complaint. The Forfeiture Order was entered in favor of the United States alone, and therefore only the United States has standing to enforce it. *See United States v. Am. Soc. of Composers, Authors & Publishers*, 341 F.2d 1003, 1008 (2d Cir. 1965) (finding the Plaintiff lacked standing to punish defendant for contempt and holding that standing was limited to persons who were parties to the former decree, **not persons affected by the judgment**.) (emphasis added).

Additionally, Plaintiff does not have standing because the claims contained in the instant Complaint are far outside the zone of interests protected by a forfeiture order in an entirely separate criminal proceeding. The Second Circuit has held that plaintiffs are ineligible to enforce prior orders when their enforcement effort "evolves from a private controversy between [the parties] over a matter that does not directly concern the United States." *United States v. Am. Soc. of Composers, Authors & Publishers*, 341 F.2d 1003, 1007 (2d Cir. 1965) (citing *Cf. Olympic Refining Co. v. Carter*, 332 F.2d 260, 263 (9th Cir. 1964)) ("*ASCAP*"). In *ASCAP*, the private

dispute centered around determining a licensing fee arrangement within the terms of an amended judgment. *Id.* The Second Circuit held that "leaving the choice and power to enforce or modify in the government's hands achieves a desirable result. It forecloses the possibility that a multitude of parties with conflicting interests will become entangled in subsequent proceedings in the action, and at the same time the continuing government supervision affords those parties affected by the decree sufficient protection of their rights." *ASCAP*, 341 F.2d at 1008.

The requirement that the Forfeiture Order grant specific relief to a nonparty must be strictly enforced, because otherwise a nonparty lacks standing to enforce the order. *S.E.C. v. Prudential Sec.*, 136 F.3d 153,156–160 (D.C. Cir. 1998) (intervention by third party to enforce consent decree properly denied when decree clearly established that no third party should be able to enforce its provisions, and therefore prospective intervenor lacked standing to intervene).

Accordingly, this Court should dismiss Plaintiff's claim for enforcement of the Forfeiture Order because Plaintiff lacks standing, as a non-party to the Forfeiture Order who was not issued specific relief and has not brought a claim within the "zone of interests" contemplated by the Forfeiture Order.

### B. The Trade Secret Counts Must Be Dismissed Because Plaintiff Fails To Plausibly Plead A "Secret"

Counts II and III, for violation of the Defend Trade Secrets Act ("DTSA") and misappropriation of confidential information/trade secrets, respectively, must be dismissed for lack of a "secret." Federal and state law are both clear that when public disclosure of information is permitted, that information cannot be considered a trade secret. Because Shkreli was permitted to share, copy, and publicly use the Musical Work, Plaintiffs cannot sustain a trade secret claim.

As an initial matter, Plaintiff's trade secret claims are duplicative of one another. To state a claim for misappropriation under the DTSA, Plaintiff must allege that it possessed a trade secret

that the Defendant misappropriated. 18 U.S.C. § 1836(b)(1). The elements for a misappropriation claim under New York law are substantially the same. *See N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999). Since "[t]he requirements are similar," courts have found that a "complaint sufficiently pleading a DTSA claim also states a claim for misappropriation of trade secrets under New York law." *ExpertConnect, LLC v. Fowler*, 2019 WL 3004161, at *7 (S.D.N.Y. July 10, 2019) (cleaned up). "[D]istrict courts often rely on cases discussing *misappropriation under New York law to analyze DTSA claims." ExpertConnect, 2019 WL 3004161, at *4 n.1; see also Iacovacci v. Brevet Holdings, LLC,* 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020).

The DTSA defines "trade secrets" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," **so long as: (1) "the owner thereof has taken reasonable measures to keep such information secret";** and (2) "the information derives independent economic value ... from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."

18 U.S.C. § 1839(3). (emphasis added).

The "most important consideration in determining whether information is a trade secret is whether the information was secret." *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 421 (S.D.N.Y. 2021) (quoting *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 514 (S.D.N.Y. 2017); *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir. 1986)). "[U]pon disclosure, even if inadvertent or accidental, **the information ceases to be a trade secret and will no longer be protected**." *Defiance Button Mach. Co. v. C & C Metal Prod. Corp.*, 759 F.2d 1053, 1063 (2d Cir. 1985) (emphasis added) (citing *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 475–76 (1974);

*Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 196 (1st Cir. 1980)).

Generally, "courts require that the possessor of a trade secret take reasonable measures to protect its secrecy." 1 Milgrim on Trade Secrets § 1.04. Accordingly, a plaintiff asserting a trade secret claim under either New York or federal law must plead sufficient facts to give a defendant fair notice of the "reasonable measures" taken to keep the information secret. *Mason v. AmTrust Fin. Servs., Inc.*, No. 19CV8364, 2020 WL 1330688, at *3 (S.D.N.Y. Mar. 23, 2020), *aff'd,* 848 F. App'x 447 (2d Cir. 2021) (dismissing Plaintiff's trade secret claims under New York and federal law because it did not sufficiently plead measures taken that would reasonably ensure the information would be kept secret, at any point, from third parties and describing Plaintiff's failure to designate the information confidential or proprietary "careless.")

"If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, **his property right is extinguished**." *Structured Cap. Sol., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 832 (S.D.N.Y. 2016) (emphasis added) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)). Courts in this Circuit have dismissed claims for trade secret misappropriation for lack of a secret when—as in this case—a defendant was **expressly authorized** to disclose the information in limited circumstances, to an unlimited number of parties. *Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.*, 361 F. Supp. 2d 283, 305 (S.D.N.Y. 2005) (Permitted disclosure of information in connection with certain contracts destroyed secrecy). Because the alleged "secrets" were "given limited protection by the provisions of [a contract,] even drawing all reasonable inferences in [Plaintiff's] favor, [they were] not trade secrets." *Id.* at 306. The Court in *Bear Stearns* also observed that the fact that recipient parties were not restricted from subsequent disclosure of the alleged secret supported its finding that "such information cannot possibly fit

within even the broadest interpretation of New York's definition of a trade secret." *Id.* at 305 n.18; *see also Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 502, 517, 522 (S.D.N.Y. Dec. 4, 2017) (finding that an agreement that tracked the language of the Copyright Act prohibiting reproduction or display of software, but did not notify the receiving party that it was confidential or preclude the receiving party from describing the software's function, structure and appearance to others warranted dismissal of trade secret claim).

Indeed, "a number of courts have denied trade secret protection where allegedly confidential information has been revealed to third parties . . . where the information was disclosed under a non-disclosure agreement with only a limited duration." *Id.* (citing *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2008 WL 166950, at *17 (N.D. Cal. Jan. 17, 2008); *DB Riley, Inc. v. AB Eng'g Corp.*, 977 F. Supp. 84, 91 (D. Mass. 1997) (finding that plaintiff did not have a likelihood of success on the merits of its misappropriation claim under Massachusetts law in part because "[plaintiff's] own expectations of maintaining its trade secrets were time limited"); *ECT Int'l, Inc. v. Zwerlein*, 597 N.W.2d 479 (D. Wis. 1999) (affirming dismissal of misappropriation claim on summary judgment where confidentiality agreement specified that information was to be kept confidential for only one year following termination of employment, thereby "manifest[ing] [plaintiff's] intent that after one year there was no need to maintain the secrecy of any sensitive and confidential information").

Here, Plaintiff has failed to plead that it acquired any protectable trade secret because Shkreli was *never* obligated to keep the Musical Work confidential. Instead, Plaintiff relies on an assertion that it purchased "the only lawful copy of 'Once Upon a Time in Shaolin," including its data and files." Complaint at ¶ 70. However, any trade secret protections the Work may have had was extinguished upon the execution of the OPA, which specifically permitted making copies and

divulging the so-called "secret" to third parties. OPA at 5-6. Shkreli was not obligated to maintain secrecy, did not maintain such secrecy, and so there is no "secret" at issue sufficient to support trade secret claims under the DTSA or under New York law. Accordingly, Counts II and III should be dismissed with prejudice.

## C. Plaintiff's Remaining State Law Claims are Preempted by the Copyright Act

Next, Plaintiff's claims for Tortious Interference with Prospective Economic Advantage, Unjust Enrichment, and Recovery of Chattel/Replevin (the "Quasi-Copyright Claims") are preempted by the Copyright Act, 17 U.S.C. § 101 *et seq*. In pertinent part, the Copyright Act provides that the holder of copyrights to a "fixed work of authorship in a tangible medium of expression" is entitled to the exclusive right to reproduce the copyrighted work, to distribute those copies to the public, and to perform the copyrighted work publicly be means of a digital audio transmission. 17 U.S.C. § 106. Additionally, the Copyright Act provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . **are governed exclusively by this title**" and that "[n]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(A) (emphasis added).

Courts in this Circuit have recognized that, when a Plaintiff seeks to protect their alleged interests in a piece of artistic work under the theories of state law, it is clear that the specific right they are trying to enforce is protected by the Copyright Act. *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306–07 (2d Cir. 2004); *see also Harper & Row, Publishers, Inc. v. Nation Enter.*, 723 F.2d 195, 201 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539 (1985) ( "If unauthorized publication is the gravamen of [plaintiff's] claims, then it is clear that the right they seek to protect is coextensive with an exclusive right already safeguarded by the Act—namely,

control over reproduction of and derivative use of copyrighted material," and the claim would be preempted.).

In such cases, state law causes of action "should be regarded as an 'equivalent right' and hence, pre-empted insofar as they apply to copyright subject matter." Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1][g] (2003) (cleaned up). And once a court finds a state law claim to be completely preempted, it "must then dismiss the claim for failing to state a cause of action." *Adina's Jewels, Inc. v. Shashi, Inc.*, 442 F. Supp. 3d 766, 771 (S.D.N.Y. 2020) (internal citation omitted) (dismissing state law claims for unfair competition, unjust enrichment, and violation of GBL § 349 as preempted by the Copyright Act); *Ranieri v. Adirondack Dev. Grp., LLC*, 164 F. Supp. 3d 305, 357 (N.D.N.Y. 2016) (citing *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 932 (S.D.N.Y.1996)) ("In the Second Circuit, it is well settled that claims for tortious interference based on the unauthorized publication of a work protected by the Copyright Act are preempted."); *Miller v. Holtzbrinck Publishers LLC*, 377 F. App'x 72 (2d Cir. 2010) (citing *Harper & Row*, 723 F.2d at 201) (claims of tortious interference and conversion preempted by the Copyright Act).

Here, each of Plaintiff's claims for tortious interference with prospective economic advantage, unjust enrichment, recovery of chattel/replevin (collectively, the "Quasi-Copyright Claims") suffer the same fatal flaw: they are predicated on Shkreli's allegedly unlawful retention and distribution of copies of the Musical Work. *See* Complaint ¶¶ 90-91 ("retention of the Album's data and files" and "distribution of the Album's data and files"); 99-100 ("sale of unlawfully retained copies" and "unauthorized retention and distribution of the Album"); 104 ("Shkreli's retained copies of the Album").

In addition to their factual similarities to claims under the Copyright Act, Plaintiff's Quasi-

Copyright Claims seek relief that is analogous to remedies available under the Copyright Act. Namely, Plaintiff asks this Court to issue an order awarding, *inter alia,* "an award of damages," "any profits Shkreli made from retaining or disclosing the Album," and "seizure of property necessary to prevent the propagation or dissemination of the Album." Complaint ¶¶ 95, 102, 108. The relief authorized under the Copyright Act includes, *inter alia,* "any profits of the infringer that are attributable to the infringement" and "impounding and disposition of infringing articles." 17 U.S.C. §§ 503, 504(b).

Because the Quasi-Copyright Claims allege that Shkreli reproduced and distributed copies of the Musical Work, they are squarely within the scope of claims explicitly preempted by the Copyright Act and should be dismissed.

### D.  Plaintiff's Remaining State Law Claims Fail on Their Merits

### 1.  Tortious Interference with Prospective Economic Advantage

Plaintiff's claim for tortious interference with prospective economic advantage must also be dismissed because the Complaint does not sufficiently allege that Defendant acted solely out of malice and does not allege that Defendant interfered with a particular business relationship.

Under New York law, a plaintiff bringing a claim of tortious interference must plead that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). To satisfy the "wrongful purpose" pleading requirement for a claim of tortious interference with prospective economic advantage, a Plaintiff must plead that the defendant acted **solely** out of malice, or used dishonest, unfair, or improper means to interfere with the alleged prospective economic advantage. *Carson Optical,*

14

*Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 336 (E.D.N.Y. 2014); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003), *certified question answered*, 3 N.Y.3d 182 (2004)); *see also Nat'l Air Cargo Grp., Inc. v. Maersk Line Ltd.*, No. 17 CIV. 8659, 2019 WL 4735426, at *9 (S.D.N.Y. Sept. 27, 2019) ("This tort is a difficult one to sustain, with requirements more demanding than those for interference with the performance of an existing contract."). And "[a]ctions intended to solicit business, which are motivated by economic self-interest, cannot be characterized as malicious." *Tri-Star Lighting Corp. v. Goldstein*, 58 N.Y.S.3d 448, 454 (2017) (internal citations omitted).

The Complaint here does not allege that Defendant was "motivated solely by malice," as opposed to economic self-interest." In contrast, Plaintiff has alleged that Defendant *was* motivated by economic self-interest, pleading that he "has profited from the sale of unlawfully retained MP3 copies of the Album," and that he "has gained additional viewership on his social media platforms as a result of his unauthorized retention of the Album's data and files . . . ." Complaint at ¶¶ 97-99. And so, the Complaint fails to plead the third element of tortious interference with prospective economic advantage.

In addition, to state a claim for tortious interference with prospective economic advantage, a Plaintiff must allege that defendant targeted some specific activities toward **a specific** third party and convinced **that specific** third party not to enter into a business relationship with the plaintiff. *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997) (emphasis added). "It is axiomatic that, in order to prevail on this claim, the [plaintiff] would have to show that the [defendant] intentionally caused the retailer [customers] not to enter into a contractual relation with them." *G.K.A. Beverage Corp. v. Honickman,* 55 F.3d 762, 768 (2d Cir. 1995) (dismissing claim for tortious interference with prospective economic advantage because Plaintiff

made no allegations that defendants "had any contact with the [plaintiffs'] customers or that [defendants] tried to convince the customers to make contracts with them rather than the [plaintiffs].") And so, Plaintiff must plead that Defendant had contact with Plaintiff's customers or that Defendant tried to recruit those customers to contract with himself.

The Complaint does not allege either set of facts required by the Second Circuit in *G.K.A. Beverage Corp*. Instead, Plaintiff rests its tortious interference claim on a single vague reference to "economic prospects" and on a conclusory allegation that Shkreli's conduct "has interfered with PleasrDAO's rights," while offering no explanation of the relationships interfered with or the manner in which Defendant allegedly caused harm. Complaint at ¶¶ 90-91. This is hardly enough to give Defendant fair notice of Plaintiff's claims as is required at this stage of litigation. *See Eminah Props. LLC v. Energizer Holdings, Inc.*, 531 F. Supp 3d 593, 607 (E.D.N.Y. 2021) (dismissing tortious interference claims that failed to plead how the relationship was damaged).

Because Plaintiff has pled facts that indicate Defendant was not motivated solely by malice and has failed to identify a business relationship with which Defendant interfered, this Court should dismiss Plaintiff's claim for tortious interference with prospective economic advantage.

## 2.  Unjust Enrichment

Plaintiff's claim for unjust enrichment should also be dismissed because it is factually deficient and because it is duplicative of its other claims. To state a claim for unjust enrichment, a Plaintiff must show that Defendant was enriched, at Plaintiff's expense, and that it is against equity and good conscience to permit the Defendant to keep what is sought to be recovered. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). Additionally, although the Complaint need not allege privity between Plaintiff and Defendant, "a claim will not be supported if the connection between the parties is too attenuated."

*Sperry v. Crompton Corp.*, 863 N.E.2d 1012 (N.Y. 2007); *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 747 (2012) (dismissing unjust enrichment claim because the complaint did not assert that the parties "had any contact regarding the purchase transaction.").

Here, Plaintiff has not pled the existence of any relationship between Plaintiff and Defendant, let alone one that "renders this transaction one of equitable injustice requiring a remedy to balance a wrong." *Mandarin Trading Ltd. v. Wildenstein*, 65 A.D.3d 448, 451 (1st Dept. 2009) *aff'd,* 16 N.Y.3d 173 (2011). In *Mandarin Trading*, the Court of Appeals of New York dismissed a claim for unjust enrichment because the buyer of a famous painting unjustifiably relied on an assessment of the value of the purchased artwork, since the relationship between the parties was "too attenuated." *Id*.

Here, as in *Mandarin Trading*, Plaintiff asks this Court to entertain a claim for unjust enrichment *even though there was no relationship or interaction between the parties regarding the Musical Work*. The Complaint merely alleges that because Defendant engaged in conduct that was explicitly permitted by the OPA (making copies of the Musical Work), and retained those permitted copies of the Musical Work after he forfeited the Engraved Box, he has been unjustly enriched. Complaint ¶¶ 97-101. It does not allege that any relationship ever existed between Plaintiff and Defendant, or that Defendant made any representations related to his copying of the Musical Work before Plaintiff's purchase of the Engraved Box. To the contrary, Defendant forfeited the Engraved Box pursuant to the Forfeiture Order and the APA made "no representations regarding the Condition of the Assets other than that the below items will be provided at closing." APA at 7. As further demonstrated by the Forfeiture Order and APA, there were several intermediary parties between Defendant and Plaintiff.

The Second Circuit has declined to extend liability for unjust enrichment to cases where a

buyer failed to apprise itself of publicly disclosed information related to the purchased assets. *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 339 (2d Cir. 2011). Here, Shkreli publicly disclosed the contents of the Musical Work in 2016 via his social media accounts.[4] Thus, Plaintiff failed to apprise itself of the fact that the Musical Work had been disclosed prior to its purchase of the Engraved Box. Even taken in a light most favorable to Plaintiff, the Complaint contains no facts that support a finding that Defendant's retaining copies of the Musical Work after Plaintiff's purchase of the Engraved Box offends equity and good conscience.[5]

"Without sufficient facts, conclusory allegations which fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal." *Mandarin Trading*, 944 N.E.2d at 1111 (citing *North Salem Psychiatric Servs., P.C. v. Medco Health Solutions, Inc.*, 50 A.D.3d 986 (2d Dept. 2008); *Vassel v. Vassel*, 40 A.D.2d 713 (2d Dept. 1972), aff'd 301 N.E.2d 422 (1973)). Plaintiff's claim for unjust enrichment is insufficiently pled and should be dismissed.

### 3.      Recovery of Chattel/Replevin

Plaintiff's claim for Recovery of Chattel/Replevin must be dismissed because Plaintiff was never in possession of the copies of the Musical Work that it seeks to recover, and has never been deprived of the Musical Work.

To state a claim for recovery of chattel/replevin, Plaintiff must plead that Shkreli "intentionally, and without justification or consent, **physically interfered** with the use and enjoyment of personal property **in Plaintiff's possession**, and that it was harmed thereby." *Abrams v. Pecile*, 2012 NY Misc. LEXIS 2606 (Sup Ct. N.Y. Cnty. 2012) (quoting *School of Visual Arts v. Kuprewicz*, 3 Misc. 3d 278 (Sup Ct. N.Y. Cnty. 2003)) (dismissing chattel and replevin claims

---

[4] *Supra,* n. 1.
[5] Pursuant to this Court's August 26, 2024 Order that Defendant turn over all copies of the Musical Work to counsel, Defendant is no longer in possession of copies of the Musical Work.

because plaintiff was never deprived of the images contained on a CD that formed the basis of her claims). Since this claim is preempted by the Copyright Act to the extent it relates to the intangible aspects of the Musical Work, the scope of Plaintiff's recovery of chattel claim is limited to ownership rights in the Engraved Box itself. *Lennon v. Seaman*, 63 F. Supp. 2d 428 (S.D.N.Y. 1999) (permitting claims for recovery of chattels and trespass only to the extent they relate to ownership rights in and possession of tangible items themselves and excluding the copyrights to their content).

Because Plaintiff's recovery of chattel claim is available only to restore physical possession of tangible items once owned by Plaintiff, Defendant's copies of the Musical Work are not recoverable chattel and Plaintiff's claim fails.

Crucially, Plaintiff has not alleged that at any point, copies of the Musical Work retained by Defendant were in the Plaintiff's possession. Rather, it relies on the conclusion that the Musical Work constitutes recoverable chattel under New York law. Complaint ¶ 104. Thus, there can be no plausible allegation that any copies of the Musical Work retained by Shkreli once belonged to Plaintiff. Accordingly, Plaintiff has failed to plead facts sufficient to state a claim for recovery of chattel.

### E.     Plaintiff's Claim for Unjust Enrichment is Duplicative

Plaintiff's claim for unjust enrichment also fails because it is duplicative of Plaintiff's other claims. "Claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp 3d 666, 679 (E.D.N.Y. 2017); *see also Shak v. Adelphi Univ.*, 549 F. Supp. 3d 267 (E.D.N.Y. 2021) ("unjust enrichment is not a catchall cause of action to be used when others fail" and is "easily dismissed" as duplicative of other claims) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (2012)).

Here, the Complaint alleges that Shkreli has been unjustly enriched as a result of "increased viewership on his social media platforms" stemming from his "unauthorized retention and distribution" of the Musical Work. Complaint ¶¶ 97, 100. Because Plaintiff's claims for tortious interference with prospective economic advantage and recovery of chattel also rely entirely on Defendant's allegedly unauthorized retention and distribution of the Musical Work, these claims are near-identical duplicates of Plaintiff's unjust enrichment claim. For these reasons, Plaintiff's unjust enrichment claim should be dismissed for this additional reason.

###    F.    Joinder of Necessary Parties

Fed. R. Civ. P. 19 requires that Courts undertake a two-step analysis to determine wither an action should be dismissed for failure to join a necessary party. Fed. R. Civ. P. 19; *see also Rose v. Simms*, No. 95 CV 1466, 1995 WL 702307, at *2 (S.D.N.Y. Nov. 29, 1995) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968); *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir. 1990)). Rule 19 provides that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Once a party has been deemed "indispensable," analysis turns to whether joinder of that party is "feasible," or whether in equity and good conscience the action should be dismissed because the nonparty is "indispensable" to the action. *Prescription Plan Service Corp. v. Franco*, 552 F. 2d 493 (2d Cir. 1977) (citing *Provident Tradesmens*, 390 U.S. at 102). Under Rule 19,

joinder is not "feasible" if: the Court cannot exercise personal jurisdiction over the absent party, subject matter jurisdiction will be destroyed by joinder of the absent party, or if the absent party objects to the joinder. *Id*.

In the event that this Court finds that dismissal of the Complaint in its entirety is not warranted, Defendant respectfully requests that this Court order the joinder of all necessary third parties to this action, specifically Robert Diggs and Tarik Azzougarh. As detailed below, Plaintiff's claims cannot be resolved without determining the ownership interests in the copyrights to the Musical Work. Since the ownership interests in the Musical Work are owned by one or more third parties not currently parties to this action, those parties should be considered necessary and joined.

FED. R. CIV. P. 19 requires joinder of all persons who have an interest in the subject matter of an action, so that related claims and defenses can be fully and efficiently determined. *See* FED. R. CIV. P. 19, Advisory Committee Note. It shields property owners from having rights adversely adjudicated in their absence. FED. R. CIV. P. 19 (a)(1)(B)(i).

Notably, the Supreme Court intended Rule 19 to permit joinder of the exclusive licensee or equitable owner in patent and copyright infringement cases. *Caprio v. Wilson,* 513 F.2d 837, 839 (9th Cir. 1975). Here, Defendant asks this Court to find that competing interests sufficiently cloud its ability to decide in either party's favor without compromising a third-party property interest in the Musical Work. *See Weber v. King*, 110 F. Supp. 2d 124, 129 (E.D.N.Y. 2000) (granting motion to dismiss for failure to join necessary parties where "a cursory reading of the Complaint demonstrates that the interests of the [absent party]. . . are significantly impacted by Plaintiff's claims). In the absence of other parties not presently involved in this action, this Court should find that it cannot decide any of Plaintiff's claims.

As in *Weber*, a cursory reading of the Complaint clearly demonstrates that Diggs and

Azzougarh have interests that are significantly impacted by Plaintiff's claims. The Complaint alleges that Plaintiff purchased "the copyrights in and exclusive right to exploit the recordings" in January 2024. Complaint at ¶ 29. However, the terms of the OPA explicitly state that 88 years from the date of the OPA, the remaining 50% of the copyrights (held by sellers Robert Diggs and Tarik Azzougarh) will be transferred to Defendant. OPA at 6. Since the remaining 50% of the copyrights will transfer from Sellers in the year 2103, the Complaint articulates a conflict in the ownership status of the Musical Work that cannot be resolved without impacting the rights of Diggs and Azzougarh.

As partial owners of the copyrights to the Musical Work, Diggs and Azzougarh must be considered indispensable parties to this action, since a determination that Plaintiff fully owns the Musical Work will disturb their 50% ownership and leave them subject to inconsistent and competing obligations.

## V.     CONCLUSION

For the foregoing reasons, the Complaint should be dismissed. Should this Court decline to dismiss Plaintiff's Complaint, it should order joinder of all necessary parties to this action.

Date: August 15, 2024                          Respectfully Submitted,

*/s/ Erik Dykema*           
Edward A. Paltzik, Esq.
Erik Dykema, Esq.
Serge Krimnus, Esq.
Meredith Lloyd, Esq. (*pro hac vice*)
Bochner PLLC
1040 Avenue of the Americas, 15th Fl.
New York, New York 10018
(516) 526-0341
edward@bochner.law
erik@bochner.law
serge@bochner.law
meredith@bochner.law

*Attorneys for Martin Shkreli*