**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

PleasrDAO, an exempted foundation company,          :
                                                    :
                    *Plaintiff*,                    :
                                                    : Case No. 24-CV-4126 (PKC) (MMH)
                                                    :
                                                    :
                    v.                              :
                                                    :
Martin Shkreli,                                     :
                                                    :
                                                    :
                    *Defendant*.                    :
-------------------------------------------------------------x

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................ 5

   I.   The Complaint Alleges Facts Sufficient to Demonstrate Pleasr's Standing to Enforce the Forfeiture Order. ................................................................................. 6

      A.   The Motion Applies the Wrong Legal Standard in Determining When an Order Grants a Nonparty Relief. ...................................................................... 6

      B.   PleasrDAO has Article III Standing under the Zone of Interests Test to Seek Enforcement of the Forfeiture Order. ...................................................... 9

      C.   The Forfeiture Order Granted Pleasr Relief............................................. 10

   II.   The Complaint Alleges Facts Sufficient to State its Trade Secret Claims. ............... 12

      A.   The Album Cannot be Easily Acquired or Duplicated by Others (*Integrated Cash* Factor 6). ...................................................................... 13

      B.   The Album is Not Known in or Outside the Industry (*Integrated Cash* Factors 1 and 2). .................................................................................. 14

      C.   The Complaint Satisfies *Integrated Cash* Factors 3-5. ........................... 15

   III.   The Complaint Demonstrates that Pleasr's Common Law Claims are not Preempted by the Copyright Act. ............................................................................ 16

      A.   Pleasr's Unjust Enrichment Claim Seeks to Vindicate Non-Copyright Equivalent Rights. .................................................................................. 17

      B.   Pleasr's Tortious Interference Claim Seeks to Vindicate Non-Copyright Equivalent Rights. .................................................................................. 19

      C.   Pleasr's Replevin Claim Seeks to Vindicate Non-Copyright Equivalent Rights. 20

   IV.   The Complaint Alleges Facts Sufficient to State a Claim of Tortious Interference with Prospective Economic Advantage. ............................................................... 20

   V.   The Complaint Alleges Facts Sufficient to State a Claim of Unjust Enrichment....... 22

   VI.   The Complaint Alleges Facts Sufficient to State a Claim for Replevin/Recovery of Chattel. .................................................................................................... 24

CONCLUSION.......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adina's Jewels, Inc. v. Shashi, Inc.*,
   442 F. Supp. 3d 766 (S.D.N.Y. 2020) .................................................................18

*Am. Movie Classics Co. v. Turner Entm't Co.*,
   922 F. Supp. 926 (S.D.N.Y. 1996) ......................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................5, 6

*Ashland Inc. v. Morgan Stanley & Co.*,
   652 F.3d 333 (2d Cir. 2011) ...............................................................................23

*Bates v. Abbott Labs.*,
   No. 1:23-CV-387, 2024 U.S. Dist. LEXIS 57270 (N.D.N.Y. Mar. 29, 2024) .......24

*Bear, Stearns Funding, Inc. v. Interface Grp. -- Nev., Inc.*,
   361 F. Supp. 2d 283 (S.D.N.Y. 2005) ...........................................................12, 13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................5

*Berger v. Heckler*,
   771 F.2d 1556 (2d Cir. 1985) ................................................................................7

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d Cir. 2004) ....................................................................16, 17, 18

*Broker Genius, Inc. v. Zalta*,
   280 F. Supp. 3d 495 (S.D.N.Y. 2017) ..................................................................13

*Calderon v. Wambua*,
   2012 U.S. Dist. LEXIS 46193 (S.D.N.Y. Mar. 28, 2012) ........................................7

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
   11 F. Supp. 3d 317 (E.D.N.Y. 2014) ...................................................................21

*Comput. Assocs. Int'l v. Altai*,
   982 F.2d 693 (2d Cir. 1992) ................................................................................17

*Crum v. Ala. (In re Emp't Discrimination Litig.)*,
   213 F.R.D. 592 (M.D. Ala. 2003) ........................................................................10

*DB Riley, Inc. v. AB Eng'g Corp.,*
    977 F. Supp. 84 (D. Mass. 1997) ........................................................15

*ECT Int'l, Inc. v. Zwerlein,*
    597 N.W.2d 479 (D. Wis. 1999) .......................................................15

*EEOC v. Int'l. Assn. of Bridge, Structural & Ornamental Ironworkers, Local 580,*
    139 F. Supp. 2d 512 (S.D.N.Y. 2001) ...............................................7, 8

*Hanyzkiewicz v. Allegiance Retail Servs., LLC,*
    No. 22-CV-4051, 2023 U.S. Dist. LEXIS 58489 (S.D.N.Y. Apr. 3, 2023) ...................7, 8, 9

*Harper & Row, Publishers, Inc. v. Nation Enterprises,*
    723 F.2d 195 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985) ...................19, 20

*Hines v. W. Chappell Music Corp.,*
    No. 20-CV-3535 (JPO), 2022 U.S. Dist. LEXIS 151760 (S.D.N.Y. Aug. 23, 2022) .............18

*IME WatchDog, Inc. v. Gelardi,*
    No. 22-CV-1032 (PKC) (JRC), 2024 U.S. Dist. LEXIS 177765 (E.D.N.Y. Sep. 30, 2024) ...12

*Integrated Cash Mgmt. Servs. v. Dig. Transactions, Inc.,*
    920 F.2d 171 (2d Cir. 1990) ...............................................12, 13, 14, 15

*Jamison Bus. Sys. v. Unique Software Support Corp.,*
    No. CV 02-4887 (ETB), 2005 U.S. Dist. LEXIS 45480 (E.D.N.Y. May 26, 2005) ..............20

*JBrick, LLC v. Chazak Kinder, Inc.,*
    No. 21-CV-02883 (HG) (RLM), 2023 U.S. Dist. LEXIS 168647 (E.D.N.Y. Sep. 21, 2023) .....................................................................21

*Kaye v. Grossman,*
    202 F.3d 611 (2d Cir. 2000) ...........................................................18

*Keybanc Capital Mkts., Inc. v. Extreme Steel, Inc.,*
    No. 23-cv-8535 (JSR), 2024 U.S. Dist. LEXIS 3047 (S.D.N.Y. Jan. 5, 2024) ......................18

*Lasky v. Quinlan,*
    558 F.2d 1133 (2d Cir. 1977) ..........................................................6, 7, 9

*Lennon v. Seaman,*
    63 F. Supp. 2d 428 (S.D.N.Y. 1999) ...............................................20

*LivePerson, Inc. v. 24/7 Customer, Inc.,*
    83 F. Supp. 3d 501 (S.D.N.Y. 2015) ...............................................12

*Lynch v. City of New York,*
    952 F.3d 67 (2d Cir. Mar. 4, 2020) .................................................5

*Mandarin Trading Limited v. Wildenstein,*
   2011 NY Slip Op 741, 944 N.E.2d 1104 (N.Y. 2011)......................................................22, 23

*Miller v. Holtzbrinck Publishers LLC,*
   377 F. App'x 72 (2d Cir. 2010) ..............................................................................................20

*New York v. Scalia,*
   464 F. Supp. 3d 528 (S.D.N.Y. 2020).......................................................................................9

*Norales v. Acevedo N.Y.P.D.,*
   No. 21-549, 2022 U.S. App. LEXIS 35639 (2d Cir. Dec. 27, 2022).....................................11

*Quadrille Wallpapers & Fabric, Inc. v. Pucci,*
   No. 1:10-CV-1394, 2011 U.S. Dist. LEXIS 95457 (N.D.N.Y. Aug. 24, 2011) .....................19

*Ranieri v. Adirondack Development Group, LLC,*
   164 F. Supp. 3d 305 (N.D.N.Y. 2016)....................................................................................20

*Russian Sch. of Mathematics, Inc. v. Sinyavin,*
   No. 23-CV-08103 (PMH), 2023 U.S. Dist. LEXIS 188622 (S.D.N.Y. Oct. 18, 2023)...........19

*Salazar v. NBA,*
   No. 23-1147, 2024 U.S. App. LEXIS 25902 (2d Cir. Oct. 15, 2024) ......................................5

*SEC v. Prudential Securities, Inc.,*
   329 U.S. App. D.C. 10, 136 F.3d 153 (D.C. Cir. 1998) ...........................................................9

*Selmon v. Hasbro Bradley, Inc.,*
   669 F. Supp. 1267 (S.D.N.Y. 1987)........................................................................................18

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.,*
   2008 WL 166950 (N.D. Cal. Jan. 17, 2008) ..........................................................................15

*Sleppin v. Thinkscan.com, LLC,*
   55 F. Supp. 3d 366 (E.D.N.Y. 2014) .................................................................................17, 19

*Sperry v. Crompton Corp.,*
   2007 NY Slip Op 1425, 863 N.E.2d 1012 (N.Y. 2007)...........................................................22

*Structured Capitol Solutions, LLC v. Commerzbank AG,*
   177 F. Supp. 3d 816 (S.D.N.Y. 2016)................................................................................14, 15

*SYL Consulting LLC v. Cmty. USA II LLC,*
   No. 23-CV-1377 (CM) (KHP), 2024 U.S. Dist. LEXIS 16423 (S.D.N.Y. Jan. 30, 2024)......25

*U.S. v. Shkreli,*
   No. 15-cr-637 (E.D.N.Y. Sept. 11, 2018) ...............................................................................11

*United States v. American Society of Composers, Authors & Publishers*,
  341 F.2d 1003 (2d Cir. 1965)...........................................................................9

*United States v. Dist. Council of N.Y.C. & Vicinity of the United Bhd. of
  Carpenters & Joiners*,
  2002 U.S. Dist. LEXIS 24562 (S.D.N.Y. Dec. 22, 2002) .......................................9

*United States v. District Council of New York City*,
  2003 U.S. Dist. LEXIS 7638 (S.D.N.Y. May 6, 2003) ..........................................7

## Statutes

17 U.S.C. § 106 ...............................................................................................16

17 U.S.C. § 301 ...............................................................................................16

17 U.S.C. § 408 ...............................................................................................17

21 U.S.C. § 853 .................................................................................................4

## Rules

Fed. R. Civ. P. 71 ....................................................................................1, 5, 6, 7

## PRELIMINARY STATEMENT

Defendant Martin Shkreli's ("Shkreli") Motion to Dismiss ("Motion" or "Mot.") badly misconstrues the nature of Plaintiff PleasrDAO's ("Pleasr") Complaint to fit his version of this case, at times introducing purported facts that contradict the Complaint's well-pleaded allegations and relying on inapplicable legal principles.

In 2018, this Court ordered Shkreli to forfeit all interests in, and revenues derived from, the Wu-Tang Clan album *Once Upon a Time in Shaolin* (the "Album"). Shkreli improperly retained copies of the Album, streamed songs online, distributed the music to various individuals, and repeatedly threatened to share the music publicly, often in angry response to public postings by Pleasr about the Album. These actions devalued the Album, which derives its worth almost entirely from its novel status as artwork and music that was, by design, to be inaccessible to the public for decades. Pleasr's claims assert that Shkreli violated an order of forfeiture, misappropriated a trade secret, tortiously interfered with Pleasr's prospective economic advantages, was unjust enriched, and is liable under the doctrine of replevin. Shkreli's motion to dismiss (the "Motion") makes several arguments, each of which fails as a matter of law.

*First*, Shkreli argues that Pleasr lacks standing to enforce the Forfeiture Order. He, however, applies an overly restrictive rule of standing under Rule 71 of the Federal Rules of Civil Procedure. This argument also ignores the Complaint's allegations that the Forfeiture Order granted relief to nonparties like Pleasr who were essential participants in the transactions that gave rise to Shkreli's satisfaction of the criminal forfeiture judgment. Pleasr moreover easily satisfies the applicable zone of interests standard for Article III standing.

*Second*, Shkreli states that Pleasr's federal and state trade secret misappropriation claims fail because Pleasr failed to "plead a secret." This is a patently fact-based inquiry, and Shkreli addresses only a subset of the trade secret factors considered by courts, all of which Pleasr satisfies.

Among other things, Shkreli misconstrues the extent to which a trade secret can be known before it is no longer "secret" and improperly introduces factual questions regarding the extent of his dissemination of the Album and the contractual restrictions on his sharing the Album. The Complaint's allegations adequately allege that the Album is a trade secret.

*Third*, Shkreli argues that Pleasr's state law claims are preempted under the Copyright Act. Shkreli's argument ignores the gravamen of the rights that Pleasr seeks to protect—ownership of the exclusive copy of the Album. The uniqueness of the Album makes application of conventional copyright law principles untenable. Courts make clear that rights which are qualitatively different from those rights protected by the Copyright Act are not preempted.

*Finally*, Shkreli states that Pleasr failed to adequately plead its other state law claims. These arguments can also be readily disposed of because, in addition to these being fact-based inquiries, Shkreli: (i) applies the wrong legal standard for tortious interference with prospective economic advantage, and ignores the Complaint's allegations that Shkreli specifically targeted potential purchasers; (ii) cites to inapposite rules concerning the unjust enrichment claim, ignores the well-pleaded allegations that Shkreli has taken numerous actions that offend equity and good conscience, and incorrectly argues that the unjust enrichment claim is duplicative of Pleasr's other claims; (iii) applies an unsupportable construction of Pleasr's property rights in evaluating Pleasr's recovery of chattel/replevin claim.

As set forth in detail below, the Court should deny the Motion.

## **BACKGROUND**

Wu-Tang is one of the world's most famous hip-hop groups. (Compl. ¶ 12). From 2007 to 2013, Wu-Tang recorded *Once Upon a Time in Shaolin*, a secret 31-track album featuring guest appearances from notable musicians, celebrity actors, and professional athletes. (*Id.* ¶ 13). Consistent with their intent for the Album to be a historically unique musical compilation, the

- 2 -

Producers of the Album sold it adorned in an ornate, boxed set. (*Id.* ¶ 14). The ornate packaging included: (i) the only existing hard copy of the record album, burned onto a single, two-disc set; (ii) a hand carved, nickel and silver cased box set, comprised of three integrated nickel and silver boxes, housed by a larger leather box, all designed by the British Moroccan artist Yahya; (iii) a gold leafed certificate of authenticity; (iv) a pair of customized audio speakers; and (v) a 174-page leather-bound manuscript volume containing lyrics, credits and anecdotes on the production and recordings of each song. (*Id.* ¶ 15). According to the creators of the Album, it was intended as a protest to what they saw as the devaluation of music in the digital era. (*Id.* ¶ 16). Unlike conventional commercial album releases, Wu-Tang produced only one copy of the Album. That copy has never been publicly released. (*Id.* ¶ 17).

In September 2015, Shkreli bought the Album from the Producers for $2,000,000. (*Id.* ¶ 18). According to the Guinness Book of World Records, the Album was the most expensive musical work ever sold. (*Id.* ¶ 19). To effectuate the sale, the Producers and Shkreli executed a Purchase Agreement, dated September 3, 2015, (the "Original Purchase Agreement" or "OPA"), which imposed several restrictive covenants on Shkreli. Pursuant to the OPA, Shkreli was prohibited for eighty-eight years following the sale (the "88-Year Term") from duplicating, replicating, or exploiting the Album for any non-private reason other than for "exhibition or playing," or advertising or promoting the same, or from transferring or selling any portion of the Album without transferring the *entire* the Album and all corresponding rights and binding the transferee or purchaser to the same in writing. (*Id.* ¶¶ 20-22).

In 2017, a federal jury found Shkreli guilty on two counts of securities fraud and one count of conspiracy to commit securities fraud. (*Id.* ¶ 25). On March 26, 2018, this Court entered a judgment sentencing Shkreli to seven years in prison and requiring Shkreli to forfeit the proceeds

- 3 -

of his fraud and criminal activity up to $7,360,450 (the "Forfeiture Money Judgment"). (*Id.* ¶ 26). Because the Government could not directly trace all these proceeds and therefore recover them, the order of forfeiture contained in the judgment (the "Forfeiture Order") required Shkreli to forfeit his interest in, and all proceeds traceable to, five different "Substitute Assets" under 21 U.S.C. § 853(p)—including "the album 'Once Upon A Time in Shaolin' by the Wu Tang Clan"—up to the amount of the Forfeiture Money Judgment. (*Id.* ¶ 27). To preserve the Substitute Assets, the Forfeiture Order imposed several restrictions on Shkreli broadly prohibiting him from doing anything that would impair the value of the Substitute Assets. (*Id.* ¶ 28).

After Shkreli surrendered the Album to the United States, Pleasr acquired the Album in two transactions. In July 2021, it bought the physical asset and exclusive right to play the audio tracks from the United States Marshals Service ("USMS") for approximately $4,000,000. (*Id.* ¶ 29). In January 2024, it bought the copyrights in and exclusive right to exploit the recordings for approximately $750,000. (*Id.*). At all relevant times, Pleasr moved the Album by secure transport and/or kept it in a secure location, using armed security guards, secure entrance and exit points, continual video surveillance, oversight, and checks on the Album's condition. (*Id.* ¶ 30-31).

But Shkreli failed to forfeit all of his interests in the Album under the Forfeiture Order; instead, he retained copies. Indeed, on several occasions after Pleasr bought the Album, Shkreli broadcast it over his live stream, and/or boasted to his viewers that he had retained copies of the Album's data and files. For example, on April 13, 2024, a member of Pleasr posted a photo of the Album on X. (*Id.* ¶ 39). Shkreli commented on the post, stating among other things, "LOL i have the mp3s you moron[,]" "i literally play it in my discord all the time. you're an idiot[,]" and "this thread is about someone listening to a CD > 5000 people have . . . ." *Id.* Shkreli indicated that he was willing to email the Album's data and files to at least two commenters on the post, stating "i

can just upload the mp3s if you want? email addy?" and "just give me your email lol[.]" (*Id.* ¶ 40); On May 13, 2024, Shkreli appeared as a guest on a podcast and stated that he "burned the album and sent it to like, 50 different chicks," asking the host, "Do you know how many blowjobs that album got me? You think I didn't make a fucking copy of it? Are you joking?" (*Id.* ¶ 41). On May 14, 2024, Shkreli posted a screenshot of Pleasr's website to his X account with the caption "look out for a torrent im sick of this shit @PleasrDAO[,]" indicating that he would upload his copies for other X users to download. (*Id.* ¶ 42). In responding to a comment on this post, Shkreli wrote "ive already sent it to 50 ppl[.]" *Id*. *On June 9, 2024*, Shkreli purportedly hosted a "Wu Tang official listening party" on his X account in which he played music from the Album to potentially over 4,900 listeners. (*Id.* ¶ 43).

On June 10, 2024, Pleasr filed a six-count complaint against Shkreli seeking to enforce the Forfeiture Order under Rule 71 of the Federal Rules of Civil Procedure ("Rule 71") and alleging violations of the Defend Trade Secrets Act ("DTSA"), misappropriation of confidential information/trade secrets, tortious interference with prospective economic advantage, unjust enrichment, and recovery of chattel/replevin. (Compl. ¶¶ 55-108). On August 15, 2024, Shkreli filed the Motion.

## **ARGUMENT**

"To survive Rule 12(b)(6) dismissal, a complaint's factual allegations must 'state a claim to relief that is plausible on its face.'" *Salazar v. NBA*, No. 23-1147, 2024 U.S. App. LEXIS 25902, at *21 (2d Cir. Oct. 15, 2024) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The court, in deciding a Rule 12(b)(6) motion to dismiss a complaint, is required to accept all 'well-pleaded factual allegations' in the complaint as true." *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. Mar. 4, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679. Each of Plaintiff's claims satisfy this liberal pleading standard.[1]

## I. The Complaint Alleges Facts Sufficient to Demonstrate Pleasr's Standing to Enforce the Forfeiture Order.

Shkreli wrongly argues that Pleasr "lacks standing to enforce the Forfeiture Order" due to an incorrect reading of Rule 71 jurisprudence. Rule 71 provides that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." The requirements for a nonparty to compel compliance with an order are that the order "grant relief" to the nonparty, and that the nonparty's claim falls within the "zone of interests" contemplated by the order sufficient to confer Article III standing. Shkreli argues for an unduly narrow legal construction of the relief requirement, contending that a nonparty may not enforce an order unless it is specifically named or identified in the order. Mot. at 5-6. Shkreli also ignores the express and implicit benefits bestowed on Pleasr connected with forfeiture and sale of the Album. The Forfeiture Order and sale transaction make clear that the Forfeiture Order granted relief to Pleasr and that Pleasr has Article III standing to sue.

### A. The Motion Applies the Wrong Legal Standard in Determining When an Order Grants a Nonparty Relief.

Cases in this circuit support a broad interpretation of Rule 71 that encompasses parties who benefit from an order or are otherwise part of a class protected by the order. They recognize that Rule 71 was designed to provide and enhance rights, not unreasonably take them away. The Second Circuit liberally treats the requirements under Rule 71 and does not require an order to specifically name the nonparty. *Lasky v. Quinlan*, 558 F.2d 1133, 1137 (2d Cir. 1977) stated "that Rule 71 was intended to assure that process be made available to enforce court orders in favor of

---

[1] Should the Court determine that Pleasr fails to state any of its claims, Pleasr also respectfully seeks leave to amend the Complaint to remedy those deficiencies.

and against persons who are properly affected by them, even if they are not parties to the action." 558 F.2d at 1137. *Berger v. Heckler*, 771 F.2d 1556 (2d Cir. 1985) held that the plaintiff-intervenors "properly sought to enforce obedience to a prior order made in their favor" because the consent decree "provided benefits to non parties." 771 F.2d at 1565. [2] The court reasoned that the decree provided "for a particular construction" of the Social Security Act that "benefits innumerable applicants who will be entitled to SSI [supplemental security income] pursuant to a decree," and, "as a practical matter," an order cannot name all "past, present and future" beneficiaries of an order when it benefits *a class* of nonparties. 771 F.2d at 1565. *United States v. District Council of New York City*, 2003 U.S. Dist. LEXIS 7638 (S.D.N.Y. May 6, 2003) found the relief inquiry satisfied because the intervenor's interests as a union carpenter fell "within the 'zone of interests' sought to be protected by" a consent decree that affected the manner in which carpenters were appointed jobs. 2003 U.S. Dist. LEXIS 7638, at *7. *Calderon v. Wambua*, 2012 U.S. Dist. LEXIS 46193 (S.D.N.Y. Mar. 28, 2012) held that the intervenor had standing to enforce a consent decree merely because it received "the type of . . . services covered by" the consent decree. 2012 U.S. Dist. LEXIS 46193, at *20-21.

Shkreli parses two opinions to construct an overly restrictive view of Rule 71. He correctly states that Rule 71 "allows nonparties to move to enforce court orders . . . only '*when they are the intended beneficiaries*'" of the order. Mot. at 6 (quoting *Hanyzkiewicz v. Allegiance Retail Servs., LLC*, No. 22-CV-4051, 2023 U.S. Dist. LEXIS 58489, at *9 (S.D.N.Y. Apr. 3, 2023) (citing *EEOC v. Int'l. Assn. of Bridge, Structural & Ornamental Ironworkers, Local 580*, 139 F. Supp. 2d 512, 520 (S.D.N.Y. 2001) (hereinafter "*Local 580*"))). He misconstrues the term "intended

---

[2] *Berger* interprets the pre-2007 language of Rule 71, which states that a nonparty could enforce obedience to an order when the "order is made *in favor of* a person who is not a party to the action[.]" The Advisory Committee noted that this language was amended to the modern "grants relief" formulation for "stylistic" reasons only. Fed. R. Civ. P. 71 advisory committee's note to 2007 amendment.

beneficiaries" to mean that the party must be "a named party" to the order. *Id.* Shkreli's restrictive interpretation is unsupported by every Second Circuit Rule 71 case employing the "intended beneficiary" language.

In *Local 580*, a class of union members moved to hold their union in contempt for failing to comply with provisions of a consent judgment and two related orders enjoining the union from engaging in discriminatory practices against non-white workers. 139 F. Supp. 2d at 517-18. The court stated that a non-party "may enforce obedience to a court's order if he is an intended beneficiary of the order and if he has standing, i.e. if his complaint comes within the zone-of-interests protected by the order." *Id.* at 520-21. It then held that the intervenors could enforce the consent judgment because it, and related orders, were "intended to benefit all present and future non-white members of Local 580, a class which includes the moving parties." *Id.* at 521. Neither the consent judgment nor the related orders named the plaintiffs as intended beneficiaries. *Id.* at 525 n.10.

*Hanyzkiewicz* also addressed the enforcement of a consent decree concerning the defendant's remediation to a website under the Americans with Disabilities Act. There, an individual purporting to represent a class of visually impaired people brought claims against a website owner for the defendant's alleged failure to implement certain accessibility features. Noting that the plaintiff *could* have sought enforcement of the consent decree under Rule 71, the court cited *Local 580* and similarly stated that Rule 71 allows nonparty enforcement "when they are intended beneficiaries and when they have standing to intervene under the zone-of interest test." 2023 U.S. Dist. LEXIS 58489, at *9. The court found that the plaintiff was an intended beneficiary of the decree because that plaintiff was "a person who is visually impaired seeking to

enforce rights under a . . . [decree] for the benefit of the visually impaired and federal disability rights law[.]" *Id.*

## B. PleasrDAO has Article III Standing under the Zone of Interests Test to Seek Enforcement of the Forfeiture Order.

Shkreli's argument that Pleasr's claims fall "far outside the zone of interests protected by a forfeiture order in an entirely separate criminal proceeding" is equally misguided. Mot. at 7. The fundamental purpose of the zone-of-interests test is to determine whether the relevant party has Article III standing to sue. *See Lasky*, 558 F.2d at 1137; *see also United States v. Dist. Council of N.Y.C. & Vicinity of the United Bhd. of Carpenters & Joiners*, 2002 U.S. Dist. LEXIS 24562, at *22 (S.D.N.Y. Dec. 22, 2002). The "zone-of-interests test is not meant to be especially demanding" and only requires that the party's claims hinge on interests that are more than "marginally related to or inconsistent with the purposes implicit" in the order such that it can "reasonably be assumed" that the issuing court "intended to permit the suit." *New York v. Scalia*, 464 F. Supp. 3d 528, 547 (S.D.N.Y. 2020). Pleasr seeks to enforce the provisions of the Forfeiture Order that directly affect its interests in the Album, therefore placing PleasrDAO's request for an order seizing or destroying Shkreli's retained copies of the Album squarely within the "zone-of-interests protected by the order." (Compl. ¶ 64). Shkreli presents inapposite caselaw and factual arguments.

*First*, Shkreli argues that "plaintiffs are ineligible to enforce prior orders when their enforcement effort 'evolves from a private controversy between [the parties] over a matter that does not directly concern the United States.'" *Id.* citing *United States v. American Society of Composers, Authors & Publishers*, 341 F.2d 1003, 1007 (2d Cir. 1965) (*"ASCAP"*). This case *does* directly concern the United States since Pleasr seeks to enforce a Forfeiture Order to which the United States is a party and maintains enforcement power. Moreover, "the fact that the government is involved is not in itself fatal to a third party enforcement action." *See SEC v.*

*Prudential Securities, Inc.*, 329 U.S. App. D.C. 10, 136 F.3d 153, 158 (D.C. Cir. 1998); *accord Crum v. Ala. (In re Emp't Discrimination Litig.)*, 213 F.R.D. 592, 600 (M.D. Ala. 2003). *ASCAP's* holding is also limited to orders based "upon sections of the anti-trust laws which afforded a right of remedy only to the Government."

*Second*, Shkreli argues that the Complaint fails to allege that Pleasr was named in the Asset Purchase Agreement ("APA") executed by the USMS to sell the Album. *See* Mot. at 8. Pleasr's allegations that it purchased "the physical asset and exclusive right to play the audio tracks" Album in July 2021, the same time that the APA was executed, is sufficient to demonstrate that Pleasr purchased the Album from the USMS and that its enforcement claim thus falls within the zone-of-interests protected by the Forfeiture Order. *Compare* Compl. ¶ 29; *with* Mot. at 3. Shkreli's argument, at best, raises a factual question improper for resolution on a motion to dismiss.

### C. The Forfeiture Order Granted Pleasr Relief.

Shkreli wrongly asserts that "the "Forfeiture Order was entered in favor of the United States alone[.]" Mot. at 8. This narrow interpretation ignores the contemplated fact that there would be a buyer or buyers of certain Substitute Assets, and that, without a buyer, there would be no restitution funding. The criminal penalty could only be satisfied by an entity or entities providing monies under the terms of the forfeiture. Focusing on the USMS alone tells only half of the story.

The language in the Forfeiture Order and APA make clear that the Album was being sold under the existing restrictions that made the Album, the Album. The core purpose of the Forfeiture Order was to position the Substitute Assets so that they could be sold at maximum value to help satisfy Shkreli's Forfeiture Money Judgment. Absent the retention of the exclusivity, the Album could not have obtained anywhere near the price that it did. The Forfeiture Order ordered Shkreli to forfeit his interest in the Album and all resulting proceeds. (Compl. ¶ 27). It also enjoined him from taking "any action that would have the effect of diminishing, damaging and/or dissipating

the Substitute Assets" or "that would affect the availability, marketability or value of the Substitute Assets[,]" and required him to "take all reasonable steps,…to ensure that all the Substitute Assets are preserved and maintained in good and marketable condition, and are not damaged, diluted or diminished in value[.]" (*Id.* ¶ 28). These provisions remain operative today.[3]

The APA represented that Shkreli had forfeited all rights and interests he had in it. It states that the USMS sold the Album pursuant to its authority to "dispose of property ***forfeited*** to the United States," and that Shkreli had "***forfeited all of his right, title, and interest*** in 'the album *Once Upon a Time in Shaolin* by the Wu Tang Clan' . . . as well as proceeds traceable thereto" under the Forfeiture Order. ECF No. 4-15 at 62. The APA went even further, stating that the USMS assigned to the purchaser "any of the 'Buyer's' rights under the [OPA] ***forfeited by Shkreli***[.]" *Id.* at 63. This encompassed all the rights and restrictions that Shkreli had when he bought the Album. *See* ECF No. 4-3 at 6-7; *infra* Sec. II.A. These provisions were an integral and essential part of the sale.

Shkreli fails to address the Forfeiture Order or the APA's express provisions, instead merely concluding that "the Forfeiture Order did not indicate that it intended any third parties to be beneficiaries to its terms." Mot. at 6. As explained, the absence of explicit identification of third-party beneficiaries is not dispositive. Despite citing to the APA at length, Shkreli fails to mention that it represented that Shkreli's forfeiture of all rights and interests in the Album were part of the transaction and enhanced the Album's value.[4]

---

[3] *See* Final Order of Forfeiture at 4, *U.S. v. Shkreli*, No. 15-cr-637 (E.D.N.Y. Sept. 11, 2018), ECF No. 680 ("Except as otherwise provided herein, the Preliminary Order shall remain in effect and be deemed final[.]")

[4] The Complaint references the OPA and thus incorporates the OPA by reference. *See Norales v. Acevedo N.Y.P.D.*, No. 21-549, 2022 U.S. App. LEXIS 35639, at *3-4 (2d Cir. Dec. 27, 2022). Though the Complaint does not expressly reference the APA, it is integral to PleasrDAO's claims, as it describes the conditions on which Pleasr relied in purchasing the Album, and is thus properly considered on a motion to dismiss. *See Norales*, 2022 U.S. App. LEXIS 35639, at *4.

Thus, the potential and actual buyers of the Album, including Pleasr, were among the intended beneficiaries of the Forfeiture Order. The rights and obligations that came with the purchase of Album forfeited by Shkreli were incorporated in the sale document. Recognizing Pleasr as such an intended beneficiary of the Forfeiture Order not only comports with the dictates of the sale, but also upholds the integrity of the process. It assures that buyers in forfeiture sales can rely on the government's representations and have recourse in the event they are not honored.

The Complaint thus sufficiently alleges that Pleasr has standing to enforce the Forfeiture Order under FRCP 71.

## II.     The Complaint Alleges Facts Sufficient to State its Trade Secret Claims.

The Court should reject Shkreli's argument that Pleasr's trade secret claims "must be dismissed for lack of a 'secret.'" Mot. at 8. "New York courts typically consider the following six factors in determining whether information qualifies as a trade secret under either the DTSA or state law:"

> (1) The extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*IME WatchDog, Inc. v. Gelardi*, No. 22-CV-1032 (PKC) (JRC), 2024 U.S. Dist. LEXIS 177765, at *17-18 (E.D.N.Y. Sep. 30, 2024) (quoting *Integrated Cash Mgmt. Servs. v. Dig. Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990)). "These factors are guideposts, not elements, and it is not necessary to plead every single factor to state a claim." *Id.* (quoting *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 514 (S.D.N.Y. 2015)). And, as a case Shkreli cites acknowledges, "the determination of whether a trade secret exists is often a question of fact." *Bear,*

*Stearns Funding, Inc. v. Interface Grp. -- Nev., Inc.* ("*Bear Stearns*"), 361 F. Supp. 2d 283, 305 (S.D.N.Y. 2005).

Shkreli's argument, which only addresses half of the *Integrated Cash* factors, incorrectly suggests that the Album (i) could be easily acquired by others because of a purported lack of contractual restrictions on distribution; and (ii) is known in and outside of the industry because Shkreli himself did not maintain its secrecy. In so arguing, Shkreli again misreads the documents, and introduces "facts" not found in the Complaint.

### A.  The Album Cannot be Easily Acquired or Duplicated by Others (*Integrated Cash* Factor 6).

The Court should reject Shkreli's argument that the Album is not a trade secret because he "was expressly authorized to disclose the information in limited circumstances, to an unlimited number of parties." Mot. at 10. That is not the law, and Shkreli's factual claims are contradicted by the Complaint and the OPA.

Shkreli points to *Bear Stearns*, in which the court found that certain confidential information related to a loan securitization was not a trade secret because "of the ease with which any capital market purchaser of the security could acquire and distribute the information." 361 F. Supp. 2d at 305. There, any third party "who purchased other interests in the Loan [through a securitization] are entitled to access to the allegedly confidential information." *Id.* Shkreli also leans on *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495 (S.D.N.Y. 2017), which held that the plaintiff seeking a preliminary injunction failed to demonstrate that it was likely to succeed on the merits of its DTSA claim because the plaintiff alleged it had distributed the software components without requiring users to preserve their secrecy through a confidentiality provision in accompanying user agreements. *See* 280 F. Supp. 3d at 523. Purporting to analogize these cases, Shkreli asserts that he "was permitted to share, copy, and publicly use the" Album under his

original agreement, giving him the unfettered ability to "divulge[e] the so-called 'secret' to third parties." Mot. at 8, 11. These claims are contracted by the Complaint's well-pleaded allegations, and reality, however.

The Complaint detailed how the OPA unambiguously prohibited Shkreli from "duplicating, replicating, or exploiting the Album for any reason other than for exhibition or playing" in private spaces. (Compl. ¶ 20). Shkreli could only "duplicate or replicate the Work for *private use*," and could not, *inter alia,* duplicate, replicate, or exploit the Work for any purpose "by any means today known or that come to be known during" the 88-Year Term other than the "*exhibition or playing of the Work*" in spaces "*not customarily used as venues for large musical concerts.*" OPA at 6-7. Shkreli also only had "[t]he right to *sell the Work* to a third party *under the same terms and conditions* as described herein[.]" *Id.* at 7.

The OPA thus did not give Shkreli the right to duplicate or transfer the Album, except under certain narrow circumstances. These restrictions are consistent with the producers' intent to keep the Album a trade secret and render it inaccessible to others.

### B. The Album is Not Known in or Outside the Industry (*Integrated Cash Factors 1 and 2).*

Shkreli also wrongly argues that it is evident from the pleadings that the Album is not a trade secret because Shkreli himself "did not maintain such secrecy[.]" Mot. at 11-12. The Complaint alleges that the "Album is confidential and proprietary[,]" and that the "contents of the Album's data and files remain unknown to the public at large." (Compl. ¶¶ 24, 79). Shkreli cannot introduce his own facts, which will need to be ultimately borne out after discovery, and evaluated in light of Shkreli's credibility.

Shkreli relies on *Structured Capitol Solutions, LLC v. Commerzbank AG ("Structured Capitol Solutions")*, 177 F. Supp. 3d 816, 832 (S.D.N.Y. 2016), for the irrelevant proposition that

"[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." There, unlike here, the *plaintiff* disclosed its purported trade secret to the defendant, who in turn disclosed it to others. But Pleasr has not disclosed the entire Album to anybody, rendering *Structured Capitol Solutions* inapposite.

Shkreli also baselessly relies on *Structured Capitol Solutions* for the proposition that dismissal is appropriate "where the information was disclosed under a non-disclosure agreement with only a limited duration." Mot. at 11 (citing *id.*). Nothing similar occurred here. The relevant time duration on the OPA was 88-years, in stark contrast to the one-year NDA period in *Structured Capitol Solutions,* or the other short periods in Shkreli's other cited, non-binding cases. *See Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2008 WL 166950, at \*17 (N.D. Cal. Jan. 17, 2008) ("two or three years"); *DB Riley, Inc. v. AB Eng'g Corp.*, 977 F. Supp. 84, 91 (D. Mass. 1997) ("ten years"); *ECT Int'l, Inc. v. Zwerlein*, 597 N.W.2d 479 (D. Wis. 1999) (one year).

### C. The Complaint Satisfies *Integrated Cash* Factors 3-5.

The Motion fails to address the remaining *Integrated Cash* factors—the extent of measures taken by the business to guard the secrecy of the information, the value of the information to the business and its competitors, and the amount of effort or money expended by the business in developing the information. The Album satisfies all these criteria.

*First,* to guard the secrecy of the Album, Pleasr "moved the Album by secure transport and/or kept [it] in a secure location" at all relevant times, (Compl. ¶ 30), and "use[d] . . . armed security guards, secure entrance and exit points, and continual video surveillance, oversight and checks on the Album's condition," (*id.* ¶ 31). *Second*, the Album's value depends almost entirely on the exclusivity of the data and files. (*Id.* ¶ 71). Unlike normal music distribution, the value rests on it having *not* been heard by the public. Pleasr's business model is built on "collect[ing] and

publicly display[ing] culturally significant media and materials," such as the Album, and dissemination to competitors would be extremely damaging. (*Id.* ¶¶ 8, 18, 29). *Finally*, while Pleasr did not develop the Album, it paid a significant amount of money in procuring it. (*Id.* ¶ 29). Pleasr spent $4,750,000 on the Album, making its value to Pleasr substantial. (*Id.*)

The Complaint thus alleges facts sufficient to state a claim under the DTSA and common law misappropriation of trade secrets.

### III.    The Complaint Demonstrates that Pleasr's Common Law Claims are not Preempted by the Copyright Act.

The Court should also reject Shkreli's argument that three of Pleasr's four state law claims—Tortious Interference with Prospective Economic Advantage, Unjust Enrichment, and Recovery of Chattel/Replevin—are preempted by the Copyright Act. Shkreli incorrectly contends that "when a Plaintiff seeks to protect their alleged interests in a piece of artistic work under theories of state law, it is clear that the specific right they are trying to enforce is protected by the Copyright Act." Mot. at 12. Shkreli's cases do not support this overly-broad, simplistic apprehension of the Copyright Act. Shkreli wholly misconstrues the nature of the artwork at issue and the rights Pleasr seeks to protect.

"The Copyright Act exclusively governs a claim when . . . [*inter alia*] the claim seeks to vindicate legal or equitable rights that *are equivalent* to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) (citing 17 U.S.C. § 301) (emphasis added). A state claim is preempted by the Copyright Act only if it does "not include any extra elements that make it qualitatively different from a copyright infringement claim." *Id*. To determine whether a claim is qualitatively different, courts look to "what [the] plaintiff seeks to protect, the theories in which

the matter is thought to be protected and the rights sought to be enforced." *Id.* at 306 (quoting *Comput. Assocs. Int'l v. Altai*, 982 F.2d 693, 716 (2d Cir. 1992)).

Each of Pleasr's state law claims is premised on the fact that Shkreli's improper acts have diminished the overall value of the Album. Pleasr does not seek royalties or revenue from a "reproduction, adaptation, performance, distribution or display" of songs on the Album. Pleasr's right to the exclusive ownership of those recordings and musical compositions—including the right to keep them secret—is qualitatively and fundamentally different than the basic rights commonly protected through the Copyright Act. *See, e.g.*, *Comput. Assocs. Int'l*, 982 F.2d at 719 (trade secret claims based solely upon "use" and "copying" are not preempted where use simultaneously violated "a duty of confidentiality established by state law"); *Sleppin v. Thinkscan.com, LLC*, 55 F. Supp. 3d 366, 376 (E.D.N.Y. 2014) (no preemption where trade secret claim based on the misappropriation or "confidential materials" "not available to the public" that "no other company or person [aside from plaintiff's employees] had access" to them);

The fundamental difference between the nature the Album and the coverage under the Copyright Act is particularly evident by Pleasr's inability to register the Album with the Copyright Office. Pursuant to 17 U.S.C. § 408, a party seeking to register an unpublished musical work with the Copyright Office must deposit a "complete copy or phonorecord" with the Copyright Office that is accessible at the Library of Congress. Such depositing would immediately undercut the point and worth of the Album.

Accordingly, the state claims are not preempted.

### A. Pleasr's Unjust Enrichment Claim Seeks to Vindicate Non-Copyright Equivalent Rights.

Unjust enrichment claims are not preempted where, as here, "defendants have been unjustly enriched by material beyond copyright protection." *Am. Movie Classics Co. v. Turner*

*Entm't Co.*, 922 F. Supp. 926, 934 (S.D.N.Y. 1996) (citing *Selmon v. Hasbro Bradley, Inc.*, 669 F. Supp. 1267, 1273 (S.D.N.Y. 1987)); *accord Hines v. W. Chappell Music Corp.*, No. 20-CV-3535 (JPO), 2022 U.S. Dist. LEXIS 151760, at *7 (S.D.N.Y. Aug. 23, 2022). Here, Shkreli has been unjustly enriched by keeping unauthorized property that rightfully belonged to Pleasr, thus undercutting the Album's value.

The elements of unjust enrichment are "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Keybanc Capital Mkts., Inc. v. Extreme Steel, Inc.*, No. 23-cv-8535 (JSR), 2024 U.S. Dist. LEXIS 3047, at *10 (S.D.N.Y. Jan. 5, 2024) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). Shkreli committed acts that satisfy all of the requisite elements. Shkreli benefited by improperly retaining copies of the music, leading to increased viewership on his social media cites and financial gain. (Compl. ¶¶ 90, 97-98). This benefit came at Pleasr's expense, as there is supposed to be only one copy of the music. (*Id.* ¶ 100). Equity and good conscience weigh heavily against Shkreli as he had no right to retain copies post-forfeiture. (*Id.* ¶ 101).

Pleasr's unjust enrichment claim is wholly distinct from the unjust enrichment claims in the cases Shkreli cites. *Briarpatch Limited* held that a plaintiff's unjust enrichment claim was preempted by the Copyright Act where it sought to enforce the "right to prepare or authorize preparation of a derivative work based on a novel or screenplay." 373 F.3d at 306-307. *Adina's Jewels, Inc. v. Shashi, Inc.*, 442 F. Supp. 3d 766 (S.D.N.Y. 2020), held that a plaintiff's unjust enrichment claim was preempted by the Copyright Act where the complaint alleged that the defendant had been "enriched by selling jewelry that is either identical or nearly identical to jewelry designed by" the plaintiff. 442 F. Supp. 3d at 771-73 (holding, without further analysis,

that the Copyright Act preempted the claim because the complaint "simply" alleged harms arising from "alleged copying.").

### B. Pleasr's Tortious Interference Claim Seeks to Vindicate Non-Copyright Equivalent Rights.

Tortious interference claims are also not preempted in that they are qualitatively different than a Copyright Act claim. *See e.g.*, *Russian Sch. of Mathematics, Inc. v. Sinyavin*, No. 23-CV-08103 (PMH), 2023 U.S. Dist. LEXIS 188622, at *9 (S.D.N.Y. Oct. 18, 2023) (no preemption where tortious interference of contract claims were premised on the allegation that defendant induced plaintiff's contractual partner to breach their contract); *Sleppin*, 55 F. Supp. 3d at 376 (no preemption of tortious interference of business relations claim where defendants disparaged plaintiffs reputation by making negative remarks about it to its clients); *Quadrille Wallpapers & Fabric, Inc. v. Pucci*, No. 1:10-CV-1394 (LEK/DRH), 2011 U.S. Dist. LEXIS 95457, at *19 (N.D.N.Y. Aug. 24, 2011) (finding that tortious interference with business relations claims were not preempted where grounded in an alleged breach of duty of confidentiality).

Pleasr's tortious interference claim is materially different from a Copyright Act claim because it also seeks to vindicate Pleasr's rights in connection with Shkreli's interference with Pleasr's customers. The claim is premised on Shkreli's communications to potential purchasers of the Album that he had copies of the Album. (Compl. ¶¶ 36-40). Pleasr alleged that this retention and threatened dissemination "diminished the value of the Album in any future use, sale, or transaction." (Compl. ¶ 90). Thus, Pleasr's tortious interference claim scenario is markedly distinct from the fact patterns in the preemption cases cited by Shkreli. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985), held that a plaintiff's tortious interference with contractual relations claim was preempted where it sought to vindicate the plaintiff's "pre-book publication serialization rights," deemed equivalent

to the exclusive right of preparing derivative works. 723 F.2d at 201. *Ranieri v. Adirondack Development Group, LLC*, 164 F. Supp. 3d 305 (N.D.N.Y. 2016), held that a plaintiff's tortious interference with an economic advantage claim was preempted where it "depend[ed] on Plaintiff's allegations that his designs were used and modified without his permission, he did not receive full compensation for their use, and his name and seal were removed from the final designs." 164 F. Supp. 3d at 357. Finally, *Miller v. Holtzbrinck Publishers LLC*, 377 F. App'x 72 (2d Cir. 2010), held that a plaintiff's tortious interference claim was preempted where its theory of interference was premised on the defendant's publishing of plaintiff's book without the plaintiff's authorization or credit to her.

### C. Pleasr's Replevin Claim Seeks to Vindicate Non-Copyright Equivalent Rights.

Pleasr's recovery of chattel/replevin claim addresses Shkreli's possession of Pleasr's chattel. *See infra* Sec. VI. Claims addressing the possession and control of chattel are "qualitatively different from those proscribed by copyright law, and . . . therefore are not subject to preemption." *Harper & Row, Publrs., Inc.*, 723 F.2d at 201; *Jamison Bus. Sys. v. Unique Software Support Corp.*, No. CV 02-4887 (ETB), 2005 U.S. Dist. LEXIS 45480, at *41 (E.D.N.Y. May 26, 2005) (holding that replevin claim was not preempted by the Copyright Act); *Lennon v. Seaman*, 63 F. Supp. 2d 428, 436 (S.D.N.Y. 1999) ("Where a state law claim is based on interference with tangible property rather than the intangible copyrights, the claim is not the equivalent of rights protected by the copyright laws."). This claim is thus not preempted, as it is centered on Shkreli's wrongful "retention" of Pleasr's property. (Compl. ¶¶ 104-107).

### IV.    The Complaint Alleges Facts Sufficient to State a Claim of Tortious Interference with Prospective Economic Advantage.

The Court should reject Shkreli's claims that Pleasr has failed to state a claim for Tortious Interference because the Complaint does not allege that (i) Defendant was "motivated solely by

malice," as opposed to economic self-interest, and (ii) "defendant targeted some specific activities toward a specific third party and convinced that specific third party not to enter into a business relationship with the plaintiff." Shkreli is wrong on the law and the facts.

A plaintiff bringing a claim for tortious interference with prospective economic advantage under New York law must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *JBrick, LLC v. Chazak Kinder, Inc.*, No. 21-CV-02883 (HG) (RLM), 2023 U.S. Dist. LEXIS 168647, at *12 (E.D.N.Y. Sep. 21, 2023).

None of the cases that Shkreli cites stand for the proposition that a party must allege that a defendant acted "solely out of malice." A plaintiff need only show that the defendant "intentionally engaged in acts wrongful by some measure other than the fact of the interference itself which are designed to disrupt an economic relationship." *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 337 (E.D.N.Y. 2014). Here, the Complaint alleges numerous ways in which Shkreli's conduct was wrongful and malicious.

The Complaint alleged that Shkreli acted solely out of malice by surreptitiously possessing and using the Album, and threatening dissemination and/or sale of interests in the Album. Among other things, the Complaint alleged that Shkreli (i) repeatedly threatened in social media posts to publicly disseminate copies of the Album while tagging Pleasr and posting a screenshot of Pleasr's website (Compl. ¶ 42); (ii) played music from the Album on social media in response to Pleasr's social media activity (*id*. ¶ 43); and (iii) publicly feuded with Wu-Tang (*id*. ¶¶ 47-48).

The Complaint also alleged that Shkreli directed his wrongful conduct at specific third parties with which Pleasr had prospective business relations. For example, the Complaint alleged

Shkreli directly contacted individuals who expressed interest in the Album on Pleasr's social media page and told them that he would send them the Album instead. (*Id.* ¶¶ 39-40) ("just give me your email lol."; "I can just upload the mp3s if you want? email addy?"). More generally, by tagging Pleasr's social media post about the album and stating he would instead play the album on a live stream, Shkreli intentionally targeted those individuals who otherwise would have had prospective business relations with Pleasr. (*Id.* ¶¶ 42-43).

The Complaint thus alleges facts sufficient to state a claim of tortious interference with prospective economic advantage.

## V.    The Complaint Alleges Facts Sufficient to State a Claim of Unjust Enrichment.

The Court should reject Shkreli's meritless arguments that (i) the relationship between himself and Pleasr is too attenuated for Pleasr to have a colorable unjust enrichment claim, Mot. at 17, and (ii) that the unjust enrichment claim is duplicative of Pleasr's other claims. Mot. at 19.

Shkreli's reliance on *Sperry v. Crompton Corp.*, 2007 NY Slip Op 1425, ¶ 2, 863 N.E.2d 1012 (N.Y. 2007), is unavailing. There, the court held that claims against a chemical company that were brought by a class of consumers who had bought automobile tires, were too attenuated. The class alleged that "defendants entered into a price-fixing agreement, overcharging tire manufacturers for the chemicals, and that the overcharges trickled down the distribution chain to consumers." 863 N.E.2d at 1014. Shkreli also cites *Mandarin Trading Limited v. Wildenstein*, 2011 NY Slip Op 741, ¶ 6, 944 N.E.2d 1104 (N.Y. 2011), where the court ruled that the connection between the parties was too attenuated, in part, because the complaint failed to allege that the defendant was even aware of the plaintiff's existence. *See* 944 N.E.2d at 1111.

Pleasr's relationship with Shkreli bears no resemblance to the relationships in those cases. Shkreli not only knew of Pleasr, but purposefully retained and streamed the Album's tracks to

antagonize and harm Pleasr. (Compl. ¶¶ 39-43). Shkreli clearly knew what he was doing was wrong, as the OPA prohibited Shkreli from making copies of the Album for anything other than his private use, and required him to bind any transferee of the Album by written agreement to the same restrictions. (*Id.* ¶¶ 20-22). By entering this agreement, Shkreli agreed to preserve the sanctity of the Album's secrecy, in part, for the benefit of future buyers like Pleasr.

Shkreli's further suggestion that a buyer must "apprise itself of publicly disclosed information related to the purchased assets" to adequately plead a claim of unjust enrichment is empty. Mot. at 17-18 (citing *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 339 (2d Cir. 2011)). There is no such standard, especially on a motion to dismiss. The Complaint also does not allege that Shkreli made any public statements between the date of Forfeiture Order and Pleasr's purchase indicating that he had retained copies of the Album, transmitted audio of the tracks over his streaming platforms, and/or distributed the tracks. Accordingly, there was no public information for Pleasr should have, even if it were a requirement.

Shkreli's argument that the Complaint alleges "no facts that support a finding that Defendant's retaining copies of the [Album] after Plaintiff's purchase of the Engraved Box offends equity and good conscience" is, frankly, absurd. Pleasr did not buy just the "Engraved Box." Shkreli's retention of copies not only violated the Forfeiture Order, it violated all notions of equity and good conscience. Shkreli secretly did so to maliciously harm Pleasr and benefit himself. (Comp. ¶¶ 33-45). Permitting Shkreli to retain copies of the Album plainly offends equity and good conscience, as Pleasr purchased the Album at a high price and in a good faith belief that Shkreli had properly forfeited all copies.

Lastly, Pleasr's unjust enrichment claim is not duplicative of Pleasr's other claims because it does not "arise from arise from the same facts," and alleges "distinct damages," from those other

claims. *Bates v. Abbott Labs.*, No. 1:23-CV-387 (FJS/CFH), 2024 U.S. Dist. LEXIS 57270, at *63-64 (N.D.N.Y. Mar. 29, 2024). The unjust enrichment claim seeks disgorgement of Shkreli's unjust enrichment by virtue of his "increased viewership" on his social media platforms and any attendant profits flowing from the increased viewership. (Compl. ¶¶ 98; 102). The tortious interference claim, in contrast, seeks damages for the lost business relationships because of Shkreli's malicious communications with Pleasr's potential purchasers. (*Id.* ¶¶ 40-43; 92; 95). The recovery of chattel/replevin claim seeks the permanent forfeiture of Shkreli's copies of the Album (*Id.* ¶ 108).

For the foregoing reasons, the Complaint alleges facts sufficient to state a claim for unjust enrichment.

## VI.    The Complaint Alleges Facts Sufficient to State a Claim for Replevin/Recovery of Chattel.

Finally, the Court should reject Shkreli's argument that Pleasr's replevin claim fails because Pleasr was never "in possession of" Shkreli's copies of the Album and has "never been deprived of" the Album. Mot. at 18-19. Shkreli's argument is based on the faulty premise that the Copyright Act preempted Pleasr's replevin claim "to the extent it relates to the intangible aspects" of the Album, and the faulty conclusion that Pleasr must have possessed the copies to have a property right in them. As noted, the replevin claim is not preempted, *see supra* Section III.C, and Pleasr alleges facts sufficient to state a claim for replevin of Shkreli's copies of the Album.

"To state a claim for replevin, the claimant must establish two elements: 1) that it has a possessory right to property superior to that of the party currently in possession of the property; and 2) that it is entitled to the immediate possession of that property. *SYL Consulting LLC v. Cmty. USA II LLC*, No. 23-CV-1377 (CM) (KHP), 2024 U.S. Dist. LEXIS 16423, at *7-8 (S.D.N.Y. Jan. 30, 2024). The Complaint alleges both of these elements. (Compl. ¶¶ 29, 104) (Pleasr bought Shkreli's rights to the Album, including the right to own the only copy of the Album); (*id.* ¶¶ 32-

46, 105) (Shkreli has no possessory right to the copies because he forfeited all "interest" in the Album under the Forfeiture Order).

Shkreli baselessly suggests that Pleasr cannot sustain a replevin claim because it has not alleged that Shkreli's copies were ever in Pleasr's possession. Mot. at 19. "Courts have sustained claims for replevin where the underlying property is a digital asset," however, and Pleasr only needs to show that it has a possessory *right* to the copies—not that it ever physically possessed the copies. *SYL Consulting LLC*, 2024 U.S. Dist. LEXIS 16423, at *8 (granting amendment to add replevin counterclaim concerning digital assets, including the website and domain name of the defendant's restaurant).

For the foregoing reasons, the Complaint alleges facts sufficient to state a claim for the recovery of chattel/replevin.

## CONCLUSION

For these reasons, the Court should deny Defendant's Motion to Dismiss.


Dated: November 25, 2024                    Respectfully Submitted,

                                            */s/ Steven Cooper*
                                            Steven Cooper
                                            Zachary Kaye
                                            Robert Carnes (*pro hac vice*)
                                            REED SMITH LLP
                                            599 Lexington Ave., 22nd Floor
                                            New York, New York 10022
                                            Tel. 212-521-5400
                                            Fax. 212-521-5250
                                            *Attorneys for Pleasr*