

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

**Steven Cooper**
Direct Phone: +1 212 205 6027
Email: scooper@reedsmith.com

January 8, 2025

**By CM/ECF**

Hon. Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Courtroom 4F
Brooklyn, New York 11201

      Re:    *PleasrDAO v. Shkreli*, Case No. 1:24-cv-04126

Dear Judge Chen:

We represent Plaintiff PleasrDAO in the above-referenced action and write in response to the Court's November 20, 2024 Order, which directed the parties to meet and confer, and advise on the status of the contempt motions filed on September 6, 2024, and October 9, 2024 (the "**Contempt Motions**"). Specifically, the parties were ordered to file: (i) a letter "identifying the specific ways in which it believes Defendant is still in contempt" of the Court's August 26, 2024 Preliminary Injunction Order ("**PI Order**"), (ii) "a list of Plaintiff's exhibits with dated descriptions from the November 20, 2024 hearing" (the "**Hearing**"), and (iii) "a list of requested additional searches, if any, for Defendant to conduct." The Parties have met and conferred a number of times, and there remain unresolved issues respecting Defendant's compliance with the PI Order. Plaintiff thus submits the following letter, list of exhibits (annexed to this letter as <u>Exhibit A</u>), and list of requested searches (annexed to this letter as <u>Exhibit B</u>).[1]

    **1.**    **Meet and Confers**

On December 9, 2024, Plaintiff sent Defendant a list of additional searches for Defendant to run. On December 19, 2024, counsel for Defendant sent Plaintiff a preliminary response indicating that Defendant had conducted some, but not all of the searches. On December 24, 2024, Plaintiff asked Defendant to confirm that he would conduct the outstanding searches. Defendant did not respond to this request. Because the Court's December 30, 2024 order cautioned that any extension requests should be made at least two working days prior to a filing deadline, on January 6, 2025, Plaintiff again asked for confirmation that Defendant would conduct the searches. Defendant still has not responded to that request, compelling Plaintiff to file this letter.

    **2.**    **The PI Order**

The PI Order, *inter alia,* required that Defendant "sequester and turn over all his copies, in any form, of the Album or its contents to defense counsel," and file an affidavit attesting that he has done so

---

[1] Plaintiff focuses this letter on the remaining omissions concerning Defendant's compliance with the PI Order. Plaintiff reserves the right to seek fees and costs for all work incurred in connection with the contempt motions, once the compliance issues are finally resolved.

and "that he no longer possesses any copies, in any form, of the Album or its contents" by August 30, 2024. The PI Order also required Defendant to include four categories of information in an affidavit, by September 30, 2024; these were: "(a) the nature and volume of the copies of the Album's data and files that Defendant retained; (b) the names and contact information of the individuals to whom he distributed the data and files; (c) the date and method of such distribution; and (d) the amounts, source, date, and nature of any proceeds, revenues, profits, or other financial benefits made by Defendant from his distribution or playing of the Album or its contents." ECF 30 at 3.

**3.      The Declarations and Contempt Motions**

On August 30, 2024, Defendant submitted a declaration (the "**Original Declaration**") (ECF 31-1) purporting to comply with this PI Order's turnover mandate. On September 6, 2024, Plaintiff moved for a more complete declaration, noting, *inter alia,* that although the Album has 31 tracks, Defendant had only attested to turning over copies for 15 tracks.  On September 23, 2024, the Court issued an order ("**September 23 Order**") requiring Defendant to file a supplemental affidavit, by September 30, 2024:

> specifying the maximum number of tracks from the Album that he, at any point in time, retained copies of. If that number exceeds the number of unique tracks transferred to defense counsel (i.e., if Defendant at any point retained copies of more than 15 of the Album's tracks), Defendant's supplemental affidavit shall verify whether at the time he transferred his copies of the Album (i.e., the 15 tracks) to defense counsel, he no longer possessed any additional tracks, to his knowledge, and explain why any additional tracks were not transferred to defense counsel.

September 23 Order (emphasis added). On September 30, 2024, Defendant filed another declaration (the "**Supplemental Declaration**") purporting to comply with the September 23 Order and the PI Order's accounting and inventory mandates.  On October 9, 2024, Plaintiff again moved for a more complete declaration, explaining how the Supplemental Declaration fell short of both the requirements of the September 23 and the PI Orders. The Court then ordered the Hearing to determine the extent of Defendant's noncompliance.

**4.      The Hearing**

At the Hearing, Defendant made several admissions indicating that the Original Declaration failed to fully comply with the PI Order's turnover provisions.

Defendant acknowledged the possibility that he could still access copies of the music, noting that he may still have access to videos of him playing the music on YouTube and admitting that he should have "search[ed] YouTube's archives more carefully . . . [to] make sure that no copies are in the YouTube account" because "YouTube keeps video files and they are often accessible to the user." (Tr. 19:21-21:4).

Defendant also made several admissions indicating that the Supplemental Declaration failed to comply with the PI Order's accounting and inventory provisions. Defendant testified that he gave copies of the Album to between ten and twenty friends, co-workers, and/or colleagues who were not identified in the Supplemental Declaration. (Tr. at 23:10-18; 66:16-25). Defendant also admitted that there was more



he could have done to locate "the names and contact information of the individuals to whom he distributed the data and files" and "the date and method of such distribution." He acknowledged, for example, that he did not try to contact the friends and co-workers to whom he may have given the music to determine whether he had, in fact, given them copies. (Tr. at 102:12-15). He also stated that he used two inactive email accounts associated with prior jobs to disseminate the music, (Tr. 23:6-8), but admitted that he did not make any requests to recover those emails. (Tr. 78:9-79:2).

Defendant also indicated that his electronic search efforts for such information were inadequate. He did not his search text messages, (Tr. at 48:13-17), or the messages he sent across multiple social media platforms he uses, including Facebook, X, and Instagram. (Tr. 47:2-19). Defendant also appears to have limited his search of emails to just those emails with attachments, (Tr. at 31:18-23), instead of searching for any emails in which he may have disseminated copies of the Album through, for example, a hyperlink to a third-party platform storing the music. (Tr. 79:3-5).[2]

## 5. Outstanding Areas of Compliance

As noted, since the Hearing, Defendant has provided additional confirmatory information. However, additional inquiries remain.

*First,* Defendant still has not confirmed that he has conducted a thorough search of each of the electronic communication platforms identified by the Parties at the Hearing using the list of search terms compiled by Plaintiff in its December 9, 2024 email (included here in Exhibit B). *Second,* while Defendant has sent Plaintiff a list of eight individuals "that may have digitally received a copy of the first 15 tracks," Defendant has not confirmed that this constitutes the complete list of individuals to whom Defendant may have given the music, or whether Defendant has contacted such individuals to determine whether they have copies of the Album. *Finally,* Defendant has not identified "all the precise dates and times" Defendant streamed the album, as well as "how much of the album" Defendant streamed. (Tr. at 114:5-14).

\*     \*     \*

Accordingly, Plaintiff requests that the Court order Defendant to provide the still missing information.


Respectfully submitted,


*/s/ Steven Cooper*
Steven Cooper

SC:rc

---

[2] There were other inconsistencies and omissions pointed out at the Hearing; Plaintiff only raises the ones germane to the instant application.

ReedSmith

**Exhibit A**

Plaintiff's Marked Document Exhibits

| Exhibit | Date | Description |
|---------|------|-------------|
| 1 | 05/24/23 | Politico Article |
| 2 | 04/13/24 | Twitter Conversation |
| 3 | 04/13/24 | Twitter Conversation |
| 4 | N/A | [Intentionally Left Blank] |
| 5 | 06/09/24 | Twitter Conversation |
| 6 | 04/13/24 | Twitter Conversation |

Plaintiff's Unmarked Video Exhibits

| Exhibit | Date | Time Stamp(s) | Description |
|---------|------|---------------|-------------|
| 7 | 06/30/22 | 00:00:00-00:01:36<br>00:02:13-00:03:18 | YouTube Interview with Matt Kohrs |
| 8 | 06/05/22 | 00:00:00-00:00:32 | Twitter Spaces Conversation |
| 9 | 05/13/24 | 03:27:48-03:32:19 | Ox Media Interview |
| 10 | 06/12/22 | 00:00:00-00:01:12 | Clubhouse Audio |
| 11 | 06/20/22 | 00:02:38-00:03:13 | Martin Shkreli Livestream |



## Exhibit B

### List of Requested Searches for Defendant to Conduct

Please confirm that Defendant has searched every electronic account he could have used to send music from the Album to third parties, including messages sent via text message (i.e., SMS, iMessage, WhatsApp, Signal, etc.), any electronic mail (e-mail) system, X (formerly Twitter), Discord, YouTube, Facebook, Instagram, Twitch, Clubhouse, or any other social media/streaming platform. Defendant should not limit his search to just those messages in which he sent attachments; he should also search for all messages in which he sent a hyperlink to files, including those accessible through a cloud-based drive or peer-to-peer file sharing program or website. (*See* Hearing Tr. at 79:3-5). To ensure full compliance, Defendant should use the following terms in conducting this search:

1. Any iteration of the Wu-Tang Clan or Album title, including "Wu-Tang," "Wu Tang," "Wutang," "Wu," "WTC," "Shaolin," and "OUATIS."

2. Any generic reference to the Album's first disk, including "First CD," "First Album," "First Disk," "Disk 1," or "Disk One."

3. All track titles from the Album's first disk, including "Magnificent Butchers," "Staple Town," "Stone Him," "Kareem," "Cycling Swords," "99 Supreme," "Stone Finger," "Weeping Tiger," "Brother Jozef," "The Ninja," "Swine," "Dirt Bomb Niggas," "Hail Snow," and "Rainy Dayz."[3]

4. Any generic reference to the aforementioned tracks, including the phrases (("song" OR "track") w/1 ("1" OR "one" OR "1st" OR "first" OR "2" OR "two" OR "2nd" OR "second" OR "3" OR "three" OR "3rd" OR "third" OR "4" OR "four" OR "4th" OR "fourth" OR "5" OR "five" OR "5th" OR "fifth" OR "6" OR "six" OR "6th" OR "sixth" OR "7" OR "seven" OR "7th" OR "seventh" OR "8" OR "eight" OR "8th" OR "eighth" OR "9" OR "nine" OR "9th" OR "ninth" OR "10" OR "ten" OR "10th" OR "tenth" OR "11" OR "eleven" OR "11th" OR "eleventh" OR "12" OR "twelve" OR "12th" OR "twelfth" OR "13" OR "thirteen" OR "13th" OR "thirteenth" OR "14" OR "fourteen" OR "14th" OR "fourteenth" OR "15" OR "fifteen" OR "15th" OR "fifteenth")).[4]

To the extent Defendant does not recall or cannot ascertain the contents of any files sent, please confirm that Defendant has contacted the recipient of any such message to ascertain whether the files contained any music from the Album.

---

[3] To account for differing file name formats, any such search term using a space character should separately be run using a hyphen ("-"), underscore ("_"), or period (".") in place of the space character.

[4] It is incumbent upon Defendant to modify these Boolean search terms as necessary to accurately search across his files. The purpose of these search terms is to capture any generic reference to a numbered track or song, such as "Track 1," "First song," "1st Track," or "Song 1."