

**Driving progress through partnership**

**Steven Cooper**
Direct Phone: +1 212 205 6027
Email: scooper@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

February 18, 2025

**By CM/ECF**

Hon. Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Courtroom 4F
Brooklyn, New York 11201

   **Re:**  *PleasrDAO v. Shkreli*, Case No. 1:24-cv-04126

Dear Judge Chen:

  We represent Plaintiff PleasrDAO in the above-referenced action and write pursuant to the Court's January 21, 2025 order directing Plaintiff to respond to Martin Shkreli's February 4, 2024 Declaration ("**Fourth Declaration**"). This Fourth Declaration appears to finally comply with the August 26, 2024 Preliminary Injunction Order ("**PI Order**"), and Plaintiff will not take issue with its contents.

  However, Plaintiff requests sanctions against Defendant for reimbursement of the attorneys' fees and costs reasonably incurred in having to repeatedly challenge Shkreli's submissions, or alternatively, a pre-motion conference, under Rule 3(A) of this Court's Individual Practices, for permission to file a motion for such relief. It has taken almost six months, four rounds of filings and an evidentiary hearing for Shkreli to reach a sufficient level of compliance with the PI Order. Plaintiff, and this Court, have invested an inordinate amount of time and resources deciphering Shkreli's submissions, which were consistently incomplete and/or inaccurate. The information Shkreli needed to produce pursuant to the PI Order could have been provided in Shkreli's *first declaration*. The substantial, additional work needed to get to compliance, as this Court remarked at the hearing, was avoidable and wasteful.

  **1.**  **Background**

  The PI Order required that Shkreli, *by August 30, 2024,* "sequester and turn over all his copies, in any form, of the Album or its contents to defense counsel," and file an affidavit attesting that he has done so and "that he no longer possesses any copies, in any form, of the Album or its contents." The PI Order also required Shkreli to, *by September 30, 2024,* include several categories of information in an affidavit including, *inter alia*, "(a) the nature and volume of the copies of the Album's data and files that Shkreli retained; (b) the names and contact information of the individuals to whom he distributed the data and files; (c) the date and method of such distribution; and (d) the amounts, source, date, and nature of any proceeds, revenues, profits, or other financial benefits made by Shkreli from his distribution or playing of the Album or its contents." (ECF 30 at 3).

  **The First Declaration.** On August 30, 2024, Shkreli submitted a declaration (the "**First Declaration**") purporting to comply with this PI Order's turnover mandate. (ECF 31-1). Several issues in the First Declaration prompted Plaintiff to file a contempt motion on September 6, 2024. (ECF 33). For

Hon. Pamela K. Chen
Page 2



example, Shkreli attested to only turning over *certain* copies of the Album, as he claimed that many of his "personal effects were moved into storage" during his time in prison and that "[a]s a result, it is possible that [he] has been unable to exhaustively locate each and every copy" of the Album. (ECF 31-1 at 2). This declaration also stated that Shkreli had turned over copies of only 15 tracks in FLAC form, even though the Album has 31 tracks and Shkreli had repeatedly stated that he had MP3 copies of the Album. On September 23, 2024, the Court issued an order requiring Shkreli to file a supplemental affidavit that explained the discrepancy between the track numbers.

**The Second Declaration.** On September 30, 2024, Shkreli filed another declaration (the "**Second Declaration**") purporting to comply with the September 23 order and the PI Order. Yet, the Second Declaration failed to fully disclose any of the categories of information relating to inventory and accounting requirements of the PI Order. It disclosed a single email address (without a name) bearing a Cornell University domain to which Shkreli had sent a copy of the Album. Besides failing to provide the email addressee's name, it failed to provide the nature or volume of the data sent. On October 9, 2024, Plaintiff accordingly filed a second contempt motion (ECF 39), and the Court ordered a hearing to determine the extent of Shkreli's noncompliance.

**The Hearing.** The Court held an evidentiary hearing on November 20, 2024 (the "**Hearing**"). Shkreli's testimony revealed inaccuracies in his two Declarations, and an extreme lack of diligence. Shkreli testified several times that he had failed to do many basic searches. *See* ECF 50 (enclosed, summarizing testimony). Shkreli also testified that he did *not* have any personal effects in storage. (Tr. at 50:7-16, 50:25-54:8). At the Hearing's conclusion, the Court noted that Shkreli seemingly attempted *"to be vague on purpose,"* and that the Parties and the Court had spent *"an inordinate amount of time"* deciphering Shkreli's misleading declarations trying *"to get information in an inefficient way that could have been provided in the first instance with the very first affidavit."* (*Id.* at 114:15-115:18) (emphasis added). The Court further stated that Shkreli *"left out" "so much detail"* and *"information"* in his declarations as to *"create[] more questions"* as to whether he put forth an *"effort"* in complying with the PI Order. (*Id.*). The Court then ordered Plaintiff to file a letter identifying, *inter alia*, "the specific ways in which it believes Defendant is still in contempt of the Court's Preliminary Injunction Order" and "a list of requested additional searches, if any, for Defendant to conduct." The Court ordered Shkreli to file a "comprehensive list of every person [he] may have distributed any or all tracks of the Album to, with contact information for those individuals."

**The Third Declaration.** On December 9, 2024, Plaintiff sent Shkreli a list of basic search terms for him to run across his various electronic databases. On December 19, 2024, Shkreli responded that he had conducted some, but *not all* of those searches. Strikingly, Shkreli revealed that he had *identified eight additional individuals to whom he gave copies of the Album,* not disclosed in either of his prior declarations. On December 24, 2024, Plaintiff asked Shkreli to confirm that he would conduct the outstanding searches. Shkreli, however, did not respond, prompting Plaintiff to file another letter on January 8, 2025. (ECF-50). Shkreli then filed a third declaration on January 15, 2025 (the "**Third Declaration**") purporting to respond to the Court's order from the Hearing, and Plaintiff's subsequent search requests. (ECF 50-1). On January 21, 2025, the Court found that the Third Declaration *failed to provide the dates on which Shkreli sent copies of the Album to the nine recipients, as the Court directed during its order at the Hearing*. Accordingly, on February 4, 2025, Shkreli filed the Fourth Declaration.



2. **Argument**

"A federal court may exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023). "[A] court's inherent power to sanction bad faith litigation abuse stems from the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases[.]" *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). Shkreli's conduct in responding to the PI Order warranted numerous, unnecessary rounds of filings, and an evidentiary contempt hearing. The Hearing exposed many deficiencies, and those still were not cured for two more months. Shkreli's behavior was in bad faith, vexatious, wanton, or for oppressive reasons.

Shkreli failed, without justification, to comply with court orders. Despite explicit directives from the court, he failed to provide the information directed to be disclosed in the August 26, 2024 PI Order, and again, at the November 20, 2024 Hearing. *See Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 281 (2d Cir. 2021) (repeated violations of court orders warranted sanctions under bad faith exception). Indeed, the Court recognized these failings at the Hearing noting that there were serious questions as to whether Shkreli made an effort to comply with the PI Order in his First and Second Declarations, and he attempted "to be vague on purpose." Shkreli certainly had the ability to obtain and confirm the information later disclosed in the Third and Fourth Declarations *right away*, particularly since the PI Order gave Shkreli more than a month to do so. *See Lars v. San Siro*, 96 Civ. 9499 (JFK), 1997 U.S. Dist. LEXIS 12967, at *3-4 (S.D.N.Y. Aug. 28, 1997) (ordering sanctions where "the civil contempt application was the impetus for [defendant's] ultimate compliance with the Order.").

Shkreli's misrepresentations and reckless and cavalier attitude needlessly wasted the Plaintiff and Court's time and resources. *See Int'l Techs. Mktg. v. Verint Sys.*, 991 F.3d 361, 368–369 (2d Cir. 2021) (single act of misrepresentation of record in case is sufficient to warrant sanctions). The First Declaration's storage facilities statement misled Plaintiff and the Court into thinking that Shkreli was not be able to fully comply with the PI Order because his "personal effects were moved into storage" during his time in prison and that "[a]s a result, it is possible that [he] has been unable to exhaustively locate each and every copy" of the Album. This statement was not only false, in that no such storage facilities existed, it was designed as a pretext to give Shkreli a plausible excuse, if and when, the omissions in his declarations were uncovered. The Second Declaration's identification of a single, nameless email address to which Shkreli had sent the Album also misrepresented Shkreli's ability to identify the email addressee's name, and the identities of other recipients. Shkreli did not conduct the requisite *diligent* search, as he later identified *eight other recipients*, when pressed by Plaintiff and the Court. The bad faith in Shkreli's initial identification of only one recipient is also made clear by his having (i) repeatedly and publicly stated that he gave the Album to up to 50 different people (ECF 4 at 9); (ii) requested contact information from social media users to send them the Album (*see id.* at 8-9); and (iii) on at least one occasion, appeared in an interview with a recipient *while she played music from the Album* (*see* Hr. Tr. 69:18-70:25).

Shkreli's actions support sanctions under the applicable legal standards, and principles of equity and fairness. Shkreli intentionally sought to avoid compliance with court orders for six months. Plaintiff requests reimbursement of the attorneys' fees and costs incurred in properly challenging Shkreli's submissions, or, a pre-motion conference for permission to file a motion for such relief. Should the court order Defendant liable for sanctions, Plaintiff seeks leave to provide reasonable amounts due and owing.

Respectfully submitted,

*/s/ Steven Cooper*
Steven Cooper

SC:rc

Encl.



Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

**Steven Cooper**
Direct Phone: +1 212 205 6027
Email: scooper@reedsmith.com

January 8, 2025

**By CM/ECF**

Hon. Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Courtroom 4F
Brooklyn, New York 11201

Re:   *PleasrDAO v. Shkreli*, Case No. 1:24-cv-04126

Dear Judge Chen:

We represent Plaintiff PleasrDAO in the above-referenced action and write in response to the Court's November 20, 2024 Order, which directed the parties to meet and confer, and advise on the status of the contempt motions filed on September 6, 2024, and October 9, 2024 (the "**Contempt Motions**"). Specifically, the parties were ordered to file: (i) a letter "identifying the specific ways in which it believes Defendant is still in contempt" of the Court's August 26, 2024 Preliminary Injunction Order ("**PI Order**"), (ii) "a list of Plaintiff's exhibits with dated descriptions from the November 20, 2024 hearing" (the "**Hearing**"), and (iii) "a list of requested additional searches, if any, for Defendant to conduct." The Parties have met and conferred a number of times, and there remain unresolved issues respecting Defendant's compliance with the PI Order. Plaintiff thus submits the following letter, list of exhibits (annexed to this letter as Exhibit A), and list of requested searches (annexed to this letter as Exhibit B).[1]

1.   **Meet and Confers**

On December 9, 2024, Plaintiff sent Defendant a list of additional searches for Defendant to run. On December 19, 2024, counsel for Defendant sent Plaintiff a preliminary response indicating that Defendant had conducted some, but not all of the searches. On December 24, 2024, Plaintiff asked Defendant to confirm that he would conduct the outstanding searches. Defendant did not respond to this request. Because the Court's December 30, 2024 order cautioned that any extension requests should be made at least two working days prior to a filing deadline, on January 6, 2025, Plaintiff again asked for confirmation that Defendant would conduct the searches. Defendant still has not responded to that request, compelling Plaintiff to file this letter.

2.   **The PI Order**

The PI Order, *inter alia,* required that Defendant "sequester and turn over all his copies, in any form, of the Album or its contents to defense counsel," and file an affidavit attesting that he has done so

---

[1] Plaintiff focuses this letter on the remaining omissions concerning Defendant's compliance with the PI Order. Plaintiff reserves the right to seek fees and costs for all work incurred in connection with the contempt motions, once the compliance issues are finally resolved.

ReedSmith

Hon. Pamela K. Chen
January 8, 2025
Page 2

and "that he no longer possesses any copies, in any form, of the Album or its contents" by August 30, 2024. The PI Order also required Defendant to include four categories of information in an affidavit, by September 30, 2024; these were: "(a) the nature and volume of the copies of the Album's data and files that Defendant retained; (b) the names and contact information of the individuals to whom he distributed the data and files; (c) the date and method of such distribution; and (d) the amounts, source, date, and nature of any proceeds, revenues, profits, or other financial benefits made by Defendant from his distribution or playing of the Album or its contents." ECF 30 at 3.

### 3. The Declarations and Contempt Motions

On August 30, 2024, Defendant submitted a declaration (the "**Original Declaration**") (ECF 31-1) purporting to comply with this PI Order's turnover mandate. On September 6, 2024, Plaintiff moved for a more complete declaration, noting, *inter alia,* that although the Album has 31 tracks, Defendant had only attested to turning over copies for 15 tracks.  On September 23, 2024, the Court issued an order ("**September 23 Order**") requiring Defendant to file a supplemental affidavit, by September 30, 2024:

> specifying the maximum number of tracks from the Album that he, at any point in time, retained copies of. If that number exceeds the number of unique tracks transferred to defense counsel (i.e., if Defendant at any point retained copies of more than 15 of the Album's tracks), Defendant's supplemental affidavit shall verify whether at the time he transferred his copies of the Album (i.e., the 15 tracks) to defense counsel, he no longer possessed any additional tracks, to his knowledge, and explain why any additional tracks were not transferred to defense counsel.

September 23 Order (emphasis added). On September 30, 2024, Defendant filed another declaration (the "**Supplemental Declaration**") purporting to comply with the September 23 Order and the PI Order's accounting and inventory mandates.  On October 9, 2024, Plaintiff again moved for a more complete declaration, explaining how the Supplemental Declaration fell short of both the requirements of the September 23 and the PI Orders. The Court then ordered the Hearing to determine the extent of Defendant's noncompliance.

### 4. The Hearing

At the Hearing, Defendant made several admissions indicating that the Original Declaration failed to fully comply with the PI Order's turnover provisions.

Defendant acknowledged the possibility that he could still access copies of the music, noting that he may still have access to videos of him playing the music on YouTube and admitting that he should have "search[ed] YouTube's archives more carefully . . . [to] make sure that no copies are in the YouTube account" because "YouTube keeps video files and they are often accessible to the user." (Tr. 19:21-21:4).

Defendant also made several admissions indicating that the Supplemental Declaration failed to comply with the PI Order's accounting and inventory provisions. Defendant testified that he gave copies of the Album to between ten and twenty friends, co-workers, and/or colleagues who were not identified in the Supplemental Declaration. (Tr. at 23:10-18; 66:16-25). Defendant also admitted that there was more

Hon. Pamela K. Chen
January 8, 2025
Page 3

ReedSmith

he could have done to locate "the names and contact information of the individuals to whom he distributed the data and files" and "the date and method of such distribution." He acknowledged, for example, that he did not try to contact the friends and co-workers to whom he may have given the music to determine whether he had, in fact, given them copies. (Tr. at 102:12-15). He also stated that he used two inactive email accounts associated with prior jobs to disseminate the music, (Tr. 23:6-8), but admitted that he did not make any requests to recover those emails. (Tr. 78:9-79:2).

Defendant also indicated that his electronic search efforts for such information were inadequate. He did not his search text messages, (Tr. at 48:13-17), or the messages he sent across multiple social media platforms he uses, including Facebook, X, and Instagram. (Tr. 47:2-19). Defendant also appears to have limited his search of emails to just those emails with attachments, (Tr. at 31:18-23), instead of searching for any emails in which he may have disseminated copies of the Album through, for example, a hyperlink to a third-party platform storing the music. (Tr. 79:3-5).[2]

5. **Outstanding Areas of Compliance**

As noted, since the Hearing, Defendant has provided additional confirmatory information. However, additional inquiries remain.

*First,* Defendant still has not confirmed that he has conducted a thorough search of each of the electronic communication platforms identified by the Parties at the Hearing using the list of search terms compiled by Plaintiff in its December 9, 2024 email (included here in Exhibit B). *Second,* while Defendant has sent Plaintiff a list of eight individuals "that may have digitally received a copy of the first 15 tracks," Defendant has not confirmed that this constitutes the complete list of individuals to whom Defendant may have given the music, or whether Defendant has contacted such individuals to determine whether they have copies of the Album. *Finally,* Defendant has not identified "all the precise dates and times" Defendant streamed the album, as well as "how much of the album" Defendant streamed. (Tr. at 114:5-14).

\* \* \*

Accordingly, Plaintiff requests that the Court order Defendant to provide the still missing information.


Respectfully submitted,


*/s/ Steven Cooper*
Steven Cooper

SC:rc

---

[2] There were other inconsistencies and omissions pointed out at the Hearing; Plaintiff only raises the ones germane to the instant application.

Hon. Pamela K. Chen  
January 8, 2025
Page 4

### Exhibit A

Plaintiff's Marked Document Exhibits

| Exhibit | Date | Description |
|---|---|---|
| 1 | 05/24/23 | Politico Article |
| 2 | 04/13/24 | Twitter Conversation |
| 3 | 04/13/24 | Twitter Conversation |
| 4 | N/A | [Intentionally Left Blank] |
| 5 | 06/09/24 | Twitter Conversation |
| 6 | 04/13/24 | Twitter Conversation |

Plaintiff's Unmarked Video Exhibits

| Exhibit | Date | Time Stamp(s) | Description |
|---|---|---|---|
| 7 | 06/30/22 | 00:00:00-00:01:36<br>00:02:13-00:03:18 | YouTube Interview with Matt Kohrs |
| 8 | 06/05/22 | 00:00:00-00:00:32 | Twitter Spaces Conversation |
| 9 | 05/13/24 | 03:27:48-03:32:19 | Ox Media Interview |
| 10 | 06/12/22 | 00:00:00-00:01:12 | Clubhouse Audio |
| 11 | 06/20/22 | 00:02:38-00:03:13 | Martin Shkreli Livestream |

Hon. Pamela K. Chen
January 8, 2025
Page 5

ReedSmith

### Exhibit B

List of Requested Searches for Defendant to Conduct

Please confirm that Defendant has searched every electronic account he could have used to send music from the Album to third parties, including messages sent via text message (i.e., SMS, iMessage, WhatsApp, Signal, etc.), any electronic mail (e-mail) system, X (formerly Twitter), Discord, YouTube, Facebook, Instagram, Twitch, Clubhouse, or any other social media/streaming platform. Defendant should not limit his search to just those messages in which he sent attachments; he should also search for all messages in which he sent a hyperlink to files, including those accessible through a cloud-based drive or peer-to-peer file sharing program or website. (*See* Hearing Tr. at 79:3-5). To ensure full compliance, Defendant should use the following terms in conducting this search:

1. Any iteration of the Wu-Tang Clan or Album title, including "Wu-Tang," "Wu Tang," "Wutang," "Wu," "WTC," "Shaolin," and "OUATIS."

2. Any generic reference to the Album's first disk, including "First CD," "First Album," "First Disk," "Disk 1," or "Disk One."

3. All track titles from the Album's first disk, including "Magnificent Butchers," "Staple Town," "Stone Him," "Kareem," "Cycling Swords," "99 Supreme," "Stone Finger," "Weeping Tiger," "Brother Jozef," "The Ninja," "Swine," "Dirt Bomb Niggas," "Hail Snow," and "Rainy Dayz."[3]

4. Any generic reference to the aforementioned tracks, including the phrases ((("song" OR "track") w/1 ("1" OR "one" OR "1st" OR "first" OR "2" OR "two" OR "2nd" OR "second" OR "3" OR "three" OR "3rd" OR "third" OR "4" OR "four" OR "4th" OR "fourth" OR "5" OR "five" OR "5th" OR "fifth" OR "6" OR "six" OR "6th" OR "sixth" OR "7" OR "seven" OR "7th" OR "seventh" OR "8" OR "eight" OR "8th" OR "eighth" OR "9" OR "nine" OR "9th" OR "ninth" OR "10" OR "ten" OR "10th" OR "tenth" OR "11" OR "eleven" OR "11th" OR "eleventh" OR "12" OR "twelve" OR "12th" OR "twelfth" OR "13" OR "thirteen" OR "13th" OR "thirteenth" OR "14" OR "fourteen" OR "14th" OR "fourteenth" OR "15" OR "fifteen" OR "15th" OR "fifteenth")).[4]

To the extent Defendant does not recall or cannot ascertain the contents of any files sent, please confirm that Defendant has contacted the recipient of any such message to ascertain whether the files contained any music from the Album.

---

[3] To account for differing file name formats, any such search term using a space character should separately be run using a hyphen ("-"), underscore ("_"), or period (".") in place of the space character.

[4] It is incumbent upon Defendant to modify these Boolean search terms as necessary to accurately search across his files. The purpose of these search terms is to capture any generic reference to a numbered track or song, such as "Track 1," "First song," "1st Track," or "Song 1."