**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------x

PleasrDAO,

                Plaintiff,

                        Case No.: 24-CV-4126 (PKC) (MMH)

     -against-

Martin Shkreli,

                Defendant.

----------------------------------------------------x     JURY TRIAL DEMANDED

Martin Shkreli,

          Counterclaim Plaintiff,

     -against-

PleasrDAO, Robert Diggs, and
Tarik Azzougarh,

          Counterclaim Defendants.

----------------------------------------------------x

## ANSWER AND COUNTERCLAIMS

      Defendant, Martin Shkreli ("Defendant" or "Shkreli"), by and through the undersigned counsel, hereby submits the following Answer and counterclaims to Plaintiff PleasrDAO's ("Plaintiff" or "PleasrDAO") Verified Complaint [ECF 1] (the "Complaint"). Any allegations not specifically admitted herein are denied.

      Defendant has included some of the headings and subheadings in the Complaint simply to assist in reading the pleadings and does not admit the accuracy of those heading sand subheadings to the extent that they can be construed as allegations of fact. To the extent a heading or subheading in the Complaint is not explicitly included in the answer, Defendant either denies or lacks information sufficient to admit or deny the allegations contained therein.

## INTRODUCTION

1.      This paragraph states legal conclusions to which no response is required. To the extent a response is required, without acquiescing to Plaintiff's definition of "the Album," Defendant admits that he was a pharmaceutical executive, that he was convicted of securities fraud in 2017, and that he was sentenced to a term of incarceration and to forfeit certain assets, including the Engraved Box, which contained a copy of the Musical Work. Defendant admits that he purchased the Engraved Box and the Musical Work in 2015 for approximately $1,500,000 (one million five hundred thousand dollars), and that his term of incarceration ended in 2022. Defendant denies the remainder of the allegations in this paragraph.

2.      This paragraph states legal conclusions to which no response is required. To the extent a response is required, without acquiescing to Plaintiff's definition of "the Album," Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in this paragraph, and on that basis, denies them.

## THE PARTIES

3.      Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in this paragraph, and on that basis, denies them.

4.      Defendant admits that he is an individual who resides in New York, New York.

## JURISDICTION AND VENUE

5.      This paragraph states a legal conclusion to which no response is required.

6.      This paragraph states a legal conclusion to which no response is required.

7.      This paragraph states a legal conclusion to which no response is required. To the extent a response to this paragraph is required, denied.

## FACTS

8.      Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in this paragraph, and on that basis, denies them.

9.      Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in this paragraph, and on that basis, denies them.

10.     Defendant admits that he was formerly a money manager and that he was formerly a pharmaceutical executive. Defendant admits that Daraprim is used to treat parasitic diseases, and is also used as a second-line option in combination with other medication(s) to treat rare parasitic infections in people with HIV/AIDS, and admits that a company with which he was formerly associated changed the price of Daraprim. All other allegations in this paragraph are denied, especially the allegation that Defendant "attained notoriety."

11.     Defendant admits that at his 2017 trial, the jury returned a verdict of "guilty" on two counts of securities fraud and one count of conspiracy, with the clarification that at the very same trial, the jury also returned a verdict of "not guilty" on five other charges including securities fraud, wire fraud, and conspiracy, and that he served a term of incarceration with this partial conviction on only 3 of 8 charges. All other allegations in this paragraph are denied.

### In Answer To "Wu-Tang's Creation of the Album[1]"

12.     Admitted.

13.     Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in this paragraph, and on that basis, denies them.

---

[1] Defendant has adopted Plaintiff's headings and sub-headings for convenience only. As set forth in the former briefing, Defendant objects to the use of a single term (the Album") in reference to both the Musical Work and the physical copy of the Musical Work purchased by Defendant. *See,* ECF 47-1 at 1, (Defining the recording as the "Musical Work" and the original copy as the "Engraved Box.")

14.    Defendant admits that he purchased the Engraved Box which contained the only copy of the Musical Work from Producers, as of the date of the Original Purchase Agreement. As to the remainder of the allegations, Defendant lacks sufficient information to admit or deny the allegations in this paragraph, and on that basis denies them.

15.    Defendant admits only that he purchased what was then the only existing hard copy of the Musical Work which was packaged as a two-disc set and accompanied by a set of silver, nickel, and leather boxes, a gold-leafed certificate of authenticity, a pair of customized audio speakers, and a leather bound manuscript containing information relating to the Musical Work. Defendant denies the remaining allegations of this paragraph.

16.    Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in this paragraph, and on that basis, denies them.

17.    Defendant admits that the Wu-Tang Clan originally produced one copy of the Musical Work, and denies the remaining allegations of this paragraph.

**In Answer to "Sale to Shkreli"**

18.    Without acquiescing to Plaintiff's definition of "the Album," Defendant admits that he purchased the original copy of the Musical Work from the Producers in September 2015 for $1,500,000.00. Defendant denies the remaining allegations of this paragraph.

19.    Without acquiescing to Plaintiff's definition of "the Album," Defendant admits that his 2015 purchase broke the Guinness World Record for the most expensive musical work ever sold. Defendant denies the remaining allegations of this paragraph.

20.    This paragraph states legal conclusions to which no response is required. To the extent a response is required, without acquiescing to Plaintiff's definition of "the Album," Defendant admits that the quoted excerpts are from the Original Purchase Agreement, which was dated September 3, 2015, and denies the remaining allegations of this paragraph.

21.      This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendant responds that the Original Purchase Agreement speaks for itself. As to the remainder of the allegations, Defendant lacks sufficient information to admit or deny the allegations in this paragraph, and on that basis denies them.

22.      This paragraph states legal conclusions to which no response is required. To the extent a response is required, without acquiescing to Plaintiff's definition of "the Album," Defendant admits that the quoted excerpts are from the Original Purchase Agreement and denies the remaining allegations of this paragraph.

23.      Denied.

24.      This paragraph states a legal conclusion to which no response is required. To the extent a response is required, denied.

25.      Denied.

**In Answer to "Shkreli's Criminal Convictions and Forfeiture"**

26.      Defendant admits that at his 2017 trial, the jury returned a verdict of "guilty" on two counts of securities fraud and one count of conspiracy, but in that same trial also resulted in a jury verdict of "not guilty" on five other charges including securities fraud, wire fraud, and conspiracy.

27.      This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that "this Court" entered a judgment against him, and admits the remaining allegations of this paragraph with the clarification that Judge Chen's Court did not enter a judgment against him.

28.      This paragraph states legal conclusions to which no response is required. To the extent a response is required, without acquiescing to Plaintiff's definition of "the Album,"

Defendant responds that the Forfeiture Order speaks for itself and denies the remaining allegations of this paragraph.

29.    This paragraph and its sub-sections (a)-(c) state legal conclusions to which no response is required.

## In Answer to "PleasrDAO Purchases the Album[2]"

30.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendant admits that Plaintiff bought the physical asset for approximately $4,000,000, denies the allegations relating to a purchase in January 2024 since Defendant without knowledge or information sufficient to admit or deny them, and denies the remaining allegations contained in this paragraph.

31.    Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in this paragraph, and on that basis, denied.

32.    Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in this paragraph, and on that basis, denied.

## In Answer to "Shkreli's Unlawful[3] Retention"

33.    Admitted.

34.    This paragraph states legal conclusions to which no response is required. To the extent a response is required, admitted.

35.    Admitted.

---

[2] As above, Defendant has adopted Plaintiff's headings and sub-headings for convenience only. As set forth in the Motion to Dismiss briefing, Defendant objects to the use of a single term (the Album") in reference to both the Musical Work and the physical copy of the Musical Work purchased by Defendant, referenced by Defendant as the "Engraved Box." ECF 47-1 at 1. Defendant denies that PleasrDAO purchased both the Musical Work and the Engraved Box.
[3] Defendant denies that any copying or retention of the Musical Work was "unlawful."

36.    Defendant admits that he has shared his computer screen with viewers of his live streams while engaging in various online activities, and denies the allegation that the actions described in this paragraph are continuing.

37.    Without acquiescing to Plaintiff's definition of "the Album," admitted.

38.    Admitted.

39.    Without acquiescing to Plaintiff's definition of "the Album," admitted.

40.    Without acquiescing to Plaintiff's definition of "the Album," Defendant admits that he posted the comments identified in subparagraphs (a) through (d) and is without information or knowledge sufficient to admit or deny the allegation that "a member of PleasrDAO posted a photo of the Album on *X* (formerly Twitter), and on that basis denies the remaining allegations of this paragraph.

41.    Without acquiescing to Plaintiff's definition of "the Album," Defendant admits the allegations of this paragraph.

42.    Without acquiescing to Plaintiff's definition of "the Album," Defendant admits the allegations of this paragraph.

43.    Admitted.

44.    Without acquiescing to Plaintiff's definition of "the Album," Defendant admits the allegations of this paragraph.

45.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, without acquiescing to Plaintiff's definition of "the Album," Defendant denies that he is currently willing to disseminate copies of the Musical Work publicly and admits the remaining allegations of this paragraph.

46.    This paragraph contains legal conclusions to which no response is required.

47.     This paragraph contains legal conclusions to which no response is required.

**In Answer to "Shkreli's Disregard for the Contracts and the Power of the Court"**

48.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required and without acquiescing to Plaintiff's definition of "the Album," denied.

49.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required and without acquiescing to Plaintiff's definition of "the Album," admitted.

50.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendant admits that the quoted statement excerpts are accurate and denies all of the remaining allegations of this paragraph, including Plaintiff's characterization of his statements and/or behavior.

51.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendant admits that the quoted statement excerpts are accurate and denies all of the remaining allegations of this paragraph, including Plaintiff's characterization of his statements and/or behavior.

52.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendant admits that the quoted statement excerpt is an accurate representation of a statement he made during a live stream video on *YouTube* in June 2022, and denies all of the remaining allegations of this paragraph.

53.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendant admits that he traveled to Maine in November 2023 for an in-person interview with Tucker Carlson, that his probation officer recommended no

action be taken against him, and that Judge Matsumoto took no action against him. Defendant denies the remaining allegations of this paragraph.

54.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

55.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

## COUNT I
## ENFORCEMENT OF ORDER
### Fed. R. Civ. Proc. 71

56.    Defendant re-alleges and incorporates by reference his responses to the allegations of the preceding paragraphs, as if set forth fully herein.

57.    No response to this paragraph is required because this claim has been dismissed. (ECF 57) and because it states a legal conclusion.

58.    No response to this paragraph is required because this claim has been dismissed. (ECF 57) and because it states a legal conclusion.

59.    No response to this paragraph is required because this claim has been dismissed. (ECF 57) and because it states a legal conclusion.

60.    No response to this paragraph is required because this claim has been dismissed. (ECF 57) and because it states a legal conclusion.

61.    No response to this paragraph is required because this claim has been dismissed. (ECF 57) and because it states a legal conclusion. To the extent a response is required and without acquiescing to Plaintiff's definition of "the Album," Defendant admits that the Engraved

Box is a Substitute Asset under the Forfeiture Order and denies the remaining allegations of this

paragraph.

62. No response to this paragraph is required because this claim has been dismissed.

(ECF 57) and because it states a legal conclusion.

63. No response to this paragraph is required because this claim has been dismissed.

(ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

64. No response to this paragraph is required because this claim has been dismissed.

(ECF 57) and because it states a legal conclusion.

65. No response to this paragraph is required because this claim has been dismissed.

(ECF 57) and because it states a legal conclusion.

**COUNT II**
**VIOLATIONS OF THE DEFEND TRADE SECRETS ACT**
**<u>18 U.S.C. 1836, <em>et seq.</em></u>**

66. Defendant re-alleges and incorporates by reference his responses to the

allegations of the preceding paragraphs, as if set forth fully herein.

67. This paragraph contains legal conclusions to which no response is required. To

the extent a response is required, and without acquiescing to Plaintiff's definition of "the

Album," admitted.

68. This paragraph contains legal conclusions to which no response is required.

69. This paragraph contains legal conclusions to which no response is required.

70. This paragraph contains legal conclusions to which no response is required. To

the extent a response is required, and without acquiescing to Plaintiff's definition of "the

Album," denied.

71.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

72.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

73.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

74.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

75.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

76.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," admitted.

77.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

## COUNT III
## <u>MISAPPROPRIATION OF CONFIDENTIAL INFORMATION/TRADE SECRETS</u>

78.     Defendant re-alleges and incorporates by reference his responses to the allegations of the preceding paragraphs, as if set forth fully herein.

79.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

80.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," Defendant is without information and knowledge sufficient to admit or deny the allegations in this paragraph, and on that basis denies them.

81.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

82.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," admitted.

83.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," Defendant admits that he made "Permitted Use" of the Musical Work after PleasrDAO purchased the Engraved Box and denies the remaining allegations of this paragraph.

84.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, denied.

85.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, denied.

86.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, denied.

87.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, denied.

88.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

89.    Defendant re-alleges and incorporates by reference his responses to the allegations of the preceding paragraphs, as if set forth fully herein.

90.    No response to this paragraph is required because this claim has been dismissed. (ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

91.    No response to this paragraph is required because this claim has been dismissed. (ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

92.    No response to this paragraph is required because this claim has been dismissed. (ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

93.    No response to this paragraph is required because this claim has been dismissed. (ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

94.    No response to this paragraph is required because this claim has been dismissed. (ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

95.      No response to this paragraph is required because this claim has been dismissed.

(ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

96.      No response to this paragraph is required because this claim has been dismissed.

(ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

**COUNT V**
**UNJUST ENRICHMENT**

97.      Defendant re-alleges and incorporates by reference his responses to the

allegations of the preceding paragraphs, as if set forth fully herein.

98.      No response to this paragraph is required because this claim has been dismissed.

(ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

99.      No response to this paragraph is required because this claim has been dismissed.

(ECF 57) and because it states a legal conclusion. To the extent a response is required, denied

100.      No response to this paragraph is required because this claim has been dismissed.

(ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

101.      No response to this paragraph is required because this claim has been dismissed.

(ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

102.      No response to this paragraph is required because this claim has been dismissed.

(ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

103.      No response to this paragraph is required because this claim has been dismissed.

(ECF 57) and because it states a legal conclusion. To the extent a response is required, denied.

**COUNT VI**
**RECOVERY OF CHATTEL/REPLEVIN**
**N.Y. CPLR § 7101, _et seq_.**

104.      Defendant re-alleges and incorporates by reference his responses to the

allegations of the preceding paragraphs, as if set forth fully herein.

105.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

106.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

107.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," Defendant admits that a copy of the Musical Work is in possession of his counsel, as ordered by this Court, and denies the remaining allegations of this paragraph.

108.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

109.    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, and without acquiescing to Plaintiff's definition of "the Album," denied.

## PRAYER FOR RELIEF

To the extent a response is required to Plaintiff's Prayer for Relief, Defendant denies that Plaintiff is entitled to any relief, deny the allegations set forth therein, and request that all such relief be denied. Further, Defendant respectfully requests that the Complaint be dismissed with prejudice, that the Court enter Judgment finding for Defendant in all respects and ordering that Plaintiff take nothing in relation to this matter, granting Defendant its costs, including attorneys' fees, incurred in relation to this matter, and granting Defendant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

No response is required to Plaintiff's demand for a jury trial.

Defendant demands a jury trial on all issues that are so triable.

## AFFIRMATIVE DEFENSES

In response to the claims contained in Plaintiff's Complaint, and without admitting any of the allegations set forth therein, Defendant asserts the following affirmative and other defenses, without assuming any burden of proof that is not assigned to him by operation of law.

### First Defense

110.    Plaintiff's claims are barred by the doctrine of unclean hands.

### Second Defense

111.    Plaintiff's claims are barred as the asserted trade secrets are not secrets. More specifically, Plaintiff has no protectable rights in any of its alleged trade secrets because the Original Purchase Agreement rendered the Musical Work not a protectable secret.

### Third Defense

112.    Plaintiff's claims are barred by the doctrine of laches.

### Fourth Defense

113.    Plaintiff is not entitled to injunctive relief for any claim because any alleged injury to Plaintiff is not immediate or irreparable, and Plaintiff has an adequate remedy at law.

### Fifth Defense

114.    Plaintiff's claims are barred by waiver and estoppel.

### Sixth Defense

115.    Plaintiff's claims are barred by the doctrine of accord and satisfaction.

### Seventh Defense

116.    The Purchase Agreement by which PleasrDAO alleges it purchased the Musical Work and the Engraved Box is void because it lacks essential terms, specifically a designation of ownership of the Musical Work, as opposed to the Engraved Box.

### Eighth Defense

117.    Defendant acted in good faith and has not violated any rights which may be secured to Plaintiff under any federal, state or local laws, rules, regulations or guidelines.

### Ninth Defense

118.    Plaintiff cannot recover against Defendant to the extent that Plaintiff failed to make reasonable efforts to mitigate the alleged damages. Alternatively, to the extent that plaintiff has mitigated alleged damages, Defendant is entitled to offset those amounts from any alleged damages.

### Reservation of Rights

119.    Defendant reserves all rights to assert further defenses as they become known during the course of discovery or otherwise become available or applicable, and to amend this Answer accordingly.

**COUNTERCLAIMS**

Counterclaim Plaintiff Martin Shkreli ("Shkreli" or "Counterclaim Plaintiff"), by and through the undersigned attorneys, hereby alleges for his counterclaims against PleasrDAO ("PleasrDAO"), Robert Diggs p/k/a The RZA ("the RZA"), and Tarik Azzougarh p/k/a Cilvaringz ("Cilvaringz") (the RZA and Cilvaringz together, the "Wu-Tang Defendants")(each a "Counterclaim Defendant" and collectively the "Counterclaim Defendants") on personal knowledge as to his own activities and on information and belief as to all other matters, as follows:

**Preliminary Statement**

1.      Shkreli incorporates by reference and realleges the allegations of the above Answer as if fully set forth herein.

2.      Shkreli seeks (1) a declaratory judgment that the Musical Work is not a protected trade secret, (2) a declaratory judgment that he is the current owner of 50% of the copyrights to the Musical Work, (3) a declaratory judgment that he is the current owner of a future interest in the remaining 50% copyrights to the Musical Work, (4) an award of damages for the RZA and Cilvaringz's breach of contract under New York common law, (5) an award of damages for PleasrDAO's tortious interference with contract.

3.      Shkreli's counterclaims arise out of PleasrDAO's wrongful assertion of non-existing intellectual property rights. By its Complaint, PleasrDAO has alleged that it owns certain trade secret rights and that Shkreli has misappropriated those rights. Shkreli has denied those allegations, and contends that the alleged trade secrets are not secrets at all, since any "secret" status was abandoned by the Original Purchase Agreement. An immediate, real, and justiciable controversy therefore exists between Shkreli and PleasrDAO with respect to PleasrDAO's alleged trade secrets.

18

4.      Shkreli's counterclaims also arise out of the Wu-Tang Defendants' duplicate sale of the future interest in 50% of the copyrights to the Musical Work. According to the Original Purchase Agreement, on a date 88 years after its execution, the Wu-Tang Defendants are obligated to transfer the remaining 50% of the copyrights to Shkreli. Now, PleasrDAO has alleged that it purchased this same interest from the Wu-Tang Defendants. *Complaint* at ¶ 29. And so, an immediate, real and justiciable controversy exists between Shkreli, PleasrDAO, and the Wu-Tang Defendants with respect to the ownership of this future interest.

5.      Similarly, an immediate controversy exists between Shkreli and PleasrDAO relating to the ownership of the 50% copyright interest transferred on the date of the Original Purchase Agreement. PleasrDAO contends that it purchased the "exclusive right to play the tracks" from the U.S. Marshals Service when it bought the Engraved Box. Shkreli denies this assertion.

## Parties

6.      Counterclaim Plaintiff Martin Shkreli is an individual residing in New York, New York.

7.      Counterclaim Defendant PleasrDAO is an exempted foundation company established in the Cayman Islands located with a registered address at Cricket Square, Hutchins Drive, PO Box 2681, Grand Cayman, KY1-1111, Cayman Islands.

8.      Counterclaim Defendant The RZA is the founder and chief executive of Wu-Tang Productions, Inc., and is an individual who was engaged in the creation of the Musical Work and the Engraved Box, was a party to the Original Purchase Agreement (defined *infra*), and was a party to a separate agreement with PleasrDAO that conveyed a 50% interest in the copyrights to the Musical Work.

9.      Counterclaim Defendant Cilvaringz is an individual who was engaged in the creation of the Musical Work and the Engraved Box, was a party to the Original Purchase Agreement (defined *infra*), and was a party to a separate agreement with PleasrDAO that conveyed a 50% interest in the copyrights to the Musical Work.

## Jurisdiction and Venue

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

11.     Subject matter jurisdiction over the claims is also conferred upon this Court by 28 U.S.C. § 2201 and 2202 (declaratory judgment), 28 U.S.C. § 1331 (federal question jurisdiction) with respect to claims arising under the Copyright Act, and 28 U.S.C. § 1367 (supplemental jurisdiction) with respect to Counterclaim Plaintiff's state law claims.

12.     This Court also has personal jurisdiction over PleasrDAO because, upon information and belief, PleasrDAO maintains continuous and systematic contacts within New York, derives substantial revenue from New York, and has committed acts giving rise to this action within New York and within this District, including, *inter alia*, by accusing Shkreli of making and retaining unlawful copies of *Once Upon A Time in Shaolin*, (the "Musical Work") in this District.

13.     The exercise of personal jurisdiction comports with PleasrDAO's right to due process because PleasrDAO has purposefully availed itself of the privilege of conducting activities within the Eastern District of New York, such that PleasrDAO should reasonably anticipate litigating in this District.

14.     This Court has personal jurisdiction over the RZA and Cilvaringz since each of these Counterclaim Defendants has committed acts within New York giving rise to this action

and/or has established minimum contacts with New York such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Upon information and belief, Counterclaim Defendants the RZA and Cilvaringz caused the original copy of the Musical Work (the "Engraved Box") to be delivered to a law office in New York County, New York, in 2015. And so, the RZA and Cilvaringz have conducted business within the State of New York and have derived substantial revenue from their acts occurring within the State of New York and within this District.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) at least because and a substantial part of the events giving rise to these claims occurred in this District, and also pursuant to 28 U.S.C. § 1391 (b) at least as to PleasrDAO because PleasrDAO submitted to this Court's personal jurisdiction by virtue of filing this action against Counterclaim Plaintiff.

### Statement of Facts

16.    On September 3, 2015, Shkreli purchased "a musical work by the Wu-Tang Clan entitled 'Once Upon a Time in Shaolin….", all of Sellers' rights as specified in this Agreement including 50% if the copyrights in and to the recordings and musical compositions embodied in said musical work, a hand-carved casing in which the two compact discs containing the musical work is housed, all materials delivered therewith (e.g., the speakers described below), and certain other related materials and rights as described in this Agreement" for approximately 1.5 million dollars. ("the Original Purchase Agreement" or the "OPA") [ECF 23].

17.    The OPA bifurcated its conveyance into two major categories: tangible assets and intangible assets. *Id.* at 5. Specifically, the OPA described the tangible assets as:

a.    Two (2) compact discs containing the only existing copy of a musical work by the Wu-Tang Clan entitled "Once Upon a Time in Shaolin ....";

b.  One (1) hand carved nickel-silver cased box (the "Box") designed by the British-Moroccan artist Yahya Rouach;

c.  One (1) 174-page volume containing lyrics, credits, and anecdotes on the production and recordings of each song on "Once Upon A Time In Shaolin ... ";

d.  One (1) Certificate of Authenticity in a leather bound portfolio (on 600 gram hard paper with gold foil lettering and an official Wu-Tang Candlewax seal), the text of which is attached [to the OPA] as Exhibit A;

e.  One (1) customized pair of PMC's MB2 XBD SE speakers, including installation in Buyer's chosen location (limited to UK or USA). Notwithstanding the foregoing, Sellers cannot guarantee delivery of the speakers but will use reasonable commercial efforts to acquire them from the manufacturer and deliver them to the Buyer.

*Id.*

18.     The OPA separately listed the intangible assets that were transferred, which included:

a.  Fifty Percent (50%) of the copyrights and renewal copyrights in the recordings and musical compositions embodied in the Work. In return, the Buyer agrees to the following usage restrictions for a period of 88 years following the Closing: Buyer may duplicate or replicate the Work for private use, but shall not duplicate, replicate, and/or exploit the Work for any commercial or other non-commercial purposes by any means today known or that come to be known during said time period other than the Permitted Uses which are limited to: the private or public exhibition or playing of the Work, with or without charge, in locations such as

Buyer's home, museums, art galleries, restaurants, bars, exhibition spaces, or
other similar spaces not customarily used as venues for large musical concerts, as
well as the advertising and/or promotion of such exhibition or playing of the
Work (the "Permitted Uses"). If Buyer earns net profits through Permitted Uses of
the Work, Sellers shall be entitled to [redacted] of such net profits; net profits for
the purpose of the foregoing shall be calculated by subtracting from gross receipts
in connection with Permitted Uses (a) the Purchase Price and (b) all costs
attendant to the Permitted Uses and collection of income therefrom ("Net
Profits").

b. The right to sell the Work to a third party under the same terms and conditions as
described herein, subject to a resale royalty to the Sellers of [redacted] of any
profit realized on the resale after recoupment of the Purchase Price.

c. A limited license in perpetuity to use the name, likenesses, trademarks, and logo
of the Wu-Tang Clan, the members of the Wu-Tang Clan (solely in their capacity
as a group involved with the Work), and Wu-Tang Productions, Inc. in
conjunction with Permitted Uses of the Work, advertising and promotion thereof,
and display of the Box.

d. Eighty-eight (88) years after the Closing, the right to the unrestricted use of the
Work and the transfer of full copyright ownership, without further obligation or
payment to anyone, including Sellers or their heirs.

*Id.* at pp. 5-6.

19.    Importantly, the terms of the Original Purchase Agreement between Shkreli and
the sellers unequivocally state that "the Work is the only existing copy of the Work in the world
up until the transfer of the work from the Sellers to the Buyer." *Id.* at 8. Further, the Original

23

Purchase Agreement explicitly permitted Shkreli to "duplicate or replicate the Work for private use…" *Id.*

20.    The Original Purchase Agreement explicitly empowered Shkreli *to share the Musical Work* with others, authorizing "the private or public exhibition or playing of the Work, with or without charge, in locations such as Buyer's home, museums, art galleries, restaurants, bars, exhibition spaces, or other similar spaces not customarily used as venues for large musical concerts, as well as the advertising and/or promotion of such exhibition or playing of the Work (the 'Permitted Uses')." *Id.*

21.    Under the Original Purchase Agreement, the Musical Work was not a secret. Releasing the Musical Work to Shkreli and authorizing him to share it with others at his discretion and without confidentiality provisions or non-disclosure agreements rendered the Musical Work non-secret.

22.    Shkreli performed all of his obligations under the Original Purchase Agreement.

23.    While Shkreli owned the Engraved Box, he shared the Musical Work with others in accordance with the Permitted Uses authorized by the Original Purchase Agreement.

24.    Shkreli's forfeited the Engraved Box to satisfy the monetary judgment against him in a separate case, and the Engraved Box was sold by the U.S. government to PleasrDAO with the execution of an "Asset Purchase Agreement." (the "APA" or the "Asset Purchase Agreement") [ECF 22-3].

25.    The Asset Purchase Agreement detailed that PleasrDAO was purchasing the Engraved Box "'As-Is, Where Is' with no representations or warranties as to their condition, usability, or fitness for any purpose." *Id.*

26.     The Asset Purchase Agreement went so far as to *specifically* disclaim the warranties in the Original Purchase Agreement, stating that "for the avoidance of any doubt, Seller does not undertake or assume any of the representations or warranties with respect to the Assets set forth in the Original Purchase Agreement." *Id*.

27.     PleasrDAO bought the Engraved Box with full knowledge that there was *no guarantee* that there were no other copies of the Musical Work in existence.

28.     The "Asset List" included with the Asset Purchase Agreement further detailed the scope of rights and items being transferred by stating "Seller makes no representations regarding the condition of the Assets other than that the below items will be provided at closing" and describing the physical objects being transferred to PleasrDAO. *Id.*

29.     Plaintiffs allege that "uniqueness was a material condition of PleasrDAO's purchase" and further argue that Defendant's retention of records generated during his ownership of the work and that his previous possession, use, dissemination and/or sale of the data and files of the work and threat[s] to continue to do so demonstrates the "irreparable harm" that will be suffered absent preliminary injunctive relief from this Court. [ECF 3, ECF 4].

30.     PleasrDAO did not buy and has never owned a "secret" Musical Work.

31.     PleasrDAO bought the original copy of the Musical Work, together with the ornate silver box that was its original housing.

32.     PleasrDAO itself has shared the Musical Work with the public, including by exhibiting the Engraved Box in a museum, playing excerpts of the Musical Work for exhibit attendees, sharing the Musical Work with Staten Island Ferry riders in May 2024, filming the process, and posting the video to *YouTube*. All of this is in addition to selling fractional interests in the Musical Work as non-fungible tokens over the internet.

33.     PleasrDAO purchased the remaining 50% copyrights in the Musical Work, which the Wu-Tang Defendants were obligated to deliver to Shkreli in the future, for $750,000.

34.     After PleasrDAO executed the Asset Purchase Agreement, a member of PleasrDAO admitted to Shkreli that PleasrDAO had made a mistake by failing to secure the copyrights in and to the Musical Work from Shkreli, as well as failing to obtain any assurances that Shkreli either no longer possessed copies of the Musical Work or that he would not share it with others.

35.     PleasrDAO was aware of the terms of the Original Purchase Agreement, including the fact that Shkreli was authorized to make copies and to share them with others without "secret" status.

36.     PleasrDAO was aware of the Original Purchase Agreement's provision which obligated the Wu-Tang Defendants to transfer their remaining 50% copyright to Shkreli 88 years from the date of the Original Purchase Agreement.

37.     Counterclaim Defendants interfered with Shkreli's rights under the Original Purchase Agreement, either by breaching the agreement or by directly inducing a breach.

38.     Specifically, PleasrDAO interfered with Shkreli's rights by publicly mischaracterizing the scope of the Agreement, including by advertising that it acquired the Musical Work on its webpage.[4]

39.     Moreover, PleasrDAO interfered with Shkreli's rights by purchasing 50% of the copyrights in and to the Musical Work, when it knew that the OPA granted Shkreli a future interest in those same copyrights.

---

[4] https://www.thealbum.com/lore

40.     The Wu-Tang Defendants have interfered with Shkreli's rights by selling a total of 150% of the copyrights in and to the Musical Work:

      a.  50% to Shkreli on the date of the Original Purchase Agreement

      b.  a future interest in 50% to Shkreli, which the Wu-Tang Defendants promised would be delivered 88 years after the OPA; and

      c.  50% to PleasrDAO in a later, separate transaction, as alleged in the Complaint.

41.     PleasrDAO has also interfered with Shkreli's contractual rights under the OPA by attempting to impose post-hoc restrictions not contained in any of the Asset Purchase Agreement, the Forfeiture Order, or the Original Purchase Agreement.

42.     These actions were taken willfully and intentionally, in direct conflict with Shkreli's rights.

43.     As a direct and proximate result of the above conduct, Shkreli has suffered and continues to suffer damages.

## Actual Case or Controversy

44.     Counterclaim Plaintiff restates each of the allegations in the preceding paragraphs, as though fully set forth herein.

45.     There is an actual controversy between the parties to this litigation within the jurisdiction of this Court under 28 U.S.C. § 2201 and 2202.

46.     Based on the foregoing, a justiciable controversy exists between the parties to this action.

47.     Absent a declaration of copyright ownership, the Parties will continue to litigate their claims without knowing who actually owns the right to make copies of the Musical Work.

## <u>COUNT I: DECLARATORY JUDGMENT OF NO TRADE SECRET MISAPPROPRIATION</u>
### <u>(All Defendants)</u>

48.     Counterclaim Plaintiff restates each of the allegations in the preceding paragraphs, as though fully set forth herein.

49.     PleasrDAO has no protectable rights in any of its alleged trade secrets. Under both the DTSA and New York common law, PleasrDAO can only prevail on its misappropriation claim if it took reasonable steps to *keep* its alleged trade secrets confidential. *PaySys Int'l, Inc. v. Atos Se*, No. 14-cv-10105 (KBF), 2016 WL 7116132, at *11 (S.D.N.Y. Dec. 5, 2016); 18 U.S.C. § 1839 (emphasis added).

50.     The terms of the Original Purchase Agreement and the Asset Purchase Agreement confirm that the Musical Work was only a "secret" until the Original Purchase Agreement. Once the Musical Work was released to Shkreli and he was permitted to share it with others, any "secret" status dissipated.

51.     Shkreli is entitled to a judgment from this Court that he has not misappropriated any of the alleged trade secrets raised in this action.

## <u>COUNT II: DECLARATORY JUDGMENT OF CURRENT COPYRIGHT INTEREST OWNERSHIP</u>
### <u>(All Defendants)</u>

52.     Counterclaim Plaintiff restates each of the allegations in the preceding paragraphs, as though fully set forth herein.

53.     PleasrDAO has asserted that Shkreli's activities related to the Musical Work infringe PleasrDAO's "exclusive right to play the audio tracks" and "exclusive right to exploit the recordings." Complaint at ¶ 29.

54.     PleasrDAO has advertised, marketed, offered for sale, and sold products, including fractional ownership of the Musical Work, without owning any of the copyrights in and to the Musical Work.

55.     An actual controversy has arisen and now exists between Shkreli and PleasrDAO concerning the ownership of the 50% copyrights in and to the Musical Work that were transferred to Shkreli on the date of the Original Purchase Agreement.

56.     Upon information and belief, Plaintiff believes and maintains that Shkreli's activities with respect to the Musical Work, prior to the preliminary injunction issued in this case, were unlawful since he no longer has any right to possess the Musical Work.

57.     PleasrDAO objects to Shkreli's prior use of the Musical Work, including his sharing it with others via the internet.

58.     Upon information and belief, PleasrDAO believes that Shkreli is not authorized to make copies of the Musical Work and distribute them to others.

59.     PleasrDAO does not hold copyright in the Musical Work.

60.     Shkreli currently owns 50% of the copyrights in and to the Musical Work.

61.     By virtue of the foregoing, Shkreli requests a judicial determination of the parties' rights and duties with respect to the copyrights owned by Shkreli.

62.     A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights as determined by the Court, so that PleasrDAO is prevented from filing further false statements regarding Shkreli's retention and/or use of the Musical Work[5] and from making and disseminating copies of the Musical Work without owning the copyrights to the same.

---

[5] Again, prior to the Preliminary Injunction issued in this case.

## COUNT III: DECLARATORY JUDGMENT OF INTEREST IN FUTURE COPYRIGHT
### (All Counterclaim Defendants)

63.    Counterclaim Plaintiff restates each of the allegations in the preceding paragraphs, as though fully set forth herein.

64.    PleasrDAO has asserted that Shkreli's activities related to the Musical Work infringe PleasrDAO's "exclusive right to play the audio tracks" and "exclusive right to exploit the recordings." Complaint at ¶ 29.

65.    PleasrDAO has advertised, marketed, offered for sale, and sold products, including fractional ownership of the Musical Work, without owning any of the copyrights in and to the Musical Work.

66.    An actual controversy has arisen and now exists between Shkreli and PleasrDAO concerning the ownership of the 50% copyrights in and to the Musical Work that were *not* transferred to Shkreli on the date of the Original Purchase Agreement, but were promised to be transferred after 88 years (i.e., in the year 2103).

67.    Upon information and belief, Plaintiff believes and maintains that Shkreli's activities with respect to the Musical Work, prior to the preliminary injunction issued in this case, were unlawful since he no longer has any property interest in the copyrights to the Musical Work.

68.    Upon information and belief, PleasrDAO believes that it alone has the right to exploit the Musical Work, including by playing and/or commercializing it.

69.    PleasrDAO does not hold any property interest in the copyrights to the Musical Work.

70.    Shkreli holds a future interest in 50% of the copyrights in and to the Musical Work.

71.    88 years from the date of the Original Purchase Agreement, Shkreli will hold 100% of the copyrights in and to the Musical Work.

72.    By virtue of the foregoing, Shkreli requests a judicial determination of the parties' rights and duties with respect to the property interests in the copyrights to the Musical Work that are owned by Shkreli.

73.    A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights as determined by the Court, so that PleasrDAO is prevented from filing further false statements regarding Shkreli's retention and/or use of the Musical Work.[6]

## COUNT IV: BREACH OF CONTRACT
### (v. The Wu-Tang Defendants)

74.    Counterclaim Plaintiff restates each of the allegations in the preceding paragraphs, as though fully set forth herein.

75.    The Wu-Tang Defendants breached the Original Purchase Agreement under New York common law.

76.    The Original Purchase Agreement is a valid and enforceable contract.

77.    The Wu-Tang Defendants signed the Original Purchase Agreement and are bound by its terms.

78.    According to the Original Purchase Agreement, the Wu-Tang Defendants agreed to transfer 50% of the copyrights in and to the Musical Work to Shkreli on the date of the Original Purchase Agreement and to transfer 50% of the copyrights in and to the Musical Work to Shkreli on a date 88 years past the date of the Original Purchase Agreement.

---

[6] Again, prior to the Preliminary Injunction issued in this case.

79.     In January 2024, the Wu-Tang Defendants sold 50% of the copyrights in the Musical Work to PleasrDAO.

80.     As a result of this sale, the Wu-Tang Defendants cannot uphold their promise to transfer the remaining 50% of the copyrights in the Musical Work to Shkreli in 2103.

81.     Therefore, the Wu-Tang Defendants have breached the Original Purchase Agreement.

82.     As a direct and proximate result of the above misconduct, Shkreli has suffered and continues to suffer direct and consequential damages, and is entitled to recover compensatory and actual damages, a reasonable royalty, attorneys' fees, and other damages in law and equity to be proven at trial.

## COUNT V: TORTIOUS INTERFERENCE WITH CONTRACT
### (v. PleasrDAO)

83.     Counterclaim Plaintiff restates each of the allegations in the preceding paragraphs, as though fully set forth herein.

84.     The Original Purchase Agreement was a valid and enforceable contract by and between Shkreli and the Wu-Tang Defendants.

85.     PleasrDAO was aware of the Original Purchase Agreement.

86.     PleasrDAO was aware that Shkreli purchased a future interest in 50% of the copyrights in and to the Musical Work, and that he owned the other 50% of the copyrights outright, as a result of the Original Purchase Agreement.

87.     PleasrDAO purchased the 50% copyrights owed to Shkreli from the Wu-Tang Defendants in January 2024, causing the Wu-Tang Defendants to breach the Original Purchase Agreement.

88.    PleasrDAO intentionally procured the Wu-Tang Defendants' breach of the Original Purchase Agreement, without justification.

89.    As a direct and proximate result of the above misconduct, Shkreli has suffered and continues to suffer damages, direct and consequential damages, and is entitled to recover compensatory and actual damages, a reasonable royalty, attorneys' fees, and other damages in law and equity to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff Martin Shkreli requests that the Court:

A.    Enter an order dismissing the Complaint and all claims therein with prejudice,

B.    Enter judgment in favor of Shkreli on the Complaint and each claim therein,

C.    Declare that PleasrDAO's alleged trade secrets are not protectable trade secrets,

D.    Declare that Shkreli currently owns 50% of the copyrights in and to the Musical Work,

E.    Declare that Shkreli possesses a future interest in the remaining 50% of the copyrights in and to the Musical Work,

F.    Award Shkreli monetary damages for all injuries suffered as a result of Counterclaim Defendants' wrongdoing, including compensatory damages, nominal damages, and punitive damages, together with pre-judgment and post-judgment interest, costs and attorneys' fees, in an amount to be determined at trial,

G.    Order that Counterclaim Defendants pay all fees, expenses, and costs associated with this action, and

H.    Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Counterclaim Plaintiff Martin Shkreli demands a trial by jury on all issues so triable.

Respectfully Submitted,

*/s/ Edward A. Paltzik*
Edward A. Paltzik, Esq.
Erik Dykema, Esq.
Meredith Lloyd, Esq. (*pro hac vice*)

Taylor Dykema PLLC
914 E 25th Street
Houston, TX 77009
edward@taylordykema.com
erik@taylordykema.com
meredith@taylordykema.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 2, 2026, a true and correct copy of the foregoing Answer

and Counterclaims was sent to PleasrDAO's counsel via email at:

RCarnes@reedsmith.com
SCooper@ReedSmith.com

*/s/ Meredith Lloyd*
Meredith Lloyd, Esq.