IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PleasrDAO,<br><br>        Plaintiff,<br><br>v.<br><br>Martin Shkreli,<br><br>        Defendant<br><br>Martin Shkreli,<br><br>        Counterclaim Plaintiff,<br><br>v.<br><br>PleasrDAO, Robert Diggs,* and Tarik Azzougarh,*<br><br>        Counterclaim Defendants | Case No.: 1:24-cv-04126-PKC-MMH<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR RECONSIDERATION**

*Currently Terminated Counterclaim Defendants

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 1

II.  FACTUAL BACKGROUND .......................................................................................... 1

    A.   The Original Purchase Agreement ......................................................................... 2
    B.   Shkreli's Forfeiture of the Engraved Box .............................................................. 3
    C.   The Asset Purchase Agreement .............................................................................. 3
    D.   The Copyright Purchase Agreement(s) .................................................................. 4

III. PROCEDURAL BACKGROUND .................................................................................. 5

IV.  STANDARD OF REVIEW ............................................................................................. 6

V.   THE WU-TANG DEFENDANTS CAN BE JOINED AS COUNTERCLAIM DEFENDANTS UNDER RULE 13(H) WITHOUT A SEPARATE MOTION ...................... 7

    A.   The Wu-Tang Defendants Can Be Joined Under Rule 20 ..................................... 8
    B.   Joining the Wu-Tang Defendants Does Not Require A Separate Motion ............ 10

VI.  CONCLUSION .............................................................................................................. 11

**CERTIFICATE OF COMPLIANCE** ...................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ADYB Engineered for Life, Inc. v. Edan Admin. Servs.*,
  2022 U.S. Dist. LEXIS 129283 (S.D.N.Y. July 20, 2022) ....................................................... 1, 10

*Arch Ins. Co. v. Harleysville Worcester Ins. Co.*,
  56 F. Supp. 3d 576 (S.D.N.Y. 2014) ......................................................................................... 7, 8

*Associated Dry Goods Corp. v. Towers Financial Corp.*,
  920 F.2d 1121 (2d Cir. 1990) ......................................................................................................... 8

*Beata Music LLC v. Danelli*,
  2022 U.S. Dist. LEXIS 2896 (S.D.N.Y. Jan. 6, 2022) ................................................................ 10

*Chemtech Indus. v. Goldman Fin. Group*,
  156 F.R.D. 181 (E.D. Mo. 1994) .................................................................................................. 11

*Cho v. Blackberry Ltd.*,
  991 F.3d 155 (2d Cir. 2021) ........................................................................................................... 7

*Federman v. Empire Fire & Marine Ins. Co.*,
  597 F.2d 798 (2d Cir. 1979) ........................................................................................................... 8

*Grupo Dataflux v. Atlas Global Grp.*, L.P.
  541 U.S. 567 (2004) ................................................................................................................. 8, 10

*Gunderson Amazing Fireworks, LLC v. Merrick Bank*,
  2016 U.S. Dist. LEXIS 113353 (E.D.N.Y. Aug. 24, 2016) ........................................................ 11

*Hercules, Inc. v. Dynamic Export Corp.*,
  71 F.R.D. 101 (S.D.N.Y. 1976) ..................................................................................................... 8

*Herschaft v. N.Y.C. Campaign Fin. Bd.*,
  139 F. Supp. 2d 282 (E.D.N.Y. 2001) .......................................................................................... 6

*Kalie v. Bank of Am. Corp.*,
  297 F.R.D. 552 (S.D.N.Y. 2013) .................................................................................................. 9

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
  729 F.3d 99 (2d Cir. 2013) ............................................................................................................ 7

*Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*,
  2019 U.S. Dist. LEXIS 40725 (S.D.N.Y. Mar. 13, 2019) ............................................................ 9

*Marsh USA Inc. v. Osterhage,*
  2019 U.S. Dist. LEXIS 51924 (S.D.N.Y. Mar. 26, 2019) ........................................................ 10

*Moore v. N.Y. Cotton Exchange,*
  270 U.S. 593 (1926) ................................................................................................................. 8

*Northfield Ins. Co. v. Bender Shipbuilding & Repair Co.,*
  122 F.R.D. 30 (S.D. Ala. 1988) ............................................................................................. 11

*Sage Fulfillment, LLC v. Earth Animal Ventures, Inc.,*
  2022 U.S. Dist. LEXIS 61332 (D. Conn. Apr. 1, 2022) ......................................................... 11

*Superb Motors Inc. v. Deo,*
  2025 U.S. Dist. LEXIS 97103 (E.D.N.Y. May 21, 2025) ..................................................... 6, 7

*T.Z. v. City of New York,*
  634 F. Supp. 2d 263 (E.D.N.Y. 2009) ..................................................................................... 7

*Trainum v. Rockwell Collins, Inc,*
  2017 U.S. Dist. LEXIS 38205 (S.D.N.Y. Mar. 8, 2017) .......................................................... 7

*United States v. Aquavella,*
  615 F.2d 12 (2d Cir. 1979) ...................................................................................................... 9

*Vermont Castings, Inc. v. Evans Prod. Co., Grossman's Div.,*
  510 F. Supp. 940 (D. Vt. 1981) ............................................................................................. 11

**Other Authorities**

6 Wright, Miller, & Kane, FEDERAL PRACTICE AND PROCEDURE (3d ed. 2019) ........................... 7

**Rules**

FED. R. CIV. P. 13 ............................................................................................................... *passim*

FED. R. CIV. P. 19 .................................................................................................... 1, 7, 8, 10

FED. R. CIV. P. 20 ............................................................................................................... *passim*

FED. R. CIV. P. 60 ....................................................................................................................... 7

iv

I.  **INTRODUCTION**

Defendant and Counterclaim Plaintiff Martin Shkreli ("Shkreli") respectfully requests that this Court reconsider its order terminating Robert Diggs p/k/a The RZA and Tarik Azzougarh p/k/a Cilvaringz (the "Wu-Tang Defendants"), as parties to this action. This Court has incorrectly ordered that Shkreli cannot bring counterclaims against the Wu-Tang Defendants since they were not "opposing parties" under FED. R. CIV. P. 13(a)-(b) before Shkreli filed his Answer. Text Orders dated Feb. 6 and 11, 2026.

Contrary to the Court's orders, Rule 13(h) explicitly allows litigants to add new parties as counterclaim defendants, citing the joinder provisions of Rules 19 and 20. Here, Shkreli has asserted counterclaims against the Wu-Tang Defendants and PleasrDAO arising from the same set of transactions or events as claims against him, rendering their joinder appropriate under Rule 20.

Thus, the Court should reconsider its orders *sua sponte* terminating Shkreli's counterclaims against the Wu-Tang Defendants. This Court's February 6 and February 11, 2026 contained clear errors, and Shkreli's counterclaims against the Wu-Tang Defendants are permissible.

II.  **FACTUAL BACKGROUND**

Plaintiff PleasrDAO ("Plaintiff" or "PleasrDAO") commenced this action in 2024, bringing claims against Shkreli arising out of a series of related transactions relating to the original copy of a recording by the Wu Tang Clan titled "*Once Upon a Time in Shaolin...*" (the "Musical Work". *See generally* ECF 1 ("Compl."). These transactions include the Original Purchase Agreement executed by the Wu-Tang Defendants and Shkreli ("Original Purchase Agreement" or the "OPA") ECF 4-3; ECF 23), the Forfeiture Order, the Asset Purchase Agreement, and the Copyright Purchase Agreement (defined *infra*). Although the Court has acknowledged that the full extent of this series of transactions is not presently known (ECF 57 at n.7), the record confirms

1

that the rights and obligations transferred at each step in the series will control the outcome of this matter. Both PleasrDAO and Shkreli have asserted claims based on alleged obligations arising from these transactions.

### A. The Original Purchase Agreement

In 2015, Shkreli purchased what was then the only physical copy of the Musical Work. *Id.; see also* ECF 63 pp. 1-18 ("Ans."), 18-34 ("Countercl."). This original copy was delivered to Shkreli in an elaborate silver box, accompanied by various accoutrements including a leather-bound manuscript and a certificate of authenticity (the "Engraved Box"). Compl. ¶ 15; Countercl. ¶ 16. Shkreli's 2015 purchase was memorialized in the OPA, which was signed by Shkreli, each of the Wu-Tang Defendants, and Paddle 8 Inc., acting as an escrow agent. OPA at p. 1; Compl. ¶¶ 18-24; Ans. ¶ 14; Countercl. ¶¶ 77, 84.

The Wu-Tang Defendants made several representations and warranties in the Original Purchase Agreement, including that Shkreli was purchasing "the only existing copy of the Work in the world up until the transfer of the Work from the [Wu-Tang Defendants] to [Shkreli]." OPA at p. 7. The OPA also authorized Shkreli to make certain "Permitted Uses" of the Musical Work, which included making copies and sharing the Musical Work with others. OPA at pp. 5-7. ("No copies of the Work will be made unless at the request of [Shkreli]."). To the extent that Shkreli exhibited the Musical Work and earned "net profits," the Wu-Tang Defendants were entitled to a portion of those profits. *Id.* at 6, Compl. ¶ 20.

Separate from its transfer of title to the Engraved Box, the OPA assigned to Shkreli a present possessory interest in 50% of the copyrights and renewal copyrights in the Musical Work and a future possessory interest in the remaining 50% of the copyrights, which were to be transferred from the Wu-Tang Defendants to Shkreli 88 years after the OPA. *Id.* at p. 5. According

2

to the OPA, the Wu-Tang Defendants currently hold the un-transferred fifty percent of copyrights in the Musical Work and are obligated to transfer those remaining copyrights to Shkreli in 2103. *Id.; see also* Countercl. ¶¶ 18, 36, 40, 66, 70-71, 78.

### B. Shkreli's Forfeiture of the Engraved Box

In 2018, Shkreli was ordered to forfeit the amount of $7,360,450 to the United States (the "Forfeiture Money Judgment"). Compl. ¶ 26; ECF No. 4-5. The Forfeiture Money Judgment was accompanied by a Forfeiture Order directing Shkreli to surrender several "substitute assets" for sale by the U.S. Marshal Service ("U.S.M.S.") to third parties in lieu of a cash payment. *Id.* (the "Forfeiture Order"). Those "substitute assets" included, *inter alia*, the Engraved Box, a copy of "Tha Carter V" by Lil Wayne, and a Picasso painting. Compl. ¶ 60; Ans. ¶ 61; Countercl. ¶ 24; Forfeiture Order at 10. The Forfeiture Order specified that the proceeds from sales of "substitute assets" were to satisfy the Forfeiture Money Judgment. *Id.*; Countercl. ¶ 24. Following the Forfeiture Order, the U.S.M.S. took possession of the Engraved Box.

### C. The Asset Purchase Agreement

In July 2021, the U.S.M.S. sold the forfeited Engraved Box to anonymous buyers[1] via an "Asset Purchase Agreement." Compl. ¶¶ 2, 29; Countercl. ¶ 24; ECF No. 22-3 ("Asset Purchase Agreement" or "APA"). The APA detailed that the Engraved Box was being sold "'As-Is, Where Is' with no representations or warranties as to [its] condition, usability, or fitness for any purpose." APA at p. 1; Countercl. ¶ 25. The APA was crystal clear: the OPA's guarantees no longer applied. APA at p. 2 ("[F]or the avoidance of any doubt, Seller does not undertake or assume any of the

---

[1] For the purposes of this Motion, Defendant assumes that PleasrDAO is the buyer identified in the Asset Purchase Agreement. To the extent the APA identifies other parties who held ownership interests in the Engraved Box, those parties should also be joined to this lawsuit, and Defendant will move to add such parties if and when it learns of their identity.

3

representations or warranties with respect to the Assets set forth in the Original Purchase Agreement."); *id.* at p. 6 ("Seller makes no representations regarding the condition of the Assets other than the below items will be provided at closing."); Countercl. ¶¶ 26-28. The APA also expressly required compliance "with all of Mr. Shkreli's obligations under the Original Purchase Agreement." APA at p. 2. After the APA, PleasrDAO took possession of the Engraved Box. Compl. ¶¶ 30-31. Later still, PleasrDAO began selling fractional interests in the Musical Work as non-fungible tokens. *Id.*

### D. The Copyright Purchase Agreement

As set forth in the previous record, in 2024, well after the OPA (2015), the Forfeiture Order (2018), and the APA (2021), PleasrDAO allegedly acquired the remaining 50% of the copyrights in and to the Musical Work (the "Copyright Purchase Agreement" or "CPA"). *See* Compl. at ¶ 29; ECF 4-1 at ¶ 9 (Declaration that "[i]n January 2024, [PleasrDAO] bought the copyrights in and exclusive right to exploit the recordings for approximately $750,000."); ECF 49 at p. 10 (same); Countercl. ¶ 5 (same).

Although a copy of the Copyright Purchase Agreement is not yet on the record in this case, it is apparent that the Wu-Tang Defendants transferred the remaining 50% of the copyrights in and to the Musical Work to a third party, in violation of the OPA. *Id.* PleasrDAO has alleged that it is the sole owner of "the copyrights in and exclusive right to exploit" the Musical Work. Compl. ¶¶ 2, 29. Shkreli denies this assertion, seeking a declaratory judgment of both current and future ownership of the copyrights in and to the Musical Work. Countercl. ¶¶ 4-5, 47, 52-73.

The claims at issue in this action do not arise from a single contract. Instead, they rely upon the cumulative effect of the entire transactional series. Each transaction following the OPA incorporates or is otherwise dependent upon the OPA. As acknowledged by PleasrDAO, Shkreli,

4

and this Court, the interpretation of any transaction in this series necessitates examination of the OPA, which certainly affects the Wu-Tang Defendants' contractual rights and obligations.

### III.   PROCEDURAL BACKGROUND

PleasrDAO commenced this action in 2024, filing a complaint that described the series of transactions which allegedly granted it exclusive rights to possess, play, and exploit both the Engraved Box and the Musical Work. *See generally* Compl. This Court dismissed PleasrDAO's claims for Enforcement of Forfeiture Order, Tortious Interference with Prospective Economic Advantage, and Unjust Enrichment and requested full briefing on Shkreli's request that this Court order Plaintiff to join the Wu-Tang Defendants to this action as necessary parties. ECF 57. The issue was fully briefed, (ECF 59-61), and this Court declined to order the mandatory joinder of the Wu-Tang Defendants to this action. *See* Jan. 19, 2026 Text Order.

Critically, the Court's denial order stated that the parties were not advancing competing claims as to the ownership of the copyrights in and to the Musical Work. *Id.* Relying solely on PleasrDAO's Complaint, this Court noted that "PleasrDAO does not seek to invalidate Diggs and Azzougarh's rights under the Agreement" and characterized Plaintiff's support as "speculation." *Id.*

On February 2, 2026, Shkreli filed his Answer to PleasrDAO's Complaint, together with Counterclaims against PleasrDAO and the Wu-Tang Defendants. ECF 63. With this filing, Shkreli asserted that he holds an ownership interest in the Musical Work. *Id.* Specifically, Shkreli has asserted that he is the current owner of 50% of the copyrights in and to the Musical Work (Countercl. ¶ 60), that the Wu-Tang Defendants are obligated to give him the remaining 50% in the future (¶¶ 40(b), 66), and that PleasrDAO does not hold any ownership of these copyrights (¶¶ 54, 59).

5

Shkreli is seeking declaratory judgments relating to the ownership of current and future interests in the Musical Work's copyrights, as well as a declaratory judgment on the "trade secret" status of the Musical Work. Countercl. *Id.* ¶¶ 48-73. Shkreli has also brought counterclaims for breach of contract and tortious interference with contract against PleasrDAO and the Wu-Tang Defendants, respectively. *Id.* ¶¶ 74-89. All of Shkreli's counterclaims clearly arise from the same series of transactions as Plaintiff's claims against him, listed above. And so, at least as of February 2, 2026, there is a non-speculative dispute over the ownership of copyrights in and to the Musical Work before this Court. Adjudication of this dispute affects PleasrDAO, Shkreli, and the Wu-Tang Defendants.

On February 6, 2026, this Court issued an order advising that "counterclaims can only be asserted against an opposing party—here, the only one is PleasrDAO." *See* Feb. 6, 2026 Text Order. On February 11, 2026, this Court issued an order directing the removal of the Wu-Tang Defendants from the docket because Shkreli "improperly asserted counterclaims against Robert 'RZA' Diggs and Tarik 'Cilvaringz' Azzougarh." Text Order dated Feb. 11, 2026.

Shkreli respectfully requests that the Court reconsider its February 6 and 11, 2026 Text Orders.

### IV.   STANDARD OF REVIEW

A motion for reconsideration "is appropriate when the moving party can demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Superb Motors Inc. v. Deo*, 2025 U.S. Dist. LEXIS 97103, at *3 (E.D.N.Y. May 21, 2025) (cleaned up).

Reconsideration is warranted when: (i) there is an intervening change in controlling law,

6

(ii) newly available evidence is identified, (iii) clear error, or (iv) necessary to avoid a manifest injustice. *Superb Motors Inc. v. Deo*, 2025 U.S. Dist. LEXIS 97103, at *4 (E.D.N.Y. May 21, 2025) (citing *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021); *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (same); *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 268 (E.D.N.Y. 2009) (same)). Moreover, Rule 60(b) permits relief from an order or judgment for mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, or in exceptional or extraordinary circumstances.

### V. THE WU-TANG DEFENDANTS CAN BE JOINED AS COUNTERCLAIM DEFENDANTS UNDER RULE 13(H) WITHOUT A SEPARATE MOTION

Rule 13 allows compulsory and permissive counterclaims to be brought against an "opposing party," even when the opposing party has not been previously joined in the litigation. Rule 13(b) allows a defendant to assert any claim against an opposing party, and Rule 13(h) provides that parties may be added to that counterclaim in accordance with Rules 19 and 20. *See generally* Rule 13(h) ("(h) Joining Additional Parties. Rules 19 and 20 govern the *addition of a person as a party to a counterclaim* or crossclaim.") (emphasis added); *Trainum v. Rockwell Collins, Inc*, 2017 U.S. Dist. LEXIS 38205, at *6-7 (S.D.N.Y. Mar. 8, 2017) ("[A] defendant *may also join a third party to a counterclaim asserted against the plaintiff*. Rule 13(b) allows a defendant to assert any claim against an opposing party, and Rule 13(h) provides that *parties may be added to that counterclaim* in accordance with Rules 19 and 20.") (emphases added). "Under Rule 13(h), Rules 19 (necessary joinder) and 20 (permissive joinder) *govern the addition of nonparties to a counterclaim.*" *Arch Ins. Co. v. Harleysville Worcester Ins. Co.*, 56 F. Supp. 3d 576, 583 (S.D.N.Y. 2014) (emphasis added); *Grupo Dataflux v. Atlas Global Grp., L.P.,* 541 U.S. 567, 580 n.9 (2004) (Rule 13(h) "applies only to persons *other than those made parties to the original action*") (emphasis added).

7

Rule 13(h) is construed "liberally in an effort to avoid multiplicity of litigation, minimize the circuitry of actions, and foster judicial economy." 6 Wright, Miller, & Kane, FEDERAL PRACTICE AND PROCEDURE, § 1434, at 268–269. (3d ed. 2019); *see also Hercules, Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101, 105 (S.D.N.Y. 1976) ("This amendment makes clear that additional parties plaintiff as well as additional parties defendant to a counterclaim may be joined as long as they are joined in accordance with Rules 19 and 20."). In cases where joinder of a party is proper under Rule 20, courts need not consider whether that party is also a necessary party under Rule 19. *Arch Ins. Co. v. Harleysville Worcester Ins. Co.*, 56 F. Supp. 3d at 583.

### A. The Wu-Tang Defendants Can Be Joined Under Rule 20

The Wu-Tang Defendants are proper counterclaim defendants in this action because Shkreli's counterclaims against them arise out of the same transaction, occurrence, or series of transactions or occurrences as his counterclaims against PleasrDAO.[2] They can also be joined because adjudication of Shkreli's counterclaim for tortious interference with contract (brought solely against PleasrDAO), will certainly raise questions of law and fact common to PleasrDAO and the Wu-Tang Defendants. Countercl. ¶¶ 83-89.

Rule 20 provides for the permissive joinder of parties to an action, stating that:

Persons . . . may be joined in one action as defendants if:
(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
(B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2).

---

[2] Since Shkreli's counterclaims arise from the same series of transactions or occurrences as the claims against him in this action, they are compulsory counterclaims under Rule 13(a) and do not require an independent jurisdictional basis. *Moore v. N.Y. Cotton Exchange*, 270 U.S. 593, 609 (1926); *Associated Dry Goods Corp. v. Towers Financial Corp.*, 920 F.2d 1121, 1125 (2d Cir. 1990); *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 810-11 (2d Cir. 1979).

In deciding whether counterclaims arose from the same transaction or occurrence, courts "look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 557 (S.D.N.Y. 2013) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)). Courts in this Circuit read the phrase "same transaction" to "encompass all logically related claims." *Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*, 2019 U.S. Dist. LEXIS 40725, at *2 (S.D.N.Y. Mar. 13, 2019) (collecting cases).

Shkreli's counterclaims undoubtedly arise from the same series of transactions or occurrences giving rise to this lawsuit. The rights and obligations under the OPA and the CPA are a core issue in PleasrDAO's case against Shkreli. Compl. ¶ 78 ("[W]hile in his possession, Shkreli made unauthorized copies of the Album's data and files…"). Indeed, PleasrDAO has based its entire case on allegations that it has the exclusive right to possess, play, exploit, and copy the Musical Work. *Id.* ¶¶ 29, 62, 70, 80, 93, 104. This Court cannot resolve PleasrDAO's claims without deciding the rights and obligations under the OPA, the Forfeiture Order, the APA, and the CPA. For this reason alone, each of Shkreli's counterclaims is sufficiently related to this matter and joinder of the Wu-Tang Defendants is appropriate.

Second, as a matter of law, Shkreli's counterclaims against PleasrDAO require a determination of whether the Wu-Tang Defendants breached the OPA, as well as an assessment of the rights, representations, and obligations in the CPA. Countercl. ¶¶ 87-88. Each of Shkreli's non-declaratory relief counterclaims arises from the same two transactions. *Id.* ¶¶ 74-89. More specifically, Shkreli alleged that "PleasrDAO purchased the 50% copyrights owed to Shkreli from the Wu-Tang Defendants in January 2024, causing the Wu-Tang Defendants to breach the Original

9

Purchase Agreement." Countercl. ¶ 87. It is well-settled that when resolving a tort claim requires interpreting an underlying contract, the signatories to that contract should be joined as parties. *Marsh USA Inc. v. Osterhage*, 2019 U.S. Dist. LEXIS 51924, at *17 (S.D.N.Y. Mar. 26, 2019).

Courts have even scolded defendants for improperly bringing counterclaims as third-party claims, specifically holding that third-party defendants not subject to indemnification claims "should have been joined as parties to the defendants' counterclaims under Rule 19 or 20." *Beata Music LLC v. Danelli*, 2022 U.S. Dist. LEXIS 2896, at *3 n.1 (S.D.N.Y. Jan. 6, 2022). As the *Beata* court explained, the new party counterclaims were appropriate "because the claims in this case directly implicate the rights of [the new parties] and there are several questions of law and fact common to all the parties."

Since Shkreli's counterclaims against the Wu-Tang Defendants raise questions of law and fact that are shared with his counterclaims against PleasrDAO and with PleasrDAO's remaining claims against him, the Wu-Tang Defendants should be joined.

### B. Joining the Wu-Tang Defendants Did Not Require a Separate Motion

Rule 13(h) authorizes counterclaims against new parties at the same time as their joinder. *ADYB Engineered for Life, Inc. v. Edan Admin. Servs.*, 2022 U.S. Dist. LEXIS 129283, at *4 (S.D.N.Y. July 20, 2022) (internal citation omitted); *see also Grupo Dataflux*, 541 U.S. at 580 n.9 (Rule 13(h) "applies only to persons other than those made parties to the original action").

"Generally, a counterclaim-plaintiff is not required to obtain leave of court to join new parties in the original answer, pursuant to Rule 13(h)." *Sage Fulfillment, LLC v. Earth Animal Ventures, Inc.*, 2022 U.S. Dist. LEXIS 61332, at *16 (D. Conn. Apr. 1, 2022). (citing *Vermont Castings, Inc. v. Evans Prod. Co., Grossman's Div.*, 510 F. Supp. 940, 946 (D. Vt. 1981) ("[L]eave of court is no longer required[]" to join parties under Rule 13(h). "The spirit of the Federal Rules

10

is served by eliminating unnecessary motions."); *see also Northfield Ins. Co. v. Bender Shipbuilding & Repair Co.*, 122 F.R.D. 30 (S.D. Ala. 1988) ("Leave of court is not required to join previous non-party as counterclaim defendant."); *Chemtech Indus. v. Goldman Fin. Group*, 156 F.R.D. 181 (E.D. Mo. 1994) (same).

Courts in this District have observed that "[i]n practice, courts routinely allow parties to be joined without a court order, unless legitimate objections are raised regarding the proposed defendants." *Gunderson Amazing Fireworks, LLC v. Merrick Bank*, 2016 U.S. Dist. LEXIS 113353, at *6 (E.D.N.Y. Aug. 24, 2016). And so, this Court should allow Shkreli to assert all of his counterclaims.

## VI. CONCLUSION

The Court should reconsider its February 6 and February 11 Text Orders since they were clear error. Since Rule 13 permits joinder of new parties as counterclaim defendants, this Court should re-instate the Wu-Tang Defendants as parties to this action.

Date: February 17, 2026

Respectfully Submitted,

/s/ Edward A. Paltzik
Edward A. Paltzik, Esq.
Erik Dykema, Esq.
Meredith Lloyd, Esq. (*pro hac vice*)
Taylor Dykema PLLC
914 E 25th Street
Houston, TX 77009
(516) 526-0341
edward@taylordykema.com
erik@taylordykema.com
meredith@taylordykema.com

*Attorneys for Martin Shkreli*

11

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned hereby certifies that Defendant's Motion for Reconsideration complies with the word limits of Local Civil Rule 6.3 and contains 3,484 words, exclusive of caption, any index, table of contents, table of authorities, signature blocks, or any required certificates; and inclusive of footnotes or endnotes.

Date: February 17, 2026                              Respectfully Submitted,

                                                          */s/ Edward A. Paltzik*
                                                          Edward A. Paltzik, Esq.
                                                          Erik Dykema, Esq.
                                                          Meredith Lloyd, Esq. (*pro hac vice*)

                                                          *Attorneys for Martin Shkreli*