**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

PleasrDAO, an exempted foundation company,

            *Plaintiff,*

            v.

Martin Shkreli,

            *Defendant.*

: Case No. 24-CV-4126 (PKC) (MMH)

-------------------------------------------------------------x

Martin Shkreli,

            *Counterclaim Plaintiff,*

            v.

PleasrDAO, an exempted foundation company,

            *Counterclaim Defendant.*

-------------------------------------------------------------x

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**

**PRELIMINARY STATEMENT**

Defendant Martin Shkreli's Opposition (the "**Opposition**" or "**Opp.**") fails to rebut the four independent grounds for dismissing his Counterclaims set forth in PleasrDAO's ("**Pleasr**") opening brief (the "**Motion**" or "**Mot.**"). The Opposition (i) invokes the wrong procedural framework to excuse counterclaims filed nearly four months late, (ii) attempts to rewrite Count I as an "invalidity" claim, which the Counterclaim itself does not assert, (iii) asks the Court to look beyond the four corners of an unambiguous Forfeiture Order to interpret its meaning, and (iv) ignores entirely the "without justification" element of tortious interference, and the threshold requirement of an actual breach. Each of these defects is dispositive, and the Counterclaims should be dismissed.

**ARGUMENT**

**I.    THE COUNTERCLAIMS SHOULD BE DISMISSED AS UNTIMELY**

Pleasr's Motion argued that the Court should dismiss Shkreli's Counterclaims as untimely under FRCP 12(a)(4)(A). Shkreli does not dispute that his counterclaims are compulsory or that, under Rule 12(a)(4)(A), they were required to be filed in a responsive pleading within 14 days of the resolution of his Motion to Dismiss. Instead, he argues that dismissal is improper under the standard governing "motions to set aside an entry of default," and that his Motion to Dismiss was not fully resolved until the Court denied his separate Rule 19 request for joinder of Diggs and Azzougarh on January 19, 2026. Both arguments are wrong.

*First*, motions to strike compulsory counterclaims as untimely are governed by Rule 12(a)—not FRCP 55(c)'s standard for setting aside an entry of default[1]—which "dictates that an

---

[1] Shkreli derives this standard from caselaw indicating that a motion to strike *an answer* "is governed by the same standard that governs a motion to set aside an entry of default." *Skyline Steel, LLC v. Pilepro, LLC*, No. 13-CV-8171 (JMF), 2015 U.S. Dist. LEXIS 27436, at *7 (S.D.N.Y. Mar. 5, 2015). Pleasr has not moved to strike Shkreli's Answer, and the dismissal of counterclaims is not equivalent to a finding of default. Indeed, no case cited by Shkreli applies

answer must be filed within 20 days of service of the Complaint or denial of a motion to dismiss."
*Priestley v. Comrie ("**Priestley I**")*, No. 07-cv-1361 (HB), 2008 U.S. Dist. LEXIS 64827, at *8-9 (S.D.N.Y. Aug. 25, 2008). Requests for an adjournment of that date are governed by Rule 6(b), which provides that any adjournment of that date must be granted by leave of the Court and, where the date has already passed, upon a showing of "excusable neglect." *Priestley I*, 2008 U.S. Dist. LEXIS 64827, at *8-9; FRCP 6(b). Shkreli did not file his counterclaims within 20 days of the Court's motion to dismiss order. He has not argued that he could not file his counterclaims in a timely fashion. And he did not seek leave to file his answer after the statutory deadline.

Shkreli argues that the Second Circuit overruled *Priestley I*, but misreads and misrepresents *Priestley's* procedural history and facts. In *Priestley I*, the district court dismissed defendants' answer and counterclaims after defendants filed both documents, without leave, 60 days after the court entered its motion to dismiss. 2008 U.S. Dist. LEXIS 64827, at *8-9. *Priestley I* separately granted plaintiff's motion for summary judgment against all defendants. *Id.* at *7-8. In *Priestley v. Headminder, Inc.*, 647 F.3d 497 (2d Cir. 2011) ("**Priestley II**"), the Second Circuit reversed and remanded *Priestley I's* summary judgment ruling as to one of the defendants and reversed an amended judgment insofar as it was entered against that defendant because plaintiff never moved for summary judgment against him. 647 F.3d at 506. *Priestley II* did *not* reverse *Priestley I's* ruling striking the Answer and counterclaims, as Shkreli suggests. Opp. at 5. And while Shkreli further suggests that *Priestley II* "observed that the district court's issuance of a new judgment triggered a new response period," *id.*, it only did so in the context of a new response period *to appeal* the

---

the default judgment framework on a motion to strike *counterclaims*. *See Skyline Steel, LLC*, 2015 U.S. Dist. LEXIS 27436, at *5-6 (dismissing counterclaims on other grounds); *Pereira v. Urthbox Inc. (In re Try the World, Inc.)*, Nos. 18-11764 (JLG), 20-01013 (JLG), 2023 Bankr. LEXIS 2140, at *26-28 (Bankr. S.D.N.Y. Aug. 28, 2023) (analyzing only motion to strike answer); *Alli v. Steward-Bowden*, No. 11-cv-4952 (PKC) (KNF), 2012 U.S. Dist. LEXIS 122996, at *3 (S.D.N.Y. Aug. 24, 2012) (analyzing motion to strike answer with no counterclaims).

judgment. *Priestley II*, 647 F.3d at 503. It said nothing about the defendants' time to file their counterclaims.

*Second*, the Court finally resolved Shkreli's motion to dismiss on September 25, 2025—not January 19, 2026, when the Court dismissed Shkreli's request for joinder—for all the reasons stated in Pleasr's Motion to Dismiss.[2] Mot. at 6-7. Shkreli does not dispute that his Motion to Dismiss merely stated, with respect to joinder, that "***[i]n the event that this Court finds that dismissal of the Complaint in its entirety is not warranted***, Defendant respectfully requests that this Court order the joinder of all necessary third parties to this action, specifically Robert Diggs and Tarik Azzougarh." ECF 47-1 at 29. Shkreli never moved to dismiss on the ground that Diggs and Azzougarh were indispensable parties. He also does not cite to any authority suggesting that a request for joinder extends FRCP 12(a)(4)(A)'s time to file an answer and any compulsory counterclaims.[3]

Indeed, the Court treated Shkreli's request for joinder separately from his request for dismissal of the Complaint. It deferred a ruling of Shkreli's request for joinder in its motion to dismiss order, ECF 57 at 32, and later set a briefing schedule for Shkreli's "request for 'joinder of all necessary third parties to this action.'" Thus, the Court did not treat Shkreli's joinder request as a request for dismissal at all, and dismissal of Shkreli's counterclaims would not "penalize[]"

---

[2] The Court's January 19, 2026 Order denied Shkreli's Motion for Joinder of Diggs and Azzougarh, which it noted as "astonishingly devoid of support," because neither Diggs nor Azzougarh had "claimed any interest related to the subject of this litigation" and Shkreli had "not shown how failure to join Diggs and Azzougarh would, as a practical matter, impair their ability to protect their interests."

[3] Shkreli instead cites to three cases that have nothing to do with joinder. *See TNS Media Research, LLC v. TiVo Research & Analytics, Inc.*, No. 11-cv-4039 (KBF), 2016 U.S. Dist. LEXIS 159612, at *3-4 (S.D.N.Y. June 24, 2016), (noting the Court had "not reached a final resolution" *as to whether its possible misapprehension of patents in a prior order warranted reversal of that order*); *Sirius XM Radio Inc. v. Aura Multimedia Corp.*, No. 1:21-cv-06963, 2022 U.S. Dist. LEXIS 127184, at *1 n.1 (S.D.N.Y. July 18, 2022) (noting its prior determination to defer ruling on defendant's motion for lack of personal jurisdiction pending jurisdictional discovery and supplemental briefing); *Will Poultry Co. v. Teamsters Local No. 264*, No. 13-CV-01135, 2013 U.S. Dist. LEXIS 175406, at *6-7 (W.D.N.Y. Dec. 10, 2013) (ordering supplemental briefing on subject matter jurisdiction while extending temporary restraining order).

Shkreli for his "adherence to this Court's request for information on a narrow issue." Opp. at 6. If anything, it would hold him to the clear deadlines set forth under FRCP 12.

## II.    SHKRELI'S FIRST COUNTERCLAIM FAILS UNDER THE MIRROR IMAGE DOCTRINE

Pleasr's Motion argued that Count I of Shkreli's Counterclaims is barred by the mirror-image doctrine, which prohibits counterclaims that are merely the mirror image of an existing claim. Mot. at 7-8. To avoid this infirmity, Shkreli's Opposition spends several pages attempting to improperly recast Count I of his Counterclaims as an "invalidity counterclaim"—i.e., a declaration that Pleasr's trade secrets are invalid. That recharacterization is belied by the text of Count I itself, which seeks only a judgment that Shkreli "has not misappropriated any of the alleged trade secrets raised in this action." ECF 63 at 28.

Invalidation is entirely different from misappropriation. *See Josie Maran Cosmetics, LLC v. Shefa Grp. LLC*, 624 F. Supp. 3d 281, 287 (E.D.N.Y. 2022) (dismissing declaratory judgment counterclaim limited to a finding of non-infringement, noting that "where there is a cause of action dealing with intellectual property infringement, and the declaratory judgment counterclaim is limited to intellectual property noninfringement, it is dismissed," and summarizing cases dismissing non-infringement claims while permitting invalidity claims to proceed). The fact that Shkreli's Counterclaim also *stated* that "PleasrDAO has no protectable rights in any of its alleged trade secrets" does not alter the relief he seeks, and Shkreli cannot amend his Counterclaims through his Opposition brief to cure this defect. *See Williams v. Black Entm't TV*, No. 13-CV-1459(JS)(WDW), 2014 U.S. Dist. LEXIS 19097, at *34 n.8 (E.D.N.Y. Feb. 14, 2014) ("Plaintiff cannot amend his pleadings through an opposition brief."); *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs.").

4

Notably, Shkreli's Opposition fails to engage with Pleasr's argument that Count I is "nothing more than a restatement of Shkreli's Second Affirmative Defense." Mot. at 8. Where, as here, Count I is merely the mirror image of Pleasr's trade secret claims and a recasting of Shkreli's affirmative defenses, it will "serve no useful purpose" and should be dismissed. *See, e.g.*, *Josie Maran Cosmetics*, 624 F. Supp. 3d at 288-89 ("It is clear from the case law in this circuit that a declaration that Shefa has not violated JMC's trademark rights is the mirror image of JMC's trademark infringement claim and should be dismissed because it will 'serve no useful purpose.'"); *Maverick Recording Co. v. Chowdhury*, No. CV-07cv200 (DGT), 2008 U.S. Dist. LEXIS 63783, at *3-6 (E.D.N.Y. Aug. 19, 2008) ("To the contrary, the basis of the counterclaim is that the defendant did not commit the infringing acts - - a question that will either be necessarily resolved if the case is decided on the merits or become non-justiciable if the plaintiffs voluntarily discontinue their suit. Accordingly, the counterclaim seeking a declaratory judgment of non-infringement serves no purpose and is dismissed."); *Interscope Records v. Kimmel*, No. 3:07-cv-0108, 2007 U.S. Dist. LEXIS 43966, at *11-12 (N.D.N.Y. June 18, 2007) (dismissing counterclaim "that he did not engage in the acts alleged in Plaintiffs' Complaint"); *Alcon Vision, LLC v. Lens.com, Inc.*, No. 1:18-cv-00407-NG-RLM, 2022 U.S. Dist. LEXIS 94031, at *22-24 (E.D.N.Y. May 25, 2022) (request for declaratory judgment of trademark non-infringement is mirror image and redundant of trademark infringement claims and must be dismissed).

## III.    THE FORFEITURE ORDER BARS SHKRELI'S SECOND, THIRD, AND FIFTH COUNTERCLAIMS

Shkreli's Opposition asks that the Court's Forfeiture Order not be interpreted by its simple and direct terms, but by external factors. He suggests reference to the language of the APA, the OPA, the Parties' purported separate treatment of the physical and non-physical aspects of the Album, and Shkreli's own pleadings. Opp. at 9. He provides no justification, however, for looking

5

outside the four corners of the Forfeiture Order, which unambiguously provides that Shkreli was to "forfeit his interest" in "the album 'Once Upon A Time in Shaolin' by the Wu Tang Clan," "as well as all *proceeds* traceable thereto" (emphasis added), and which makes no distinction between physical and non-physical components. Even assuming, as Shkreli argues, that contract law principles should govern the interpretation of the Forfeiture Order, "[i]t is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence." *Maniolos v. United States*, 741 F. Supp. 2d 555, 566 (S.D.N.Y. 2010). Treating the Forfeiture Order as if it was a contract, the Court may infer its intent from the four corners of that document.

Shkreli does not dispute that the term "interest" covers the copyrights, or that "proceeds" could cover copyright proceeds. He appears only to dispute that the phrase "the album 'Once Upon A Time in Shaolin' by the Wu Tang Clan" refers to a physical object. This is misguided. *First*, none of the Forfeiture Order cases Shkreli cites support this interpretation, as none of them interpreted a forfeiture order.[4] If anything, those cases work against him. In *United States v. Carrie*, 206 Fed. App'x. 920 (11th Cir. 2006), the Eleventh Circuit noted that the criminal forfeiture code broadly defined the term "Property" to include "tangible and intangible personal property" and that all "rights in property subject to forfeiture under § 853(a) vest in the government 'upon the commission of the act giving rise' to the forfeiture." 206 Fed. App'x. at 922 (quoting 21 U.S.C. § 853). Where the forfeiture statutes broadly define terms related to property to include both tangible

---

[4] *United States v. Nation*, 370 F. Supp. 3d 1090, 1121-22 (C.D. Cal. 2019) (granting and denying in part Government's motion for entry of a forfeiture order, noting that the forfeiture of "intangible rights and privileges is fairly common"); *United States v. $7708.78 in U.S. Currency*, No. 1:08CV1463-LG-RHW, 2011 WL 3489835, at *3 (S.D. Miss. Aug. 9, 2011) (granting motion for summary judgment on the forfeiture of a pharmacist's business and licenses but not interpreting a forfeiture order); *United States v. Carrie*, 206 Fed. App'x. 920 (11th Cir. 2006) (affirming an order of forfeiture); *Cash Processing Servs. v. Ambient Entm't, Inc*., 418 F. Supp. 2d 1227, 1229 (D. Nev. 2006) (analyzing whether party *abandoned* intangible rights through nonuse).

and intangible aspects of that property, it is a reasonable inference to construe a Forfeiture Order's reference to a piece of property as encompassing both the tangible and intangible aspects of that property. *See* 21 U.S.C. § 853(p); 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c).

*Second*, the Forfeiture Order's broad reference to Shkreli's "interest" in the Album, and "all proceeds traceable thereto," necessarily encompasses the intangible copyrights and any proceeds derived from the Album. Shkreli's reliance on *Cash Processing Services* underscores this point. There, the government was held to have acquired a forfeited trademark registration—an intangible asset—even though the forfeiture documentation did not separately list it. *See* 418 F. Supp. 2d at 1229 (describing the forfeited property as "twenty million dollars, all the stock, interests in and assets of the accounts receivable and real property owned by AGE Corporation and AGE Enterprises.").

*Finally*, it would be patently absurd to assume that only the physical album—and not the music on the Album or the intangible rights associated with that music—was forfeited. They are wholly intertwined, and the value is in the music and the rights. As this Court itself observed at the August 23, 2024 preliminary injunction hearing, "I don't know under what construction [Shkreli] could have thought that forfeiting the album, his 'interest' in the album, didn't include forfeiting the contents, given that the interest depends on the uniqueness or the singular possession of the contents of that album. . . . The interest is the ability to control that item; what's in it, what comes with it, everything." ECF 55 at 30:12-33:2. Shkreli's Opposition dismisses this statement as out of context, but offers no contrary construction grounded in the text of the Forfeiture Order itself.

## IV.    SHKRELI'S FIFTH COUNTERCLAIM IS NOT PROPERLY PLED

Pleasr's motion argued that Shkreli failed to plead his Fifth Counterclaim for tortious interference because he did not sufficiently plead that Pleasr "intentionally procure[d]" a breach

of any contract "without justification," nor did he plead an actual breach of the OPA in light of the Forfeiture Order. Mot. at 11. Shkreli's Opposition fails on both fronts.

*First*, Shkreli's Opposition implies that, because his Counterclaims do not allege that he forfeited his interest in the copyrights, the Court must accept as true his allegations that (i) he retained copyright interests under the OPA, (ii) Pleasr knew that Shkreli retained interests in the copyrights it intentionally procured from Diggs and Azzougarh, (iii) Diggs and Azzougarh breached the OPA by selling those copyright interests to Pleasr, and (iv) Pleasr intentionally induced that breach by purchasing the copyrights. Opp. at 11 (citing *Twombly*, 550 U.S. at 570). The Court is not required to accept such allegations where they are belied by documents properly subject to judicial notice and incorporated into the Counterclaims, however. Pleasr purchased those copyrights after the Court entered a Forfeiture Order requiring Shkreli to forfeit his interest in the Album and all proceeds traceable to the Album[5] and after the United States Marshal's Service ("**USMS**") executed the APA reaffirming that forfeiture. ECF 22-3. The Court may take judicial notice of the forfeiture order. *See Thomas v. Venditto*, 925 F.Supp.2d 352, 359 (E.D.N.Y. 2013) (when considering a motion to dismiss, the court may take judicial notice of an order in a related criminal proceeding) (citations omitted); *accord Ocampo v. JP Morgan Chase Bank, Nat'l Ass'n*, 93 F. Supp. 3d 109, 115 (E.D.N.Y. 2015). And Shkreli incorporated the APA into his counterclaims by reference. *See* ECF 63 at 24-25. Since Shkreli no longer had any copyright interests in the Album at the time Pleasr purchased those rights from Diggs and Azzougarh, his tortious interference allegations crumble. As such, Shkreli failed to "allege, much less plausibly show, an 'actual breach of the contract'" by Diggs and Azzougarh, which is fatal to his tortious

---

[5] Order of Forfeiture at 3, *USA v. Shkreli*, No. 15-cr-00637 (E.D.N.Y. Mar. 26, 2018), ECF 566-1.

8

interference claim. *Davis v. Odn I GmbH*, No. 25-860, 2025 U.S. App. LEXIS 30497, at \*7 (2d Cir. Nov. 21, 2025).

*Second*, neither Shkreli's Counterclaims nor his Opposition explain how any purported interference with the OPA was "without justification." *See Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 212 (W.D.N.Y. 2021) ("[I]t is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead a plaintiff must allege facts showing that the defendant's objective was to procure such a breach.") (internal quotations omitted). Indeed, Shkreli's Opposition entirely ignores this independent element of the cause of action, instead reciting only his allegations as to Pleasr's purported knowledge and intent. Shkreli's tortious interference claim fabricates a story that Pleasr's intention in purchasing the copyrights in the Album was to deprive Shkreli of the same. This story simply is not plausible in light of the Forfeiture Order and the USMS' execution of the APA reaffirming that forfeiture. The APA indicates that Shkreli had forfeited all "right, title, and interest" he had in the Album. Thus, Pleasr was fully justified in believing that Shkreli no longer had any interest in those copyrights.[6]

## **CONCLUSION**

For the foregoing reasons, and those set forth in Pleasr's opening Motion, Pleasr respectfully requests that the Court grant its Motion and dismiss Shkreli's Counterclaims in their entirety.

---

[6] In response to Pleasr's argument that Shkreli failed to state a tortious interference claim, Shkreli's Opposition also confusingly cites to *192 Morgan Realty, LLC v. Aquatorium, LLC*, No. 20-cv-3627, 2022 U.S. Dist. LEXIS 136520, at \*10 (E.D.N.Y. Aug. 1, 2022) for the proposition that a party cannot contractually waive its ability to assert compulsory claims. Opp. at 12. Although Shkreli waived his right to bring compulsory counterclaims by failing to file an answer within the time prescribed by FRCP 12(a)(4)(a), Pleasr does not argue that he contractually waived that right. Moreover, Shkreli *forfeited* the copyright interests upon which each of his counterclaims rely, including his claim for tortious interference. Thus, he has not stated a viable cause of action for tortious interference.

Dated: April 28, 2026

Respectfully Submitted,

/s/ Steven Cooper
Steven Cooper
Robert Carnes (*pro hac vice*)
REED SMITH LLP
599 Lexington Ave., 22nd Floor
New York, New York 10022
Tel. 212-521-5400
Fax. 212-521-5250
*Attorneys for PleasrDAO*

## <u>WORD CERTIFICATION</u>

      I hereby certify that the word count of this Memorandum of Law complies with the word limit of Local Rule 7.1(c). According to the word-processing system used to prepare this Memorandum of Law, the total word count for all printed text, exclusive of the material omitted under Local Rule 7.1(c), is 3,241 words.


Dated: New York, New York
April 28, 2026


                                    */s/ Steven Cooper*
                                      Steven Cooper