**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| PleasrDAO, <br>     *Plaintiff* <br><br>     v. <br><br> Martin Shkreli, <br>     *Defendant* | **Case No. 24-CV-4126 (PKC) (MMH)** |
| Martin Shkreli, <br>     *Counterclaim Plaintiff* <br><br>     v. <br><br> PleasrDAO, <br>     *Counterclaim Defendant* | |
| Martin Shkreli, <br>     *Third-Party Plaintiff* <br><br>     v. <br><br> Robert Diggs and Tarik Azzougarh, <br>     *Third-Party Defendants* | |

**SHKRELI'S MEMORANDUM OF LAW IN OPPOSITION TO PLEASRDAO'S**

**MOTION TO DISMISS COUNTERCLAIMS**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ...................................................................................III

**I.    INTRODUCTION**.................................................................................... 1

**II.   STATEMENT OF FACTS**........................................................................ 1

**III.  PROCEDURAL POSTURE** ..................................................................... 2

**IV.   STANDARD OF REVIEW** ...................................................................... 3

**V.    ARGUMENT**.......................................................................................... 4

    A.   SHKRELI'S COUNTERCLAIMS WERE TIMELY FILED ..........................................4

    B.   SHKRELI'S FIRST COUNTERCLAIM IS DISTINCT FROM PLEASRDAO'S TRADE
SECRET CLAIMS .......................................................................................................6

    C.   SHKRELI'S SECOND, THIRD, AND FIFTH COUNTERCLAIMS ARE NOT BARRED BY
THE FORFEITURE ORDER .........................................................................................9

    D.   SHKRELI'S FIFTH COUNTERCLAIM IS PROPERLY PLED........................................11

**VI.   CONCLUSION** ...................................................................................... 12

**CERTIFICATE OF COMPLIANCE WITH L.R. 7.1**........................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Case**

*192 Morgan Realty, LLC v. Aquatorium, LLC,*
No. 20-cv-3627, 2022 U.S. Dist. LEXIS 136520 (E.D.N.Y. Aug. 1, 2022) ...........................12

*Alli v. Steward-Bowden,*
No. 11-cv-4952, 2012 U.S. Dist. LEXIS 122996 (S.D.N.Y. Aug. 24, 2012) ........................4, 5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................................3, 4

*Bay St. Advisors, LLC v. Mahoney,*
No. 24-cv-9139, 2025 U.S. Dist. LEXIS 194025 (S.D.N.Y. Sep. 30, 2025)............................11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................................3, 4, 11

*Canon U.S.A., Inc. v. F&E Trading Ltd. Liab. Co.,*
No. 2:15-cv-6015, 2017 U.S. Dist. LEXIS 160994 (E.D.N.Y. Sep. 29, 2017) ........................8

*Carson Optical Inc. v. eBay Inc.,*
202 F. Supp. 3d 247 (E.D.N.Y. 2016).....................................................................................4

*Cash Processing Servs. v. Ambient Entm't, Inc.,*
418 F. Supp. 2d 1227 (D. Nev. 2006) ...................................................................................10

*Certicable Inc. v. Point 2 Point Commc'ns Corp.,*
No. 2:23-cv-5322, 2025 U.S. Dist. LEXIS 34766 (E.D.N.Y. Feb. 26, 2025) .......................7, 8

*Chase Grp. All. LLC v. City of New York Dep't of Fin.,*
620 F.3d 146 (2d Cir. 2010) ..................................................................................................3

*Forest Park Pictures v. Universal Television Network, Inc.,*
683 F.3d 424 (2d Cir. 2012)...................................................................................................9

*GEOMC Co. v. Calmare Therapeutics Inc.,*
918 F.3d 92 (2d Cir. 2019)....................................................................................................3

*Leach v. Ross Heater & Manufacturing Co.,*
104 F.2d 88 (2d Cir. 1939)....................................................................................................7

*Orientview Techs. LLC v. Seven for All Mankind, LLC,*
No. 13-cv-0538, 2013 U.S. Dist. LEXIS 111107 (S.D.N.Y. Aug. 7, 2013) ...........................7

*Pereira v. Urthbox Inc. (In re Try the World, Inc.),*
  Nos. 18-11764, 20-01013, 2023 Bankr. LEXIS 2140 (Bankr. S.D.N.Y. Aug. 28, 2023) ................................................................................................................................4

*Priestly v. Comrie,*
  No. 07-cv-1361, 2008 U.S. Dist. LEXIS 64827 (S.D.N.Y. Aug. 25, 2008) .............................5

*Priestley v. Headminder, Inc.,*
  647 F.3d 497 (2d Cir. 2011) ......................................................................................................5

*Ritani, LLC v. Aghjayan,*
  880 F. Supp. 2d 425 (S.D.N.Y. 2012) ....................................................................................12

*Sage Realty v. Insurance Co. of N. Am.,*
  34 F.3d 124 (2d Cir. 1994)......................................................................................................12

*Shunock v. Apple, Inc.,*
  738 F. Supp. 3d 371 (S.D.N.Y. 2024) ......................................................................................7

*Sirius XM Radio Inc. v. Aura Multimedia Corp.,*
  No. 1:21-cv-06963, 2022 U.S. Dist. LEXIS 127184 (S.D.N.Y. July 18, 2022) ........................5

*Skyline Steel, LLC v. Pilepro, LLC,*
  No. 13-cv-8171, 2015 U.S. Dist. LEXIS 27436 (S.D.N.Y. Mar. 5, 2015) ................................4

*Town & Country Linen Corp. v. Ingenious Designs LLC,*
  No. 18-cv-5075, 2020 U.S. Dist. LEXIS 111610 (S.D.N.Y. June 25, 2020) ........................7, 8

*TNS Media Research, LLC v. TiVo Research & Analytics, Inc.,*
  No. 11-cv-4039, 2016 U.S. Dist. LEXIS 159612 (S.D.N.Y. June 24, 2016) ...........................5

*U.S.  v. $7708.78 in U.S. Currency,*
  2011 WL 3489835 (S.D. Miss. Aug. 9, 2011) ........................................................................10

*U.S. v. Carrie,*
  206 Fed. App'x. 920 (11th Cir. 2006)......................................................................................10

*U.S. v. Dicter,*
  198 F.3d 1284 (11th Cir. 1999)...............................................................................................10

*U.S. v. Nation,*
  370 F. Supp. 3d 1090 (C.D. Cal. 2019)...................................................................................10

*U.S. v. Shkreli,*
  No. 1:15-CR-00637-KAM (E.D.N.Y. 2018)..............................................................................2

*Will Poultry Co. v. Teamsters Local No. 264,*
  No. 13-CV-01135, 2013 U.S. Dist. LEXIS 175406 (W.D.N.Y. Dec. 10, 2013) .......................6

*Wonderful Co. Ltd. Liab. Co. v. Nut Cravings Inc.,*
    No. 1:21-cv-03960, 2026 U.S. Dist. LEXIS 62914 (S.D.N.Y. Mar. 24, 2026) ..........................7

*Worldwide Home Prods., Inc. v. Bed Bath and Beyond, Inc.,*
    2013 U.S. Dist. LEXIS 9146, at *2 (S.D.N.Y. Jan. 22, 2013) ...............................................6, 7

**Rule**

Fed. R. Civ. P. 12 ...............................................................................................................3, 4, 5

Fed. R. Civ. P. 19 ...................................................................................................................3, 6

## I.    **INTRODUCTION**

PleasrDAO's Motion to Dismiss ("Motion" or "Mot.") substitutes rhetoric for substance. Each of PleasrDAO's arguments leans on improper conclusions and ignores the procedural posture of this case, the applicable rules, or both. Because Shkreli's timely-pleaded counterclaims present live, concrete disputes that are appropriately resolved as part of this action, the Motion should be denied in its entirety.

PleasrDAO's timeliness objection to Shkreli's counterclaims misstates the record and ignores relevant procedural rules, failing because Shkreli's counterclaims were asserted within 21 days of this Court's disposition of the two-pronged request for relief in his Motion to Dismiss PleasrDAO's Complaint. PleasrDAO's "mirror image" theory fares no better, since Shkreli's request for declaratory relief seeks to resolve questions that will not be fully adjudicated through PleasrDAO's claims alone. Similarly, the Forfeiture Order does not extinguish Shkreli's counterclaims or bar disputes arising after its entry. [ECF 4-5], (the "Forfeiture Order"). Finally, PleasrDAO's Rule 12(b)(6) arguments ignore well-pleaded factual allegations and ask the Court to draw inferences in its favor, contrary to well-settled precedent. And so, PleasrDAO's Motion does not provide a basis to dismiss any of Shkreli's counterclaims.

## II.    **STATEMENT OF FACTS**

On September 3, 2015, Martin Shkreli bought what was then the sole copy of Wu-Tang Clan's musical work *Once Upon A Time In Shaolin* for a large sum of money. ECF 63, Countercl. at ¶ 16. (Shkreli's Counterclaims contained in ECF 63 are referenced herein as "Countercl."). In exchange for his payment, Shkreli acquired both *physical assets* (the "Engraved Box") as well as *intangible assets,* (the "Musical Work") including a present interest in 50% of the copyrights in and to the Musical Work. [ECF 23] (the "OPA"). *Id.* at ¶ 17.

1

In 2018, Shkreli was required to forfeit a sum of $7,360,450 to the U.S. government. *See U.S. v. Shkreli*, Case No. 1:15-CR-00637-KAM (E.D.N.Y. 2018). In lieu of cash, the U.S. Marshals Service took possession of certain tangible assets, listed in the Forfeiture Order. These assets included the original copy of "a Picasso painting," a copy of "the album 'Tha Carter V' by Lil Wayne," and the original copy of "the album 'Once Upon A Time in Shaolin' by the Wu Tang Clan." *Id.*

After taking possession of *the original* copy of the Musical Work, contained in an ornate engraved case, (the "Engraved Box") pursuant to the Forfeiture Order, the U.S. government sold it to an undisclosed buyer via an Asset Purchase Agreement. [ECF 22-3] (the "APA"). The APA detailed that the government was selling only the Engraved Box, confirming that the physical asset was being sold "'As-Is, Where Is' with no representations or warranties as to [its] condition, usability, or fitness for any purpose." *Id*. The APA further clarified that "for the avoidance of any doubt, Seller does not undertake or assume any of the representations or warranties with respect to the Assets set forth in the Original Purchase Agreement." *Id.* Thus, the APA explicitly disclaimed the OPA's guarantee that the Asset for sale was the only copy of the Musical Work in existence. PleasrDAO purchased the Engraved Box with full knowledge of the limitations and scope of their purchase, and is now attempting to expand the scope of their purchase.

Since acquiring the Engraved Box, PleasrDAO has made various uses of the Musical Work and the Engraved Box, including by displaying the Engraved Box in a museum and by selling fractional ownership of the Musical Work online. Countercl. at ¶32.

## III.    <u>PROCEDURAL POSTURE</u>

After PleasrDAO filed its Complaint, Shkreli moved this Court "to dismiss Plaintiff PleasrDAO's Complaint for failure to state a claim upon which relief can be granted and failure to

join necessary parties to this action under Fed. R. Civ. P. 12." ECF 47. Shkreli raised five arguments in support of his Motion to Dismiss: (i) PleasrDAO lacked standing to enforce the Forfeiture Order, (ii) PleasrDAO failed to plead a "secret," (iii) PleasrDAO's remaining claims were preempted by the Copyright Act, (iv) PleasrDAO's claims were inadequately pleaded, and (v) PleasrDAO had failed to join necessary parties to this action. ECF 47-1 (Shkreli's "Motion to Dismiss"). On September 25, 2025, this Court dismissed PleasrDAO's claims for enforcement of an order, tortious interference with prospective economic advantage, and unjust enrichment, addressing all but one part of Shkreli's Motion to Dismiss. ECF 57 (the "Partial Dismissal Order"). In response to Shkreli's request that the claims against him be dismissed for PleasrDAO's failure to join necessary parties under Rule 19, the Court "defer[red] ruling on this request until the issue can be fully briefed." *Id*. at p. 32.

After reviewing the parties' supplemental briefing directed to whether this Court should consider Diggs and Azzougarh as "necessary parties" under Rule 19 for the purposes of resolving Shkreli's Motion to Dismiss [ECF 59, 60, 61], this Court issued an order denying Shkreli's request for joinder of necessary parties and fully resolving the requests set forth in Shkreli's Motion to Dismiss. Text Order dated Jan. 19, 2026. 14 days later, on February 2, 2026, Shkreli filed his Answer to PleasrDAO's Complaint with Counterclaims. ECF 63.

## IV.    <u>STANDARD OF REVIEW</u>

A "counterclaim, like all pleadings, must conform to the pleading requirements of *Twombly* and *Iqbal*." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019). In deciding a motion to dismiss under Rule 12(b)(6), courts accept as true all well-pleaded factual allegations and draw all inferences in the pleading party's favor. *See Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). "To survive a motion to dismiss" under Rule

3

12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A well-pleaded complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 252 (E.D.N.Y. 2016) (internal citation omitted).

## V.    **ARGUMENT**

PleasrDAO has argued that Shkreli's counterclaims are "untimely," barred by the "mirror image" doctrine or the Forfeiture Order, and inadequately pled. For the reasons set forth below, each of PleasrDAO's unpersuasive arguments should be rejected, and the Motion should be denied.

### A.    **Shkreli's Counterclaims Were Timely Filed**

PleasrDAO contends that "Shkreli's deadline to file any compulsory counterclaims was [] October 9, 2025," and that the counterclaims in Shkreli's Answer were untimely. Mot. at 5.

Motions to strike answers based on untimeliness are governed by the same standard as motions to set aside an entry of default. *Skyline Steel, LLC v. Pilepro, LLC*, No. 13-cv-8171, 2015 U.S. Dist. LEXIS 27436, at *2 (S.D.N.Y. Mar. 5, 2015) "[J]udgment by default (or the equivalent here, striking the [] Answer) is a drastic remedy to be applied only in extreme circumstances." *Pereira v. Urthbox Inc. (In re Try the World, Inc.)*, Nos. 18-11764, 20-01013, 2023 Bankr. LEXIS 2140, at *28 (Bankr. S.D.N.Y. Aug. 28, 2023) (citing *Skyline Steel,* 2015 U.S. Dist. LEXIS 27436;

4

*Alli v. Steward-Bowden*, No. 11-cv-4952, 2012 U.S. Dist. LEXIS 122996, at *3 (S.D.N.Y. Aug. 24, 2012)).

In support of their contention that Shkreli's counterclaims were "untimely", PleasrDAO relies on a district court opinion from *Priestly v. Comrie*, which was partially reversed and remanded by the Second Circuit. No. 07-cv-1361, 2008 U.S. Dist. LEXIS 64827 (S.D.N.Y. Aug. 25, 2008) *rev'd sub nom., Priestley v. Headminder, Inc.*, 647 F.3d 497, 503 (2d Cir. 2011). Notwithstanding the fact that the district court awarded a default judgment against defendants who had dodged state and federal litigation for two years and ignored a motion for summary judgment before filing an answer with counterclaims, the Second Circuit reversed the district court's opinion and further observed that the district court's issuance of a new judgment triggered a new response period, because the "new judgment both resolved a genuine ambiguity and altered a matter of substance in the original judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 503 (2d Cir. 2011). In its reversal opinion, the Second Circuit also noted that "the facts alleged fail[ed] to support, and actually disprove[d]" the basis for judgment against the appellant.

Far from the "extreme circumstances" required here, Shkreli's Answer and Counterclaims [ECF 63] was promptly filed once this Court had decided all of the issues raised in his Motion to Dismiss. Shkreli's original Motion to Dismiss requested dismissal of PleasrDAO's claims "for failure to state a claim upon which relief can be granted and failure to join necessary parties to this action under Fed. R. Civ. P. 12." ECF 47. In keeping with common practice in this Circuit,[1] this

---

[1] *See, e.g., TNS Media Research, LLC v. TiVo Research & Analytics, Inc.,* No. 11-cv-4039 (KBF), 2016 U.S. Dist. LEXIS 159612, at *4 (S.D.N.Y. June 24, 2016) (Holding that the court had "not reached a final resolution" on a motion and ordering a schedule for supplemental briefing); *Sirius XM Radio Inc. v. Aura Multimedia Corp.*, No. 1:21-cv-06963, 2022 U.S. Dist. LEXIS 127184, at *3 (S.D.N.Y. July 18, 2022), *R&R adopted sub nom., In re Sirius XM Radio Inc.*, 2023 U.S. Dist. LEXIS 8549 (S.D.N.Y., Jan. 17, 2023) (Deferring a recommendation on motion to dismiss for lack of personal jurisdiction pending the conclusion of jurisdictional

Court's Partial Dismissal Order deferred ruling on the "necessary" status of then-nonparties Azzougarh and Diggs until the parties had submitted supplemental briefing on the issue. ECF 57.

PleasrDAO's Motion ignores both the purpose of the supplemental joinder briefing and the text of Rule 19, particularly the analysis required by Rule 19(b). It asks this Court to find that Shkreli's supplemental briefing was not related to his Motion to Dismiss since it detailed the merits of an order *requiring* joinder of Azzougarh and Diggs as indispensable parties to this litigation under Fed. R. Civ. P. 19(A)(2). Mot. at 7. Even if Shkreli's letter motion for joinder [ECF 59] had not explicitly referenced this Court's request for supplemental briefing in the Partial Dismissal Order (which it did), Shkreli's adherence to this Court's request for information on a narrow issue should not be penalized. Shkreli's supplemental briefing argued that Azzougarh and Diggs were "indispensable parties to this litigation" and that under Rule 19, they must be joined to this action. ECF 59, citing FRCP 19.

As a matter of practice, motions are not resolved unless and until Courts have adjudicated all of the requests contained in them. Since Shkreli's Motion to Dismiss sought relief in the form of dismissal for failure to join a necessary party under Rule 19, it was not resolved until January 19, 2026. Shkreli's Answer and Counterclaims, filed February 2, 2026, is therefore timely.

### B.    Shkreli's First Counterclaim is Distinct from PleasrDAO's Trade Secret Claims

Shkreli does not dispute that the mirror image doctrine bars claims that are truly "redundant." It is well-settled that courts "must consider whether a case or controversy would still exist in connection with the counterclaim if the court entered a judgment dismissing the opponent's

---

discovery and supplemental briefing); *Will Poultry Co. v. Teamsters Local No. 264*, No. 13-CV-01135, 2013 U.S. Dist. LEXIS 175406, at *6-7 (W.D.N.Y. Dec. 10, 2013) (Motion was not fully decided when the Court ordered extension of a temporary restraining order and requested supplemental briefing on issues outside the primary focus of prior briefing and oral argument).

claim." *Worldwide Home Prods., Inc. v. Bed Bath and Beyond, Inc.*, 2013 U.S. Dist. LEXIS 9146, at *2 (S.D.N.Y. Jan. 22, 2013) (denying motion to strike invalidity counterclaims under the mirror image doctrine).

Invalidity counterclaims are "legally and factually distinct from infringement [claims]." *Id.* (internal citation omitted). Courts in this Circuit routinely hold that invalidity and noninfringement counterclaims are not appropriately dismissed under the mirror inage doctrine since they present an independent case or controversy that would survive dismissal of opposing intellectual property infringement claims. *See, e.g., Certicable Inc. v. Point 2 Point Commc'ns Corp.*, No. 2:23-cv-5322, 2025 U.S. Dist. LEXIS 34766, at *18 (E.D.N.Y. Feb. 26, 2025) (granting reconsideration and re-instating invalidity/unenforceability and non-infringement counterclaims); *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-cv-5075, 2020 U.S. Dist. LEXIS 111610, at *14 (S.D.N.Y. June 25, 2020) (declining to dismiss counterclaims for declaratory judgment of no trade secret or idea misappropriation); *Orientview Techs. LLC v. Seven for All Mankind, LLC*, No. 13-cv-0538, 2013 U.S. Dist. LEXIS 111107 (S.D.N.Y. Aug. 7, 2013); *Leach v. Ross Heater & Manufacturing Co.*, 104 F.2d 88 (2d Cir. 1939); *Shunock v. Apple, Inc.*, 738 F. Supp. 3d 371, 386 (S.D.N.Y. 2024) (denying motion to strike non-infringement counterclaims as redundant because defendant asserted invalidity counterclaims "that would continue to exist absent a dismissal on the merits of [opposing] infringement claims"); *Wonderful Co. Ltd. Liab. Co. v. Nut Cravings Inc.*, No. 1:21-cv-03960, 2026 U.S. Dist. LEXIS 62914, at *9 (S.D.N.Y. Mar. 24, 2026).

Thus, "if there is a cause of action for infringement and a declaratory judgment counterclaim 'asserts an independent case or controversy,' such as invalidity or unenforceability, which would remain viable after a dismissal of the plaintiff's claim,' courts decline to dismiss the

7

non-infringement counterclaims as duplicative." *Certicable Inc. v. Point 2 Point Commc'ns Corp.*, 2025 U.S. Dist. LEXIS 34766, at *21-22 (internal quotes and citations omitted).

In the context of trade secret claims, counterclaims for declaratory judgments relating to the enforceability of alleged trade secrets are similarly appropriate. *See, e.g., Town & Country Linen Corp,* 2020 U.S. Dist. LEXIS 111610. Shkreli's First Counterclaim is directed to the validity and enforceability of PleasrDAO's alleged "trade secret." Indeed, Shkreli has alleged that "PleasrDAO has no protectable rights in any of its alleged trade secrets" and asks this Court to find "any 'secret' status dissipated" once the Musical Work was released to Shkreli and he was permitted to share it with others." Countercl. at ¶¶ 49-50. The counterclaims allege:

> Under the Original Purchase Agreement, the Musical Work was not a secret. Releasing the Musical Work to Shkreli and authorizing him to share it with others at his discretion and without confidentiality provisions or non-disclosure agreements rendered the Musical Work non-secret.

> *Id.* at ¶ 21.

Although a declaration that PleasrDAO is not entitled to assert that the Musical Work is a protectable "trade secret" would impede its trade secret misappropriation claims against Shkreli, the First Counterclaim seeks a judgment protecting Shkreli from future claims that may arise if the enforceability of the "secret" status of the Musical Work were left undecided. This independent controversy asks whether the language of the Original Purchase Agreement dissipated the "secret" status of the Musical Work. The possibility that PleasrDAO "for all the defendant knows, [could] withdraw his suit without prejudice and continue broadcasting assertions" that Shkreli is impeding on its intellectual property rights "means that the need for declaratory judgment cannot be said to have wholly disappeared." *Canon U.S.A., Inc. v. F&E Trading Ltd. Liab. Co.,* No. 2:15-cv-6015, 2017 U.S. Dist. LEXIS 160994, at *28-29 (E.D.N.Y. Sep. 29, 2017). Resolution of this counterclaim may protect Shkreli from future litigation (for example, a hypothetical case brought

by one or more of the individual purchasers of PleasrDAO's NFTs related to the Musical Work). And so, Shkreli's First Counterclaim should not be dismissed.

### C.    Shkreli's Second, Third, and Fifth Counterclaims Are Not Barred by the Forfeiture Order

Shkreli's counterclaims for declaratory judgment of current and future copyright ownership and tortious interference are not barred by the Forfeiture Order. PleasrDAO argues that the punitive motivations for the Forfeiture Order justify their request for this Court to (i) deviate from the standard of review for motions to dismiss and (ii) expand the scope of the Forfeiture Order beyond its text. *Compare* Mot. at pp. 8-9 (assertion that Shkreli "forfeited all of his interests in [the Musical Work and the Engraved Box] pursuant to the Forfeiture Order") *with* Countercl. at ¶¶ 24, 34 (Shkreli's assertions that he "forfeited the Engraved Box to satisfy the monetary judgment against him in a separate case" and that "a member of PleasrDAO admitted to Shkreli that PleasrDAO had made a mistake by failing to secure the copyrights in and to the Musical Work from Shkreli.").

In support of its unpersuasive argument, PleasrDAO extensively relies on one excerpt from the transcript of the preliminary injunction hearing, arguing that statements starting with "I don't know" and followed by "I'll obviously let you brief this issue more" are the law of this case. Mot. at p. 9, *see also* ECF 55 at 30:18; *id.* at 33:3. As with many of its arguments, PleasrDAO is asking this Court to improperly isolate a statement from its surrounding context.

For the purposes of this Motion to Dismiss, the Court must accept all factual allegations in the counterclaims as true and draw all reasonable inferences in Shkreli's favor. *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012). Here, it is not unreasonable to infer that the Engraved Box and the Musical Work were afforded separate treatment, based on the language of the Forfeiture Order, the APA [ECF 22-3] the OPA [ECF 23],

9

the facts pled by Shkreli [ECF 63] and other courts' interpretations of forfeiture orders requiring transfer of intangible assets.

Federal courts outside of this Circuit have opined on the scope of intangible items included in Forfeiture Orders, including a medical license used by a doctor to distribute controlled substances; a pharmacist's license used to distribute illegal drugs; a liquor license used to run a business where cocaine was distributed, and forced transfer of the U.S. Trademark Registration for "World Famous Mustang Ranch," formerly belonging to a brothel. *United States v. Nation,* 370 F. Supp. 3d 1090, 1121-22 (C.D. Cal. 2019); brief of *amicus curiae* Stefan D. Cassella at 7 *(citing United States v. Dicter,* 198 F.3d 1284 (11th Cir. 1999); *United States v. $7708.78 in U.S. Currency,* 2011 WL 3489835, at *3 (S.D. Miss. Aug. 9, 2011); *United States v. Carrie*, 206 Fed. App'x. 920 (11th Cir. 2006); *Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F. Supp. 2d 1227, 1229 (D. Nev. 2006)).

In *Cash Processing Services*, the government forced a brothel to forfeit their U.S. Trademark registration for "World Famous Mustang Ranch." 418 F. Supp. 2d at 1230. After acquiring the intangible intellectual property interest, the government listed it for sale on eBay. *Id*. Here, the government made no such effort, instead electing to explicitly disclaim any intangible rights that a buyer may deem included, saying that the USMS "makes no representations regarding the condition of the Assets other than that the below items will be provided at closing" and listing only the Engraved Box on the list of assets being transferred to the unnamed buyer. Countercl. ¶ 28, citing the APA. PleasrDAO's argument that the government sought to "maximize the recovery it would receive for [Shkreli's forfeited property]," is inapposite with the fact, pled in Shkreli's counterclaims and confirmed by the language of the APA, that the U.S.M.S. did not sell any intangible rights to its buyer. Countercl. at ¶ 24.

10

Moreover, Shkreli's counterclaims clearly allege that PleasrDAO itself has treated the Engraved Box and the Musical Work as separate property interests. As Shkreli has pleaded, PleasrDAO placed the Engraved Box in a museum in effort to attract ticket-buying visitors and separately, simultaneously sold fractional interests in the Musical Work as non-fungible tokens over the internet. Countercl. at ¶32. This separate treatment confirms that PleasrDAO itself regards the Engraved Box and the Musical Work as separate property interests which can be leveraged in distinct and severable ways.

Even if this Court is inclined to conclude that the language of the OPA, Forfeiture Order, and APA is "ambiguous," accepting all of Shkreli's factual allegations as true and drawing all reasonable inferences in his favor, dismissal is still inappropriate. At minimum, Shkreli's counterclaims should be allowed to stand if this Court concludes that "the contract language is ambiguous and it is not clear whether the contracts contemplates the particular factual scenario" at issue. *Bay St. Advisors, LLC v. Mahoney*, No. 24-cv-9139, 2025 U.S. Dist. LEXIS 194025, at *15-16 (S.D.N.Y. Sep. 30, 2025) (cleaned up).

Far from this minimum, Shkreli has certainly stated plausible counterclaims arising from his ownership of present and future interests in the Copyrights to the Musical Work, and from PleasrDAO's interference with those ownership interests.

### D. Shkreli's Fifth Counterclaim is Properly Pled

PleasrDAO's final argument in support of its Motion asks this Court to dismiss Shkreli's tortious interference claim "because Shkreli forfeited his interest in the Album." Mot. at 11.

As noted earlier, on a motion to dismiss all well-pleaded factual allegations are taken as true and all inferences are drawn in the pleading party's favor. *Twombly*, 550 U.S. at 570. To state a claim for tortious interference, the interference with a third party "must be direct: the defendant

must direct some activities towards the third party and convince the third party not to enter into a business relationship with the [pleading party]." *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 451-52 (S.D.N.Y. 2012) (internal citations and quotation marks omitted).

Shkreli has asserted, in no uncertain terms, that PleasrDAO was aware of the terms of the OPA (Countercl. at ¶ 33), including Shkreli's future interest in 50% of the copyrights in and to the Musical Work (*id.* at ¶ 26), and that it directed activities toward Diggs and Azzougarh in order to induce them not to transact future business with Shkreli. The Counterclaims further state that after learning the specifics of the OPA, PleasrDAO "interfered with Shkreli's rights by publicly mischaracterizing the [OPA]" (*id.* at ¶ 38) and "by purchasing 50% of the copyrights in and to the Musical Work, when it knew that the OPA granted Shkreli a future interest in those same copyrights." (*id.* at ¶ 39; *see also* ¶ 88 "PleasrDAO intentionally procured the Wu-Tang Defendants' breach of the Original Purchase Agreement, without justification.").

Even in cases where one party has explicitly waived their right to bring counterclaims, courts in this District have concluded that such a waiver is "inoperative in federal court when its application would bar counterclaims that are compulsory under Federal Rule of Civil Procedure 13(a)2." *192 Morgan Realty, LLC v. Aquatorium, LLC*, No. 20-cv-3627, 2022 U.S. Dist. LEXIS 136520, at \*10 (E.D.N.Y. Aug. 1, 2022) *R&R adopted* (E.D.N.Y. Jan. 13, 2022) (citing *Sage Realty v. Insurance Co. of N. Am.*, 34 F.3d 124, 129 (2d Cir. 1994)). The unresolved question of which rights were transferred to PleasrDAO does not preclude Shkreli's Fifth Counterclaim.

## VI.    CONCLUSION

For the foregoing reasons, this Court should DENY PleasrDAO's Motion to Dismiss Shkreli's Counterclaims.

12

Dated:  April 21, 2026
      New York, New York

Respectfully submitted,


*/s/ Edward Andrew Paltzik*
Edward Andrew Paltzik, Esq.
Erik Dykema, Esq.
Meredith Lloyd, Esq (*pro hac vice*)

Taylor Dykema, PLLC
914 E 25th Street
Houston, TX 77009
516-526-0341
edward@taylordykema.com
erik@taylordykema.com
meredith@taylordykema.com

*Attorneys for Martin Shkreli*

13

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1</u>

Pursuant to Local Rule 7.1(c), the undersigned hereby certifies that this Memorandum of Law complies with the applicable word limit and includes 3,979 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, and inclusive of footnotes or endnotes.

Respectfully submitted,

Dated: April 21, 2026
      New York, New York

*/s/ Edward Andrew Paltzik*
Edward Andrew Paltzik, Esq.
Erik Dykema, Esq.
Meredith Lloyd, Esq (*pro hac vice*)

Taylor Dykema, PLLC
914 E 25th Street
Houston, TX 77009
516-526-0341
erik@taylordykema.com
edward@taylordykema.com
meredith@taylordykema.com

*Attorneys for Martin Shkreli*

14