**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PleasrDAO, an exempted foundation company, | |
| *Plaintiff*, | |
| v. | |
| Martin Shkreli, | |
| *Defendant.* | |
| Martin Shkreli, | Case No. 24-cv-04126 (PKC) (MMH) |
| *Counterclaim Plaintiff*, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| PleasrDAO, | |
| *Counterclaim Defendant.* | |
| Martin Shkreli, | |
| *Third-Party Plaintiff*, | |
| v. | |
| Robert Diggs and Tarik Azzougarh, | |
| *Third-Party Defendants.* | |

<u>**PLEASRDAO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS MARTIN SHKRELI'S THIRD-PARTY COMPLAINT**</u>

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ................................................................................................ 2

LEGAL STANDARD........................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

    I.    PLEASR HAS STANDING TO BRING THIS MOTION.......................................... 7

    II.    ALL COUNTS SHOULD BE DISMISSED BECAUSE THEY ARE BARRED BY THE FORFEITURE ORDER ...................................................................................... 8

        A.    The Forfeiture Order Divested Shkreli of All Interests in the Album .............. 8

        B.    The OPA and the APA Confirm that the Forfeiture Order Divested Shkreli of All Interests in the Album ........................................................................... 9

    III.    COUNT I SHOULD BE DISMISSED BECAUSE IT IS AN IMPROPER THIRD-PARTY CLAIM................................................................................................... 10

    IV.    COUNTS II AND III FAIL TO STATE A CLAIM FOR CONTRACTUAL INDEMNIFICATION................................................................................................ 13

CONCLUSION................................................................................................................... 15

WORD CERTIFICATION ................................................................................................... 1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexsam, Inc. v. Mastercard Int'l Inc.*,
No. 15-CV-2799 (ILG) (SMG), 2021 U.S. Dist. LEXIS 2508 (E.D.N.Y. Jan. 6, 2021) ......................................................................................................................13

*Allen v. Devine*,
No. CV 09-0668 (ETB), 2012 U.S. Dist. LEXIS 32955 (E.D.N.Y. Mar. 12, 2012) ...............................................................................................................11, 12

*AmTrust N. Am., Inc. v. Safebuilt Ins. Servs.*,
2015 U.S. Dist. LEXIS 162515 (S.D.N.Y. Dec. 1, 2015) .......................................7

*Andrade v. 120 Fulton Inv'rs LLC*,
2024 NY Slip Op 30659(U) (N.Y. Sup. Ct. 2024) ................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................6

*Bold Broad. LLC v. Noogalights, LLC*,
No. 24-CV-1482(SIL), 2026 U.S. Dist. LEXIS 50524 (E.D.N.Y. Mar. 11, 2026) ........................................................................................................................7

*Cantu v. Flanigan*,
No. CV-05-3580, 2006 U.S. Dist. LEXIS 32983 (E.D.N.Y. May 24, 2006) ...........7

*Castorino v. Citibank N.A.*,
2008 U.S. Dist. LEXIS 98559 (S.D.N.Y. Dec. 5, 2008) ..........................................6

*In re Citisource, Inc. Sec. Litig.*,
694 F. Supp. 1069 (S.D.N.Y. 1988)..................................................................11, 12

*CVS Pharmacy, Inc. v. Press Am., Inc.*,
377 F. Supp. 3d 359 (S.D.N.Y. 2019)...................................................................14

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010).....................................................................................7

*Eckhoff v. Wal-Mart Assocs.*,
No. 13-CV-2395 (CS), 2013 U.S. Dist. LEXIS 181156 (S.D.N.Y. Dec. 30, 2013) ......................................................................................................................12

*Elektra Entm't Grp. Inc. v. Santangelo*,
   2008 U.S. Dist. LEXIS 11845 (S.D.N.Y. Feb. 15, 2008) ........................................................11

*Fishman v. Office of Court Admin. N.Y. State Courts*,
   No. 20-1300, 2021 U.S. App. LEXIS 29233 (2d Cir. Sep. 28, 2021) ......................................6

*Haynes v. Kleinewefers*,
   921 F.2d 453 (2d Cir. 1990) ..............................................................................................13, 14

*Heimbach v. Metropolitan Transp. Auth.*,
   75 N.Y.2d 387 (N.Y. 1990) ......................................................................................................13

*Hooper Assocs., Ltd. v. AGS Computs., Inc.*,
   548 N.E.2d 903 (N.Y. 1989) ..............................................................................................13, 14

*IntelliPayment, LLC v. Trimarco*,
   No. 15-CV-01566 (JFB)(GRB), 2016 U.S. Dist. LEXIS 41209 (E.D.N.Y.
   Mar. 29, 2016) ..........................................................................................................................11

*Nat'l Fire Ins. Co. v. Universal Janitorial Supply Corp.*,
   No. 05-5945 (AET), 2006 U.S. Dist. LEXIS 17211 (D.N.J. Apr. 6, 2006) ..............................7

*Niagara Frontier Transp. Auth. v. Tri-Delta Constr. Corp.*,
   487 N.Y.S.2d 428 (N.Y. App. Div. 4th Dept. 1985) ..........................................................13, 14

*Res. Funding Corp. v. Congrecare, Inc.*,
   91 Civ. 8163 (RWS), 1994 U.S. Dist. LEXIS 508 (S.D.N.Y. Jan. 19, 1994) ........................11

*Restellini v. Wildenstein Plattner Inst. Inc.*,
   2021 U.S. Dist. LEXIS 181149 (S.D.N.Y. Sep. 22, 2021) ........................................................6

*Seymour v. Bache & Co.*,
   502 F. Supp. 115 (S.D.N.Y. 1980) ............................................................................................7

*St. Christopher's, Inc. v. Forgione*,
   No. 17-CV-4757 (CS), 2019 U.S. Dist. LEXIS 115476 (S.D.N.Y. July 11,
   2019) ........................................................................................................................................12

*Standex Int'l Corp. v. QCP, Inc.*,
   2017 U.S. Dist. LEXIS 16320 (S.D.N.Y. Feb. 6, 2017) ............................................................6

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
   425 F.3d 119 (2d Cir. 2005) ......................................................................................................7

*United States v. Bajakajian*,
   524 U.S. 321 (1998) ..................................................................................................................8

*United States v. Christie*,
   249 F. Supp. 3d 739 (S.D.N.Y. 2017)..................................................................................4

*United States v. Contorinis*,
   692 F.3d 136 (2d Cir. 2012)...............................................................................................8

*United States v. Kalish*,
   626 F.3d 165 (2d Cir. 2010)...............................................................................................8

*USA v. Shkreli*,
   No. 15-cr-00637 (E.D.N.Y. Aug. 4, 2017) ..................................................................1, 4, 5

**Statutes**

18 U.S.C. § 981(a)(1)(C) .........................................................................................................10

21 U.S.C. § 853(a) .....................................................................................................................4

21 U.S.C. § 853(p) .................................................................................................................4, 10

28 U.S.C. § 2461(c) .................................................................................................................10

**Rules**

Fed. R. Civ. P. 10(c) .................................................................................................................6

Fed. R. Civ. P. 14(4) .................................................................................................................8

Fed. R. Civ. P. 14(a) .................................................................................................................11

**Other Authorities**

2A Moore's Federal Practice p. 12.06(1), (2d ed. 1979)...........................................................7

## PRELIMINARY STATEMENT

After unsuccessfully trying to bring "counterclaims" against nonparties Robert Diggs ("**Diggs**") and Tarik Azzougarh ("**Azzougarh**") (collectively, the "**Third-Party Defendants**"), Defendant, Martin Shkreli ("**Shkreli**") now purports to set out three third-party claims ("**Third-Party Complaint**") against these individuals in connection with the pending litigation, and the "Once Upon a Time in Shaolin" album by the Wu-Tang Clan (the "**Album**"). Count I asserts that Diggs and Azzougarh breached the original purchase agreement, dated September 3, 2015 (the "**OPA**"), whereby Shkreli purchased the Album, by selling their interest in the Album to PleasrDAO in 2021 and 2024 ("**Pleasr**"). Count II seeks indemnification from Diggs and Azzougarh under the OPA "in the event" Pleasr obtains a "verdict or judgment against Shkreli" in this action. Count III seeks a declaratory judgment against Diggs and Azzougarh that they "are jointly and severally obligated to defend, indemnify and hold" Shkreli harmless from Pleasr's claims, and that they are "obligated to reimburse" him for the "costs, expenses and attorneys' fees" that he incurs in defense of Pleasr's claims.

Even assuming the truth of the Third-Party Complaint's factual allegations, none of the claims against the Third-Party Defendants can be sustained under Federal Rule of Civil Procedure ("**FRCP**") 12(b)(6). *First*, all Counts are barred by the forfeiture order entered in *USA v. Shkreli*, No. 15-cr-637 (KAM) (E.D.N.Y.), which required Shkreli to forfeit all of his interests in the Album. *Second*, Count I is not a proper third-party claim because it is not "dependent on or derivative of the claims in the complaint," as is required for third party claims under FRCP 14(a). *Third*, Counts II and III each fail because the parties did not "unmistakably intend" for Shkreli to retain indemnification, or *any* other rights under the OPA after Shkreli forfeited, or even transferred, the Album to a third party.

- 1 -

**FACTUAL BACKGROUND**

Pleasr commenced this action on June 10, 2024 alleging, among other things, that Shkreli retained and disseminated copies of the Album after his criminal conviction and the Forfeiture Order (discussed below), in violation of Pleasr's rights. ECF 1. On September 25, 2025, the Court granted and denied, in part, Shkreli's Motion to Dismiss, permitting Pleasr's replevin and trade secret claims to proceed. ECF 57.

On February 2, 2026—nearly four months after the Court's ruling on the motion to dismiss—Shkreli filed his Answer and Counterclaims. ECF 63. The Answer included, for the first time, five "counterclaims," four of which Shkreli purported to bring against the non-party, Third-Party Defendants. On February 11, 2026, the Court ordered the Clerk of the Court to remove the Third-Party Defendants as counter-defendants because Shkreli could not assert counterclaims against parties who were not plaintiffs.

On February 17, 2026, Shkreli filed the Third-Party Complaint. ECF 67. The Third-Party Complaint asserts three claims against the Third-Party Defendants. Count I alleges that the Third-Party Defendants breached the OPA by "selling their remaining interest in the Musical Work to PleasrDAO," including present and future copyright interests in the Album. ECF 67 ¶¶ 24-30. Count II alleges that the Third-Party Defendants are obligated under the OPA to indemnify and hold Shkreli harmless for any costs, expenses and fees that he has incurred, and continues to incur, in defending against the claims Pleasr asserts in this action.[1] *Id.* ¶¶ 31-33. Count III alleges that Shkreli is entitled to a declaration of such rights. *Id.* ¶¶ 34-37.

---

[1] These include claims for enforcement of the Forfeiture Order, tortious interference with prospective economic advantage, unjust enrichment, violations of the Defend Trade Secrets Act, trade secret misappropriation, and recovery of chattel.

Counts II and III are based on a provision in the OPA (the "**OPA Indemnification Provision**"), which states the following:

> [Diggs and Azzougarh] jointly and severally indemnify, defend, and hold [Shkreli] harmless, to the fullest extent authorized and permitted by law, from and against any and all demands, actions, proceedings, suits, claims, judgments, orders, damages, loss, amounts paid in settlement, or other liabilities or expenses incurred by [Shkreli] (including paying ongoing reasonable attorneys' fees and expenses in any lawsuit), in each and any case or proceeding of any type arising out of, in connection with, or in any way related to the Work, [Shkreli]'s Permitted Uses of the Work, any commercialization of the Work permitted in the event of a breach by [Diggs and Azzougarh] pursuant to Paragraphs 7(c), 7(d), or 7(e) herein, and/or any [of Diggs and Azzougarh]'s breach of any of its obligations, representations, warranties, or covenants in this Agreement, including without limitation any claims from any Wu-Tang Clan group member(s), and/or related party, and any claims from any artist appearing on the Work.

ECF 67 ¶ 10 (citing ECF 23 at 12).

Shkreli alleges that he is entitled to be indemnified, defended, and held harmless from Pleasr's claims because they are related to his "Permitted Uses of the Work." ECF 67 ¶ 11. The OPA defines "Permitted Uses of the Work" to include the "private or public exhibition or playing of the Work, with or without charge, in locations such as such as [Shkreli's] home, museums, art galleries, restaurants, bars, exhibition spaces, or other similar spaces not customarily used as venues for large musical concerts, as well as the advertising and/or promotion of such exhibition or playing of the Work[.]" *Id.* ¶ 12. The Work, in turn, is defined to include a number of "physical items" (the discs containing the music of the Album, the box, a volume of lyrics, credits, and anecdotes, a certificate of authenticity, and a pair of speakers) and "rights" (50% of the copyrights and renewal copyrights in the recordings and musical compositions embodied in the Album, the right to sell the Work, a limited license in perpetuity to use certain names, likenesses, trademarks, and logos in conjunction with the Permitted Uses of the Work, advertising, promotion, and display of the Album, and the right to the unrestricted use of the Work and copyrights after 88 years). ECF 23 at 6-7.

On March 10, 2026, Pleasr filed a letter motion for a pre-motion conference so that it could move to dismiss Shkreli's Third-Party Complaint. ECF 72. On March 19, 2026, the Court filed an order noting that Shkreli was required to respond to Pleasr's letter motion by March 17, 2026, but had not done so, and *sua sponte* extended Shkreli's time to respond until March 26, 2026. On March 26, 2026, Shkreli filed a response to the letter motion. ECF 76 (the "**Pre-Motion Response**"). On April 2, 2026, the Court granted Pleasr leave to file the instant motion.

By way of background, on August 4, 2017, a jury found Shkreli guilty on two counts of securities fraud and one count of conspiracy to commit securities fraud. Answer ¶ 26; Jury Verdict, *USA v. Shkreli*, No. 15-cr-00637 (E.D.N.Y. Aug. 4, 2017), ECF 305. On November 30, 2017, the United States submitted a post-trial motion for forfeiture against Shkreli seeking Shkreli's forfeiture of $7,360,450 constituting "conservative computation of the proceeds Shkreli personally obtained as a result of his three different securities fraud crimes of conviction." Motion for Forfeiture at 1, *USA v. Shkreli*, No. 15-cr-00637 (E.D.N.Y. Nov. 30, 2017), ECF 464. The motion also stated that, because Shkreli's crimes occurred more than three years prior, the government had "been unable to locate any proceeds traceable to the offenses of conviction." Declaration at 2, *USA v. Shkreli*, No. 15-cr-00637 (E.D.N.Y. Nov. 30, 2017), ECF 464-2. Accordingly, the Government sought the forfeiture of certain "substitute assets"[2] from Shkreli, up to the value of any forfeiture money judgment, including the Album, and any *proceeds* derived from the sale of such album. *Id.* at 8.

---

[2] Substitute assets are the assets of a criminal defendant other than those derived or obtained from the commission of a crime or used to commit or facilitate the commission of a crime, i.e. criminal proceeds and instrumentalities. 21 U.S.C. § 853(a) & (p). Courts must order the forfeiture of substitute assets, up to the value of the proceeds and instrumentalities, where such proceeds and instrumentalities cannot be located or have been substantially diminished in value, commingled with other property that cannot easily be separated, sold, given, or transferred to a third party, or placed beyond the jurisdiction of a court—i.e. where "proceeds subject to forfeiture have been placed out of the government's reach." *United States v. Christie*, 249 F. Supp. 3d 739, 746 (S.D.N.Y. 2017); *see* 21 U.S.C. § 853(p).

On March 9, 2018, the Court sentenced Shkreli to eighty-four months of imprisonment and entered a "Forfeiture Money Judgment" in the amount of $7,360,450. *See* Judgment at 2, *USA v. Shkreli*, No. 15-cr-00637 (E.D.N.Y. Mar. 26, 2018), ECF 566. The Judgment set out that "the conditions for the forfeiture of substitute assets" had "been met" based on the Government's submission and ordered Shkreli to "forfeit his interest in[,]" and "all proceeds traceable" to five different substitute assets, including "the album 'Once Upon A Time in Shaolin' by the Wu Tang Clan[.]" Order of Forfeiture at 3, *USA v. Shkreli*, No. 15-cr-00637 (E.D.N.Y. Mar. 26, 2018), ECF 566-1 ("**Forfeiture Order**"). The Forfeiture Order authorized the United States Attorney General to seize the substitute assets to "collect the Forfeiture Money Judgment." *Id.* It also provided that, in the event that Shkreli paid the Forfeiture Money Judgment in full, the "restraints on the Substitute Assets" would be "vacated." *Id.* at 6-7.

Shkreli did not pay the Forfeiture Money Judgment in full, and thus, the United States seized the various substitute assets, including the Album, and sold them to satisfy his outstanding debt. Counterclaims ¶ 24. The Album was sold pursuant to a United States Marshal's Bill of Sale ("**Bill of Sale**") that indicated:

> BE IT KNOWN that the United States of America, acting by and through the United States Marshal's Service ("Seller"), by virtue of that certain Final Order of Forfeiture, dated September 10, 2018, and issued by the United States District Court for the Eastern District of New York, in the case of *United States of America v. Martin Shkreli*, Case No. 15-CR-637, *has sold all of Martin Shkreli's former right, title, and interest, inter alia, in the Wu Tang Clan album Once upon a Time in Shaolin, as described in the Final Order of Forfeiture*.

ECF 22-3 at 10 (emphasis added). The forfeited assets were transferred to Pleasr pursuant to an Asset Purchase Agreement (the "**APA**"). Counterclaims ¶¶ 25-28. Like the Bill of Sale, the APA provided that Shkreli had "forfeited all of his right, title and interest in 'the album *Once Upon a Time in Shaolin* by the Wu Tang Clan' . . . 'as well as proceeds traceable thereto, up to the amount of the Forfeiture Money Judgment' imposed against him," ECF 22-3 at 2, and that the United

States Marshals Service ("**USMS**") assigned to the purchaser "any of the 'Buyer's' rights under the [OPA] forfeited by Shkreli[.]" ECF 22-3 at 3.

## LEGAL STANDARD

"The standard for a motion to dismiss a complaint, counterclaim, and third-party complaint is the same—the allegations in the complaint, counterclaims, and third-party claims are taken as true, and all reasonable inferences are drawn in the non-movant's favor." *Restellini v. Wildenstein Plattner Inst. Inc.*, 2021 U.S. Dist. LEXIS 181149, at *5 (S.D.N.Y. Sep. 22, 2021) (citations omitted) (granting motion to dismiss). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The complaint to be considered on a motion to dismiss is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. *See, e.g.*, *Fishman v. Office of Court Admin. N.Y. State Courts*, No. 20-1300, 2021 U.S. App. LEXIS 29233, at *5 n.4 (2d Cir. Sep. 28, 2021) (citing Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")). "The Court may also consider materials attached to an Answer." *Standex Int'l Corp. v. QCP, Inc.*, 2017 U.S. Dist. LEXIS 16320, at *10-11 (S.D.N.Y. Feb. 6, 2017) (citations omitted).

This Court may thus consider the contracts at issue. Where a breach of contract is alleged, the allegedly breached contract is considered integral to a complaint, and may be considered even where a plaintiff or defendant has failed to attach it to his or her pleading. *See, e.g.*, *Castorino v. Citibank N.A.*, 2008 U.S. Dist. LEXIS 98559, at *8 n.3 (S.D.N.Y. Dec. 5, 2008) ("On a motion to dismiss, 'the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference as well as documents upon which the

complaint relies and which are integral to the complaint.'") (quoting *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005)). The Court may also consider the Bill of Sale, which was attached to the APA, and is referenced in Shkreli's Answer and Counterclaim. *See* Counterclaim ¶¶ 24-26; *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."); *accord Bold Broad. LLC v. Noogalights, LLC*, No. 24-CV-1482(SIL), 2026 U.S. Dist. LEXIS 50524, at *8 n.3 (E.D.N.Y. Mar. 11, 2026).

## **ARGUMENT**

### I.     **PLEASR HAS STANDING TO BRING THIS MOTION**

As an initial matter, Pleasr has standing to bring this motion under FRCP 12(b)(6) and 14. The courts in this Circuit to have addressed this issue have nearly unanimously held that plaintiffs have standing to seek the dismissal of a third-party complaint.  *See Cantu v. Flanigan*, No. CV-05-3580 (DGT/RLM), 2006 U.S. Dist. LEXIS 32983, at *18 (E.D.N.Y. May 24, 2006) (denying defendant's standing argument and addressing the merits of plaintiff's motion to dismiss defendant's third-party complaint); *see also AmTrust N. Am., Inc. v. Safebuilt Ins. Servs.*, 2015 U.S. Dist. LEXIS 162515, at *14-15 (S.D.N.Y. Dec. 1, 2015) ("[T]he (admittedly sparse) authority on this discrete issue of standing suggests that [plaintiffs] are within their rights to seek dismissal of the claims against [the third-party defendants] . . . , whether those parties move to dismiss the claims against them or not.") (citations omitted); *Seymour v. Bache & Co.*, 502 F. Supp. 115, 117 (S.D.N.Y. 1980) ("A plaintiff may move to dismiss a third-party complaint even though the third-party defendant does not seek dismissal of the claim.") (citing 2A Moore's Federal Practice P 12.06(1), at 2245 (2d ed. 1979)); *Nat'l Fire Ins. Co. v. Universal Janitorial Supply Corp.*, No. 05-

5945 (AET), 2006 U.S. Dist. LEXIS 17211, at *13 (D.N.J. Apr. 6, 2006) (dismissing standing argument and noting that a court may, *sua sponte*, dismiss the complaint where the inadequacy of the complaint is clear.); *see also* FRCP 14(4) ("Any party may move to strike the third-party claim, to sever it, or to try it separately.").

## II.   ALL COUNTS SHOULD BE DISMISSED BECAUSE THEY ARE BARRED BY THE FORFEITURE ORDER

All Counts should be dismissed because Shkreli cannot assert any rights under the OPA after forfeiting all of his interests in the Album pursuant to the Forfeiture Order.

### A.   The Forfeiture Order Divested Shkreli of All Interests in the Album

The Forfeiture Order was entered in the Eastern District of New York and ordered Shkreli to "forfeit his interest in" certain substitute assets, "as well as all proceeds traceable thereto," including "the album 'Once Upon A Time in Shaolin' by the Wu Tang Clan." Forfeiture Order at 3. This order was "designed to punish [Shkreli]" through the disgorgement of his "ill-gotten gains." *United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012) (quoting *United States v. Bajakajian*, 524 U.S. 321, 332 (1998) and *United States v. Kalish*, 626 F.3d 165, 170 (2d Cir. 2010)). Because the Government could not locate the direct proceeds and instrumentalities of Shkreli's crimes, it ordered him to forfeit assets like the Album, and sought to maximize the recovery it would receive for each.

Shkreli's Pre-Motion Response contends that the Forfeiture Order required him to forfeit *only* the physical album—not any indemnification rights related to the Album—because "the Engraved Box and the Musical Work were treated as separate pieces of property" under the OPA and APA. ECF 76 at 2. This is a fabricated argument, without any basis in fact or law. The Bill of Sale and APA make clear that Shkreli forfeited all of his former "right, title, and interest." ECF 22-3 at 2, 10. The Forfeiture Order did not delineate any specific "interests" in the Album that

- 8 -

Shkreli could retain. It did not carve out copyright interests, contractual rights, or any other subset of Shkreli's interest in the Album. It did not limit the forfeiture to hardware, or somehow omit the musical contents and essence of the Album, that make the Album—*the Album*.

The language and intent of the Forfeiture Order were reviewed and confirmed by this Court during the August 23, 2024 preliminary injunction hearing:

> I don't know under what construction [Shkreli] could have thought that forfeiting the album, his "interest" in the album, didn't include forfeiting the contents, given that the interest depends on the uniqueness or the singular possession of the contents of that album. . . . The interest is the ability to control that item; what's in it, **what comes with it, everything**. So you and I could disagree, but ultimately I'm not going to adopt your interpretation.

ECF 55 at 30:12-33:2 (quotation marks and emphasis added).

Accordingly, Shkreli has no basis to plead that he maintained any interest that he may have once had in the Album, including any purported copyright interests in the Album.

### B.    The OPA and the APA Confirm that the Forfeiture Order Divested Shkreli of All Interests in the Album

Shkreli's Pre-Motion Response also argues that the contract language of the OPA and APA is "ambiguous," and thus dismissal would be preemptive. ECF 76 at 2. This is wrong. As noted, the APA stated that Shkreli had forfeited all "***right, title, and interest***" he had in the Album. ECF No. 22-3 at 2. The Bill of Sale used the same wording. *Id.* at 10.  The OPA and the APA may have distinguished between the physical "Engraved Box" and the "Musical Work" for commercial purposes, but that private contractual distinction does not control the scope of a judicial forfeiture order that broadly required Shkreli to forfeit his "interest" in the Album "as well as all proceeds traceable thereto."

The language of the OPA and APA is also inapposite, as the Court only needs to refer to the plain language of the Forfeiture Order to decide whether it ordered Shkreli to forfeit all of his interests in the Album. A court order is an exercise of judicial authority that derives its meaning

from the language of the order itself, the statutes and rules under which it was issued, and the purposes of the law it effectuates. A forfeiture order, in particular, is a creature of statute—here, 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p)—and must be interpreted in light of the broad remedial purposes of the criminal forfeiture statutes. The forfeiture statutes are designed to strip convicted defendants of the proceeds and instrumentalities of their crimes. Where, as here, the Government represented that it could not locate the proceeds and instrumentalities of Shkreli's crimes, the Court ordered the forfeiture of Shkreli's substitute assets, including the Album, to satisfy Shkreli's $7,360,450 Forfeiture Money Judgment.

Permitting Shkreli to retain valuable interests in the very asset he was ordered to forfeit, including copyright and indemnification rights, would frustrate the purpose of the Forfeiture Order and the forfeiture statutes more broadly. Shkreli simply cannot graft private contractual definitions onto a court order to narrow the scope of a judicially-mandated forfeiture. Holding Shkreli to the full impact of the Forfeiture Order is consistent with the Government's interest in maximizing the proceeds from the sale of any substitute asset to satisfy a defendant's forfeiture money judgment.

\* \* \*

Because the Forfeiture Order divested Shkreli of all interests in the Album, including any copyright and indemnification interests associated with the Album, Shkreli has not pled sufficient facts to obtain damages from an alleged breach of the OPA (Count I), indemnification under the OPA (Count II), or a declaration of his indemnification rights under the OPA (Count III).

### III.    COUNT I SHOULD BE DISMISSED BECAUSE IT IS AN IMPROPER THIRD-PARTY CLAIM

Count I of the Third-Party Complaint, which alleges that the Third-Party Defendants breached the OPA by selling their copyright interests in the Album to Pleasr, should also be dismissed because it is not a proper third-party claim.

- 10 -

FRCP 14(a), which is the basis for the Third-Party Complaint, provides that a "defending party may, . . ., serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." "The traditional grounds for a third-party action are indemnification, contribution, or subrogation[,]" the "liability of the third-party defendant must not arise out of a separate and independent claim, and the mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." *IntelliPayment, LLC v. Trimarco*, No. 15-CV-01566 (JFB)(GRB), 2016 U.S. Dist. LEXIS 41209, at *10 (E.D.N.Y. Mar. 29, 2016) (quotations omitted) (finding that "the third-party claims are in no way contingent upon the resolution of the plaintiff's complaint"). "A third-party complaint is a narrow device and cannot be used to bring in other matters that may have some relationship to the case." *Elektra Entm't Grp. Inc. v. Santangelo*, 2008 U.S. Dist. LEXIS 11845, at *7 (S.D.N.Y. Feb. 15, 2008) (quotations and citations omitted). While, under FRCP 18, a party asserting a third-party claim may join as independent claims "as many claims as it has against an opposing party," such claims must be dismissed where those claims that are alleged to support a Rule 14 impleader are dismissed. *Allen v. Devine*, No. CV 09-0668 (ETB), 2012 U.S. Dist. LEXIS 32955, at *17 (E.D.N.Y. Mar. 12, 2012) (dismissing supplemental claim where impleader claims were dismissed); *In re Citisource, Inc. Sec. Litig.*, 694 F. Supp. 1069, 1084 (S.D.N.Y. 1988) (same).

Count I, Shkreli's breach of contract claim, alleges that the Third-Party Defendants were obligated to transfer their "full copyright ownership" in the Album to Shkreli after 88 years but instead sold it to Pleasr, thus breaching the OPA. ECF 67 ¶¶ 25-27. This claim is not "dependent on" or "derivative of the claims in the [original] complaint," however, which only concerns Pleasr's interest in the right to exclusive ownership of the music—not any copyright interests. *Res. Funding Corp. v. Congrecare, Inc.*, 91 Civ. 8163 (RWS), 1994 U.S. Dist. LEXIS 508, at *27, 31

(S.D.N.Y. Jan. 19, 1994) (dismissing third-party complaint premised on breach of contract claims that would "not be affected by the success or failure of" the claims in the original action); *Eckhoff v. Wal-Mart Assocs.*, No. 13-CV-2395 (CS), 2013 U.S. Dist. LEXIS 181156, at *14-15 (S.D.N.Y. Dec. 30, 2013) ("[Defendant's] breach of contract claim fails to constitute a derivative cause of action. The legal and factual issues presented by the third-party breach of contract claim are independent of those that would be involved in the resolution of [plaintiff's] negligence claim."). Any purported liability of the Third-Party Defendants on this Count is wholly separate and independent of Pleasr's claims. Whether the Third-Party Defendants are liable to Shkreli for breaching the OPA does not depend on whether Shkreli is liable to Pleasr for misappropriating Pleasr's trade secrets, even if the claims involve similar parties and subject matter.

Shkreli attempts to bridge this deficiency by alleging that he incurred expenses, costs, and attorneys' fees in defending the main action as a result of this purported breach. ECF 67 ¶ 29. But the expenses, costs, and fees Shkreli has incurred in defending against Pleasr's claims are *unrelated* to copyright interests in the Album, and thus not directly and proximately caused by the Third-Party Defendants' sale of their copyright interests in the Album to Pleasr. *See St. Christopher's, Inc. v. Forgione*, No. 17-CV-4757 (CS), 2019 U.S. Dist. LEXIS 115476, at *28 (S.D.N.Y. July 11, 2019) (dismissing counterclaim for breach of contract for failing to plausibly allege that the alleged breach "*directly and proximately caused* [its] damages"). To the extent Shkreli seeks to use Count I to recover his purported copyright interests, he may not use the Third-Party Complaint as a vessel to obtain "affirmative . . . relief above and beyond the relief sought by" Pleasr. *Allen*, 2012 U.S. Dist. LEXIS 32955, at *12.

Thus, Count I is not a proper third party claim under FRCP 14. *See Allen*, 2012 U.S. Dist. LEXIS 32955, at *17; *In re Citisource, Inc. Sec. Litig.*, 694 F. Supp. at 1084.

## IV.    COUNTS II AND III FAIL TO STATE A CLAIM FOR CONTRACTUAL INDEMNIFICATION

Counts II and III should also be dismissed because Shkreli has independently failed to state facts sufficient to support his claims for indemnification. The OPA did not intend for indemnification to apply where, as here, Shkreli has forfeited or otherwise relinquished all of his interests in the Album.

Contractual indemnification language must "evince an 'unmistakable intention' to indemnify before a court would enforce such an obligation." *Haynes v. Kleinewefers*, 921 F.2d 453, 456 (2d Cir. 1990) (quoting *Heimbach v. Metropolitan Transp. Auth.*, 75 N.Y.2d 387, 392 (N.Y. 1990)). "Indemnification provisions in contracts must be given a narrow reading," and courts do not find an indemnification obligation "unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Alexsam, Inc. v. Mastercard Int'l Inc.*, No. 15-CV-2799 (ILG) (SMG), 2021 U.S. Dist. LEXIS 2508, at *13-14 (E.D.N.Y. Jan. 6, 2021) (emphasis added) (dismissing proposed addition of indemnification claim as futile even where the relevant indemnification clause was "not limited to a specific list of items" because it was boilerplate language and there was no other "indication" under the circumstances that the defending party "intended to defend, indemnify, and hold harmless" the moving party under the circumstances); *see also Hooper Assocs., Ltd. v. AGS Computs., Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989) ("Although the words might seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view . . . . This is particularly true with indemnity contracts.").

"The language of an indemnity provision should be construed so as to encompass only that loss and damage which reasonably appear to have been within the intent of the parties." *Niagara Frontier Transp. Auth. v. Tri-Delta Constr. Corp.*, 487 N.Y.S.2d 428, 431 (N.Y. App. Div. 4th

- 13 -

Dept. 1985). The fact that the plain language of an indemnification clause could *theoretically* be read to encompass a particular claim does not end the inquiry—"if damages are expressly within the terms of a contract, but are not of such character that it is reasonable to infer that they were intended to be covered, the contractual indemnity should not be enforced." *CVS Pharmacy, Inc. v. Press Am., Inc.*, 377 F. Supp. 3d 359, 379 (S.D.N.Y. 2019) (citing *Niagara Frontier Transp. Auth.*, 487 N.Y.S.2d at 431). Even where an indemnification provision employs broad, catch-all language, such language "fails to establish clearly an unmistakable intent to assume an obligation to indemnify" where the structure, purpose, and surrounding circumstances of the agreement do not support it. *Haynes*, 921 F.2d at 458; *see also Hooper*, 548 N.E.2d at 905 (words in a contract "should be restrained to the particular occasion and to the particular object which the parties had in view").

Here, the Parties did not manifest "an unmistakable intent to assume an obligation to indemnify" Shkreli against the present claims because the OPA does not address or contemplate claims premised on Shkreli's failure to forfeit his interests in the Album. *Haynes*, 921 F.2d at 458 (holding that a "catch-all phrase" does not satisfy the unmistakable intent standard where the structure and purpose of the agreement do not support the claimed indemnification). Pleasr's claims are not a "case or proceeding" falling under the scope of the OPA Indemnification Provision because they do not arise from one of Shkreli's "Permitted Uses of the Work." *See* ECF 67 ¶¶ 10-14. Shkreli lacked permission to use the work once the forfeiture occurred.

Additionally, the OPA makes clear that the parties did not intend for Shkreli to retain *any* rights under the OPA after transferring the Work to a third party. It did not contemplate the hypothetical scenario where Shkreli transferred or forfeited the "Work," but kept his indemnification rights. Specifically, Section 6(b) states that "[i]n the event of the resale or transfer

- 14 -

of the Work by the Buyer to another person or entity, Buyer shall: (i) bind such buyer or transferee by written agreement to the same rights, restrictions, and obligations on the use, sale and transfer of the Work as the Buyer is subject to in this Agreement[.]" ECF 23 at 10. Thus, the rights under the OPA passed to the next buyer. The OPA contains nothing providing that Shkreli's indemnification obligations are deemed to survive any sale, transfer, or forfeiture of the Works. *Cf. Andrade v. 120 Fulton Inv'rs LLC*, 2024 NY Slip Op 30659(U), 15 (N.Y. Sup. Ct. 2024) ("Fulton fails to point to any language in the US Crane Contract which clearly implies, or even suggests, that Fulton's right to contractual indemnification from US Crane was intended to survive, despite any assignment, and so these arguments also fail.").

Thus, the OPA did not intend for, or contemplate, that Shkreli would retain indemnification rights once the Album was sold or transferred—let alone judicially forfeited. These rights would be passed on to the next owner of the Album. Nothing in the OPA suggests that the parties contemplated a scenario where Shkreli could transfer (or forfeit) his interests in the Album while retaining *certain* rights under the OPA. Were that the case, the OPA would lack any meaningful enforcement mechanism preventing Shkreli from doing what Pleasr alleges he did—improperly retaining and disseminating the music, and in turn, frustrating the entire purpose of a secret Album.

Because Shkreli has failed to state a sufficient basis for contractual indemnification, his claims for contractual indemnification and a declaration of such purported rights must be dismissed.

**CONCLUSION**

For the foregoing reasons, Pleasr respectfully requests that the Court grant its motion and dismiss Shkreli's Third-Party Complaint in its entirety.

- 15 -

Dated: May 15, 2026

Respectfully Submitted,

/s/ Steven Cooper

Steven Cooper
Robert Carnes (*pro hac vice*)
REED SMITH LLP
599 Lexington Ave., 22nd Floor
New York, New York 10022
Tel. 212-521-5400
Fax. 212-521-5250

*Attorneys for PleasrDAO*

## <u>WORD CERTIFICATION</u>

       I hereby certify that the word count of this Memorandum of Law complies with the word limit of Local Rule 7.1(c). According to the word-processing system used to prepare this Memorandum of Law, the total word count for all printed text, exclusive of the material omitted under Local Rule 7.1(c), is 5,153 words.

Dated: New York, New York
       May 15, 2026

                                               */s/ Steven Cooper*
                                              Steven Cooper