**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PleasrDAO,<br> *Plaintiff*<br><br> v.<br><br> Martin Shkreli,<br> *Defendant* | **Case No. 24-CV-4126 (PKC) (MMH)** |

| |
|---|
| Martin Shkreli,<br> *Counterclaim Plaintiff*<br><br> v.<br><br> PleasrDAO,<br> *Counterclaim Defendant* |

| |
|---|
| Martin Shkreli,<br> *Third-Party Plaintiff*<br><br> v.<br><br> Robert Diggs and Tarik Azzougarh,<br> *Third-Party Defendants* |

**DEFENDANT MARTIN SHKRELI'S MEMORANDUM OF LAW IN OPPOSITION TO**

**PLAINTIFF'S MOTION TO DISMISS THIRD-PARTY CLAIMS**

**TABLE OF CONTENTS**

I.    **INTRODUCTION**.................................................................................................... 1

II.   **STATEMENT OF FACTS**...................................................................................... 2

III.  **STANDARD OF REVIEW** ..................................................................................... 4

IV.  **ARGUMENT**............................................................................................................ 5

    A.   PLEASRDAO LACKS STANDING TO SEEK DISMISSAL OF THE THIRD-PARTY CLAIMS.......................................................................................................................5

    B.   THE FORFEITURE ORDER DOES NOT BAR SHKRELI'S THIRD-PARTY CLAIMS.......................8

        1.   *Copyrights Must be Explicitly Transferred*.................................................... 8

        2.   *The APA Does Not Expand the Forfeiture Order*............................................ 9

        3.   *Even if the Forfeiture Order and APA Are Ambiguous, PleasrDAO's Motion Fails*... 10

    C.   SHKRELI'S THIRD-PARTY CLAIMS ARE SUFFICIENTLY PLED AND PROCEDURALLY APPROPRIATE .......................................................................................................11

        1.   *Counts II and III*.............................................................................................. 11

        2.   *Count I* ............................................................................................................. 13

V.    **CONCLUSION** ....................................................................................................... 14

**CERTIFICATE OF COMPLIANCE WITH L.R. 7.1**............................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Case**

*10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.,*
  634 F.3d 112 (2d Cir. 2011) ..................................................................................... 11

*Amtrust N. Am., Inc. v. Safebuilt Ins. Svcs.,*
  No. 14-CV-09494, 2017 U.S. Dist. LEXIS 49519 (S.D.N.Y. Dec. 1, 2015). ........................ 7, 8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................. 4

*Bd. of Managers of Trump Tower at City Ctr. Condo. v. Palazzolo,*
  346 F. Supp. 3d 432 (S.D.N.Y. 2018) ..................................................................... 5, 6, 8

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................. 4

*Belt Painting Corp. v. TIG Ins. Co.,*
  795 N.E.2d 15 (2003) .............................................................................................. 11

*Best Brands Consumer Prods. v. Versace 19.69 Abbigliamento Sportivo S.R.L.,*
  No. 23-1115-CV, 2024 U.S. App. LEXIS 14251 (2d Cir. June 12, 2024) ............................. 11

*Cantu v. Flanigan,*
  No. 05-CV-3580, 2006 U.S. Dist. LEXIS 32983 (E.D.N.Y. May 24, 2006) ........................... 7

*Chabad Lubavitch of Litchfield County, Inc. v. Borough of Litchfield, Conn.,*
  No. 09-CV-1419, 2010 U.S. Dist. LEXIS 45677 (D. Conn. May 10, 2010) ........................... 6

*Chase Grp. All. LLC v. City of New York Dep't of Fin.,*
  620 F.3d 146 (2d Cir. 2010) ....................................................................................... 4

*Cubilete v. United States,*
  469 F. Supp. 3d 13 (E.D.N.Y. 2020) ........................................................................ 4, 5

*CVS Pharmacy, Inc. v. Press Am., Inc.,*
  377 F. Supp. 3d 359 (S.D.N.Y. 2019) ........................................................................ 12

*Del Medical Imaging Corp. v. CR Tech USA, Inc.,*
  No. 08-CV-8556, 2010 U.S. Dist. LEXIS 36415 (S.D.N.Y. Apr. 13, 2010) ........................... 6

*Dist. Att'y of New York Cnty. v. Republic of the Phil.,*
  307 F. Supp. 3d 171 (S.D.N.Y. 2018) .......................................................................... 6

*Dover Ltd. v. A.B. Watley, Inc.*,
   No. 04-CV-7366, 2006 U.S. Dist. LEXIS 76004 (S.D.N.Y. Oct. 18, 2006) .............................. 6

*Elisa W. v. City of N.Y.*,
   No. 15-CV-5273, 2016 U.S. Dist. LEXIS 123332 (S.D.N.Y. Sep. 12, 2016) ........................ 5, 6

*Emanation Inc. v. Zomba Recording, Inc.*,
   72 Fed. App'x 187 (5th Cir. 2003) ........................................................................................ 1

*Essex Ins. Co. v. Laruccia Constr., Inc.*,
   71 A.D.3d 818 (2d Dep't 2010)............................................................................................ 11

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*,
   375 F.3d 168 (2d Cir. 2004) ................................................................................................. 10

*Gordon v. Sonar Capital Mgmt. LLC*,
   962 F. Supp. 2d 525 (S.D.N.Y. 2013) ................................................................................... 8

*Guanglei Jiao v. Shang Shang Qian Inc.*,
   2025 U.S. Dist. LEXIS 170815 (E.D.N.Y. Aug. 15, 2025) ................................................... 6

*Hanover Ins. Co. v. Avalon*,
   2017 U.S. Dist. LEXIS 49519 (S.D.N.Y. Mar. 20, 2017)................................................... 6, 7

*Hartford Fire Ins. Co v. Cty. Asphalt, Inc.*,
   No. 01-CV-6176, 2002 U.S. Dist. LEXIS 22572 (S.D.N.Y. Nov. 22, 2002)........................... 7

*ITOFCA, Inc. v. Mega Trans Logistics, Inc.*,
   322 F.3d 928 (7th Cir. 2003) ................................................................................................ 10

*Kingsrow Enterprises, Inc. v. Metromedia, Inc.*,
   397 F. Supp. 879, 189 U.S.P.Q. (BNA) (S.D.N.Y. 1975)....................................................... 9

*Kitchen Winners NY Inc. v. Rock Fintek LLC*,
   668 F. Supp. 3d 263 (S.D.N.Y. 2023) .................................................................................... 4

*Kuklachev v. Gelfman*,
   600 F. Supp. 2d 437 (E.D.N.Y. 2009)..................................................................................... 6

*Olin Corp. v. Consolidated Aluminum Corp.*,
   5 F.3d 10 (2d Cir. 1993) ....................................................................................................... 11

*Playboy Enterprises, Inc. v. Dumas*,
   53 F.3d 549 (2d Cir. 1995) ..................................................................................................... 9

iv

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*,
   156 F. Supp. 3d 348 (E.D.N.Y. 2016) ................................................................................... 4, 5

*Seymour v. Bache & Co.*,
   502 F. Supp. 115 (S.D.N.Y. 1980) ........................................................................................ 7

*Spinelli v. Nat'l Football League*,
   903 F.3d 185 (2d Cir. 2018) .............................................................................................. 11

*Tjeknavorian v. Mardirossian*,
   56 F. Supp. 3d 561 (S.D.N.Y. 2014) ................................................................................... 9

*U.S. v. Shkreli*,
   Case No. 1:15-CR-00637-KAM (E.D.N.Y. 2018) ................................................................. 3

*Xiaohong v. Dingledine*,
   2025 U.S. Dist. LEXIS 108096 (S.D.N.Y. June 6, 2025) ..................................................... 11

*Zhang v. Wen Mei, Inc.*,
   No. 14-CV-1647, 2017 U.S. Dist. LEXIS 213389 (E.D.N.Y. Dec. 28, 2017) .......................... 6

## I.    INTRODUCTION

In its Motion to Dismiss Shkreli's Third Party Complaint (the "Motion" or "Mot."), PleasrDAO asks this Court to dismiss claims that are not asserted against it, on behalf of parties who have not appeared, answered, or otherwise challenged the Third-Party Complaint themselves. That request should be denied at the threshold. The Third-Party Complaint asserts claims solely against Robert Diggs p/k/a The RZA and Tarik Azzougarh p/k/a Cilvaringz (the "Third-Party Defendants"), and PleasrDAO lacks standing to invoke Rule 12(b)(6) as a substitute for those parties.

Even if the Court reaches the merits, the Motion fails. PleasrDAO's arguments rest on the premise that Shkreli forfeited and the United States subsequently sold copyright interests in *Once Upon a Time in Shaolin*. But neither the Forfeiture Order nor the subsequent Asset Purchase Agreement contains the explicit language required by the Copyright Act to transfer copyright ownership. The Forfeiture Order directed forfeiture of a tangible asset—the sole physical copy of the album embodied in the engraved case—not any copyright or other intangible intellectual property rights. Under settled copyright law, ownership of a physical copy of a work is distinct from ownership of the copyright embodied in that copy, and copyrights do not pass by implication. At a minimum, the governing documents are susceptible to competing reasonable interpretations, precluding dismissal at the pleading stage.

The Motion likewise ignores the broad contractual obligations undertaken by the Third-Party Defendants when they sold the Musical Work and the Engraved Box to Shkreli in 2015. The Original Purchase Agreement contains expansive indemnification provisions requiring the Third-Party Defendants to defend, indemnify, and hold Shkreli harmless from claims and expenses arising out of, connected with, or related to the Work. This litigation concerns nothing other than

1

*Once Upon a Time in Shaolin* and the parties' respective rights to possess it (either physically or digitally). The Third-Party Complaint plausibly alleges that the claims PleasrDAO has chosen to assert fall squarely within the scope of those contractual protections. Moreover, because Shkreli's breach-of-contract and indemnification claims arise directly from the same transactions, rights, and ownership disputes at issue in the underlying action, they are properly asserted under Rules 14 and 18.

In short, PleasrDAO seeks extraordinary relief it lacks standing to request, based on a flawed reading of both the Copyright Act and the operative agreements. Accepting the allegations of the Third-Party Complaint as true and drawing all reasonable inferences in Shkreli's favor—as the Court must at this stage—the Third-Party Complaint easily surpasses "plausibility." Accordingly, PleasrDAO's Motion to Dismiss should be denied in its entirety.

## II.   <u>STATEMENT OF FACTS</u>

On September 3, 2015, Martin Shkreli bought what was then the only existing copy of *Once Upon A Time in Shaolin...* from Robert Diggs p/k/a The RZA ("Diggs") and Tarik Azzougarh p/k/a Cilvaringz ("Azzougarh," together with Diggs, the "Third Party Defendants"). ECF 67, Third-Party Compl. at ¶ 9. In this initial transaction, Shkreli acquired both *physical assets* (the "Engraved Box") as well as *intangible assets,* including 50% of the copyrights in and to the Musical Work. ECF 23 (the "OPA")[1].

Although Shkreli bought the sole copy of the Musical Work in 2015, the OPA authorized him to make certain "Permitted Uses" of it, including by making copies or directing others to make

---

[1] Federal courts separate "musical works" into their constituent parts for copyright purposes. Indeed, "'[s]ound recordings' are 'works that result from the fixation of a series of musical, spoken, or other sounds . . . .' A sound recording differs from a musical composition, which captures an artist's music in its written form only." *Emanation Inc. v. Zomba Recording, Inc.*, 72 Fed. App'x 187, 188 n.1 (5th Cir. 2003) (internal citations omitted).

copies of it, as well as "private or public exhibition or playing of the Work, with or without charge." *Id.* at p. 7.  It also included indemnification provisions which obligated the Third-Party Defendants to "jointly and severally indemnify, defend, and hold Buyer harmless… from and against *any and all* … liabilities or expenses incurred by Buyer (including paying ongoing reasonable attorneys' fees and expenses *in any lawsuit*), *in each and any case or proceeding of any type arising out of, in connection with, or in any way related to the Work.* Third Party Complaint ("TPC") at ¶ 10, citing ECF 23 at p. 12 (emphasis added).

In 2018, Shkreli was required to forfeit a sum of $7,360,450 to the U.S. government. *See U.S. v. Shkreli*, Case No. 1:15-CR-00637-KAM (E.D.N.Y. 2018). In lieu of cash, the U.S. Marshal's Service took possession of some of Shkreli's possessions, listed in the Forfeiture Order [ECF 4-5] (the "Forfeiture Order"). These assets included original copies of "a Picasso painting," "the album 'Tha Carter V' by Lil Wayne," and "the album 'Once Upon A Time in Shaolin' by the Wu Tang Clan." *Id.*

After taking possession of the Engraved Box, the U.S. government sold it to an undisclosed buyer via an Asset Purchase Agreement. [ECF 22-3] (the "APA"). The APA detailed that the government was selling only *the original* copy of the Musical Work, contained in an ornate engraved case, (the "Engraved Box"). Under the APA, the Engraved Box was sold "'As-Is, Where Is' with no representations or warranties as to [its] condition, usability, or fitness for any purpose." *Id*. The undisclosed buyer also purchased the Engraved Box with the express knowledge that "[the U.S. government] does not undertake or assume any of the representations or warranties with respect to the Assets set forth in the Original Purchase Agreement." *Id.* Thus, the APA explicitly disclaimed the OPA's guarantee that no other copies of the Musical Work existed at the time of the APA. *Id.*

3

Following a disagreement between PleasrDAO and Shkreli, PleasrDAO initiated this lawsuit against him, alleging its exclusive ownership of both the Musical Work and the Engraved Box.[2] Several of PleasrDAO's original claims have been dismissed, and Shkreli filed a Third-Party Complaint bringing claims against Diggs and Azzougarh for breach of contract, indemnification, and a declaratory judgment. ECF 67. The Third-Party Defendants have not responded to the Third Party Complaint, however PleasrDAO has moved to dismiss Shkreli's Third-Party Claims.

## III.    STANDARD OF REVIEW

"A motion to dismiss a counterclaim, third-party claim, and cross-claim is evaluated under the same standard as a motion to dismiss a complaint." *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 282 (S.D.N.Y. 2023) (add'l citation omitted). In deciding a motion to dismiss under Rule 12(b)(6), courts accept as true all well-pleaded factual allegations and draw all inferences in the pleading party's favor. *Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). "To survive a motion to dismiss" under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although third-parties seeking indemnification or contribution must still set forth enough facts to state a claim to relief that is plausible on its face, the "pleading standards may be 'lessened somewhat for third-party claims, which may be read in conjunction with the original pleadings.'" *Cubilete v. United States*, 469 F. Supp. 3d 13, 20

---

[2] The parties dispute the severability of tangible and intangible interests, but for ease of reference, as used in this document, the "Musical Work" includes the data and files that make up *Once Upon a Time in Shaolin…* by the Wu-Tang Clan, and the "Engraved Box" includes the commemorative first copy of the data and files, packaged in an ornate silver box and accompanied by a manuscript, certificate of authenticity, and other accessories.

(E.D.N.Y. 2020) (quoting *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*, 156 F. Supp. 3d 348, 361 (E.D.N.Y. 2016)).

## IV.    ARGUMENT

In its Motion, PleasrDAO argues that Shkreli's claims against Diggs and Azzougarh for breach of contract, indemnification, and a declaratory judgment should be dismissed. Notwithstanding PleasrDAO's lack of standing to challenge the sufficiency of claims not asserted against it, the Motion fails because Shkreli's third-party claims are properly asserted against the Third-Party Defendants and are not barred by the Forfeiture Order or the APA. The Motion should be denied.

### A.    PleasrDAO Lacks Standing to Seek Dismissal of the Third-Party Claims

PleasrDAO's Motion asks this Court to dismiss claims against Diggs and Azzougarh, not PleasrDAO. Since PleasrDAO is not a defendant to the third-party claims, it is not obligated or entitled to seek their dismissal under Rule 12(b)(6). The Court should decline to entertain PleasrDAO's motion.

Although PleasrDAO contends that "nearly unanimous" precedent supports its standing to seek dismissal of the Third Party Complaint, (Mot. at 7) authority in this Circuit weighs heavily against even considering a motion to dismiss claims not against the moving party. *See, e.g., Bd. of Managers of Trump Tower at City Ctr. Condo. v. Palazzolo*, 346 F. Supp. 3d 432, 462 n.4 (S.D.N.Y. 2018) ("Defendants do not have standing to move to dismiss the substantive claims not actually asserted against them. Accordingly, the Court will not address the [Moving] Defendants' arguments as to the merits of Plaintiff's claims asserted solely against [Non-moving Defendant].") (internal citation omitted); *Elisa W. v. City of N.Y.,* No. 15-CV-5273, 2016 U.S. Dist. LEXIS 123332, at *24-25 (S.D.N.Y. Sep. 12, 2016) ("because [plaintiff] has asserted no claims as against

5

the City Defendants, there is no case or controversy between these parties, and City Defendants thus lack standing to challenge [plaintiff's] capacity to sue"); *Dover Ltd. v. A.B. Watley, Inc.*, No. 04-CV-7366, 2006 U.S. Dist. LEXIS 76004, at *8 (S.D.N.Y. Oct. 18, 2006) (A party "lacks standing to attack the legal sufficiency" of claims for relief not asserted against them); *Guanglei Jiao v. Shang Shang Qian Inc.*, 2025 U.S. Dist. LEXIS 170815, at *24 (E.D.N.Y. Aug. 15, 2025) (same); *Dist. Att'y of New York Cnty. v. Republic of the Phil.*, 307 F. Supp. 3d 171, 194-95 (S.D.N.Y. 2018) (same); *Zhang v. Wen Mei, Inc.,* No. 14-CV-1647, 2017 U.S. Dist. LEXIS 213389, at *22 n.4 (E.D.N.Y. Dec. 28, 2017) (same).

Rule 14(a)(4) allows any party to "move to strike the third-party claim[3], to sever it[4], or to try it separately.[5]" Importantly, Rule 14(a)(4) does not authorize "any party" to bring a "defensive motion[6]" in response to third-party claims under Rule 12(b)(6). It is well-settled that "a party may only file a Rule 12(b) motion presenting a defense to claims asserted against it." *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 455 (E.D.N.Y. 2009).

As observed in *Hanover Ins. Co. v. Avalon,* courts in this Circuit have varied in resolving the question: "do the plaintiffs have standing to move _to strike_ claims that are not asserted against them?" 2017 U.S. Dist. LEXIS 49519, at *17-18 (S.D.N.Y. Mar. 20, 2017) (emphasis added).

---

[3] Fed. R. Civ. P. 12(f).

[4] Fed. R. Civ. P. 21.

[5] Fed. R. Civ. P. 42.

[6] Motions to dismiss under Rule 12(b)(6) are "defensive motions" which "cannot be asserted by [a party] as against a plaintiff who has asserted no claim against them." *Del Medical Imaging Corp. v. CR Tech USA, Inc.*, No. 08-CV-8556, 2010 U.S. Dist. LEXIS 36415, at *9 (S.D.N.Y. Apr. 13, 2010); *see also Chabad Lubavitch of Litchfield County, Inc. v. Borough of Litchfield, Conn.*, No. 09-CV-1419, 2010 U.S. Dist. LEXIS 45677, at *3 (D. Conn. May 10, 2010) ("[A] party may only file a Rule 12(b) motion presenting a defense to claims asserted against it.").

6

Although *Hanover's* third-party complaint was ultimately stricken as "obviously unmeritorious," the analysis of standing to bring a motion to strike is instructive here. Even after considering *all* of the authority that PleasrDAO has presented in favor of its standing argument[7], the *Hanover* court concluded that parties moving <u>to strike</u> claims not asserted against them had to demonstrate "a basis for standing independent of the Rule." *Id.* It follows, then, that parties bringing motions outside of Rule 14(a)(4), such as motions to dismiss, must meet the same threshold.

As acknowledged by *Hanover*, *AmTrust* does not endorse a party's standing to seek dismissal of a third party complaint merely based on their status as a party to the case. *Amtrust N. Am., Inc. v. Safebuilt Ins. Svcs.,* No. 14-CV-09494, 2017 U.S. Dist. LEXIS 49519, at \*18 (S.D.N.Y. Dec. 1, 2015). Rather than alleging independent breach of a contract by a third-party defendant, the *AmTrust* plaintiff moved jointly with a third-party defendant to dismiss a third-party claim which was based on "an alleged scheme" executed by both of the moving parties. *AmTrust,* 2015 U.S. Dist. LEXIS 162515, at \*7. The *AmTrust* court concluded that the plaintiff had "a meaningful stake in the outcome of claims asserted against [the third-party defendant]" since, in addition to the allegations that the plaintiff was involved in a "scheme" giving rise to third-party liability, they had also agreed to indemnify the third-party defendant for any liability arising from the action. *AmTrust,* 2015 U.S. Dist. LEXIS 162515, at \*4.

Here, in contrast, PleasrDAO has not described any agreement between itself and the Third-Party Defendants, instead moving to dismiss based solely on standing conferred on it as the

---

[7] *Id.* at 17, citing *Seymour v. Bache & Co.,* 502 F. Supp. 115, 117 (S.D.N.Y. 1980); *AmTrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.,* No. 14-CV-09494, 2015 U.S. Dist. LEXIS 162515, at \*4 (S.D.N.Y. Dec. 1, 2015); *Cantu v. Flanigan,* No. 05-CV-3580, 2006 U.S. Dist. LEXIS 32983, at \*18 (E.D.N.Y. May 24, 2006); *id.* at 19, citing *Hartford Fire Ins. Co v. Cty. Asphalt, Inc.,* No. 01-cv-6176, 2002 U.S. Dist. LEXIS 22572, at \*3 (S.D.N.Y. Nov. 22, 2002).

Plaintiff in this action. *AmTrust* is further distinguishable from this case because here, no third-party defendant has joined PleasrDAO's motion to dismiss.

PleasrDAO does not have standing to move to dismiss Shkreli's claims brought solely against the Wu-Tang Defendants. *Bd. of Managers of Trump Tower at City Ctr. Condo. v. Palazzolo*, 346 F. Supp. 3d 432, 462 n.4 (S.D.N.Y. 2018); *Gordon v. Sonar Capital Mgmt. LLC*, 962 F. Supp. 2d 525, 533 n.4 (S.D.N.Y. 2013) (Rejecting arguments in favor of dismissal "as these [Moving] defendants lack standing to attack the sufficiency of the claims that proceed only against the [other] defendants.").

### B.      The Forfeiture Order Does Not Bar Shkreli's Third-Party Claims

Even if this Court finds that PleasrDAO has standing to seek dismissal on behalf of the Third-Party Defendants, it should deny the Motion. The Forfeiture Order did not transfer the copyrights to the Musical Work from Shkreli to the U.S. government, and so PleasrDAO could not have purchased them.

#### 1.      Copyrights Must be Explicitly Transferred

Under the Copyright Act, "[o]wnership of a copyright, or any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied." 17 U.S.C. § 202 (emphasis added). "Transfer of ownership of any material object, including the copy of phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object" 17 U.S.C. § 202 (emphasis added).

Section 204 of the Copyright Act requires that transfers of copyright ownership are "not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed." 17 U.S.C. § 204. "Although a writing sufficient to satisfy Section 204 does not have to be long or elaborate, it must explicitly convey a party's

intention to sign away his or her copyright interests." *Tjeknavorian v. Mardirossian*, 56 F. Supp. 3d 561, 565 (S.D.N.Y. 2014). The Second Circuit has held that statements indicating the assignment of "all right, title and interest" in a painting on the check issued for payment was insufficient to cause a copyright transfer from seller to buyer. *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 564 (2d Cir. 1995) *cert. denied*, 516 U.S. 1010 (1995). In *Playboy*, the Second Circuit relied on two dispositive facts: first, the statement including "all right, title, and interest" did not mention word "copyright;" and second, the evidence was conflicting as to whether the parties intended to transfer the copyrights or merely execute a one-time reproduction license. *Id.*

The Forfeiture Order only required that Shkreli forfeit the Engraved Box to the government. Indeed, Shkreli was ordered to surrender "the disc or album 'Once Upon a Time in Shaolin' by the Wu Tang Clan" and to advise the government of its location. ECF 4-5 at pp. 8, 13. Far from the "explicit transfer" required by the Copyright Act, the Forfeiture Order *does not mention* any intellectual property rights or intangible rights whatsoever. And so, PleasrDAO's Motion suffers from the "decisive flaw" that the government "never acquired the copyrights or the power to sell them." *Kingsrow Enterprises, Inc. v. Metromedia, Inc.*, 397 F. Supp. 879, 189 U.S.P.Q. (BNA) 90 (S.D.N.Y. 1975).

### 2.    The APA Does Not Expand the Forfeiture Order

The Copyright Act's explicit transfer requirement is not compromised when the government is a party to the transfer. For example, in *Kingsrow Enterprises, Inc. v. Metromedia, Inc.*, a Sheriff's sale of items including copyright certificates was not an effective transfer of copyright, because the Sheriff never acquired the copyrights in the first place and because there was no "instrument in writing" sufficient to transfer ownership from the Sheriff to the buyer. 397 F. Supp. 879, 189 U.S.P.Q. (BNA) 90 (S.D.N.Y. 1975).

9

The facts of *Kingsrow* were far less ambiguous than the circumstances in this matter. In *Kingsrow,* it was uncontroverted that at the time of levy, the sheriff "specifically referred to the copyrights in and to the programs, and while doing so, he picked up in his hand the actual copyright certificates." *Id.* Even so, "the sheriff never acquired the copyrights or the power to sell them." *Id., cf. ITOFCA, Inc. v. Mega Trans Logistics, Inc.,* 322 F.3d 928, 932 (7th Cir. 2003) (Copyrights were transferred in bankruptcy order which required transfer of "all assets" and *"clearly authorized ICI and its transferees to make and sell"* copies of the work).

The APA's statement that Shkreli "forfeited all of his right, title, and interest" cannot retroactively widen the scope of the Forfeiture Order, and certainly does not satisfy § 204's writing requirement. First, Shkreli was not a party to the APA, and did not sign it. And so, any copyright transferred by the APA would have been owned by the U.S.M.S. at the time of its execution.

Second, the APA contains repeated, explicit waivers of all warranties provided to Shkreli when he first bought the Musical Work and the Engraved Box. The purchaser of the Engraved Box understood that "no representations" were being made about the condition of the Engraved Box, and that they were purchasing only the "right, title, and interest" that was forfeited to the government. Holding "that an agreement that says nothing about copyrights or intellectual property rights…probably transferred a copyright conflicts with the purposes of section 204." *ITOFCA, Inc. v. Megatrans Logistics, Inc.*, 322 F.3d 928, 938 (7th Cir. 2003) (Ripple, J., concurring).

### 3.  Even if the Forfeiture Order and APA Are Ambiguous, PleasrDAO's Motion Fails

For contract claims, "reasonable inferences" include interpretations of ambiguous contractual provisions where the scope, interpretation, or applicability of those provisions is disputed. *See Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 178 (2d Cir. 2004) (on a motion to dismiss, courts must accept plaintiff's plausible interpretation of

contracts where ambiguity exists); *Spinelli v. Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018) (dismissal inappropriate where contract language is subject to competing reasonable interpretations).

### C.    Shkreli's Third-Party Claims are Sufficiently Pled and Procedurally Appropriate

#### 1.    Counts II and III

This Court has already concluded that Shkreli's Third Party Complaint includes indemnification claims against the Third-Party Defendants. *See* Text Order dated February 25, 2026 (discussing "the new indemnification claims Shkreli raises in the Third-Party Complaint"). Fed. R. Civ. P. 18 allows for third-party plaintiffs to join "as many claims as it has against an opposing party" with indemnification claims authorized by Fed. R. Civ. P. 14. Here, Shkreli has brought a third-party claim for contractual indemnification (Count II, ECF 67 at 6 *et seq*.), in addition to his other Third-Party Claims.

The language of the OPA evidences a "clear and unmistakable intent" to cover the claims at issue. *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10 (2d Cir. 1993). Indemnification provisions are "strictly construed" under New York law. *Best Brands Consumer Prods. v. Versace 19.69 Abbigliamento Sportivo S.R.L.*, No. 23-1115-CV, 2024 U.S. App. LEXIS 14251, at *5 (2d Cir. June 12, 2024). Courts interpret contractual provisions based on "their plain and ordinary meaning," *Xiaohong v. Dingledine*, 2025 U.S. Dist. LEXIS 108096, at *8-9 (S.D.N.Y. June 6, 2025); *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.,* 634 F.3d 112, 119 (2d Cir. 2011); *Essex Ins. Co. v. Laruccia Constr., Inc.*, 71 A.D.3d 818 (2d Dep't 2010)), interpreting such terms "in light of common speech and the reasonable expectations of a businessperson." *Belt Painting Corp. v. TIG Ins. Co*., 795 N.E.2d 15 (2003).

11

Here, the language of the OPA is clear. Third-Party Defendants agreed to:

jointly and severally indemnify, defend, and hold Buyer harmless, to the fullest extent authorized and permitted by law, from and against *any and all* demands, actions, proceedings, suits, claims, judgments, orders, damages, loss, amounts paid in settlement, or other liabilities or expenses incurred by Buyer (including paying ongoing reasonable attorneys' fees and expenses *in any lawsuit*), *in each and any case or proceeding of any type arising out of, in connection with, or in any way related to the Work, the Buyer's Permitted Uses of the Work*, any commercialization of the Work permitted in the event of a breach by Sellers pursuant to Paragraphs 7(c), 7(d), or 7(e) herein, *and/or any Seller's breach of any of its obligations, representations, warranties, or covenants in this Agreement*, including without limitation any claims from any Wu-Tang Clan group member(s), and/or related party, and any claims from any artist appearing on the Work.

TPC at ¶ 10, citing ECF 23 at p. 12 (emphasis added).

It is beyond cavil that this litigation "aris[es] out of, in connection with, or in any way related to the Work." *Once Upon A Time in Shaolin…* is squarely at the center of this lawsuit. And so, the OPA's indemnification provision undoubtedly applies.

PleasrDAO has argued that the OPA's indemnification provisions do not apply "because the OPA does not address or contemplate claims premised on Shkreli's failure to forfeit his interests in the Album." Mot. at 14. But requiring such specificity would render indemnification provisions meaningless.

PleasrDAO relies on *CVS Pharmacy, Inc. v. Press Am., Inc.*, arguing that a case which limited an indemnification clause to certain parties supports dismissal of Shkreli's third-party indemnification claims. 377 F. Supp. 3d 359, 379 (S.D.N.Y. 2019). However, the *CVS* Court found "nothing in the language of Press America's indemnification obligation that can reasonably be construed to exclude the payment to CVS. The language of the indemnification provision []is very broad." *Id.*

Here, as in *CVS*, "[t]he language is unambiguous. No express carve out applies." *Id.* The Third-Party Defendants are named parties to the OPA, even making personal "irrevocable"

12

guarantees of performance. OPA at p. 1 (defining the Wu-Tang Defendants as the "Sellers"), § 7(g) (Personal Guaranty). It is difficult to imagine litigation more directly 'related to the Work' than a lawsuit seeking to determine ownership and control of it. And so, the indemnification provision applies.

### 2.    Count I

PleasrDAO also argues that Shkreli's Third-Party Claim for breach of contract is "not dependent on or derivative of the claims in the original complaint." Mot. at 11 (cleaned up). PleasrDAO has argued that Shkreli's claim for breach of contract is "not dependent on or derivative of the claims in the original complaint" since those claims "only concern[] Pleasr's interest in the right to exclusive ownership of the music—not copyright interests." Mot. at 11.

The plain language of PleasrDAO's original complaint negates this point. The claims against Shkreli are expressly predicated on PleasrDAO's allegation that it owns "the physical asset and exclusive right to play the audio tracks," as well as the "copyrights in and exclusive right to exploit the recordings." ECF 1 at ¶ 29.

Further, as this Court has previously concluded "[t]he right Plaintiff seeks to protect is its exclusive right to make use of the Album, which largely tracks the Copyright Act's protection of the 'exclusive rights' to 'reproduce,' 'distribute,' 'perform,' or 'display' a copyrightable work." Dkt. 57 at p. 27, citing 17 U.S.C. §106. Additionally, as this Court has held, the independent economic value of PleasrDAO's alleged trade secret comes from its ability to leverage its exclusivity to create an experience that competitors cannot. *Id.* at p. 20. This necessitates "distributing" the Musical Work, at a minimum. And so, Shkreli's Third-Party Claims are sufficiently related to the original complaint.

## V.    <u>CONCLUSION</u>

This Court should decline to consider PleasrDAO's Motion to Dismiss Shkreli's Third-Party Complaint. If the merits are considered, the Motion should be DENIED.

Respectfully submitted,

Dated:  May 29, 2026

/s/ *Edward Andrew Paltzik*
Edward Andrew Paltzik, Esq.
Erik Dykema, Esq.
Meredith Lloyd, Esq (*pro hac vice*)

Taylor Dykema, PLLC
914 E 25th Street
Houston, TX 77009
516-526-0341
erik@taylordykema.com
edward@taylordykema.com
meredith@taylordykema.com

*Attorneys for Martin Shkreli*

14

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1</u>

Pursuant to Local Rule 7.1(c), the undersigned hereby certifies that this Memorandum of Law complies with the applicable word limit and includes 5,008 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, and inclusive of footnotes or endnotes.

Respectfully submitted,

Dated: May 29, 2026

*/s/ Edward Andrew Paltzik*
Edward Andrew Paltzik, Esq.
Erik Dykema, Esq.
Meredith Lloyd, Esq (*pro hac vice*)

Taylor Dykema, PLLC
914 E 25th Street
Houston, TX 77009
516-526-0341
erik@taylordykema.com
edward@taylordykema.com
meredith@taylordykema.com

*Attorneys for Martin Shkreli*

15